ANDREW P. BRIDGES (*pro hac vice* pending)
abridges@winston.com
J. CALEB DONALDSON (*pro hac vice* pending)
Jcdonaldson@winston.com
KATHLEEN LU (*pro hac vice* pending)
klu@winston.com
WINSTON & STRAWN LLP
101 California Street, 39th Floor
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
NV State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:     (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC,
and Defendant DAVID ALLEN

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.  2:10-cv-01356-RLH-RJJ |
| Plaintiff, | **ANSWER OF DEFENDANTS DEMOCRATIC UNDERGROUND, LLC AND DAVID ALLEN AND COUNTERCLAIM OF COUNTERCLAIMANT DEMOCRATIC UNDERGROUND, LLC** |
| v. | |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual | |
| Defendants. | **JURY DEMAND** |

**CAPTION CONTINUES ON NEXT PAGE**

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

|  |  |
|---|---|
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company, | ) ) ) |
| Counterclaimant, | ) ) ) |
| v. | ) ) ) |
| RIGHTHAVEN LLC, a Nevada limited-liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company | ) ) ) ) ) |
| Counterdefendants. | ) ) ) |

Democratic Underground, LLC ("Democratic Underground") and David Allen (referred to together below as "Defendants") respond to the Plaintiff's Complaint as follows:

1. Defendants admit that this is an action for copyright infringement but deny that any infringement underlies this action.

2. Defendants lack enough information to admit or deny the allegations of paragraph 2 of the Complaint and therefore deny the allegations.

3. Defendants lack enough information to admit or deny the allegations of paragraph 3 of the Complaint and therefore deny the allegations.

4. Defendants admit that Democratic Underground is a District of Columbia limited-liability company. Defendants lack enough knowledge to admit or deny the remaining allegations of paragraph 4 of the Complaint and therefore deny the allegations.

5. Defendants admit that Democratic Underground is identified by the current registrar, Dotster, Inc. ("Dotster"), as the registrant for the Internet domain found at democraticunderground.com (the "Democratic Underground Domain"). Defendants lack enough knowledge to admit or deny the remaining allegations of paragraph 5 of the Complaint and therefore deny the allegations.

6. Defendants deny that Democratic Underground is identified by Dotster as an administrative contact and technical contact for the Democratic Underground Domain. Defendants lack enough knowledge to admit or deny the remaining allegations of paragraph 6 of the Complaint and therefore deny the allegations.

7.      Defendants admit that Mr. Allen is identified by Dotster as an administrative contact and technical contact for the Democratic Underground Domain.  Defendants lack enough knowledge to admit or deny the remaining allegations of paragraph 7 of the Complaint and therefore deny the allegations.

8.      Defendants admit that Mr. Allen is the owner of Democratic Underground, and that Mr. Allen is identified as such on the Democratic Underground Domain.  Defendants lack enough knowledge to admit or deny the remaining allegations of paragraph 8 of the Complaint and therefore deny the allegations.

9.      Defendants admit that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Defendants deny the remaining allegations of paragraph 9 of the Complaint.

10.     Defendants lack enough information to admit or deny the allegations of paragraph 10 of the Complaint and therefore deny the allegations.

11.     Defendants admit that the Work in Exhibit 2 states "Copyright © Las Vegas Review-Journal."  Defendants lack enough information to admit or deny the remaining allegations of paragraph 11 of the Complaint and therefore deny the allegations.

12.     Defendants deny the allegations of paragraph 12 of the Complaint.

13.     Defendants deny the allegations of paragraph 13 of the Complaint.

14.     Defendants deny the allegations of paragraph 14 of the Complaint.

15.     Defendants admit that the subject matter of the Work includes the candidacy of Sharron Angle for the Republican nomination for United State Senator for Nevada, support for Ms. Angle by members of a conservative movement called the "Tea Party," and the effect of such support on the viability of Ms. Angle's candidacy as reflected in polling data.  Defendants deny the remaining allegations of paragraph 15 of the Complaint.

16.     Defendants deny the allegations of paragraph 16 of the Complaint.

17.     Defendants admit that the Work was and is of specific interest to Nevada residents. Defendants deny the remaining allegations of paragraph 17 of the Complaint.

18.     Defendants deny the allegations of paragraph 18 of the Complaint.

19.     Defendants deny the allegations of paragraph 19 of the Complaint.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

20.     Defendants deny the allegations of paragraph 20 of the Complaint.

21.     Defendants deny the allegations of paragraph 21 of the Complaint.

22.     Defendants deny the allegations of paragraph 22 of the Complaint.

23.     Defendants deny the allegations of paragraph 23 of the Complaint.

24.     Defendants deny the allegations of paragraph 24 of the Complaint.

25.     Defendants deny the allegations of paragraph 25 of the Complaint.

26.     Defendants deny the allegations of paragraph 26 of the Complaint.

27.     Defendants admit that the expression embodied in the Work constitutes copyrightable subject matter.  Defendants deny the remaining allegations of paragraph 27 of the Complaint

28.     Defendants lack enough information to admit or deny the allegations of paragraph 28 of the Complaint and therefore deny the allegations.

29.     Defendants lack enough information to admit or deny the allegations of paragraph 29 of the Complaint and therefore deny the allegations.

30.     Defendants lack enough information to admit or deny the allegations of paragraph 30 of the Complaint and therefore deny the allegations.

31.     Defendants deny the allegations of paragraph 31 of the Complaint.

32.     Defendants admit that they never needed to seek permission to use the Work. Defendants deny the remaining allegations of paragraph 32 of the Complaint.

33.     Defendants deny the allegations of paragraph 33 of the Complaint.

**COUNT I**

34.     Defendants here incorporate by reference paragraphs 1 through 33 above.

35.     Defendants deny the allegations of paragraph 35 of the Complaint.

36.     Defendants deny the allegations of paragraph 36 of the Complaint.

37.     Defendants deny the allegations of paragraph 37 of the Complaint.

38.     Defendants deny the allegations of paragraph 38 of the Complaint.

39.     Defendants deny the allegations of paragraph 39 of the Complaint.

40.     Defendants deny the allegations of paragraph 40 of the Complaint.

41.     Defendants deny the allegations of paragraph 41 of the Complaint.

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5802**

42.     Defendants deny the allegations of paragraph 42 of the Complaint.

43.     Defendants deny the allegations of paragraph 43 of the Complaint.

44.     Defendants deny the allegations of paragraph 44 of the Complaint.

45.     Defendants deny the allegations of paragraph 45 of the Complaint.

46.     Defendants deny the allegations of paragraph 46 of the Complaint.

**DEFENSES**

Defendants assert the following defenses, without regard to whether they are "affirmative" defenses or matters as to which the Plaintiff has the burden of proof.

1.     Plaintiff's Complaint, and each cause of action within it, fails to state a cause of action.

2.     Process has been insufficient.

3.     Service of process has been insufficient.

4.     This court lacks personal jurisdiction over Defendants.

5.     This court is not a proper venue for this action.

6.     Plaintiff's claims are barred by its failure to join indispensable parties.

7.     Plaintiff's claims are barred by the doctrine of fair use.

8.     Plaintiff's claims are barred by the First Amendment to the United States Constitution.

9.     Plaintiff's claims are barred by consent, waiver, acquiescence, license, and estoppel.

10.     Plaintiff's claims are barred by its failure to mitigate damages.

11.     Plaintiff's claims are barred by the equitable doctrine that the law does not concern itself with trivial matters (commonly known as de minimis non curat lex).

12.     Plaintiff's claims are barred by laches.

13.     Plaintiff's claims are barred by the doctrine of unclean hands.

14.     Plaintiff's claims are barred to the extent any persons, based on whose behavior Plaintiff seeks to hold Defendants liable, are innocent infringers.

15.     Plaintiff's claims are barred due to copyright misuse.

16.     Plaintiff's claims are barred to the extent it has caused fraud upon the Copyright

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

5

Office.

17.     Plaintiff's claims are barred to the extent it has forfeited or abandoned copyright.

18.     Plaintiff's claims are barred because Plaintiff is engaging in barratry, champerty, and maintenance.

19.     Plaintiff's claims for statutory damages are barred or limited by the United States Constitution.

20.     Plaintiff's claims are barred because Plaintiff lacks standing.

## COUNTERCLAIM

Defendant Democratic Underground brings this Counterclaim against Plaintiff and Counterdefendant Righthaven LLC ("Righthaven") and Counterdefendant Stephens Media LLC ("Stephens Media").

## JURISDICTION

1.     The Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

## INTRODUCTION

2.     This case is a particularly abusive instance of a broad and aggressive strategy by Stephens Media, working in conjunction with its "little friend" Righthaven as its front and sham representative, to seek windfall recoveries of statutory damages and to exact nuisance settlements by challenging a fair use of an excerpt of an article that Stephens Media makes freely available on the Internet, and which it encourages its users to "Share & Save" at least 19 different ways.

## PARTIES

3.     Stephens Media is the publisher of the Las Vegas Review-Journal ("LVRJ").

4.     Righthaven claims a copyright, by assignment from Stephens Media, in the news article underlying this action shown in Exhibit 2 to the Complaint (the "News Article").  Righthaven asserts that Stephens Media was the "author" of the News Article as a work made for hire.

5.     Counterclaimant believes and therefore alleges that Stephens Media has not fully assigned to Righthaven all rights in the copyright, and retains some copyright rights, in the News Article.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

6.     Righthaven's counsel in this case identify themselves in the caption as employed by or affiliated with Plaintiff Righthaven LLC.  On August 26, 2010, after the filing of this lawsuit, Plaintiff's lead counsel Steven A. Gibson filed a notice of firm name change in case no. 2:09-cv-02045-RLH-LRL, *Stephens Media LLC v. US Commerce Association et al.*, to reflect a change of name of his law firm from Gibson Lowry Burriss LLP (counsel for Stephens Media LLC) to Dickinson Wright PLLC, with no change in the firm's address.  The address in that filing is a different address from the address Righthaven's counsel used for their identification with Righthaven LLC in this lawsuit.  In this litigation, Mr. Gibson uses as part of his email address as counsel a "righthaven.com" domain, whereas in other current litigation he uses as part of his email address a "dickinsonwright.com" domain.

7.     Counterclaimant believes and therefore alleges that Mr. Gibson's association with Righthaven as counsel in this case is in his capacity as an employee or corporate representative of Righthaven and not as "outside" counsel.

## PLAINTIFF'S BUSINESS PLAN OF WINDFALL DEMANDS AND NUISANCE SETTLEMENTS

8.     Steven Gibson formed Righthaven in March 2010 for the express purpose of filing lawsuits for copyright infringement.

9.     Counterclaimant believes and therefore alleges that the name "Righthaven" connotes that the business of Righthaven is to serve as a haven for copyright rights of Stephens Media.

10.     Counterclaimant believes and therefore alleges that a principal aspect of Righthaven's business model is to file copyright infringement lawsuits in the hopes of intimidating defendants into quickly settling for amounts in the thousands of dollars.

11.     Counterclaimant believes and therefore alleges that, as of the filing of this Answer and Counterclaim, Righthaven has not engaged in the business of licensing copyright rights other than in the context of litigation.

12.     Counterclaimant believes and therefore alleges that, as of the filing of this Answer and Counterclaim, Righthaven has filed at least 135 lawsuits to enforce copyrights it has acquired.

13.     Counterclaimant believes and therefore alleges that at no time does Righthaven, in

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

any manner, inform any defendant of allegedly infringing material on the defendant's website before filing suit against that defendant.

14.     Counterclaimant believes and therefore alleges that at no time does Righthaven ever use the provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512, to notify any defendant of claimed infringements on the defendant's website before filing suit.

15.     Counterclaimant believes and therefore alleges that Righthaven's business practice, including in this case, is to search the Internet for excerpts of news articles originally published by the *Las Vegas Review-Journal* newspaper ("LVRJ").

16.     Counterclaimant believes and therefore alleges that, on multiple occasions, after finding such an excerpt, Righthaven has obtained the relevant copyright from LVRJ, registered the copyright, and then filed suit for infringement of the copyright.

17.     Righthaven has already sued numerous noncommercial bloggers, such as Allegra Wong; individuals who have been a subject of LVRJ stories, such as Anthony Curtis; political advocacy groups such as Citizens for Responsibility and Ethics in Washington, Inc.; political parties, such as the Democratic Party of Nevada; and political candidates, such as Sharron Angle.

18.     Counterclaimant believes and therefore alleges that Righthaven is already in the process of preparing scores more of these copyright infringement lawsuits.

19.     Counterclaimant believes and therefore alleges that Righthaven's business plan is to expand this pattern by obtaining more copyright rights in newspaper articles from other newspapers and filing even more lawsuits.

**PLAINTIFF RIGHTHAVEN WORKS IN CONJUNCTION WITH STEPHENS MEDIA**

20.     Counterclaimant believes and therefore alleges that LVRJ or personnel affiliated with LVRJ is acting in concert with Righthaven in order to propagate these lawsuits.

21.     Sherman Frederick is the President and CEO of Stephens Media LLC ("Stephens Media").

22.     Counterclaimant believes and therefore alleges that Stephens Media is the parent company of the LVRJ and the publisher of the LVRJ.

23.     Mr. Frederick and Stephens Media grubstaked Righthaven by supplying Righthaven

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  with funds in return for a promised share of profits.

2      24.     Counterclaimant believes and therefore alleges that Mr. Frederick and/or Stephens

3  Media provided the initial funding for Righthaven.

4      25.     Counterclaimant believes and therefore alleges that in exchange for copyright rights

5  in individual news articles, Stephens Media receives from Righthaven a share of any settlement or

6  recovery related to preparing and filing copyright lawsuits.

7      26.     Counterclaimant believes and therefore alleges that, in exchange for copyright rights

8  in individual news articles, Stephens Media receives from Righthaven a share of income derived

9  from legal services related to preparing and filing copyright lawsuits.

10     27.     Counterclaimant believes and therefore alleges that SI Content Monitor LLC and Net

11  Sortie LLC jointly own Righthaven.

12     28.     Counterclaimant believes and therefore alleges that members of Warren Stephens'

13  family own SI Content Monitor LLC, at least in part, and that members of the Stephens family also

14  hold an ownership interest in Stephens Media.

15     29.     Counterclaimant believes and therefore alleges that SF Holding Corp. and/or

16  Stephens Holding Company manage Stephens Media.

17     30.     Counterclaimant believes and therefore alleges that Jackson Farrow is the Secretary

18  of SF Holding Corp. and Stephens Holding Company.

19     31.     Counterclaimant believes and therefore alleges that Jackson Farrow is the

20  incorporator of SI Content Monitor LLC.

21     32.     Counterclaimant believes and therefore alleges that Steven Gibson, lead counsel for

22  Righthaven, owns, at least in part, Net Sortie LLC.

23     33.     Stephens Media has published a manifesto by Sherman Frederick, the publisher of the

24  LVRJ, stating "we've gotten tough with content stealers by using a company called Righthaven,

25  which has developed software to effectively identify and sue copyright infringers." In that manifesto,

26  Mr. Frederick warned:  "don't steal our content.  Or, I promise you, you will meet my little friend

27  called Righthaven."

28     34.     Counterclaimant believes and therefore alleges that Stephens Media has not registered

**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802

1  any copyrights in its own name as a copyright owner as of the filing of this Answer and

2  Counterclaim.

3       35.    Counterclaimant believes and therefore alleges that Stephens Media has not sued to

4  enforce any copyrights in its own name as of the filing of this Answer and Counterclaim.

5       36.    Counterclaimant believes and therefore alleges that Righthaven has not published any

6  works with a copyright notice identifying itself as copyright owner of the published work.

7       37.    Counterclaimant believes and therefore alleges that Righthaven has not sued to

8  enforce any copyrights other than copyrights in works in which it claimed the initial author was

9  Stephens Media.

10      38.    Counterclaimant believes and therefore alleges that the assignment of copyright from

11 Stephens Media to Righthaven underlying the claims in this case is a sham.

12      39.    Counterclaimant believes and therefore alleges that Stephens Media and Righthaven

13 were not adverse parties with respect to negotiations relating to the alleged assignment of copyright

14 underlying this litigation.

15      40.    Counterclaimant believes and therefore alleges that Stephens Media retains some

16 legal or equitable interest in some copyright rights in the News Article.

17      41.    Counterclaimant believes and therefore alleges that Righthaven is acting as agent of

18 Stephens Media in connection with the claims Righthaven asserts in this case.

19      42.    Counterclaimant believes and therefore alleges that Stephens Media is an alter ego of

20 Righthaven for the purposes of this case and that any separation between them for the purposes of

21 this lawsuit is a sham.

22      43.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and

23 Counterclaim Stephens Media and Righthaven had not entered into a common interest agreement

24 with respect to this litigation.

25                **THE DEMOCRATIC UNDERGROUND WEBSITE AND FORUMS**

26      44.    David Allen owns and operates Democratic Underground.

27      45.    Democratic Underground maintains a website devoted to disseminating and

28 discussing political news and progressive policies (the "Democratic Underground Website").  The

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

domain name for the Democratic Underground Website is democraticunderground.com.

46.     The Democratic Underground Website launched in January 20, 2001, in response to the result in the 2000 presidential election.  It consists primarily of user-generated content in the form of postings by readers in the forums. The forums contain core political speech by over one hundred thousand users.

47.     As of the filing of this Answer and Counterclaim, there were more than 162 thousand registered users of and more than 51 million posts on the Democratic Underground Website. These users have made thousands of posts per day to the forums of the Democratic Underground Website.

48.     Counterclaimant does not pre-screen the user-generated content in posts made by users.

49.     Counterclaimant cannot provide its service if it manually pre-screens the user-generated content in posts made by users.

50.     Once a user makes a post, it is added through an automated process to a database on the server that hosts the Democratic Underground Website.  When a reader loads the web address of a particular post (such as by clicking a link on a browser), a request is automatically sent to the database and the software will automatically retrieve the contents of that post and send them to the reader through the Internet.

51.     The automatic copying, storage, and transmission of posts are instigated by users of Democratic Underground.

52.     Mr. Allen does not and cannot read every single post made by users on the Democratic Underground Website.

53.     Democratic Underground and its moderators do not and cannot read every single post made by users on the Democratic Underground Website.

54.     Democratic Underground proactively works against copyright infringement by advising users to post only short excerpts and to provide a link to the original article when posting about a news article.  On the Latest Breaking News forum, where the post in question was located, users must identify the source and provide a link to the news article they post about in the form they fill out to post.  In addition, Democratic Underground also encourages registered users to notify

moderators when a post contains an entire article by clicking on an "Alert" link that is on every post. The moderator will edit the post to contain only a short excerpt or delete the post.

## CONDUCT OF STEPHENS MEDIA AND RIGHTHAVEN

55.     A website for the LVRJ is at www.lvrj.com.

56.     That website bears a copyright notice in the name of Stephens Media LLC.

57.     The LVRJ website does not, on its "home page" (the page rendered by www.lvrj.com), provide terms of service or provide an obvious link to terms of service.

58.     That website, on its home page, provides a link entitled "Privacy Statement," which leads directly to the page www.stephensmedia.com/privacy-statement/.   On that page Stephens Media states "we do not and cannot monitor materials transmitted by users or third parties into bulletin boards, chat rooms, and the like."

59.     Counterclaimant believes and therefore alleges that that statement is true.

60.     Counterclaimant believes and therefore alleges that Stephens Media makes that statement because it cannot, as a practical matter, monitor materials transmitted by users or third parties into bulletin boards, chat rooms, and the like.

61.     Counterclaimant believes and therefore alleges that Stephens Media does not screen all materials transmitted by users or third parties into bulletin boards, chat rooms, and the like before they appear.

62.     Counterclaimant believes and therefore alleges that Stephens Media has removed some materials transmitted by users or third parties into bulletin boards, chat rooms, and the like because they were offensive.

63.     Stephens Media states in its "Privacy Statement" that it reserves the right to remove any content posted on its site and to terminate any user's access to Stephens Media at any time for any reason. The Privacy Statement is located at www.stephensmedia.com/privacy-statement/. Exhibit A is a copy of it.

64.     Stephens Media provides "Review-Journal eForum Message Boards," which allow its website users to comment on the news.  Stephens Media asserts these message boards are subject to the comment policy set forth at http://www.lvrj.com/home/6729126.html.  Exhibit B is a copy of that

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

comment policy.

65.     In the comment policy, Stephens Media, while stating that users must agree not to post copyrighted content unless they own the copyright or have consent from the owner of the copyrighted material, goes on expressly to state that it allows users to post copyrighted content, not restricted to Stephens Media content, and links to copyrighted content, as sources during discussion on the message boards.  It merely imposes a one-paragraph limitation on the copyrighted content posted pursuant to that provision.  That one-paragraph limitation applies no matter how long the original copyrighted content is, even if the original copyrighted content is only one paragraph long.

66.     In the comment policy, Stephens Media states, in connection with its message boards, that it is not responsible for the content of the message boards that it maintains.  It encourages persons who feel that a posted message is objectionable to notify an administrator of the forum immediately.

67.     In the comment policy, Stephens Media announces on that page that it is impossible for it to confirm the validity of posts on its eForums.

68.     In the comment policy, Stephens Media also announces that removing objectionable content from its forums is a manual process and that Stephens Media may not be able to remove or edit particular messages immediately.

69.     The LVRJ maintains, on its website, comments and posts of its readers in connection with the articles it displays.

70.     Counterclaimant believes and therefore alleges that Stephens Media has not, at the time of the filing of this Answer and Counterclaim, properly filed a designation of agent to receive notification of copyright infringement as provided under 17 U.S.C. § 512.

71.     Counterclaimant believes and therefore alleges that the LVRJ has not, at the time of the filing of this Answer and Counterclaim, properly filed a designation of agent to receive notification of copyright infringement as provided under 17 U.S.C. § 512.

72.     Counterclaimant believes and therefore alleges that employees of Stephens Media have cut and pasted excerpts of copyrighted materials to which Stephens Media has no license or copyright rights on multiple occasions.

73.     Counterclaimant believes and therefore alleges that Stephens Media has received reports that employees of Stephens Media have cut and pasted excerpts of copyrighted materials to which Stephens Media has no license or copyright rights on multiple occasions.

**NO INFRINGEMENT**

74.     Counterdefendants assert that Defendants have infringed the copyright in the News Article, which bore the title "Tea Party power fuels Angle," and the byline of Laura Myers, a copy of which is Exhibit 2 to the Complaint.

75.     Defendants do not sell, transfer ownership of, rent, lend, or lease to the public any material objects containing the News Article or an excerpt of the News Article.

76.     Defendants do not sell, transfer ownership of, rent, lend, or lease to the public any transmissions of the News Article or an excerpt of the News Article.

77.     Counterclaimant believes and therefore alleges that Righthaven has no evidence that Defendants sell, transfer ownership of, rent, lend, or lease to the public any transmissions of or material objects containing the News Article or an excerpt of the News Article.

78.     Defendants have not engaged in copyright infringement of the News Article.

79.     Defendants have not willfully engaged in copyright infringement of the News Article.

80.     Defendants are not responsible for the alleged infringement by any third party.

81.     Righthaven is aware of the decision denying a preliminary injunction motion by the United States District Court for the Southern District of California in *Perfect 10, Inc. v. RapidShare AG*, civil action no. 09-CV-2596 H (WMC) (S.D. Cal. filed May 18, 2010).

82.     Righthaven is aware of the decision of the United States District Court for the Northern District of California in *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995).

**LICENSE (EXPRESS AND IMPLIED), CONSENT, WAIVER, AND ACQUIESCENCE**

83.     The LVRJ promotes a "Share & Save" feature for articles on its website.

84.     The LVRJ states on its website that "Share & Save allows you to bookmark news articles for future reference and share news articles with friends and web-based communities like digg and MySpace. Each icon represents a community or bookmarking website (*registration may be*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*required*). Roll over each icon to reveal the name of the website. Simply click the icon to submit the news article and in a new window follow the directions provided by the community or bookmarking website in order to share and/or save the news article."

85.     The LVRJ website offers and invites its users to "Share & Save" all of its articles through third parties including Newsvine, Digg, Technorati, Reddit, StumbleUpon, Del.icio.us, Slashdot, Propeller, Mixx, Furl, Twitter, Myspace, Facebook, Google bookmark, Yahoo! Bookmark, Microsoft Live favorites, Ask bookmark, and myAOL favorites.

86.     Counterclaimant believes and therefore alleges that Righthaven or its personnel are aware that the LVRJ promotes a "Share & Save" feature for articles on its website.

87.     For each article, the LVRJ website encourages and invites its users to "Email This."

88.     For each article, the LVRJ website encourages and invites its users to "Save This."

89.     For each article, the LVRJ website encourages and invites its users to "Print This."

90.     When a user clicks on "Print This," a new window opens containing the text of the full article and no advertising.  In this window is a button labeled "Click to Print." When a user clicks this button, it launches the user's printer options so that the user may print a physical copy of the article.

91.     For each article, the LVRJ website encourages and invites the public to subscribe to its "RSS Feeds."

92.     Exhibit C is a copy of how the News Article appeared on the LVRJ website on September 14, 2010. Counterclaimant believes, and therefore alleges, that, as of the filing of this Answer and Counterclaim, Exhibit C accurately depicts the "Share & Save," "Email This," "Save This," "Print This," and "RSS Feeds" features as they have appeared since May 13, 2010.

93.     The LVRJ website has a robots.txt file located at www.lvrj.com/robots.txt. Exhibit D is a copy of that file.

94.     Web site owners can also communicate with search engines' robots by placing a "robots.txt" file on their Web site. For example, if the Web site owner does not want robots to crawl the owner's Web site, the owner can create a robots.txt file with the following text: "User-agent: * Disallow: /". The above text tells the robots that they should not crawl the owner's Web site.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

95.     Stephens Media created the robots.txt file for the LVRJ site.

96.     As of the filing of this Answer and Counterclaim, the LVRJ robots.txt stated "User-agent: * Disallow: /search".

97.     The statement "User-agent: * Disallow: /search" permits crawling of all pages on the LVRJ website except those beginning lvrj.com/search.

98.     Stephens Media set the permissions within this file to allow all robots to visit and index all of the pages on the site except those beginning lvrj.com/search.

99.     Stephens Media included three sitemaps in this file.  Sitemaps are XML[1] files that provide the web address of pages on the LVRJ website that the website is expressly asking robots to visit, along with additional information such as page title and date. One of the sitemaps is the News Sitemap, located at www.lvrj.com/templates/news-sitemap.xml.

100.    Counterclaimant believes and therefore alleges that it is the usual practice of Stephens Media to include new news articles in the News Sitemap.

101.    Counterclaimant believes and therefore alleges that on or about May 13, 2010, the URL of the LVRJ page containing the full News Article was included in the News Sitemap.

<div align="center">

**FAIR USE**

</div>

102.    Pursuant to 17 U.S.C. sections 106 and 107, a fair use is not an infringement of the rights of a copyright holder.

103.    Legal evaluation is required to determine whether a reproduction or a work in copies; preparation of a derivative work; distribution of a copy to the public by sale or other transfer of ownership, or by rental, lease, or lending; or public display a work is a "fair use" within the meaning of section 107 of the Copyright Act.

104.    Righthaven is aware of the decisions denying a motion to dismiss and granting a summary judgment motion by the United States District Court for the Northern District of California in *Lenz v. Universal Music Corp.*, published at 572 F. Supp. 2d 1150 (N.D. Cal. 2008) and filed on Feb. 25, 2010 as docket number 250 in civil action no. C 07-3783 JF.

105.    Counterclaimant believes and therefore alleges that sometime in July 2010,

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

---

[1] Extensible Markup Language (XML) is a set of rules for encoding documents in machine-readable form.  *See* en.wikipedia.org/wiki/XML

Righthaven searched the Internet for the phrase "Tea Party power fuels Angle" in order to find copies of an article by that title from the LVRJ.

106.    Counterclaimant believes and therefore alleges that, using such a search, Righthaven found a five- sentence excerpt of a news article entitled "Tea Party power fuels Angle" in a post on the forums of the Democratic Underground Website. A copy of that post is Exhibit 3 to the Complaint.

107.    The News Article reports on polling data concerning the support for the various candidates for the Republican nomination for United States Senator for Nevada and support for Sharron Angle's candidacy among self-identified members of the conservative "Tea Party" movement.

108.    The content of the News Article is predominantly informational, factual or news.

109.    The News Article contains information concerning the future of nationwide policies, such as health care policy and taxes.  The News Article contains information that is of concern to persons nationwide.

110.    The News Article at issue, exclusive of headline, byline, copyright notice, and polling data, is more than 50 sentences long.

111.    The excerpt of the News Article was posted to the Democratic Underground Website on May 13, 2010 by a user posting under the pseudonym of "pampango."

112.    Three users replied to the post, commenting on the subjects in the News Article.

113.    The five-sentence excerpt does not substitute for the full article.

114.    In *Righthaven LLC v. Realty One Group, Inc.,* 2:10-cv-01036-LRH-PAL, Righthaven's counsel conceded in its Opposition to Defendant's Motion to Dismiss (document 12) that an excerpt consisting of the first two paragraphs of the news article in that case would have been a fair use.

115.    The first two paragraphs of the news article in that case contained three sentences, and the article as a whole contained 28 sentences.

116.    Three sentences out of 28 are more than ten percent, whereas the excerpt at issue in this case was less than ten percent of the News Article.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

117.   "pampango" is not an agent or employee of Mr. Allen or Democratic Underground.

118.   Mr. Allen did not make the post contained in Exhibit 3 to the Complaint, and has never posted under the pseudonym "pampango."

119.   Counterclaimant believes and therefore alleges that "pampango" posted the excerpt to draw attention to and foster discussion of important political news.

120.   In the post on the Democratic Underground Website at issue, the five sentences accompanying the link to the News Article on LVRJ's website provided context for the link to the LVRJ website.

121.   In the post on the Democratic Underground Website at issue, the five sentences accompanying the link to the News Article on LVRJ's website served to stimulate interest in the article displayed on the LVRJ website.

122.   Counterclaimant believes and therefore alleges that "pampango" received no financial benefit of any kind in posting the excerpt.

123.   In posting the excerpt and the link, "pampango" was attracting attention to matters of political interest.

124.   In posting the excerpt and the link, "pampango" was attracting attention to the LVRJ.

125.   In posting the excerpt, "pampango" made a fair use of the News Article.

**LACK OF HARM AND THE TRIVIALITY OF THE CLAIM (*DE MINIMIS NON CURAT LEX*)**

126.   Counterclaimant believes and therefore alleges that Righthaven did not acquire a copyright interest in the News Article until July 9, 2010, nearly two months after the posting.

127.   Counterclaimant believes and therefore alleges that Righthaven acquired a copyright interest in the News Article for the sole purpose of pursuing this litigation, and not because Righthaven wished itself to republish the News Article or to license copyright rights in the News Article commercially in a non-litigation context.

128.   Before Righthaven acquired a copyright interest in the News Article, Righthaven had no information or evidence suggesting that Defendants would refuse or fail to remove the News Article from the Democratic Underground Website upon Stephens Media's or Righthaven's request.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

129.    Before transferring to Righthaven a copyright interest in the News Article, Stephens Media had no information or evidence suggesting that Defendants would refuse or fail to remove the News Article from the Democratic Underground Website upon Stephens Media's or Righthaven's request.

130.    The post of the excerpt on the Democratic Underground Website credited the LVRJ and linked to the full article, which was available without charge for access on the LVRJ website.

131.    As of the filing of this Answer and Counterclaim, more than a month after filing suit, the LVRJ still displayed, without charge to the reader, a copy of the News Article on its website at www.lvrj.com/news/tea-party-power-fuels-angle-93662969.html.

132.    As of the filing of this Answer and Counterclaim, the LVRJ displayed a copy of the News Article on its website at www.lvrj.com/news/tea-party-power-fuels-angle-93662969.html with a copyright notice as follows:  "Copyright © Las Vegas Review-Journal."

133.    As of the filing of this Answer and Counterclaim, that copyright notice was false.

134.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven had granted a license to Stephens Media to maintain and display the News Article on its website.

135.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven had granted permission to Stephens Media to maintain and display the News Article on its website.

136.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven had no objection to Stephens Media maintaining and displaying the News Article on its website.

137.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven knew that Stephens Media maintained and displayed the News Article on its website.

138.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven had granted Stephens Media the right to sublicense certain rights in the News Article to users of its website.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

139.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven had granted permission to Stephens Media to allow or authorize users to save, share, email, or print, in part or in whole, the News Article.

140.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven had no objection to Stephens Media allowing users to save, share, email, or print, in part or in whole, the News Article.

141.    Counterclaimant believes and therefore alleges that as of the filing of this Answer and Counterclaim, Righthaven knew that Stephens Media allowed users to save, share, email, or print, in part or in whole, the News Article.

142.    Counterclaimant believes and therefore alleges that Righthaven does not reproduce in copies; make derivative works of; distribute copies to the public by sale or other transfer of ownership, or by rental, lease, or lending; or publicly display the News Article.

143.    Counterclaimant believes and therefore alleges that Righthaven does not distribute copies to the public by sale or other transfer of ownership, or by rental, lease, or lending, or publicly display, any of the copyrighted works it owns.

144.    Counterclaimant believes and therefore alleges that Righthaven has no specific plan to distribute copies to the public by sale or other transfer of ownership, or by rental, lease, or lending, or to display publicly any of the copyrighted works it owns.

145.    Counterclaimant believes and therefore alleges that Righthaven has not attempted to sell or license copies of the News Article.

146.    Counterclaimant believes and therefore alleges that Righthaven has no specific plan to sell or license copies of the News Article.

147.    Counterclaimant believes and therefore alleges that Righthaven has never exploited the copyright in the News Article for financial gain apart from litigation.

148.    Counterclaimant believes and therefore alleges that Righthaven has no specific plans to exploit the copyright in the News Article for financial gain apart from litigation.

149.    The publisher of the LVRJ has quoted with approval a letter by a columnist of that paper indicating that he allows "WEEKS to laboriously seek 'permissions' to quote even two lines

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

from a song lyric."

150.    Counterclaimant believes and therefore alleges that Righthaven does not have a regular business model of deriving revenue from licensing copyright rights with respect to any information or content other than in connection with litigation, if at all.

151.    Counterclaimant believes and therefore alleges that the copyright at issue has no monetary value apart from these lawsuits.

152.    Counterclaimant believes and therefore alleges that Righthaven's sole revenue is settlements from the copyright infringement cases it has filed.

153.    Counterclaimant believes and therefore alleges that "pampango" accessed the News Article via the LVRJ website or through some other Internet resource.

154.    Counterclaimant believes and therefore alleges that the posting of the excerpt shown in Exhibit 3 to the Complaint increased traffic to the full News Article on the LVRJ's website.

155.    Counterclaimant believes and therefore alleges that Stephens Media or the LVRJ can and does track "hits" on a page on its website that contains the News Article.

156.    Counterclaimant believes and therefore alleges that Stephens Media or the LVRJ detected "hits" on a page on its website that contained the News Article that resulted from a referral from Democratic Underground.

157.    Counterclaimant believes and therefore alleges that Stephens Media or the LVRJ gained revenue because of "hits" on a page on its website that contained the News Article that resulted from a referral from Democratic Underground.

158.    Counterclaimant believes and therefore alleges that Stephens Media or the LVRJ has presented advertising on a page on its website that contained the News Article, which page was accessed by a reader of the website resulting from a referral from Democratic Underground.

159.    Counterclaimant believes and therefore alleges that Stephens Media or the LVRJ has charged advertisers for advertising impressions on a page on its website that contained the News Article, which page was accessed by a reader of the website resulting from a referral from Democratic Underground.

**FAILURE TO MITIGATE DAMAGES**

160.    Before the filing of this suit, Mr. Allen was not even aware that the excerpt had been posted to the forum of the Democratic Underground Website.

161.    Before filing this suit, Counterdefendants and their agents never contacted Democratic Underground or Mr. Allen about any alleged copyright infringement.

162.    Counterclaimant believes and therefore alleges that, before filing suit, Counterdefendants and their agents did not even attempt to contact Democratic Underground or Mr. Allen.

163.    Before filing suit, Counterdefendants and their agents never provided notice to Defendants that it believed there was infringing material on the Democratic Underground Website.

164.    Counterclaimant believes and therefore alleges that, other than by preparing and engaging in this litigation, Righthaven and its agents did not take any action to mitigate possible damages caused by any infringement alleged in this case.

165.    Counterclaimant believes and therefore alleges that, other than by preparing and engaging in this litigation, the LVRJ did not take any action to mitigate possible damages caused by any infringement alleged in this case.

166.    Counterclaimant believes and therefore alleges that, other than by preparing and engaging in this litigation, Stephens Media did not take any action to mitigate possible damages caused by any infringement alleged in this case.

167.    On or about August 11, 2010, Mr. Allen and Democratic Underground first learned that Righthaven had sued them when Steven Green, a reporter from the *Las Vegas Sun* contacted Mr. Allen to ask for his comment on a lawsuit pending against them by Righthaven.

168.    Democratic Underground promptly took steps to identify the allegedly infringing material at issue and removed it from the Democratic Underground Website before Plaintiff served the Complaint.

169.    As of the date Plaintiff served the Complaint, the allegedly infringing material was no longer available on the Democratic Underground Website.

170.    Democratic Underground received approximately one dollar in advertising revenue

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

attributable to the webpage the post appeared on.

171.    The post on the Democratic Underground Website containing the excerpt and link to the News Article shown in Exhibit 3 to the Complaint was viewed approximately 565 times, including any multiple views by the same person, the views by Plaintiff and its agents, and any views to the comments.

172.    Neither Mr. Allen nor Democratic Underground took any volitional act with regard to posting the excerpt of the News Article shown in Exhibit 3 to the Complaint.

### SEIZURE OF THE DOMAIN NAME IS INAPPROPRIATE

173.    The domain name democraticunderground.com is registered with Dotster, Inc., a domain name registrar that is incorporated and has its primary place of business in Washington State.  Dotster is not a party to this action.

174.    Dotster is not in active concert or participation with any party to this action.

175.    The domain name democraticunderground.com points to a website containing over 51 million posts, only one of which is at issue in this case.

176.    The domain name is unrelated to Plaintiff's claims for copyright infringement.

177.    Counter-defendants are not claiming that the domain name itself is infringing.

178.    Depriving Democratic Underground of its domain name would interfere with the First Amendment rights of Counterclaimant and hundreds of thousands of its readers.

179.    Depriving Democratic Underground of its domain name would not be narrowly tailored to achieve any compelling government interest nor be the least restrictive means of advancing any such interest.

180.    Depriving Democratic Underground of its domain name would interfere with political speech by Defendants and hundreds of thousands of readers.

181.    Depriving Democratic Underground of its domain name would interfere with the public's right to receive information on important political matters.

182.    Depriving Democratic Underground of its domain name would interfere with substantial lawful activity.

183.     Depriving Democratic Underground of its domain name would interfere with

1   substantial noninfringing uses.

2   <center>**FIRST CAUSE OF ACTION**</center>

3   <center>**Declaration of No Copyright Infringement**</center>

4   184.   Counterclaimant incorporates and realleges the paragraphs of the Counterclaim

5   above.

6   185.   Righthaven alleges that Defendants willfully infringed Plaintiff's exclusive rights

7   under 17 U.S.C. §§ 106(1)-(3), and (5).

8   186.   As alleged above, Defendants did not engage in any volitional act of copyright

9   infringement.

10   187.   As alleged above, Defendants did not engage in any act of copyright infringement.

11   188.   As alleged above, the user "pampango" posted a five-sentence excerpt from a 54-

12   sentence news article.

13   189.   Based on the circumstances described above, a use of only five sentences is de

14   minimis.

15   190.   Based on the circumstances described above, the posting of the excerpt from the

16   News Article was a fair use.

17   191.   Based on the circumstances described above, Righthaven failed to mitigate damages.

18   192.   Based on the circumstances described above, Defendants have not infringed

19   Plaintiff's rights under 17 U.S.C. § 106(1).

20   193.   Based on the circumstances described above, Defendants have not infringed

21   Plaintiff's rights under 17 U.S.C. § 106(2).

22   194.   Based on the circumstances described above, Defendants have not infringed

23   Plaintiff's rights under 17 U.S.C. § 106(3).

24   195.   Based on the circumstances described above, Defendants have not infringed

25   Plaintiff's rights under 17 U.S.C. § 106(5).

26   196.   Based on the circumstances described above, Defendants have not infringed

27   Plaintiff's copyright and are entitled to a declaration to that effect.

28

<div style="margin-left:auto; text-align:left;">**Winston & Strawn LLP**
101 California Street
San Francisco, CA 94111-5802</div>

<center>24</center>

**PRAYER FOR RELIEF**

Defendants and the Counterclaimant seek relief as follows:

a.      That the Court enter judgment in favor of Defendants and against Plaintiff and Counterdefendant Righthaven on all causes of action of its Complaint;

b.      That the Court enter judgment in favor of Counterclaimant Democratic Underground and against Counterdefendants Righthaven and Stephens Media on Counterclaimant's Counterclaim;

c.      That the Court award Defendant David Allen and Defendant and Counterclaimant Democratic Underground costs of suit, including attorney's fees; and

d.      That the Court grant such additional relief as is just and equitable.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

**DEMAND FOR JURY TRIAL**

Defendants and Counterclaimant hereby demand a jury trial for all issues triable by jury.

Dated: September 27, 2010

WINSTON & STRAWN LLP

By:  /s/
    ANDREW P. BRIDGES
    CA State Bar Number:  122761 (*pro hac vice*
    petition is in preparation; will comply with LR IA
    10-2 within 45 days)
    J. CALEB DONALDSON
    CA State Bar Number:  257271 (*pro hac vice*
    petition is in preparation; will comply with LR IA
    10-2 within 45 days)
    KATHLEEN LU
    CA State Bar Number:  267032 (*pro hac vice*
    petition is in preparation; will comply with LR IA
    10-2 within 45 days)
    101 California Street, 39th Floor
    San Francisco, CA  94111-5802

ELECTRONIC FRONTIER FOUNDATION
By:  /s/
    KURT OPSAHL
    CA State Bar Number:  191303 (*pro hac vice*)
    Corynne McSherry
    CA State Bar Number:  221504 (*pro hac vice*)
    454 Shotwell Street
    San Francisco, CA 94110

CHAD A. BOWERS, LTD.
By:  /s/
    Chad A. Bowers
    NV State Bar Number:  7283
    3202 W. Charleston Blvd.
    Las Vegas, Nevada 89102

    Attorneys for
    Defendant and Counterclaimant
    DEMOCRATIC UNDERGROUND, LLC and
    Defendant DAVID ALLEN

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

SF:292551.4



# EXHIBIT A



**JOB POSTINGS**

# PRIVACY STATEMENT

Stephens Media LLC. care about your privacy. This privacy policy sets forth the privacy policies of Stephens Media LLC.

We believe that protecting your personally identifiable information, while also offering you a quality experience with Stephens Media LLC., is among our most important tasks.

## Information Sharing and Disclosure

We do not rent, sell, or share your personal information with any third party. We may bring you selected offers from third parties, but all such offers shall be transmitted from Stephens Media LLC., and the third party shall not have access to your personal information. If you have given us your postal address, you may receive mailings with information on products and services from Stephens Media LLC. or third party vendors. If you do not wish to receive such mailings, please email us, write us at the address below or visit us and remove your contact information. If you have given us your telephone number, we will not call you unless to follow up on an order you have placed.

## Gathering Information

We gather information from users of our site in two ways.

First, our Web server recognizes automatically I.P. (Internet Protocol) addresses from users who access the site. Users can, without registering or providing any information, visit a pages or pages up to a specified limit, which we may change from time to time.

Second, we may require users to voluntarily register in order to access features of the site, become members, to request certain features, to request subscriptions or to make purchases, such as editorial or other archives. Users may also volunteer information when they participate in contest and sweepstakes, chat rooms and other interactive areas of our site. We use the information we collect to improve the content of our site, customize content, notify users and consumers about updates to our site and provide support for internal operations as well as contact users and consumers for marketing purposes.

We will disclose, when legally required to do so, information about users. We also disclose information to verify or enforce compliance with the policies governing our website and applicable laws or to protect against misuse or unauthorized use of our website or when use may be harmful to Stephens Media LLC.. We may combine information from many users to determine usage patterns.

## Registration

When you register with Stephens Media LLC., we will collect personal information about you. Only individuals may register for Stephens Media LLC.. That information will include things such as your email address, first and last name, postal or physical address, birth date, gender, ZIP code, password prompts or security questions and portions of our site you may be interested in. We may require additional information or payment in the future from users to continue use of Stephens Media LLC.. We do not currently collect or store any credit card information about users but may do so in the future.

## Cookies

We may set cookies on your computers. Cookies are small computer files set on your computer that can store, and sometimes track, information about you. You can, of course, disable cookies on your browser, but you may be required to re-enter information onto our site. Stephens Media LLC. set cookies do not contain personally identifiable information.

## Advertisements

In order to continue to bring you the site for free, we place advertising on our web pages. Some of these advertisements, if clicked upon, may contain cookies, collect information, such as your IP address and domain type. You should consult the privacy policies of any advertisers with respect to their information gathering practices.

We may display targeted advertisements to you based on information you have supplied to us. For

instance, if you have expressed an interest in casino information, we may supply you with advertisements from selected casino marketing partners. They will not, however, receive your personal information unless you volunteer it to such advertisers.

Yahoo! is an ad network partner that displays ads on our Web Site. To improve your ad experience on our Web Site and elsewhere on the Internet, we may send non-personal information to Yahoo! based on your browser's activities, such as type of pages viewed and categories of interests, so that the advertising you see is relevant to you. Yahoo! also may use information regarding its own users to select which ads to display. Click here to learn more about Yahoo!'s ad practices, including how to opt out of using anonymous information to select which ads to show you.

### General
You can edit your account information at any time. From time to time, we may add new areas of interest to our preferences page. You can opt out of receiving any communications from us by updating your information. We may send you information relating to our service, such as announcements of outages or administrative messages, without allowing you to opt out of receiving them. You can delete your account at any time.

### Security
We limit access to your personal information to those employees who we think need to have an access to it in order to provide you with a quality experience on our site.

### Updating
We reserve the right to update this policy at any time, with or without notice.

### Children's Privacy
The Internet is an excellent learning environment for children. Stephens Media LLC. will not knowingly collect any information from children under the age of 13. Children under the age of 13 should not send any information about themselves, including name, address, or email to Stephens Media LLC.. Registrations from children under 13 will be rejected. If we should collect information from children under the age of 13, we will do so only with a verified parental consent before we collect such information. In the event that we learn that we have collected any personal information from a child under the age of 13 without parental consent, we will delete that information from our database as soon as we can.

### Archives
Stephens Media LLC. operates a paid archive system. Currently, archives are provided free of charge for seven (7) days. Thereafter, stories must be purchased from the archive site, which is operated by NewsBank. In purchasing materials from NewsBank, users must provide personal information to the NewsBank database. The information provided to NewsBank is used to complete a credit card transaction with NewsBank, not Stephens Media LLC.. NewsBank requires full name, street address, email address and credit card information.

### Security Systems
While we attempt to provide you with a safe Internet experience, all security systems can be breached by persons engaged in willful or malicious criminal conduct. Therefore, we do not guarantee the security of our database, nor can we provide you with a guarantee that information you send over the Internet will not be intercepted enroute to Stephens Media LLC.. Should our database be breached, we will comply with all applicable state and federal laws with respect to such computer intrusions.

When you register with us, you are agreeing that you have provided accurate and complete information on registration pages. You agree that you have provided us with your correct legal name and address. You also agree to accept responsibility for activities that occur using your account or password. Members of Stephens Media LLC. are responsible for maintaining password confidentiality. You should ensure that others do not use your computer to access the site in your name. We do not and cannot monitor materials transmitted by users or third parties into bulletin boards, chat rooms and the like. In such chat rooms, safe computing should be practiced, including not divulging personal information such as phone numbers or addresses that could be used to locate or identify you. In using chat rooms or bulletin boards on our site, users are prohibited from posting material that is fraudulent, deceptive or misleading. Material that is libelous, defamatory, obscene, offensive, profane or false is also prohibited. Users should not post any material which violates copyright or trademark laws or infringes upon the intellectual property rights of another. Users are not allowed to post material which violates privacy rights of third parties or is in violation of any state, federal or local law. We reserve the right to remove any content posted on our site and to terminate any user's access to Stephens Media LLC. at any time for any reason.

## Promotions, Contests and Link Sites

Contests and promotions that appear on Stephens Media LLC. may be by companies other than Stephens Media LLC. or may be co-sponsored with Stephens Media LLC.. Data collected during contests may be made available to the sponsor. Sponsors may have their own privacy policies and users are urged to consult such privacy policies. Stephens Media LLC. is not responsible for actions of third parties. Some of our online contests are sponsored by third parties. If our contests are sponsored by third parties, we will let you know that and that your entry in the contest may be shared with that third party. If you do not wish to have personal information shared as a result of entering a contest, please do not enter the contest. If you use our Click-ability service to send someone an article, we will utilize your email address, as well as the recipient's email address. Neither your email address nor the recipients email address or any other information contained in the Click-ability service are stored in our systems after the message is transmitted.

## Ownership

Stephens Media LLC. is the sole owner of all information collected on Stephens Media LLC websites. All information, content, services and software displayed on, transmitted through, or used in connection with Stephens Media LLC., is owned or licensed by Stephens Media LLC., a Nevada limited liability company. You may use such content solely for personal, non-commercial use. If you operate a Web site and wish to link to Stephens Media LLC., you may do so provided you agree to delete the link upon request from us. No other use is permitted without prior written permission. We reserve the right, however, as part of a sale of our business, to transfer any information collected at Stephens Media LLC. to an assignee or successor company. Customer information is generally considered a transferred business asset in the sale of a business.

## Links to Third Party Sites

Our site may contain third party content or services from other websites and may be available to you from a link provided by Stephens Media LLC.. Any links or other websites not affiliated with Stephens Media LLC. are not subject to this privacy policy. You should review the terms of use in the privacy policy at any third party's website to determine how that site protects your privacy. Stephens Media LLC. is not responsible for the content of third party websites or actions of any third parties.

We use third-party advertising companies to serve ads when you visit our Web site. These companies may use information (not including your name, address, email address or telephone number) about your visits to this and other Web sites in order to provide advertisements about goods and services of interest to you. If you would like more information about this practice and to know your choices about not having this information used by these companies, click here: (http://networkadvertising.org/consumer/opt_out.asp).

## Contact us

We love to hear from our fans and our critics. If you have any questions about this privacy police, call or write us.

## Postal contact:

Stephens Media LLC,
Attn: Customer Privacy,
P.O. Box 70, Las Vegas, NV 89125
E-mail contact: privacy@stephensmedia.com
Telephone contact: (702) 387-2918

Copyright © Sttephens Media

Copyright © Stephens Media, 1997 - 2010
Stephens Media Privacy Statement

CONTACT US



# EXHIBIT B

# Comment Policy

Article comments are provided by readers and are the sole responsiblity of the authors. The Las Vegas Review-Journal and reviewjournal.com do not review comments before publication nor guarantee their accuracy. By publishing a comment here you agree to the below policy. If you see a comment that violates our policy, please notify the Online staff.

Article commenting is provided so readers can post ideas and comments related to the article. This is not a place to be conversational or a place where personal attacks are allowed. We hold the right to remove any comments that take on a personal nature or that we deem to be bigoted, hateful, or racially offensive.

Spamming and advertising is prohibited. We consider spamming to be any post that is not related to the article and/or contains links that advertise other websites.

We do allow links that are related to this article and provide more information to readers.

You agree, through your use of article commenting, that you will not post any material which is false, defamatory, inaccurate, abusive, vulgar, hateful, harassing, obscene, profane, sexually oriented, threatening, invasive of a person's privacy, or otherwise in violation of ANY law. You also agree not to post any copyrighted material unless you own the copyright or you have consent from the owner of the copyrighted material. We encourage members to post links as sources to support their comments. You may post a link to the copyrighted material and up to one paragraph of quoted material for other users to review. Spam, flooding, advertisements, chain letters, pyramid schemes, and solicitations are all inappropriate.

Note that it is impossible for us to confirm the validity of comments posted. Please remember that we do not actively monitor the posted messages and are not responsible for their content. We do not warrant the accuracy, completeness or usefulness of any information presented. The messages express the views of the author, not necessarily the views of The Las Vegas Review-Journal, reviewjournal.com or Stephens Media, LLC. Anyone who feels that a posted message is objectionable is encouraged to notify Online staff. We maintain the right to remove objectionable content if we determine that removal is necessary. This is a manual process, however, so please realize that we may not be able to remove particular messages immediately.

You remain solely responsible for the content of your messages, and you agree to indemnify and hold harmless this website, and any related companies or websites. We also reserve the right to reveal your identity (or any information we have about you including IP address and your ISP) in the event of a complaint or legal action arising from any information posted by you.

All decisions and determinations will be made by the web editor, and they are final. The Las Vegas Review-Journal and reviewjournal.com maintains the right to revise or update these guidelines at any time without notice.

Close Window



# EXHIBIT C

**Las Vegas** News, Sports, Business, Entertainment and Classifieds

Advertise | Subscribe or Manage your account | E-mail / mobile alerts

# REVIEW-JOURNAL

**LAS VEGAS**

**Tuesday** Sep 14, 2010

Sunny 90°
Weather Forecast

Search



Go

HOME | NEWS | SPORTS | BUSINESS | LIVING | ENTERTAINMENT | TRAVEL | OPINION | OBITUARIES        JOBS   AUTOS   HOMES   CLASSIFIEDS & ADS

News



SAVE THIS | EMAIL THIS | PRINT THIS | MOST POPULAR | RSS FEEDS | POST A COMMENT

May. 13, 2010
Copyright © Las Vegas Review-Journal

## U.S. SENATE RACE: Tea Party power fuels Angle

### Ex-Reno assemblywoman moves up in crowded GOP primary field

By LAURA MYERS

**MORE INFO**
- Tea Party
- Elections
- Opinion Polls



Republican candidate for U.S. Senate Sue Lowden speaks out Wednesday on behalf of local subcontractors. Lowden, a front-runner for the GOP nomination to challenge Democrat Sen. Harry Reid, is losing ground to Republican candidate Sharron Angle, a former assemblywoman. JASON BEAN/LAS VEGAS REVIEW-JOURNAL

LAS VEGAS REVIEW-JOURNAL

Fueled by a burst of support from the Tea Party, Sharron Angle has rocketed into a near dead heat with Sue Lowden in the white-hot U.S. Senate Republican primary, according to a new poll commissioned by the Las Vegas Review-Journal.

Lowden, who had been the Republican front-runner since February, lost support to Angle, the former Reno assemblywoman seen by likely Republican voters as the most conservative candidate in a contest in which three-quarters of Republican voters say they're somewhat or very conservative, the poll showed.

Danny Tarkanian lost ground to Angle, too. She passed him after gaining a bit of political star power and a bunch of financial support from an endorsement by the Tea Party Express, which launched radio and TV ads to help her win the GOP nomination to face U.S. Sen. Harry Reid in the fall.

All three top GOP candidates are capable of beating Reid, according to previous polls that have shown the Democratic Party incumbent in an uphill battle to win a fifth Senate term on Nov. 2.

ADVERTISEMENT

**Most Popular Stories**
- Mayweather's son says he saw boxer assault his mother
- Police: Teen menaced school staff with knife
- Students getting turned away at College of Southern Nevada
- Downtown shop goes to pot
- Aldrin's big cake out of this world
- Berlusconi to young women: Seek rich guys like me
- Disbarred lawyer sought for arrest on theft charges
- Titus slightly increases lead in 3rd Congressional race
- For sports books, 'it's like Christmas'
- Smith Center may just rock and roll

 MULTIMEDIA


There's no need to fear, boocoo assurance is here.





U.S. Senate candidate Sharron Angle, who seeks the Republican nomination to run against Democratic incumbent Harry Reid, speaks at a November GOP candidates forum. A new poll shows Angle in a near dead heat with GOP candidate Sue Lowden. LAS VEGAS REVIEW-JOURNAL FILE

"I'm confident that we'll be able to win the primary and also to defeat Harry Reid," Angle said Wednesday from rural Fallon, where she campaigned door to door, spoke to a group at the convention center and attended a gun supporters event. "These numbers really confirm what we've been fairly certain of all along: that if people heard my conservative message, they would respond."

Sponsored Links

**Mortgage Rates at 3.00%**
$200,000 loan for $771/month. See New Payment - No SSN Rqd. Save Now!

**Treatment For Cancer**
Learn About Available Treatment Options. Search In Your Local Area.

**Mortgage Refi: 4.00% FIXED!**
$250,000 mortgage for $874/mo. Get Free Quotes. No SSN. No Obligation.

Buy a link here

Angle said voters can look at her eight-year record in the Assembly that shows a consistent pattern of opposing taxes and supporting smaller government. Those are two tenets of the Tea Party movement and conservative values in opposition to the Democratic Party's hold on Congress and the White House, government bailouts of industry, and Reid's and President Barack Obama's signature health insurance overhaul.

Lowden said she wasn't worried about the tightening primary race nine days before early voting starts May 22 and three weeks before the June 8 vote.

"We're confident that our lead will hold," Lowden said in an interview in Las Vegas. "We'll have a strong get-out-the-vote effort. You only need one more vote to win, but we'll win by more than that."

According to the Mason-Dixon poll, if the Republican primary were held today: Lowden would win 30 percent of the vote; Angle 25 percent; Tarkanian 22 percent; John Chachas 3 percent; and Chad Christensen 2 percent.

The telephone survey of 500 likely Republican voters in Nevada was taken on Monday and Tuesday and has a margin of error of plus or minus 4.5 percentage points.

In a similar Mason-Dixon survey taken April 5 to 7, Lowden led the crowded field of 12 Republicans with 45 percent support compared with 27 percent for Tarkanian, 5 percent for Angle, 4 percent for Las Vegas Assemblyman Christensen and 3 percent for Chachas, an Ely native and Wall Street investment banker.

"Lowden's loss has been Angle's gain," said Mason-Dixon pollster Brad Coker. "Lowden has been the anointed front-runner for a couple of months, which made her a target for everybody. And Angle got the Tea Party endorsement, and she's the most conservative candidate running."

Angle also has a history "of running strong down the stretch" in close elections, Coker added.

In 2006, Angle was all but counted out in a congressional GOP primary until the last few weeks, and then she narrowly lost to Rep. Dean Heller by fewer than 500 votes. Two years ago, she almost beat state Senate Minority Leader Bill Raggio, R-Reno, one of Nevada's most powerful lawmakers.

"Obviously, Angle still has her homestretch legs," Coker said, although he added that anything can happen in such a competitive race. "I think you have to be conservative and say it's a three-way race. But trend-wise, Angle has jumped out quickly and has the momentum."

The Tea Party Express, the national group that held an anti-Reid protest in the senator's hometown of Searchlight in late March, shook up the race April 15 when it endorsed Angle at a Tax Day news conference in Washington, D.C. The group's political action committee has been raising money for Angle with a goal of $500,000. It already has spent $200,000 for her, including on radio and TV ads.

Meantime, Angle has been stacking up endorsements from more than two dozen conservative groups and people, from Gun Owners of America to "Joe the Plumber."

Angle's name recognition has jumped to 85 percent compared with 67 percent about a month ago. Only 4 percent of GOP primary voters do not know Lowden's name, and only 3 percent do not know Tarkanian, a real estate developer and former basketball star for the University of Nevada, Las Vegas, whose dad is well-known ex-basketball coach Jerry Tarkanian.

The Tarkanian campaign expressed skepticism that Angle had risen so high so fast. Jamie Fisfis, consultant to the campaign, said his tracking polls show Angle moving up to 16 percent support, Lowden dropping to 30 percent and Tarkanian gaining to tie the GOP front-runner in his best showing so far.

"In my mind it's still a two-way race because Angle does not have the name recognition to be ahead of either of the two candidates in contention," Fisfis said.

Lowden blamed part of her recent drop in the polls to attacks from both her GOP foes -- especially Tarkanian -- and Reid, whose campaign has focused on her, criticizing her record as a casino executive who with her husband, Paul Lowden, has owned and managed four hotel-casinos.

The Reid campaign has released records that show problems with health and safety violations at the Lowden properties over the years that resulted in heavy fines and offered details of angry disputes with the unions over medical benefits for their workers.

Tarkanian has criticized Lowden for voting for fees as a lawmaker in the early 1990s and for telling a reporter recently that she understood why some members of Congress voted for the first government bailout during the Bush administration when lawmakers said it was needed to avoid massive business failures and a depression. She since has said she wouldn't have voted for bailouts then or now.

"It's not unexpected that the race would tighten after Harry Reid has spent $8 million going after me," Lowden said Wednesday, referring to how much his campaign has spent. "The Reid campaign and Harry Reid do not want me to come out of this primary, and so they have targeted me."

In the past month, Lowden has been dogged by near daily attacks by the Democratic Party for suggesting people could barter with their doctors for cheaper health care.

She defended her remarks made at a town hall meeting in Mesquite by saying that in the old days, people even used chickens to barter, a comment that prompted video spoofs and late-night talk show jokes about her.

The gaffe hasn't had much effect on Republican primary voters, however, according to the new Mason-Dixon poll, which asked what effect her remarks would have on support for her.

Some 70 percent of those polled said Lowden's bartering remarks would have "no effect" on their voting decision, 15 percent said they would be "less likely" to vote for her, and 12 percent said they would be "more likely" to vote for her. Another 3 percent said they weren't sure.

Lowden said that during her campaign stops in rural Nevada, voters have told her that they're still bartering with doctors to get cheaper medical care in some cases.

"I never said this was my health care policy, but bartering is still happening out there in rural Nevada," Lowden said Wednesday. "Harry Reid is the one who's out of touch if he doesn't know that."

Lowden has been running a primary and general campaign at the same time, which has cost her support among staunch conservatives and Tea Party movement supporters.

According to the new poll, 58 percent said they consider themselves "a supporter of the Tea Party movement." Another 27 percent do not, and 15 percent said they don't know or refused to answer.

"I am a member of the Tea Party movement, as well, and many of my supporters and volunteers are members," said Lowden, who spoke at the Tea Party Express event in Searchlight and has attended many local Tea Party group events as candidates compete for that key slice of the 2010 vote.

"It's not unexpected that Sharron would get their support, but they know I'm one of them, too."

Contact Laura Myers at lmyers@reviewjournal.com or 702-387-2919.

**RELATED TOPICS**   **Share & Save**

Chad Christensen
Danny Tarkanian
Harry Reid
John Chachas
Laura Myers



Sponsored Links

Mason-Dixon poll
primary
Republican
Sharron Angle
Sue Lowden
voters

**Don't Pay Your Bills...**
Until You've Read This. Mom Discovers Secret to Get Out Of Debt FAST!

**Mortgage Rates at 3.00%**
$200,000 loan for $771/month. See New Payment - No SSN Rqd. Save Now!

**AARP® 50+ Auto Insurance**
Over 50? You Could Save an Average $397* On AARP® Auto Ins From The Hartford.

**Mom Makes $4000//Month**
You Won't Believe How This Local Mom Makes $4000/mo. Read More!

**Buy a link here**

## Comments (115)

Share your thoughts on this story. **You are not currently logged in.**
You must be registered to comment. Register | Sign in | Terms and Conditions

Some comments may not display immediately due to an automatic filter. These comments will be reviewed within 24 hours. **Please do not submit a comment more than once.**

Note: Comments made by reporters and editors of the Las Vegas Review-Journal are presented with a yellow background.

Report abuse

**Bob Dobolina** wrote on *May 20, 2010 08:59 PM*:

I think Lowden is out of this. Her poll numbers are down 20 points since she suggested that people should pay their doctors with chickens, then denied that she had ever said it. Saying something dumb is one thing. But lying about it later (especially when you said it on camera) is really stupid.

Report abuse

**Just_Me** wrote on *May 17, 2010 02:30 PM*:

What to do - what do do

Lowden blew the GOP convention - NO
Tarkanian - nothing but daddy's name -NO
Angle - Nice , but dingy -Enough with the California-style property taxes -NO

That leaves ChaChas & Christensen. Chachas' family lives in New York - NO

Chad Christensen gets my vote!

Report abuse

**Brigham** wrote on *May 16, 2010 12:08 PM*:

Reid is the most corrupt of all of them. We don't need anymore of his back door deals, bribes and name calling. He got more money from Wall St. than any of the republicans yet he pointing a finger just like Obama. Reid wants to make the illegals legal for the votes. Then they can take more of our jobs and services.

Reid is nothing but a disgusting despicable crook.

Vote for anyone but Reid!

Report abuse

**Dan Fitzgerald** wrote on *May 14, 2010 06:54 PM*:

Sue Lowden was the GOP chair who delayed, then adjourned the state convention when it became apparent that Ron Paul was going to win delegates to the National Convention. She put John McCain above Nevadans, and ignored the rules when they led to a result she didn't like.

Report abuse

**Wallbanger** wrote on *May 14, 2010 07:10 AM*:

Tea Party Express is made up of RINO's...Republican Party thinks they can co-opt the Tea Party movement to help them elect the same status-quo Oath-Breaking politicians they always have!!

Our military, law enforcement, and ELECTED OFFICIALS need to HONOR THEIR OATH TO THE U.S. CONSTITUTION!!!

oathkeepers.org

Report abuse

**Brigham Young** wrote on *May 14, 2010 07:04 AM*:

Reid, Tark and Lowden have corruption in common, Reid being public enemy #1

Report abuse

**Peter.K** wrote on *May 14, 2010 06:42 AM*:

There are a great number of 48-year-old men that have a lot better resume than Mr. Tarkanian. The problem they have is that they don't have a famous father and, ergo, a recognizable name. Other than his name, Mr. Tarkanian is an unremarkable person. He offers no qualifications for the office which he seeks other than his name. He has pointed-out Sue Lowden's shortcomings and flip-flops and for that Republicans should be grateful but he has really advanced no reason why he is qualified to represent us and no record by which we can measure his steadfastness to the principles he preaches. Accordingly, it appears that Angle is the candidate who measures up to the job as she has a solid record of upholding the constitutions of Nevada and the USA.

Report abuse

**Tark is a Gun Hater** wrote on *May 14, 2010 02:09 AM*:

Danny Tarkanian will take your gun rights.

http://media.washingtontimes.com/media/docs/2009/Dec/16/Nevada_Tarkanian.pdf

http://media.washingtontimes.com/media/audio/2009/12/17/brady.mp3

Report abuse

**Hairy Weed** wrote on *May 13, 2010 08:45 PM*:

Great News, now people need to wake up and support Montandon for Governor as well. NO MORE RINOs. Kenny Guinn was a disaster for Nevada, now his right hand guy Sandoval is running? - No f-ing way.

Report abuse

**Sue is a JOKE!** wrote on *May 13, 2010 08:22 PM*:

Sue LOWden's version of capitalism: Marry a Rich Man!

Read More Comments

SUBSCRIBE NOW

Nevada's largest newspaper now accessible **wherever** you may be

LAS VEGAS
REVIEW-JOURNAL

- Contact the R-J
- Report a news tip/press release
- Privacy Statement

- Subscribe
- Send a letter to the editor
- RSS

- Report a delivery problem
- Print announcement forms
- Twitter

- Put the paper on hold
- Jobs at the R-J
- Facebook

- Advertise with us
- Stephens Media, LLC

Copyright © Las Vegas Review-Journal 1997 - 2010



# EXHIBIT D

```
User-agent: *
Disallow: /search

Sitemap: http://www.lvrj.com/sitemap.xml
Sitemap: http://www.lvrj.com/templates/news-sitemap.xml
Sitemap: http://www.lvrj.com/templates/video-sitemap.xml
```