CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
J. COLBY WILLIAMS, ESQ. (5549)
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540
Email: djc@campbellandwilliams.com
        jcw@campbellandwilliams.com

Attorneys for Counterdefendant
Stephens Media, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.: 2:10-cv-01356-RLH-RHH |
| Plaintiff, | **COUNTERDEFENDANT'S MOTION TO DISMISS OR STRIKE** |
| v. | **and** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual, | **PARTIAL JOINDER TO PLAINTIFF/COUNTERDEFENDANT RIGHTHAVEN LLC'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE AND ADJUDICATION OR DISMISSAL OF COUNTERCLAIM** |
| Defendants. | |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company, | |
| Counterclaimant, | |
| v. | |
| RIGHTHAVEN LLC, a Nevada limited-liability company; and STEPHENS MEDIA LLC, a Nevada limited-liability company, | |
| Counterdefendants. | |

Counterdefendant Stephens Media LLC ("Stephens Media") hereby moves to dismiss the Counterclaim (Docket No. 13-0) filed by Defendant/Counterclaimant Democratic Underground, LLC ("Democratic Underground") pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, Stephens Media moves to strike the Counterclaim leveled against Stephens Media pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Stephens Media also hereby partially joins Plaintiff/Counterdefendant Righthaven LLC's ("Righthaven") Motion for Voluntary Dismissal with Prejudice and Adjudication or Dismissal of Counterclaim (Docket No. 36-0). This motion is based upon the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is a case in which a well-known company, Stephens Media, has been needlessly added as a party to a similarly needless counterclaim, despite its utter disconnection to the pertinent factual and legal issues at issue herein. Stephens Media's involvement with Righthaven, as well as its involvement with this lawsuit, is limited to its role as the assignor of the subject copyright. Stephens Media's involvement with Democratic Underground is virtually non-existent. As a practical matter, the facts clearly demonstrate the impropriety of Democratic Underground's efforts: Stephens Media did not file the original copyright action against Democratic Underground, Stephens Media is not the holder of the copyright, and Stephens Media has done nothing to precipitate the pending Counterclaim.

Democratic Underground lacks standing to bring the pending Counterclaim against Stephens Media based on the simple fact that *no justiciable case or controversy exists between the parties; nor is there any threat of an imminent case or controversy*. Absent the presence of an actual (or sufficiently immediate) dispute involving parties with adverse legal interests, an action for declaratory relief cannot stand. As Stephens Media is not part of Righthaven's

2

infringement claim against Democratic Underground, and Stephens Media is not an agent of Righthaven, no actual case or controversy exists between Stephens Media and Democratic Underground.  Furthermore, as Righthaven, not Stephens Media, owns the exclusive right to seek redress for past, present, and future infringements of the subject copyright, Stephens Media is not the real party in interest and is thus barred from pursing actions of this nature.  Accordingly, Democratic Underground cannot legitimately claim to feel threatened by imminent legal action brought by Stephens Media.

Additionally, the Counterclaim should be stricken, or dismissed for failure to state claim because the judgment sought by Democratic Underground is a mirror image of the relief sought in the original Complaint.  The courts have consistently stricken or dismissed counterclaims which raise the same facts and legal issues as those asserted via affirmative defenses, or counterclaims which merely pursue the opposite effect of the original complaint.  Such repetitious, superfluous claims add nothing to the pleadings and must yield to considerations of practicality and efficient judicial administration.  Ultimately, the Court should avoid expending its resources on Democratic Underground's Counterclaim as all claims and defenses raised in said Counterclaim will be fully adjudicated as the natural and inevitable consequence of adjudicating Righthaven's original infringement action.  The same legal issues need not be adjudicated twice.

## II.   FACTS

This matter arises from the alleged copyright infringement of the literary work entitled: "Tea Party power fuels Angle" (the "Work"). (Compl. Ex. 2.)  The Work was originally published in the Las Vegas *Review-Journal* on or about May 13, 2010. (Compl. Ex. 2.)  The Las Vegas *Review-Journal* is owned by Stephens Media.  On or about July 19, 2010, Stephens Media entered into a copyright assignment with Righthaven (the "Righthaven Assignment"), a true and correct copy of which is attached hereto as Exhibit 1. (Ex. 1.)  The Righthaven Assignment provides, in pertinent part:

3

… Assignor hereby transfers, vests and assigns [the Work] … to Right*haven*, subject to Assignor's rights of reversion, all copyrights requisite to have Right*haven* recognized as the copyright owner of the Work for purposes of Right*haven* being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work. (Ex. 1)

The copyright transfer between Stephens Media and Righthaven is reflected in the copyright registration for the Work, as issued to Righthaven by the United States Copyright Office. (Pl.'s Compl. Ex. 4.) Said registration states: "Copyright Claimant: Righthaven LLC, Transfer: By written agreement." (Pl.'s Compl. Ex. 4.) Upon entering into the Righthaven Assignment on or about July 19, 2010, Stephens Media did not own the copyright, or any of its divisible rights, in and to the Work. As of the date of this filing, Righthaven remains the sole copyright owner of the Work.

On August 10, 2010, Righthaven filed its Complaint and Demand for Jury Trial (Docket No. 1-0). Righthaven's Complaint is premised upon the alleged copyright infringement of the Work by Democratic Underground and David Allen. (Pl.'s Compl. ¶¶ 34-46.) Stephens Media is not a party to Righthaven's Complaint, nor is Stephens Media referenced in any manner beyond the written transfer language found on the Work's copyright registration. (*See* Pl.'s Compl. Ex. 4.)

III.   **ARGUMENT**

   A. ***The Counterclaim Should Be Dismissed For Lack of Subject Matter Jurisdiction Because No Justiciable Controversy Exists Between Stephens Media and Democratic Underground***

The Counterclaim should be dismissed for lack of subject matter jurisdiction because: (1) Stephens Media and Democratic Underground are not on opposing sides of a real and concrete legal dispute, (2) there is no threat or indication that a dispute of this nature is imminent, and (3) Stephens Media has done nothing ***whatsoever*** to precipitate Democratic Underground's declaratory judgment claim. Stated more directly, Stephens Media and Democratic Underground

4

simply do not bear adverse legal interests.  As the Declaratory Judgment Act[1] may not be invoked absent these adversarial requirements, the pending declaratory judgment Counterclaim must fail.

### 1. *Venerable Law Mandates the Existence of an Actual, Immediate Controversy*

The law is clear and unequivocal with respect to a litigant's standing to pursue an action for declaratory judgment.  The Supreme Court has expressly held that declaratory judgment claims must arise from disputes which are "definite and concrete, touching the legal relations of parties having adverse legal interests . . . and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) ("*MedImmune*") (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).  Ripeness must also be considered in this analysis; the dispute giving rise to the claim must be one "of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Id.*  The D.C. Circuit has explained that a district court's subject matter jurisdiction over a declaratory judgment action is determined by the existence of an "actual controversy." *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.,* 482 F.3d 1330, 1337 (Fed. Cir. 2007) ("*Teva*").  An actual controversy within the meaning of the Declaratory Judgment Act is the same as a "case or controversy" under Article III: there must be an injury-in-fact that is "personal, concrete and particularized, and actual or imminent." *Id.* (internal citations and quotation marks omitted).  Furthermore, the court enjoys full discretionary power over declaratory relief claims, "and the court may refuse to hear such a claim on equitable grounds." *Foundation for Interior Design Education Research v. Savannah College of Art & Design,* 244 F.3d 521, 526 (6th Cir. 2001); *see also Solenoid Devices, Inc. v. Ledex, Inc.,* 375 F.2d 444, 445 (9th Cir. 1967); *Green v. Mansour,* 474 U.S. 64, 72 (1985) ("But we have also held that the declaratory judgment statute is an enabling Act, which confers a discretion on the

---

[1]     *See* 28 U.S.C. § 2201.

courts rather than an absolute right upon the litigant"). These principles, both individually and collectively, exemplify the impropriety of Democratic Underground's pending Counterclaim.

## 2. *No Case or Controversy Presently Exists*

Dispositive to this analysis is the simple fact that no actual, justiciable controversy exists between Stephens Media and Democratic Underground. Righthaven, not Stephens Media, is the owner of the copyright in and to the Work. (Ex. 1.) Righthaven, not Stephens Media, holds the exclusive right to seek legal redress for past, present, and future infringements of the Work. (Ex. 1.) Accordingly, it was Righthaven, and not Stephens Media, that brought the original copyright suit against Democratic Underground. Somehow, Democratic Underground chose to ignore these facts and include Stephens Media as a defendant to its declaratory relief claim. As a result, Democratic Underground now seeks a declaration of non-infringement against a party that: (1) does not own the copyright at issue, (2) was not party to the original infringement suit, and (3) has not threatened or otherwise alluded to the possibility of bringing suit against Democratic Underground on its own behalf. This hardly amounts to a "definite and concrete . . . real and substantial" dispute warranting a claim for declaratory relief. *See MedImmune,* 549 U.S. at 127. Declaratory judgment claims cannot be founded solely upon tenuous, entirely unsubstantiated legal theories, such as the self-serving allegations set forth in the Counterclaim. This is insufficient.

## 3. *There is No Threat of an Imminent Case or Controversy*

Similarly, Democratic Underground is not facing any legitimate threat of a future lawsuit brought on behalf of Stephens Media. As explained by the Supreme Court, the dispute at bar must be one "of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune,* 549 U.S. at 127. No imminent threat exists here.

Stephens Media has given no indication of filing a separate lawsuit on its own behalf, nor has Stephens Media done anything else to even remotely precipitate Democratic Underground's Counterclaim. Prior to this litigation, Stephens Media had no professional relationship with

6

Democratic Underground such that a lawsuit may have arisen on that basis. Stephens Media had never contacted Democratic Underground concerning a legal dispute or any other matter. Stephens Media and Righthaven do not share an agency relationship such that Righthaven's suit against Democratic Underground could reasonably be tied to Stephens Media, and there is absolutely no evidence to support this erroneous accusation beyond the conclusory allegations leveled in the Counterclaim. Instead, Democratic Underground is purely speculating and hypothesizing as to the nature of Stephens Media's involvement with this lawsuit without any legitimate evidence to support its position. To assert a declaratory judgment claim, Democratic Underground must demonstrate either actual injury, or an imminent threat of injury. *Teva,* 482 F.3d at 1337. Such an imminent threat cannot arise from mere speculation and conjecture.

Ultimately, Democratic Underground appears to have included Stephens Media as a counterdefendant based solely upon Stephens Media's role as the assignor of the copyright. Ironically, the fact that Stephens Media assigned the Work's copyright to Righthaven squarely undermines Democratic Underground's Counterclaim. As detailed on pages 3-4, *supra*, the Righthaven Assignment expressly vested Righthaven with copyright ownership, including "the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work." (Ex. 1.) As such, upon entering into the Righthaven Assignment, Stephens Media fully relinquished its ability to sue for infringement of the Work. Consequently, even if, *arguendo*, Stephens Media desired to sue Democratic Underground for infringement of the Work, Stephens Media *would be legally barred from doing so because it would not be the real party in interest*. The federal rules require that "the party who brings an action actually possess[es], under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. American Trade Insurance Co., Ltd.,* 88 F.3d 563, 568-69 (8th Cir. 1996); Fed. R. Civ. P. 17(a). In the context of assignments, the assignee is deemed the real party in interest after a claim or right has been assigned. *Klamath-Lake Pharmacy Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1282 (9th Cir. 1983); *see also Farrell Construction Company v. Jefferson Parish, Louisiana,* 896 F.2d 136, 140 (5th Cir. 1990) ("[A] party not possessing a right under substantive law is not the real party in interest with respect to that right

7

and may not assert it."). At present, Stephens Media would thus be precluded from bringing suit against Democratic Underground because Stephens Media does not own the right to seek redress for infringements of the Work. As a result, Democratic Underground cannot reasonably argue that it is facing the threat of an imminent lawsuit from Stephens Media; Rule 17(a) would clearly prevent such an occurrence.

Summarily, the Court does not have subject matter jurisdiction to hear the pending Counterclaim because no case or controversy exists between Stephens Media and Democratic Underground, nor is there any imminent threat of a case or controversy. When considering a declaratory judgment claim, the court must look to the purpose of the Act. *Englewood Lending Inc. v. G & G Coachella Investments, LLC,* 651 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) ("*Englewood*"). The Ninth Circuit has stated that the purpose of the Declaratory Judgment Act is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit as his leisure or never." *Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.,* 655 F.2d 938, 943 (9th Cir. 1981) (citations omitted). By this standard, it would run counter to the purposes of the Act should this Court exercise jurisdiction over Democratic Underground's Counterclaim. In this case, there is no "threat of impending litigation," nor can Stephens Media be fairly characterized as a "harassing adversary." *Id.* Contrarily, Stephens Media has no involvement in this litigation beyond its limited role as the assignor of the copyright – an act which effectively precluded Stephens Media as a material participant in the lawsuit. The pending Counterclaim simply cannot stand under these circumstances.

## B. *The Counterclaim Should Be Stricken or Dismissed Because the Judgment Sought is a Mirror Image of the Complaint*

The Counterclaim should be stricken, pursuant to Rule 12(f) or, alternatively, dismissed for failure to state a claim because the declaratory judgment sought by Democratic Underground adds nothing to the pleadings. Instead, the Counterclaim merely restates the affirmative defenses set forth in the Answer and seeks the opposite effect of the Complaint. Such repetitious,

8

unnecessary pleadings should not absorb judicial resources, and the Counterclaim should accordingly be stricken.

There can be no questioning the Court's complete discretion for striking or dismissing the pending Counterclaim on this basis. While the Declaratory Judgment Act provides that the federal courts "may declare the rights . . . of any interested party," the judiciary has emphasized that "the word 'may' has never been held to uniformly mean 'shall.'" *Solenoid Devices, Inc. v. Ledex, Inc.,* 375 F.2d 444 (9th Cir. 1967); 28 U.S.C. § 2201. Furthermore, the courts have repeatedly held that counterclaims which raise the same facts and legal issues as those asserted via affirmative defenses, or counterclaims which constitute a mirror image of the original complaint, should be stricken under Rule 12(f). *See, e.g., Tenneco Inc. v. Saxony Bar & Tube, Inc.,* 776 F.2d 1375, 1379 (7th Cir. 1985); *Lincoln National Corp. v. Steadfast Insurance Co.,* 2006 WL 1660591 (N.D. Ind. June 9, 2006) ("Indeed, repetitious and unnecessary pleadings, such as a counterclaim that merely restates an affirmative defense, or which seeks the opposite effect of the complaint, should be stricken regardless of whether prejudice has been shown."); *Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.,* 2006 WL 3782916 (N.D. Ill. Dec. 20, 2006); *see also Englewood,* 651 F. Supp. 2d at 1144-45.[2] In *Stickrath v. Globalstar, Inc.,* 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008), the District Court for the Northern District of California explained:

> [I]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before . . . dismissing the action. Although federal courts normally should adjudicate all claims within their discretion, in the declaratory judgment context this principle yields to considerations of practicality and wise judicial administration. District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses.

---

[2] Distinguishing *Englewood* from the other cases cited herein is the fact that the *Englewood* court dismissed the defendant's counterclaim pursuant to a 12(b)(6) motion, rather than a 12(f) motion. *Englewood,* 651 F. Supp. 2d at 1147. In so ruling, the court found that the claims for relief sought in the counterclaim were superfluous in light of the counterclaimant's affirmative defenses, thereby warranting dismissal for failure to state a claim. *Id.* at 1143-44. Stephens Media believes that this same logic can be applied in this case.

Ultimately, the court should avoid expending its limited resources on any counterclaim that will be fully adjudicated as the natural and inevitable consequence of adjudicating the plaintiff's original claims. This principle is directly applicable at present.

In the instant matter, Democratic Underground's Counterclaim cites a single cause of action: "Declaration of No Copyright Infringement." (Defs.' Answer and Counterclaim, p. 24) Clearly, the declaratory relief sought by Democratic Underground is the direct inverse of the sole cause of action for copyright infringement found in Righthaven's Complaint. (Pl.'s Compl. ¶¶ 34-46.) A practical consideration of the procedural posture sought by Democratic Underground plainly demonstrates the superfluous, wholly unnecessary nature of the pending Counterclaim. The Court will hear Righthaven's copyright claim and determine whether: (1) infringement occurred, or (2) no infringement occurred. At that point, any adjudication of Democratic Underground's Counterclaim would simply be a repetitive waste of the Court's time.[3] Stephens Media cannot fathom any viable circumstance in which the Court's decision as to the original Complaint would be inconsistent from its ruling on the Counterclaim.

In addition to directly mirroring the relief sought by Righthaven in the original Complaint, Democratic Underground's single cause of action, set forth in the Counterclaim, merely repeats the ***exact same legal theories*** as those already enumerated as affirmative defenses. These theories include, without limitation, fair use, implied license, *de minimis* infringement, and failure to mitigate. (*See* Defs.' Answer and Counterclaim, p. 14-23) In fact, there does not appear to be a single legal theory cited by Democratic Underground in the Counterclaim that has not also been listed as an affirmative defense in the Answer.

In this regard, the mere addition of the term "Counterclaim" to the heading of the document does not somehow negate the fact that every legal and factual issue raised in the Counterclaim will be fully resolved by the adjudication of Righthaven's original Complaint. Faced with a similar set of facts, the Seventh Circuit in *Tenneco Inc.* succinctly explained:

---

[3]     Motions to strike are specifically intended for superfluous pleadings of this nature. In fact, the "essential function of a Rule 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Stickrath,* 2008 WL 2050990, at *2.

*"[w]hat is really an answer or defense to a suit does not become an independent piece of litigation because of its label." Tenneco Inc.,* 776 F.2d at 1379 (emphasis added).  There is no reason for the Court to deviate from this premise.  By striking or dismissing the pending Counterclaim – thereby removing Stephens Media as a party to this litigation – the Court will effectuate the most efficient resolution possible without overlooking any claims or defenses raised in the pleadings.

### C. *Stephens Media Joins Righthaven's Motion for Voluntary Dismissal With Prejudice With Respect to the Dismissal Pursuant to Rule 12(b)(6)*

Stephens Media joins, in part, Righthaven's Motion for Voluntary Dismissal with Prejudice and Adjudication or Dismissal of Counterclaim (Docket No. 36-0).  Stephens Media's joinder is limited to Righthaven's request that Democratic Underground's Counterclaim be dismissed pursuant to Rule 12(b)(6), wherein Righthaven aptly contends that the declaratory relief sought is redundant and unnecessary in light of Democratic Underground's denial of the infringement allegations.  Specifically, Stephens Media agrees that:

…dismissing the original Complaint with prejudice means that there will no longer be a case or controversy to support a declaratory relief claim.[4]  *See Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 854 (Fed. Cir. 1999) (the Declaratory Judgment Act authorizes relief only when an actual case or controversy exists, and said case or controversy must exist at every stage of the proceedings); *Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.,* 986 F.2d 1463, 1471 (5th Cir. 1993) (courts routinely consider whether the judgment sought in a declaratory relief action will "serve a useful purpose in clarifying and settling the legal relations in issue").  Ultimately, the voluntary dismissal of Righthaven's original action should also trigger the dismissal of the pending Counterclaim. (*See* Plaintiff's Motion for Voluntary Dismissal, p. 24)

Righthaven's request for dismissal, and Stephens Media's joinder thereto, should be granted accordingly.

---

[4]    On this same basis, the Court may also resolve the pending Counterclaim by way of summary adjudication upon consideration of matters beyond the scope of the pleadings. *See* Fed. R. Civ. P. 12(d).

## IV.   **CONCLUSION**

For the reasons set forth above, Stephens Media respectfully requests that this Court grant the instant Motion to Dismiss or Strike the Counterclaim.

Dated this 17th day of November, 2010.

Respectfully submitted,

CAMPBELL & WILLIAMS

By  /s/ *J. Colby Williams*
DONALD J. CAMPBELL, ESQ. (#1216)
J. COLBY WILLIAMS, ESQ. (#5549)
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

Attorneys for Counterdefendant
Stephens Media, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing was served on the 17th day of November, 2010 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ *J. Colby Williams*
An employee of Campbell & Williams

13

# EXHIBIT 1

## DECLARATION OF J. COLBY WILLIAMS

I, J. COLBY WILLIAMS, declare under penalty of perjury as follows:

1.      I am a resident of Clark County, Nevada.  I am over the age of eighteen and am competent to make this Declaration.  This Declaration is based upon my personal knowledge unless otherwise so stated, and if called upon to testify, I would testify as set forth herein.

2.      I am a licensed attorney in the State of Nevada, Bar Number 5549 and am a partner in the law firm CAMPBELL & WILLIAMS.  I am one of the attorneys representing Counterdefendant Stephens Media, LLC in Case No. 2:10-cv-01356-RLH-RHH.

3.      Attached hereto as Exhibit 1 is a true and correct copy of a copyright assignment entered into by Stephens Media with Righthaven on or about July 19, 2010.

4.      I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Las Vegas, Nevada
November 17, 2010



J. COLBY WILLIAMS, ESQ.

## COPYRIGHT ASSIGNMENT

This Copyright Assignment is made effective as of July **19**, 2010 by Stephens Media LLC, a Nevada limited-liability company ("Assignor").

In consideration of monetary commitments and commitments to services to be provided and/or already provided by Right*haven* LLC, a Nevada limited-liability company ("Right*haven*"), to Assignor and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby transfers, vests and assigns the work described in Exhibit A, attached hereto and incorporated herein by this reference (the "Work"), to Right*haven*, subject to Assignor's rights of reversion, all copyrights requisite to have Right*haven* recognized as the copyright owner of the Work for purposes of Right*haven* being able to claim ownership as well as the right to seek redress for past, present and future infringements of the copyright, both accrued and unaccrued, in and to the Work.

**IN WITNESS WHEREOF**, Assignor hereby executes this Assignment on this **19** day of July, 2010.

STEPHENS MEDIA LLC

By: _____

Name: Mark Hinueber
Title: Vice-President/General Counsel

STATE OF NEVADA
COUNTY OF CLARK

Subscribed and sworn to before me by Mark Hinueber this *19th* day of July, 2010.

_____
Notary Public

MARY A. LEE
Notary Public State of Nevada
No. 09-8941-1
My appt. exp. Nov. 13, 2012

0001961

## EXHIBIT A

Tea Party power fuels Angle. Work made for hire by Laura Myers. Originally published May 13, 2010. Las Vegas *Review-Journal* and www.lvrj.com.




Las Vegas News, Sports, Business, Entertainment and Classifieds

Subscribe or Manage your account | E-mail/mobile alerts | Log into the e-Edition

Search

Go

Tuesday
Nov. 16, 2010

Recent Editions: Sun Mon Tue Wed Thu Fri Sat

HOME  NEWS  SPORTS  BUSINESS  LIVING  ENTERTAINMENT  TRAVEL  OPINION  OBITUARIES          JOBS  AUTOS  HOMES  CLASSIFIEDS & ADS

## Archive Search

May 13, 2010
Copyright © Las Vegas Review-Journal

## Tea Party power fuels Angle

Laura Myers

By **LAURA MYERS**

LAS VEGAS REVIEW-JOURNAL

Fueled by a burst of support from the Tea Party, Sharron Angle has rocketed into a near dead heat with Sue Lowden in the white-hot U.S. Senate Republican primary, according to a new poll commissioned by the Las Vegas Review-Journal.

Lowden, who had been the Republican front-runner since February, lost support to Angle, the former Reno assemblywoman seen by likely Republican voters as the most conservative candidate in a contest in which three-quarters of Republican voters say they're somewhat or very conservative, the poll showed.

Danny Tarkanian lost ground to Angle, too. She passed him after gaining a bit of political star power and a bunch of financial support from an endorsement by the Tea Party Express, which launched radio and TV ads to help her win the GOP nomination to face U.S. Sen. Harry Reid in the fall.

All three top GOP candidates are capable of beating Reid, according to previous polls that have shown the Democratic Party incumbent in an uphill battle to win a fifth Senate term on Nov. 2.

"I'm confident that we'll be able to win the primary and also to defeat Harry Reid," Angle said Wednesday from rural Fallon, where she campaigned door to door, spoke to a group at the convention center and attended a gun supporters event. "These numbers really confirm what we've been fairly certain of all along: that if people heard my conservative message, they would respond."

Angle said voters can look at her eight-year record in the Assembly that shows a consistent pattern of opposing taxes and supporting smaller government. Those are two tenets of the Tea Party movement and conservative values in opposition to the Democratic Party's hold on Congress and the White House, government bailouts of industry, and Reid's and President Barack Obama's signature health insurance overhaul.

Lowden said she wasn't worried about the tightening primary race nine days before early voting starts May 22 and three weeks before the June 8 vote.

"We're confident that our lead will hold," Lowden said in an interview in Las Vegas. "We'll have a strong get-out-the-vote effort. You only need one more vote to win, but we'll win by more than that."

According to the Mason-Dixon poll, if the Republican primary were held today: Lowden would win 30 percent of the vote; Angle 25 percent; Tarkanian 22 percent; John Chachas 3 percent; and Chad Christensen 2 percent.

The telephone survey of 500 likely Republican voters in Nevada was taken on Monday and Tuesday and has a margin of error of plus or minus 4.5 percentage points.

In a similar Mason-Dixon survey taken April 5 to 7, Lowden led the crowded field of 12 Republicans with 45 percent support compared with 27 percent for Tarkanian, 5 percent for Angle, 4 percent for Las Vegas Assemblyman Christensen and 3 percent for Chachas, an Ely native and Wall Street investment banker.

"Lowden's loss has been Angle's gain," said Mason-Dixon pollster Brad Coker. "Lowden has been the anointed front-runner for a couple of months, which made her a target for everybody. And Angle got the Tea Party endorsement, and she's the most conservative candidate running."

Angle also has a history "of running strong down the stretch" in close elections, Coker added.

In 2006, Angle was all but counted out in a congressional GOP primary until the last few weeks, and then she narrowly lost to Rep. Dean Heller by fewer than 500 votes. Two years ago, she almost beat state Senate Minority Leader Bill Raggio, R-Reno, one of Nevada's most powerful lawmakers.

"Obviously, Angle still has her homestretch legs," Coker said, although he added that anything can happen in such a competitive race. "I think you have to be conservative and say it's a three-way race. But trend-wise, Angle has jumped out quickly and has the momentum."

The Tea Party Express, the national group that held an anti-Reid protest in the senator's hometown of Searchlight in late March, shook up the race April 15 when it endorsed Angle at a Tax Day news conference in Washington, D.C. The group's political action committee has been raising money for Angle with a goal of $500,000. It already has spent $200,000 for her, including on radio and TV ads.

Meantime, Angle has been stacking up endorsements from more than two dozen conservative groups and people, from Gun Owners of America to "Joe the Plumber."

Angle's name recognition has jumped to 85 percent compared with 67 percent about a month ago. Only 4 percent of GOP primary voters do not know Lowden's name, and only 3 percent do not know Tarkanian, a real estate developer and former basketball star for the University of Nevada, Las Vegas, whose dad is well-known ex-basketball coach Jerry Tarkanian.

The Tarkanian campaign expressed skepticism that Angle had risen so high so fast. Jamie Fisfis, consultant to the campaign, said his tracking polls show Angle moving up to 16 percent support, Lowden dropping to 30 percent and Tarkanian gaining to tie the GOP front-runner in his best showing so far.

"In my mind it's still a two-way race because Angle does not have the name recognition to be ahead of either of the two candidates in contention," Fisfis said.

Lowden blamed part of her recent drop in the polls to attacks from both her GOP foes – especially Tarkanian – and Reid, whose

