1  LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
   lpulgram@fenwick.com
2  CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice pending*)
   cwebb@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, California 94104
   Telephone:   (415) 875-2300
5  Facsimile:   (415) 281-1350

6  KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
   kurt@eff.org
7  CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
   corynne@eff.org
8  ELECTRONIC FRONTIER FOUNDATION
   454 Shotwell Street
9  San Francisco, California 94110
   Telephone:   (415) 436-9333
10 Facsimile:   (415) 436-9993

11 CHAD BOWERS (NV State Bar No. 7283)
   bowers@lawyer.com
12 CHAD A. BOWERS, LTD
   3202 West Charleston Boulevard
13 Las Vegas, Nevada 89102
   Telephone:   (702) 457-1001
14 Attorneys for Defendant and Counterclaimant
   DEMOCRATIC UNDERGROUND, LLC, and
15 Defendant DAVID ALLEN

16          **UNITED STATES DISTRICT COURT**
            **FOR THE DISTRICT OF NEVADA**
17
   RIGHTHAVEN LLC, a Nevada limited liability company,    )   Case No. 2:10-cv-01356-RLH
18                                                          )   (RJJ)
                      Plaintiff,                            )
19        v.                                                )
                                                            )
20 DEMOCRATIC UNDERGROUND, LLC, a District of               )   **MEMORANDUM IN**
   Columbia limited-liability company; and DAVID ALLEN,     )   **OPPOSITION TO**
21 an individual,                                            )   **STEPHENS MEDIA LLC'S**
                                                            )   **MOTION TO DISMISS AND**
                      Defendants.                           )   **JOINDER**
22 ─────────────────────────────────                        )
   DEMOCRATIC UNDERGROUND, LLC, a District of               )
23 Columbia limited-liability company,                      )
                                                            )
24                    Counterclaimant,                      )
                                                            )
25        v.                                                )
                                                            )
26 RIGHTHAVEN LLC, a Nevada limited liability company,      )
   and STEPHENS MEDIA LLC, a Nevada limited-liability       )
27 company,                                                 )
                                                            )
28                    Counterdefendants.                    )

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................. 2

DISCUSSION .................................................................................................................. 5

I.  THE COUNTERCLAIM STATES A CASE OR CONTROVERSY BETWEEN DEMOCRATIC UNDERGROUND AND STEPHENS MEDIA ................................... 5

    A.  The Facts Alleged in the Counterclaim Amply Demonstrate Stephens' Media's Interests in the Copyrighted Work and This Controversy ....................... 5

    B.  At a Minimum, Democratic Underground Should be Permitted Jurisdictional Discovery .......................................................................................... 10

II.  THE COUNTERCLAIM IS NOT SUBJECT TO DISMISSAL AS REDUNDANT ...... 11

    A.  The Counterclaim is Necessary to Obtain an Adjudication Binding on Stevens Media as a Party .................................................................................... 11

    B.  The Declaratory Judgment Counterclaim Is Not Redundant of the Original Complaint and Pleadings ....................................................................... 12

    C.  Voluntary Dismissal of the Original Complaint Cannot Possibly Adjudicate The Counterclaim As To Stephens Media ............................................ 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AIR-vend, Inc. v. Thorne Indus., Inc.,*
   625 F. Supp. 1123 (D. Minn. 1985) ........................................................................... 13

*Ashcroft v. Iqbal,*
   556 U.S. ___, 129 S.Ct. 1937 (2009) ........................................................................... 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................... 7

*Bell v. Hood,*
   327 U.S. 678 (1946) ...................................................................................................... 6

*Blackmer v. Shadow Creek Ranch Dev. Co.,*
   2007 U.S. Dist. Lexis 99224 ...................................................................................... 14

*Broadview Chem. Corp. v. Loctite Corp.,*
   474 F.2d 1391 (2d Cir. 1973) ..................................................................................... 12

*Butcher's Union Local No. 498 v. SDC Inv., Inc.,*
   788 F.2d 535 (9th Cir.1986) ....................................................................................... 10

*Cardinal Chem. Co. v. Morton Int'l, Inc.,*
   508 U.S. 83 (1993) ..................................................................................... 2, 13, 15, 17

*Diamonds.net LLC v. Idex Online, Ltd.,*
   590 F. Supp. 2d 593 (S.D.N.Y. 2008) ....................................................................... 13

*Dominion Elec. Mfg. Co. v. Edwin L. Weigand Co.,*
   126 F.2d 172 (6th Cir. 1942) ................................................................................. 13, 14

*Englewood Lending, Inc. v. G&G Coachella Invs., LLC,*
   651 F. Supp. 2d. 1141 (C.D. Cal. 2009) ................................................................... 15

*Faulkner Press, LLC v. Class Notes, LLC,*
   94 U.S.P.Q. 2d (BNA) 1318 (N.D. Fla. Mar. 17, 2010) ........................................... 13

*Horton v. Liberty Mut. Ins. Co.,*
   367 U.S. 348 (1961) ...................................................................................................... 5

*Laub v. U.S. Dep't of the Interior,*
   342 F.3d 1080 (9th Cir. 2003) .................................................................................... 10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .................................................................................................. 6, 7

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ...................................................................................................... 7

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page(s)**

3

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ................................................................................ 5

4

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118, 127 S. Ct. 764 (2007) ...................................................... 5

5

6

*Motionless Keyboard Co. v. Microsoft Corp.*
    2004 WL 1274401 (D. Or. June 9, 2004) ............................................. 15

7

*MRSI Int'l, Inc. v. Bluespan, Inc.*,
    2006 U.S. Dist. LEXIS 68891 ............................................................ 14

8

9

*Solenoid Devices, Inc. v. Ledex, Inc.*,
    375 F.2d 444 (9th Cir. 1967) ............................................................... 15

10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................... 6

11

12

*Stickrath v. Globalstar, Inc.*,
    2008 U.S. Dist Lexis 95127 (N.D. Cal. May 13, 2008)................... 13, 15

13

*Tenneco, Inc. v. Saxony Bar & Tube, Inc.*,
    776 F.2d 1375 (7th Cir. 1985) ............................................................ 15

14

15

*United Wats, Inc. v. Cincinnati Ins. Co.*,
    971 F. Supp. 1375 (D. Kan. 1997) ...................................................... 14

16

17

**RULES**

18

Fed. R. Civ. P. 12(b)(1) ............................................................................ 7

19

Fed. R. Civ. P. 12(b)(6) ............................................................................ 7

20

**OTHER AUTHORITIES**

21

Wright & Miller, 6 Fed. Prac. & Proc. Civ.2d § 1406 .............................. 16

22

23

24

25

26

27

28

### INTRODUCTION

Most companies, when considering a possible copyright infringement claim, would hire an attorney to provide counsel and, if warranted, to file a lawsuit.  Instead, Stephens Media LLC ("Stephens Media"), working with attorney Steven Gibson, created Righthaven LLC ("Righthaven"), a copyright litigation factory.  The newspaper company invested in Righthaven, in return for a share of the profit, and controls Righthaven's activity though agreements. Stephens Media solicits business for Righthaven (with Stephens Media's general counsel as the point of contact) and threatens the public with litigation by Righthaven, claiming it is pursuing a "hard nosed" tactic to "aggressively" protect its content.  While it purports to assign rights to Righthaven for purposes of litigation, the publisher retains rights of "reversion" over what it consistently calls its own content, even after the purported assignments.  To this day, the News Article at issue in this action remains on Stephens Media's *Las Vegas Review-Journal* ("*LVRJ*") website, with its original copyright notice showing ownership by Stephens Media, and with its invitation to the public to make copies and share the News Article with others.

Nevertheless, now that Righthaven has gone too far and filed its baseless Complaint against Democratic Underground in this action, Stephens Media hopes to flee the scene, piously claiming that it is just an innocent bystander, having done nothing but assign a copyright.  To the contrary, the Counterclaim alleges sufficient facts, supported by the public record, to plead both subject matter jurisdiction and a claim for declaratory relief against Stephens Media.

As an alternative means to exit this action, Stephens Media argues that the Court should exercise its "discretion" to dismiss the Counterclaim in its entirety as "superfluous" because it purportedly duplicates the issues in the Complaint.  This suggestion is also dead wrong, in two respects.  First, Stephens Media is not a party to the Complaint, and thus will not be bound by any adjudication absent the Counterclaim.  Stephens Media's argument that the Counterclaim is "unnecessary" thus hinges on the false assumption that Stephens Media is not a proper party to be bound in this action, contrary to the facts alleged.  Democratic Underground is entitled to an adjudication binding Stephens Media, and the Counterclaim is the necessary means to achieve it.

Second, the declaratory judgment Counterclaim here is necessary because it raises issues

1  different from, and that may not necessarily be resolved by, a decision on the Complaint.  The

2  Court may properly reject the Complaint based on failure of proof on any single element in

3  Plaintiff's claim, or based on any one of the affirmative defenses, leaving unresolved the other

4  issues on which Democratic Underground has requested a declaration of its rights to guide its

5  ongoing conduct.  This includes issues such as fair use, lack of a volitional act, *de minimis*

6  copying, and invalidity of the sham assignment of copyright.  As the Supreme Court has

7  recognized in similar circumstances, a declaratory judgment claim must survive, even if an

8  affirmative defense raises the same issues, since "[a]n unnecessary ruling on an affirmative

9  defense is not the same as the necessary resolution of a counterclaim for declaratory judgment."

10  *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993).

11       Accordingly, Stephens Media's motion to dismiss must be denied.

12  **STATEMENT OF FACTS**[1]

13       Defendant and Counter-Claimant, Democratic Underground has properly alleged that

14  Stephens Media created and now acts in concert with Righthaven LLC ("Righthaven") to bring

15  copyright cases, including this one, against anyone impertinent enough to host even short excerpts

16  of materials from Stephens Media's *LVRJ* newspaper.  Dkt 13 ("Counterclaim" or "C.Claim"), ¶¶

17  8-43.[2]

18       Representatives of Stephens Media have touted its relationship with Righthaven, stating

19  that Stephens Media "grubstaked and contracted with a company called Righthaven.  It's a local

20  technology company whose only job is to protect copyrighted content."  C.Claim ¶ 23;

21  Declaration of Kurt Opsahl ("Opsahl Decl."), ¶ 7, Ex. B.  Sherman Frederick, then-President and

22  CEO of Stephens Media, wrote and published those words in the *LVRJ* on May 28, 2010, less

23  than three months before Righthaven filed this suit.  *Id.*  Mr. Frederick has been explicit in

24  characterizing Righthaven as a tool employed by Stephens Media to prosecute its purported

25  rights, stating unequivocally: "don't steal our content.  Or, I promise you, you will meet my little

26

27  [1] Democratic Underground will not repeat all, but incorporates by reference, the additional statement of facts already provided to the Court in its Consolidated Brief in Opposition to Plaintiff's Motion for Voluntary Dismissal to the Extent it Seeks to Foreclose Award of Attorneys' Fees and in Support of Cross-Motion for Summary Judgment.

28  [2] Stephens Media confirms by its Motion that it is the owner of the *LVRJ*.  Dkt. 38 at 3.

1    friend called Righthaven."  C.Claim ¶ 33; Opsahl Decl., ¶ 8, Ex. C.

2           Additionally, Stephens Media's general counsel Mark Hinueber has made numerous

3    public statements discussing Stephens Media's ownership interest in Righthaven, its control over

4    who Righthaven sues, and Righthaven's business practices that are based on agreements with

5    Stephens Media: representing, for instance, that "I can tell Righthaven not to sue somebody."

6    Opsahl Decl., ¶¶ 7, 13-15, Exs. B, H-J.[3]

7           Further substantiating these representations of control, Righthaven is a limited liability

8    company owned by two more limited liability companies, each with a 50 percent stake.  One of

9    those companies is composed of members of the Arkansas investment banking billionaire Warren

10   Stephens' family.  C.Claim ¶¶ 27-29; Opsahl Decl., ¶¶ 9-11, Ex. F.  The Stephens' family

11   investments include Stephens Media and the *LVRJ*.  *Id.*  The other 50 percent stake in Righthaven

12   is owned by an LLC managed by Las Vegas attorney Steve Gibson, who filed this action as lead

13   counsel for Righthaven.  Dkt. 1 ("Compl."); C.Claim ¶ 32; Opsahl Decl., ¶¶ 9-11, Exs. D - F.

14   Nor is Stephens Media a disinterested partner in its alliance with Righthaven: "Stephens Media

15   receives from Righthaven a share of any settlement or recovery related to preparing and filing

16   copyright lawsuits."  C.Claim ¶ 25; *see also* Dkt. 38, Ex. 1 (Copyright Assignment between

17   Stephens Media and Righthaven, referring to Righthaven's ongoing "monetary commitments and

18   commitment to services provided").

19          In pursuit of its alliance with Stephens Media, Righthaven has filed at least 179 suits

20   similar to this action in this District since March 2010.  Opsahl Decl., ¶ 17, Ex. L.   Righthaven

21   employs a "proprietary" technology to search the Internet to find news stories and excerpts from

22   the *LVRJ* posted on third-party websites.  C.Claim ¶ 15; Opsahl Decl., ¶¶ 5, 13, Ex. H.  Once

23   Righthaven finds an excerpt, it registers the copyright, obtains a purported partial assignment

24   from Stephens Media, and then sues its victim—who usually resides outside the state—without

25   providing prior notice or opportunity to take down the work. C.Claim ¶¶ 13-16.

26   _____

[3] All of the facts or public reports described in this Statement of Facts as to the relationship between Stephens Media and Righthaven are alleged or referenced in the Counterclaim, with the exception of the Hinueber comments.  As
27   discussed below, Democratic Underground contends that the allegations in the Counterclaim alone are sufficient to demonstrate subject matter jurisdiction and defeat Stephens Media's Motion.  However, it includes the additional
28   materials to demonstrate additional facts that it could expect to establish through discovery if the Counterclaim as is were deemed insufficient.

**MEMORANDUM IN OPPOSITION TO**
**STEPHENS MEDIA LLC'S MOTION TO**          3          CASE NO. 2:10-CV-01356-RLH (RJJ)
**DISMISS AND JOINDER**

1      In line with this *modus operandi*, neither Stephens Media nor the *LVRJ* first registered the

2  copyright in the Article at issue here; Righthaven did that on July 9, 2010, claiming rights through

3  assignment by "written agreement."  Complaint ¶ 30 and Ex. 4.  However, contrary to

4  Righthaven's representation in obtaining this copyright registration, no such assignment had

5  occurred by that date.  Stephens Media's declaration in support of its motion attaches an

6  assignment dated July 19, 2010, ten days *after* the registration date.  Dkt. 38, Ex. 1 ("Copyright

7  Assignment").

8      Though purportedly assigned to Righthaven, the entire News Article remains publicly

9  available on Stephens Media's *LVRJ* website at no cost, with copyright notice credited to the

10  *LVRJ,* not Righthaven.  C.Claim ¶ 132; Opsahl Decl., ¶¶ 3-4, Ex. A.  Further, the purported

11  assignment reflects that Stephens Media continues to own a "right of reversion" in the Article and

12  is receiving unspecified "monetary commitments" from Righthaven.  C.Claim ¶ 5; Dkt. 38, Ex. 1

13  (Copyright Assignment).

14      Accordingly, the Counterclaim in this action alleges that the assignment of the copyright

15  in this action is a sham (C.Claim ¶ 38); that Stevens Media retains an interest in the copyrighted

16  Article being sued upon (*Id.* ¶ 40); that Righthaven is acting as agent for Stephens Media (*Id.* ¶

17  41); and that Righthaven is controlled by Stephens Media to the extent that it functions as an alter

18  ego for this case (*Id.*¶ 42).  The Counterclaim asks for a declaration that, based on these

19  circumstances, Defendants have not infringed.  *Id.* ¶ 196.  It also seeks a declaration that

20  Defendants did not engage in any volitional act of copyright infringement, that the five sentence

21  posting from the Article amounts to *de minimis* use, and that the posting amounted to fair use.  *Id.*

22  ¶¶ 186, 189, 190.  And it asks for a declaration that Righthaven failed to mitigate any damages in

23  acquiring the copyright after it knew of the alleged infringement, and then failed to give notice

24  and an opportunity to take the down the post.  *Id.* ¶ 191.

25

26

27

28

1

## DISCUSSION

2

**I.      THE COUNTERCLAIM STATES A CASE OR CONTROVERSY BETWEEN DEMOCRATIC UNDERGROUND AND STEPHENS MEDIA**

3

4

     **A.      THE FACTS ALLEGED IN THE COUNTERCLAIM AMPLY DEMONSTRATE STEPHENS' MEDIA'S INTERESTS IN THE COPYRIGHTED WORK AND THIS CONTROVERSY**

5

6          To maintain its Declaratory Judgment counterclaim, Democratic Underground need only

7    file an "appropriate pleading" (such as the Counterclaim filed here) that establishes (1)

8    jurisdiction; and (2) the existence of an actual case or controversy between parties having adverse

9    legal interests.  *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 359 (1961).  Stephens Media

10   challenges the existence of a case or controversy.  Counterdefendant's Motion to Dismiss or

11   Strike ("SM MTD") Dkt. 38 at 4:23-28.

12         There is no universal rule for compliance with the case or controversy requirement; rather,

13   "the question in each case is whether the facts alleged, under all the circumstances, show that

14   there is a substantial controversy, between parties having adverse legal interests, of sufficient

15   immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v.*

16   *Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); quoted and reaffirmed in *MedImmune, Inc. v.*

17   *Genentech, Inc.* 549 U.S. 118, 127 S. Ct. 764, 771-72 (2007).

18         The gist of Stephens Media's case or controversy argument is that it has nothing to do

19   with Righthaven other than the purported assignment.  SM MTD at 7:11-12.  In contesting the

20   existence of subject matter jurisdiction, Stephens Media's motion expresses surprise that it would

21   be brought into a Righthaven case, despite its acknowledged role in creating and directing

22   Righthaven's business, its litigation machine.  Remarkably, the Motion does not directly address

23   any specific allegations in the Counterclaim.

24         Indeed, its argument is entirely unmoored in the pleadings, and relies on only one factual

25   anchor – the document purporting to assign rights in the News Article to Righthaven.  SM MTD,

26   Ex. 1 (Dkt. 38 at 16).  That single document cannot immunize Stephens Media.  First, it is

27   incomplete on its face.  It references a separate set of "monetary commitments and commitment

28   to services provided" for the Article which will, when produced in discovery, reveal the actual

**MEMORANDUM IN OPPOSITION TO**
**STEPHENS MEDIA LLC'S MOTION TO**                    5                    CASE NO. 2:10-CV-01356-RLH (RJJ)
**DISMISS AND JOINDER**

1    flow of obligations, control,  and funding between Righthaven and Stephens Media.  Moreover,

2    that assignment document does not evidence the purported disconnection between Stephens

3    Media and the copyright interests sued upon here.  It explicitly references Stephens Media's right

4    of reversion, without disclosing what those rights are.  *Id.* (reciting assignment by Stephens

5    Media "to Righthaven, subject to Assignor's rights of reversion").  Moreover, it purports to assign

6    only the "copyrights *requisite*" for certain purposes—a conclusory, self-serving definition of how

7    rights have been split that begs, rather than answers, the question of who really owns and controls

8    what interests.  *Id.* (emphasis added).

9          Stephens Media's argument is further contradicted by the Counterclaim's well-founded

10   allegations.  Most directly, Democratic Underground has alleged that "Stephens Media retains

11   some legal or equitable interest in some copyright rights in the News Article" (Counterclaim

12   C.Claim ¶ 40)—an allegation entirely consistent with the assignment document and the continued

13   display of, and authorizations to copy, the Article that still appears on Stephens Media's website.

14   Opsahl Decl. ¶¶ 3-4, Ex. A.

15         While Stephens Media may yet deny that it owns or controls interests in the copyright— it

16   has not yet even answered—this Court need not resolve this disputed fact at this stage because it

17   goes to the merits of the declaratory relief claim against Stephens Media, not subject matter

18   jurisdiction.  As the Supreme Court explained in *Bell v. Hood,* 327 U.S. 678, 682 (1946), subject

19   matter "[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a

20   cause of action on which petitioners could actually recover."[4]  On a motion to dismiss,

21   Democratic Underground need only show that the facts alleged, if proved, would confer standing.

22   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

23         As the Supreme Court explained in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992),

24   standing "must be supported in the same way as any other matter on which the plaintiff bears the

25   burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of

26

---

27   [4] Indeed, if merely disputing the truth of an allegation were sufficient to support a motion to dismiss for lack of
     subject matter jurisdiction, then any defendant of a Righthaven lawsuit (for example, individuals named in its
     complaints) could simply submit a declaration denying that they had responsibility for the copying alleged and
28   thereby negate federal question jurisdiction over such a claim before any discovery ever occurred.

1   the litigation." 504 U.S. at 561. This case is at the pleading stage of litigation. "At the pleading

2   stage ... we 'presume that general allegations embrace those specific facts that are necessary to

3   support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)

4   (reversing decision denying summary judgment for lack of standing and subject matter

5   jurisdiction)).

6          The well-pleaded allegations in the Counterclaim are more than sufficient to show subject

7   matter jurisdiction. Indeed, those allegations would easily meet the standards articulated for Rule

8   12(b)(6) motions—and not previously applied to motions under Rule 12(b)(1)—that require only

9   factual allegations establishing a plausible basis for the claim. *See generally Ashcroft v. Iqbal*,

10  556 U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The facts

11  alleged go much farther than mere plausibility.

12         First and foremost, the allegations of a retained right in the Article discussed above, if

13  proved, are sufficient to show standing to seek a declaration establishing Democratic

14  Underground's rights in hosting the post at issue. That Stephens Media has itself submitted an

15  assignment specifically confirming its retained reversionary interests only reinforces the

16  plausibility of the pleadings. The post at issue was removed from the DU Website as a

17  precautionary measure when this suit was filed. Allen Decl. ¶ 24. But upon a finding of fair use,

18  it desires and intends to restore the post and the comments of users responding to it. *Id.* ¶ 25.

19  Having already been sued once at the control and direction of Stephens Media, it rightly seeks a

20  declaration that it cannot be sued again.

21         Second, the Counterclaim's allegations show that Stephens Media is deeply tied to control

22  of Righthaven. As an initial matter, Stephens Media does not deny the alleged agency

23  relationship with Righthaven (C.Claim ¶ 41), merely asserting the legal conclusion that the

24  relationship does not rise to a level such that "Righthaven's suit against Democratic Underground

25  could reasonably be tied to Stephens Media." SM MTD at 7:3-4. Stephens Media fails to address

26  the allegation that the assignment was a sham (C.Claim ¶ 38), or that the separation between

27  Righthaven and Stephens Media for purposes of this lawsuit is a sham. C.Claim ¶ 42. Indeed,

28  Stephens Media does not even offer an explanation of its actual relationship with Righthaven

1    beyond its submission of the carefully worded, but incomplete, purported assignment.

2         In addition, Democratic Underground alleged that "[a]s of the filing of this Answer and

3    Counterclaim, the *LVRJ* displayed a copy of the Article on its website[5] with a copyright notice as

4    follows: 'Copyright © Las Vegas Review-Journal.'"[6]  C.Claim ¶ 132.  Stephens Media, while

5    contending it has assigned all the "requisite" rights in the Article to Righthaven and denying any

6    other involvement with the company, offers no explanation for its ongoing display of the

7    copyright and content in light of the purposed assignment of the copyright to Righthaven.

8         The relationship goes much further than the purported assignment and reversion—as

9    explained in specific facts alleged in the Counterclaim with citation to the public record.

10   Stephens Media "provided the initial funding for Righthaven."  C.Claim ¶ 24.  More specifically,

11   Stephens Media "grubstaked Righthaven by supplying Righthaven with funds in return for a

12   promised share of profits."  C.Claim ¶ 23.  Grubstake refers to the "provisions, gear, etc.,

13   furnished to a prospector on condition of participating in the profits of any discoveries."

14   Dictionary.com Unabridged, Random House, Inc.

15   http://dictionary.reference.com/browse/grubstake.  This interesting word choice comes from

16   Stephens Media's then-CEO, Sherman Frederick.[7]  *See* Opsahl Decl., ¶ 7, Ex. B. (Sherman

17   Frederick, *Copyright theft: We're not taking it anymore*, *Las Vegas Review-Journal*, May. 28,

18   2010).[8]

19        Moreover, Democratic Underground has alleged that Stephens Media "is acting in concert

20   with Righthaven in order to propagate these lawsuits."  C.Claim ¶ 20; *see also* Opsahl Decl., ¶ 7,

21   Ex. B (Sherman Frederick, *Copyright theft, supra*, ("If you'd like [to] find out more about

22   working with Righthaven to protect your copyrighted material ... you may do so by contacting our

23   general counsel, Mark Hinueber...")).  Nor is Stephens Media a disinterested partner:  as the

24

---

25   [5] *See* Las Vegas Review Journal website, at  http://www.lvrj.com/news/tea-party-power-fuels-angle-93662969.html.
     [6] This is hardly a "speculative" allegation.  *See* SM MTD at 7.  The copyright notice was still in public view on
26   Stephens Media's *LVRJ* website as of December 6, 2010.  Opsahl Decl. ¶¶ 3-4. Ex. A.

27   [7] At the time, Sherman Frederick was the CEO of Stephens Media.  C.Claim ¶ 21.  He was replaced as CEO on or
     around November 12, 2010.  Las Vegas Review-Journal, *Review-Journal names Bob Brown as new publisher*,
     Nov. 12, 2010,  http://www.lvrj.com/news/review-journal-names-new-publisher-107539263.html.

28   [8] This Court may consider the article quoted because it is a statement of a party opponent, Stephens Media's CEO on
     that opponent's own website.

1  entity that grubstaked Righthaven, "Stephens Media receives from Righthaven a share of any

2  settlement or recovery related to preparing and filing copyright lawsuits."  C.Claim ¶ 25; *see also*

3  Assignment, SM MTD Ex. 1, referring to ongoing "monetary commitments and commitment to

4  services provided."

5        Democratic Underground has every reason to fear that Stephens Media would continue to

6  assert a baseless copyright claim.  Mr. Frederick's published threat was unequivocal: "don't steal

7  our content.  Or, I promise you, you will meet my little friend called Righthaven."[9]  C.Claim ¶ 33;

8  Opsahl Decl., ¶ 8, Ex. C.  This can only be construed as a threat by Stephens Media to use its

9  partner/agent Righthaven as a weapon in suing over what he calls "our content" – notably, not

10  "Righthaven's content."

11        In the newspaper column quoted in this paragraph of the Counterclaim, Mr. Frederick

12  explains that Stephens Media has "gotten tough with content stealers by using a company called

13  Righthaven."  *Id.*

14         That point is this: If newspapers want to control their own destiny they must
       protect their content from theft.  It can't be hit and miss.  It must be effective and

15         hard-nosed, using the Constitutional power of copyright law. . . .

16         As for me *and my newspaper company*, we choose sustainability by aggressively
       protecting *our content*.

17

18  Opsahl Decl., ¶ 8, Ex. C. (Sherman Frederick, *Protecting newspaper content -- You either do it,*

19  *or you don't, Las Vegas Review-Journal*, Sept. 1, 2010 (emphasis added)).

20        Finally, it is Stephens Media's and Righthaven's policy not to send any notice before

21  filing a lawsuit.  C. Claim ¶¶ 161-63.  They sent no pre-filing notice here, consistent with their

22  hundreds of other lawsuits.  Hence Democratic Underground cannot afford to wait for any further

23  threats.  It needs to resolve the issues now.  Stephens Media, through its CEO Sherman Frederick

24  and others, has not been shy about its intent to sue anyone who dares excerpt a *LVRJ* article.

25  Stephens Media consistently refers to these articles as Stephen Media's content, regardless of

26  whether it is ostensibly assigned to Righthaven, because Stephens Media controls the lawsuits

27

28  _____
[9] The quote references the 1983 film *Scarface*, in which the main character Tony Montana famously said ,"Say hello to my little friend!" as he wields an assault rifle against a rival drug lord in the climactic shootout scene.  *See* http://en.wikipedia.org/wiki/Scarface_(1983_film).

1  filed.  Stephens Media's unrecanted threats, coupled with its retained rights in the Article, show

2  that there is a current, live and substantial controversy between the parties.

3  ## B.  AT A MINIMUM, DEMOCRATIC UNDERGROUND SHOULD BE PERMITTED JURISDICTIONAL DISCOVERY

4

5  As explained above, the allegations in the Counterclaim are sufficient.  Nevertheless,

6  should this Court decide that it needs additional facts demonstrating jurisdiction to resolve this

7  motion, Democratic Underground respectfully requests leave to conduct jurisdictional discovery.

8  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986) ("[d]iscovery

9  should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are

10  controverted or where a more satisfactory showing of the facts is necessary'"); *Laub v. U.S. Dep't*

11  *of the Interior*, 342 F.3d 1080 (9th Cir. 2003) (finding abuse of discretion to dismiss for lack of

12  subject matter jurisdiction without a reasonable opportunity to conduct discovery).  With

13  discovery, Democratic Underground can obtain any additional evidence necessary to prove the

14  extensive and intimate relationship between Righthaven and Stephens Media, and to refute

15  Stephens Media's unsupported and conclusory assertion that there is no case or controversy

16  between it and Democratic Underground.

17  For example, Stephens Media's general counsel Mark Hinueber has made numerous

18  public statements discussing Stephens Media's ownership interest in Righthaven,[10] its control

19  over who Righthaven sues,[11] and Righthaven's business practices that are based on agreements

20  with Stephens Media.[12]  While, as explained above, this Court need not resolve any disputed facts

21  at this stage, Democratic Underground has demonstrably strong reasons to be confident that

22  discovery will confirm the facts necessary to prevail in demonstrating Stephens Media's role.

23

24  [10] *See e.g.,* Opsahl Decl., ¶ 13, Ex. H (Joe Mullin, *Is This the Birth of the Copyright Troll?,* Corporate Counsel (Aug.

25  16, 2010) ("Mark Hinueber, general counsel of *Review-Journal* parent company Stephens Media, acknowledges that *Stephens owns a small stake in Righthaven*." (emphasis added))).

26  [11] *See e.g.,* Opsahl Decl., ¶ 14, Ex. I (Toby Manthey, *Firm holds websites to the law*, Arkansas Democrat-Gazette (Aug. 26, 2010) (" 'We're starting to look at the individual sites a little more closely than when we first started,' Hinueber said. '*I can tell Righthaven not to sue somebody*.' So far, he said, he hasn't done that much ..." (emphasis

27  added))).

28  [12] *See e.g.,* Opsahl Decl., ¶ 15, Ex. J.(Ron Breeding, Arkansas newspapers get serious about copyright enforcement, KUAR FM 89.1 (Sep. 29, 2010) ("'Righthaven's made the decision that based on their agreement with us, they're not going to send [cease and desist] notices.'" (emphasis added))).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     THE COUNTERCLAIM IS NOT SUBJECT TO DISMISSAL AS REDUNDANT

### A.     THE COUNTERCLAIM IS NECESSARY TO OBTAIN AN ADJUDICATION BINDING ON STEVENS MEDIA AS A PARTY.

Stephens Media's assertion that the Counterclaim is "unnecessary" and the "mirror image" of the Complaint, and therefore needs not be adjudicated (ST MTD at 8-11), blinks one critical, and obvious fact at the outset: Stephens Media is not a party to the Complaint. As a result, any victory for Democratic Underground on the Complaint will not be binding on Stephens Media. A complaint and counterclaim cannot possibly be "mirror images" of each other when they do not even include the same parties. Adjudication of the Counterclaim is thus absolutely necessary, as it is the only way to obtain a binding judgment or other resolution against Stephens Media.

Stephens Media's argument that the Counterclaim is unnecessary hinges on the argument that it is not a party that Democratic Underground is entitled to bind in this action—that is, that there is no case and controversy upon which Democratic Underground may sue. But this is simply the same argument just refuted in Part I. Since the Counterclaim pleads a live controversy with Stephens Media, it must proceed.

Not surprisingly, not a single authority cited by Stephens Media supports its proposition that a declaratory judgment counterclaim may be dismissed as duplicative despite its addition of a proper party that would otherwise not be bound by the action. Whatever discretion this Court has in entertaining a counterclaim against a plaintiff alone, Democratic Underground respectfully suggests that it does not extend to ejecting a party properly joined in the action, merely because that party does not wish to be bound.

Dismissal of the Counterclaim would leave Stephens Media free, even after Democratic Underground prevails against Righthaven, to make good on its threats of aggressive litigation against all who display *LVRJ* work by suing, or directing others to sue, over its own reversionary interest in this copyright, as well as over other minimal excerpts of *LVRJ* works. It could sue again for the use that already occurred before the Pampango post was taken down as a precautionary measure. Or it could sue if Democratic Underground restores that post, which it

1   desires to do after obtaining a ruling on fair use.  *See* Allen Decl. ¶ 25.  The only way to bind

2   Stephens Media, to remove the chill of its threats to litigate and direction of litigation to date, and

3   to ensure that it does not pursue further litigation, is by adjudication of the Counterclaim.

**B.      THE DECLARATORY JUDGMENT COUNTERCLAIM IS NOT
         REDUNDANT OF THE ORIGINAL COMPLAINT AND PLEADINGS**

6        Stephens Media further errs in contending that the Counterclaim should be stricken or

7   dismissed because it merely "seeks the opposite effect of [Righthaven's] Complaint."  SM MTD

8   at 8.  In fact, the Counterclaim goes far beyond the Complaint both in the issues that it raises and

9   the relief that it seeks.  In an effort to obtain a definitive ruling on the legality of Democratic

10  Underground's conduct going forward, the Counterclaim specifically seeks a declaration that

11  there was no volitional act (C.Claim ¶186), only *de minimis* copying (*id*. ¶189), fair use (*id*.

12  ¶190), and failure to mitigate by Righthaven's failure to provide any notice and opportunity to

13  take down the post before suing.  *Id*. ¶ 191.  The Counterclaim also introduces additional issues,

14  including the invalidity of the assignment (*id*. ¶¶ 38-40), the existence of a license resulting from

15  the *LVRJ*'s invitation to share its works, and estoppel (*id*. ¶¶ 83-101), and it incorporates those

16  allegations into its request for a declaration that no infringement has occurred "based on the

17  circumstances described above."  *Id*. ¶¶ 184, 196.  These are all issues distinct from the subject of

18  the Complaint.  Only by deciding these issues can the rights of Democratic Underground be made

19  certain, both as to Pampango post, and as to ongoing posts of other excerpts by other DU Website

20  users.  *See* Allen Decl. ¶¶ 25, 28-30; *Broadview Chem. Corp. v. Loctite Corp*., 474 F.2d 1391,

21  1393 (2d Cir. 1973) ("It is undisputed that the principal purpose of a declaratory judgment is to

22  clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and

23  controversy.").

24       Stephens Media argues that, regardless of the serious new challenges the Counterclaim

25  makes to its business model, at the end of the day a judgment in this action will result in either a

26  finding of infringement or no infringement, so no Counterclaim is needed.  SM MTD at 10.  This

27  argument is demonstrably incorrect, in the first instance, because it ignores the Counterclaim's

28  assertions that ***the rights sued upon are invalid***, in addition to not being infringed.  Democratic

1    Underground believes and has alleged that the assignment to Righthaven was a sham, and that

2    Stephens Media is the true holder of any copyright in question.  C.Claim ¶¶ 38-40.  Democratic

3    Underground also believes that the copyright registration is invalid due to fraud on the copyright

4    office —as evidenced by a registration filed by Righthaven on July 9 claiming rights under a

5    written assignment (Complaint Ex. D), when even the sham assignment produced with Stephens

6    Media's Motion was dated no earlier than July 19.  SM MTD Ex. 1.  Further, Democratic

7    Underground has asked for a declaration that Righthaven and Stevens Media have no valid right

8    to sue due to their pattern and practice of failing to give notice before bringing suit, a deliberate

9    failure to mitigate any damages they may have suffered.  C.Claim ¶ 191.

10          All these claims to invalidity of the rights claimed will not be resolved if the Court merely

11   determines that no infringement occurred.  It is well settled in this context that where a

12   counterclaim seeks a declaration of invalidity of intellectual property interests, it stands

13   independent of, and survives resolution of, infringement claims.  *See Cardinal,* 508 U.S. at 83

14   (holding that "case or controversy" in patent suit survives the resolution of the infringement claim

15   when a counterclaim for declaration of invalidity remains unresolved, as a "declaratory judgment

16   of invalidity presents a claim independent of the patentee's charge of infringement");  *see also*

17   *Diamonds.net LLC v. Idex Online, Ltd.*, 590 F. Supp. 2d 593, 603 (S.D.N.Y. 2008)(noting

18   "importance to the public at large of resolving questions of . . . validity"); *AIR-vend, Inc. v.*

19   *Thorne Indus.*, *Inc.*, 625 F. Supp. 1123, 1126-27 (D. Minn. 1985).

20          The Supreme Court's reasoning in *Cardinal* applies equally in the copyright context.[13]

21   Democratic Underground's Counterclaim presents "a claim independent of [Righthaven's] charge

22   of infringement," in that it seeks declaration of the underlying validity of the rights asserted

23   now—and that may be asserted in the future—against the DU Website and users.  *See also*

24   *Faulkner Press, LLC v. Class Notes, LLC*, 94 U.S.P.Q. 2d (BNA) 1318 (N.D. Fla. Mar. 17, 2010)

25   (refusing to dismiss counterclaim where it raised the possibility of the copyright's invalidity).

26   Accordingly, the Counterclaim must continue on the issues of validity of the assertions of

27

28

---

[13] The same rule applies in the trademark context.  *See, e.g., Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist Lexis 95127 (N.D. Cal. May 13, 2008) (applying rule from *Cardinal* to trademark case; declining to dismiss counterclaim); *see also, Dominion Elec. Mfg. Co. v. Edwin L. Weigand Co.*, 126 F.2d 172 (6th Cir. 1942).

**MEMORANDUM IN OPPOSITION TO**
**STEPHENS MEDIA LLC'S MOTION TO**                       13                  CASE NO. 2:10-CV-01356-RLH (RJJ)
**DISMISS AND JOINDER**

1   infringement at issue.

2          Moreover, Stephens Media is just wrong in arguing that "every legal and factual issue

3   raised in the Counterclaim will be fully resolved by the adjudication of Righthaven's original

4   Complaint."  SM MTD at 10.  A finding of non-infringement will not necessarily adjudicate the

5   issues presented in the Counterclaim—such as fair use, volitional act, *de minimis* use—any one of

6   which may be dispositive of the Complaint, leaving the other issues unresolved absent the

7   Counterclaim.  Failure to resolve these issues leaves Democratic Underground exposed, both with

8   respect to its rights to restore the Pampango post, and as to additional posts of *LVRJ* excerpts that

9   its users have made and will continue to make.  Allen Decl. ¶¶ 25, 28-30.

10          A request for declaratory relief is appropriate in exactly this context, where a party needs

11   determination of particular rights that might otherwise go unresolved.  While "[o]ne defendant

12   exonerated from infringement may be content with such adjudication -- another may not… [since

13   the] mere exoneration from infringement does not always meet the necessities of a wrongfully

14   accused defendant."  *Dominion Elec.,* 126 F.2d at 174 ("mere dismissal of a plaintiff's bill does

15   not always adjudicate every aspect of the controversy or give the defendant all the relief to which

16   he may be entitled");  *see also MRSI Int'l, Inc. v. Bluespan, Inc.*, 2006 U.S. Dist. LEXIS 68891,

17   at **3-7 (D. Utah Sep. 21, 2006) (refusing to dismiss counterclaims as duplicative of underlying

18   claims or affirmative defenses because the court could potentially adjudicate the underlying

19   claims without reaching issues in declaratory relief claim); *United Wats, Inc. v. Cincinnati Ins.*

20   *Co.*, 971 F. Supp. 1375, 1381 (D. Kan. 1997) (rejecting as "without merit" motion to dismiss

21   counterclaims as redundant to underlying claim).  As the Court noted in *Blackmer v. Shadow*

22   *Creek Ranch Dev. Co.*, 2007 U.S. Dist. Lexis 99224, at **4-5 (S.D. Tex. June 26, 2007), even

23   where there was substantial overlap between claims and defenses, there is a "qualitative

24   difference between merely prevailing in Plaintiff's lawsuit, and receiving an affirmative

25   declaration of rights."

26          Stevens Media's assertion that the Counterclaim overlaps with affirmative defenses also

27   cannot warrant dismissal of the former, since there is no assurance that the latter will ever be

28   reached.  "An affirmative defense is simply asserted to defend a plaintiff's claims; a counterclaim

1   seeks specific relief." *Motionless Keyboard Co. v. Microsoft Corp.* 2004 WL 1274401, at *1

2   (D. Or. June 9, 2004) (refusing to strike counterclaim).  As the Supreme Court has put it, "[a]n

3   unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a

4   counterclaim for declaratory judgment." *Cardinal*, 508 U.S. at 93-94.

5         Finally, none of the scattering of cases cited by Stephens Media requires a different

6   result.  None addresses the type of intellectual property context here, and none deals with a

7   situation where, as here, the Counterclaim raises numerous issues that may not be adjudicated in

8   the underlying claim and as to which affirmative relief is sought.

9         Instead, Stephens Media's cases themselves recognize that "it is not always appropriate to

10   strike declaratory judgment counterclaims," noting as examples intellectual property cases where

11   a finding of non-infringement could be made "without adjudicating the validity of the underlying

12   intellectual property," or where the counterclaim seeks additional relief. *See Stickrath*, 2008 U.S.

13   Dist. Lexis 95127, at **10-11 (eventually only striking the counterclaims because of a "complete

14   identity of factual and legal issues," that does not presents itself in this case).  The rest of the

15   cases are wholly inapposite to the present context. *See Tenneco, Inc. v. Saxony Bar & Tube, Inc.*,

16   776 F.2d 1375, 1379 (7th Cir. 1985) (denying existing defendant permission to intervene in midst

17   of same action to obtain interpretation of contract, noting that "the original complaint puts in play

18   all of the factual and legal theories" at issue); *Solenoid Devices, Inc. v. Ledex, Inc.*, 375 F.2d 444,

19   445 (9th Cir. 1967) (a case completely unrelated to "duplicative" counterclaims, that addresses

20   only the lack of a genuine controversy where the dispute never got past the stage of a "business

21   argument"); *Englewood Lending, Inc. v. G&G Coachella Invs., LLC*, 651 F. Supp. 2d. 1141,

22   1143-44 (C.D. Cal. 2009) (dealing with the narrow scenario of dispute over contract where the

23   counterclaims merely asserted the contrary interpretation of the underlying claims, they therefore

24   "overlap[ped] entirely," and the relief sought was "indistinct").

25         Finally, this matter is presently just in the pleading stage.  Exactly how its issues will

26   unfold through discovery cannot yet be foretold.  Nonetheless, what is clear is that the

27   Counterclaim should not add burdens of discovery, as Stephens Media asserts that every legal and

28   factual issues raised in the Counterclaim would already be subject to discovery by virtue of being

**MEMORANDUM IN OPPOSITION TO
STEPHENS MEDIA LLC'S MOTION TO
DISMISS AND JOINDER**                    15                    CASE NO. 2:10-CV-01356-RLH (RJJ)

1   raised in the Complaint and Answer (SM MTD at 10).  Thus, if the Court were ever to exercise its

2   discretion to truncate some or all of the request for declaratory relief, the pleading stage is not the

3   time.  As Wright and Miller make clear, "the safer course for the court to follow is to deny a

4   request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be

5   rendered moot by the adjudication of the main action."  Wright & Miller, 6 Fed. Prac. & Proc.

6   Civ.2d § 1406.  As there is no certainty that the important issues raised in this Counterclaim will

7   be resolved in rejecting the Plaintiff's claims, the Counterclaim is not superfluous, and should not

8   be dismissed.

9       C.    **VOLUNTARY DISMISSAL OF THE ORIGINAL COMPLAINT CANNOT
             POSSIBLY ADJUDICATE THE COUNTERCLAIM AS TO STEPHENS**
10           **MEDIA**

11           Stephens Media also misses the mark in its joinder in Righthaven's argument that "there

12   will no longer be a case or controversy to support a declaratory relief claim" after the original

13   Complaint has been voluntarily dismissed.  SM MTD at 11.  Stephens Media apparently intends

14   to say that the Counterclaim *against Stephens Media* should be dismissed if *Righthaven*

15   voluntarily dismisses its Complaint.  This argument is wrong for two independent reasons.

16           First, as discussed above, Stephens Media is not a party to the Complaint.  Hence, a

17   voluntary dismissal by Righthaven is not binding on Stephens Media.  Whatever the effect of that

18   proposed dismissal on precluding future legal action by Righthaven, it would do nothing to

19   preclude Stephens Media from proceeding against Democratic Underground based on its

20   reversionary interest, or based on new posts of *LVRJ* materials.[14]  Since Stephens Media is a

21   proper party in this action today, as we demonstrated above, there is a live dispute with that party

22   will not be resolved just because Righthaven throws in the towel.

23           Second, even as to Righthaven, its dismissal of the Complaint's claims of infringement

24   will not adjudicate or moot all the issues in the Counterclaim as against anyone.  As explained in

25   detail in the Opposition to Righthaven's Motion to Dismiss (at 27-29), a dismissal by Righthaven

26   ───────────────
[14] Indeed, Stephens Media has not agreed that it would be bound by *any* dismissal of the Complaint or, by implication
by any "adjudication" of the Counterclaim that might result.  Although Righthaven has requested dismissal of its

27   Complaint on the merits, and requested that the Court deem such dismissal an adjudication on the Counterclaim (RH
MTD at 23), Stephens Media has *not* joined in that request.  Its Joinder in Righthaven's Motion is carefully limited to

28   *only* Righthaven's arguments that the Counterclaim is redundant and that there *will be no case or controversy* if
Righthaven's dismissal with prejudice proceeds.  SM MTD at 11.

**MEMORANDUM IN OPPOSITION TO
STEPHENS MEDIA LLC'S MOTION TO          16          CASE NO. 2:10-CV-01356-RLH (RJJ)
DISMISS AND JOINDER**

1    is no substitute for adjudication of the issues in the Counterclaim—indeed, it is a maneuver to

2    avoid any such adjudication.  The Supreme Court's *Cardinal Chemical* decision and its progeny

3    make clear that a case and controversy survives resolution of plaintiff's infringement claims when

4    there remain independent and unresolved issues.  *See* Part II.B *supra* at 13-14.  Here, the

5    unresolved issues will include the validity of the rights Righthaven and Stephens Media purport

6    to assert.

7           Moreover, the voluntary dismissal of the Complaint, though providing an undifferentiated

8    victory for Democratic Underground, would provide no determination as to fair use.  Dismissal of

9    the Counterclaim would leave Democratic Underground uncertain as to whether it has the fair use

10   right to restore Pampango's post.  The Counterclaim therefore would remain live against both

11   Counter-Defendants, notwithstanding the Complaint's dismissal.

12          In sum, Defendants are just as concerned about the threat of future baseless claims

13   advanced by or on behalf of Stephens Media as they are about the threat of baseless claims from

14   its instrumentality, Righthaven. With a right of reversion in hand, there is nothing—save for

15   specific declaratory relief—that would prevent Stephens Media from bringing suit on identical

16   grounds, whether Righthaven's suit is dismissed or otherwise defeated. This is precisely the

17   reason that Stephens Media is named in the Counterclaim, and precisely the reason that the Court

18   should allow the Counterclaim to proceed, regardless of its ruling on Righthaven's Motion for

19   Voluntary Dismissal.

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

**CONCLUSION**

For the foregoing reasons, Democratic Underground respectfully requests that the Court deny Stephens Media's Motion to Dismiss or Strike in its entirety.

Dated this 7th day of December, 2010

FENWICK & WEST LLP


By:      /s/ *Laurence F. Pulgram*
LAURENCE F. PULGRAM, ESQ
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, California  94104
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350
lpulgram@fenwick.com

Attorneys for Defendants and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN