SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff/Counterdefendant Righthaven LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.: 2:10-cv-01356-RLH-RHH |
| Plaintiff, | **REPLY IN SUPPORT OF PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE AND ADJUDICATION OR DISMISSAL OF COUNTERCLAIM** |
| v. | |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual, | |
| Defendants. | |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company, | |
| Counterclaimant, | |
| v. | |
| RIGHTHAVEN LLC, a Nevada limited-liability company; and STEPHENS MEDIA LLC, a Nevada limited-liability company, | |
| Counterdefendants. | |

Righthaven LLC ("Righthaven") hereby submits the instant Reply in support of its Motion for Voluntary Dismissal with Prejudice and Adjudication or Dismissal of the Counterclaim (the "Motion"; Docket No. 36-0), seeking the voluntary dismissal of Righthaven's Complaint (Docket No. 1-0), with prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, as asserted against Democratic Underground, LLC ("Democratic Underground") and David Allen (collectively with Democratic Underground known herein as the "Defendants"). Righthaven's Motion also sought the adjudication or dismissal of the pending Counterclaim (Docket No. 13-0), as filed by Democratic Underground. This Reply is accompanied by the Declaration of Shawn A. Mangano ("Mangano Decl.") (a true and correct copy of the Mangano Decl. is attached hereto and incorporated herein as Exhibit 1), and is based upon the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter of which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **ARGUMENT**

   A.   ***The Defendants' Refusal to Accept Righthaven's Concession on the Merits Exemplifies EFF's Vexatious Anti-Righthaven Agenda and Wasteful Approach to this Litigation***

   The Defendants' response to Righthaven's voluntary dismissal efforts defies logic. In moving to voluntarily dismiss this matter ***with prejudice***, Righthaven is telling the Defendants: "You win on the merits!" In other words, despite the arguably actionable nature of the Defendants' infringing conduct, Righthaven, in an attempt to avoid filing duplicative appeals with the Ninth Circuit and unnecessarily consuming the Court's valuable resources, is offering to concede this matter to the Defendants and forever abandon the right to file suit for this infringement in the future. Amazingly, this is still not good enough for the Defendants or their counsel.

The Defendants' refusal to agree to the dismissal terms sought by Righthaven, wherein the Defendants would be granted a full and final judgment on the merits, is demonstrative of the vexatious, vituperative approach taken against Righthaven by the Defendants' attorneys in this matter. The Defendants' counsel, the Electronic Frontier Foundation ("EFF"), has taken it upon itself to attack Righthaven's copyright enforcement efforts. EFF, representing defendants in multiple Righthaven cases, even advertises (a true and correct copy of said advertisement is attached hereto and incorporated herein as Exhibit 2) on its website that EFF's attorneys "are presently working at capacity" litigating Righthaven cases. (Ex. 2.) EFF's approach in these cases is uncomplicated: falsely characterize and attack Righthaven's business model; level unsupported, malicious statements concerning Righthaven both in the media and in court filings; and vehemently oppose all legal action taken by Righthaven regardless of the merits of the individual case or of Righthaven's underlying cause. This is unfortunate. It is Righthaven's belief that its mission should be lauded by the public: Righthaven seeks to protect the works of authors, to promote the progress of arts and sciences, and to ensure that, in this digital age of copying-and-pasting and rampant Internet-based copyright infringements, the creative efforts of individuals and publications alike do not go unrecognized.

However, whether Righthaven's copyright enforcement efforts are laudable is not the debate presently before the Court. The question before the Court is **whether the Defendants are simply willing to take "yes" for an answer**. It goes without saying that the judiciary expects litigants to conduct themselves in a reasonable manner, a manner which maximizes judicial economy. Copyright litigants are no exception to this rule. In fact, when weighing a request for attorneys' fees in copyright cases, the Ninth Circuit takes careful consideration of whether either party has engaged in "vexatious, oppressive, obdurate and bad faith conduct" throughout the course of the litigation. *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 491 (9th Cir. 1984) (*citing Kelly v. Guinn,* 456 F.2d 100 (9th Cir. 1972)). This principle is seemingly lost on the Defendants. **By waging an unrelenting, overly-litigious battle in the face of Righthaven's conciliatory offer via Rule 41(a)(2), and by continuing to accumulate unnecessary, potentially exorbitant legal fees as a direct result of that battle, the Defendants**

*(and EFF) are engaging in precisely the type of obdurate behavior that the Copyright Act seeks to avoid.*  This vexatious, wasteful approach should not be rewarded by the Court.

Never has EFF's motive been clearer than the current lawsuit.  Righthaven, motivated largely by judicial economy, believes that it is acting in the noblest of senses by offering to dismiss this action with prejudice.  By refusing Righthaven's offer, the Defendants are frustrating the fundamental purpose of the Copyright Act, which is to assure an author's "right to their original expression" and to encourage "others to build freely upon the ideas and information conveyed" by that author. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 527 (1994).  In this case, the Defendants were not advancing the Copyright Act; by publicly displaying a partial, yet verbatim copy of a substantial portion of a protected literary work, the Defendants were not encouraging others to build upon the creative ideas and content found in the original work.  Nevertheless, Righthaven is offering to concede this matter despite the fact that the Defendants' act of reproduction did not constitute a promotion of the Copyright Act.

There is no reasonable explanation – neither legal nor practical – for the Defendants' ongoing refusal to acquiesce to Righthaven's sensible (and, in Righthaven's view, honorable) offer to voluntarily dismiss this matter with prejudice.  Unfortunately, as long as the Defendants are able to prolong this litigation, EFF will continue to conduct itself in a wasteful and unreasonable manner, all the while continuing to pile on (and waste) entirely preventable legal expenses.  To illustrate this premise, consider the following timeline:

- November 15, 2010: Righthaven files its 41(a)(2) Motion;
- December 7, 2010: EFF files a 39-page brief (Docket No. 45-0): (1) moving for summary judgment on the merits <u>and</u> (2) opposing Righthaven's request for voluntary dismissal;
- December 15, 2010: EFF submits the Defendants' initial disclosures, clearly reflecting EFF's intent to depose a number of individuals bearing little to no connection with the instant lawsuit (Mangano Decl. ¶ 3.);
- December 17, 2010: EFF propounds (13) interrogatories on Righthaven (Mangano Decl. ¶ 4.);

- December 17, 2010: EFF submits (82) requests for admission to Righthaven (Mangano Decl. ¶ 5.);

- December 17, 2010: EFF submits (62) requests for production of documents to Righthaven (Mangano Decl. ¶ 6.).

This litigious course of action (particularly, this extremely burdensome and voluminous discovery) was **wholly unnecessary:** the entirety of the legal work listed above – each summary judgment argument made, each discovery document requested, each interrogatory propounded – was inexplicably completed by EFF *a month <u>after</u> Righthaven had started the process of ending (and conceding) this case*. Ultimately, the extent and timing of EFF's misguided efforts reflect nothing more than EFF's futile attempt to needlessly prolong this litigation and accumulate a windfall of attorneys' fees. Such conduct should be neither permitted nor rewarded. **Simply stated, this case needs to end today**.

## B. ***The Defendants Fail to Establish that a Dismissal Without Fees and Costs Will Result in Legal Prejudice***

The Defendants' insistence that Righthaven's request for voluntary dismissal is only appropriate if the Defendants are awarded attorneys' fees ignores a consideration fundamental to the Rule 41(a)(2) analysis. If this matter is dismissed with prejudice and the Court aptly decides that all parties are responsible for their own fees and costs, the Defendants will not suffer any legal prejudice as a direct consequence of said dismissal. Accordingly, the Court would be well within its discretion to dismiss this matter, with prejudice, pursuant to the terms set forth in Righthaven's Motion and proposed Order of Dismissal.

The Defendants will not be legally prejudiced, in any capacity, by this Court's prospective entry of Righthaven's Proposed Order of Dismissal. (*See* Mot. Ex. 1.) The law is clear that, in the 41(a)(2) construct, a plaintiff's request for dismissal should be "liberally granted" so long as the defendant will not be legally prejudiced. *Watson v. Clark,* 716 F. Supp. 1354, 1355 (D. Nev. 1989) *aff'd,* 909 F.2d 1490 (9th Cir. 1990); *see also Westlands Water District v. United States,* 100 F.3d 94, 96 (9th Cir. 1996) ("*Westlands*"). Legal prejudice does

not arise merely because a dispute is left unresolved, from the threat of future lawsuits, or from a "missed opportunity for a legal ruling on the merits." *Watson,* 716 F. Supp. at 1355; *Smith v. Lenches,* 263 F.3d 972, 976 (9th Cir. 2001). Most importantly, the Ninth Circuit has firmly established that "the expense incurred in defending against a lawsuit does not amount to legal prejudice." *Westlands,* 100 F.3d at 97. It speaks volumes that the Defendants, in their Opposition, fail to even suggest that they will be legally prejudiced should this Court enter a dismissal order without granting a corresponding award of attorneys' fees. Ultimately, no such argument could reasonably have been made.

Righthaven's discussion of the Ninth Circuit's holding in *Smith* bears repeating, as it provides direct guidance to this issue. In *Smith,* the court found that the defendant would not be prejudiced by a grant of voluntary dismissal based on litigation costs because: (1) discovery had not commenced, (2) trial preparations had not commenced, and (3) no motions challenging the merits had been filed. *Smith,* 263 F.3d at 976. As of the filing date of Righthaven's 41(a)(2) Motion (November 15, 2010), neither party had propounded any form of discovery, trial preparations had not yet begun, and no motions challenging the merits of Righthaven's underlying infringement claim had been filed with the Court. Though EFF, a full month after the filing of Righthaven's Motion (and in an act demonstrative of EFF's ill-conceived, wastefully persistent attempt to drive up litigation costs despite Righthaven's concession efforts): (1) propounded exorbitant discovery requests on Righthaven (*see* discovery timeline on pages 4-5, *supra*), (2) submitted the Defendants' Rule 26 initial disclosures reflecting EFF's clearly apparent intent to depose multiple persons even tenuously involved with this litigation, and (3) filed a Motion for Summary Judgment (*see* Docket No. 45-0, pgs. 1-17) challenging the merits of Righthaven's underlying claim, none of these actions (and the substantial, unnecessary legal expenses associated therewith) had been taken at the time Righthaven originally moved to voluntarily dismiss. Accordingly, in light of the Ninth Circuit precedent in *Westlands* and *Smith,* the Defendants cannot legitimately claim that they will be legally prejudiced as a result of bearing their own attorneys' fees upon a dismissal of this action with prejudice. Thus, as the imposition of legal prejudice is a consideration integral to the Court's 41(a)(2) analysis, the fact

that the Defendants will not be legally prejudiced, in any capacity, by a dismissal of this action pursuant to the terms sought by Righthaven wholly justifies the Court's entry of Righthaven's Proposed Order.

## C. _Righthaven's Right of Withdrawal Under Rule 41(a)(2) is Unaffected by the Defendants' Unsupported Argument to the Contrary_

As the plaintiff in this lawsuit, and as the party moving for voluntary dismissal pursuant to Rule 41(a)(2), Righthaven has the right to withdraw its request for dismissal if attorneys' fees are imposed regardless of any statutory basis for said fees. On this issue, the most applicable Ninth Circuit law clearly favors Righthaven, and the Defendants' largely unsupported argument to the contrary completely fails to prove otherwise.

The Defendants' efforts to strip Righthaven of its right to withdraw are not well taken. On one hand, the Defendants acknowledge that the Ninth Circuit recognizes a plaintiff's right to withdraw a dismissal request if the conditions of dismissal are considered too burdensome or onerous. (Defs.' Opp'n 19:7-8) On the other hand, the Defendants simultaneously claim that the plaintiff's right of withdrawal is suddenly diminished if these burdensome conditions arise from an award of costs and fees imposed on an independent statutory basis. (Defs.' Opp'n 19:8-9) However, revealingly, the Defendants cite a single case – an unpublished Sixth Circuit decision – to support this theory. The Defendants do not cite any other authority, including Ninth Circuit authority, to substantiate this notion. Furthermore, the lone case cited by the Defendants, _Degussa Admixtures, Inc. v. Burnett,_ 277 Fed. Appx. 530 (6th Cir. 2008) ("_Degussa II_"), contains significant factual distinctions from the instant matter, the likes of which exemplify the impropriety of the Defendants' argument in the present context. _Degussa II_ represents the Sixth Circuit's affirmation of the Western District of Michigan's decision to award attorneys' fees to the defendant following the plaintiff's request for voluntary dismissal. _Degussa Admixtures, Inc. v. Burnett,_ 471 F. Supp. 2d 848, 857 (W.D. Mich. 2007) ("_Degussa I_"). Unlike the instant action, the court in _Degussa I_ was faced with a record in which: (1) the "parties [had] conducted discovery, including the taking of key depositions," (2) the court had heard oral argument, and

(3) the plaintiff was found to have been litigating in bad faith. *Degussa I,* 471 F. Supp. 2d at 851, 854, 857.  In this case, discovery had not yet commenced as of the filing of Righthaven's Motion (though, as previously noted, the Defendants unnecessarily propounded their first round of discovery more than a month after the filing of Righthaven's Motion), no oral arguments have even been *docketed* by the Court, and Righthaven has in no way been deemed to have been litigating this matter in bad faith.   In other words, the Defendants fail to cite any Ninth Circuit authority to support their theory that Righthaven's right of withdrawal is somehow diminished if the basis of said withdrawal arises from statutorily awarded attorneys' fees, and the lone Sixth Circuit case relied upon by the Defendants is factually distinguishable to the point of being utterly inapplicable to the present analysis.  An argument simply cannot stand under these circumstances.

    Additionally, the Defendants err in challenging Righthaven's reliance on the Ninth Circuit's decision in *Lau v. Glendora Unified School District,* 792 F.2d 929, 930-31 (9th Cir. 1986). (Defs.' Opp'n 19:12-18)  The Defendants contend that *Lau* is distinguishable because, in that case, the award of attorneys' fees was based upon the court's discretion rather than upon independent statute. *Id.*  While the attorneys' fees in *Lau* were in fact imposed at the court's discretion, the Ninth Circuit did not suggest that those were the ***only*** circumstances in which the plaintiff would be entitled to withdraw his motion for voluntary dismissal.  The *Lau* court merely stated that "a plaintiff has the choice between accepting the conditions and obtaining dismissal and, if he feels that the conditions are too burdensome, withdrawing his dismissal motion and proceeding with the case on the merits." *Id.* at 930-31 (*quoting GAF Corporation v. Transamerica Insurance Co.,* 665 F.2d 364, 367-68 (D.C. Cir. 1981)).  The Ninth Circuit did not set any specific limitations on the plaintiff's right to withdraw in the 41(a)(2) construct, nor was any indication given that in certain cases (such as cases in which attorneys' fees are awarded pursuant to independent statute) the plaintiff's right to withdraw was to be revoked altogether. *See Lau,* 792 F.2d at 930-31.  The Court should not be misled by the Defendants' unsupported, self-serving representation to the contrary.[1]

---

[1] In the event that this Court chooses to impose an award of attorneys' fees against Righthaven, Righthaven may have no choice but to exercise its jurisprudentially-established right to withdraw and litigate this matter on the

**D.** ***The Present Circumstances do not Remotely Warrant the Imposition of Attorneys' Fees, thus the Court Need Not Authorize the Defendants' Request***

Given the nature of this lawsuit, the behavior of the parties, and the manner in which this litigation has unfolded, there is simply no basis upon which attorneys' fees should be fairly awarded to any party.  In that vein, the Defendants drastically miss the mark when they contend that Righthaven is "holding the Court hostage" by advocating that a dismissal with prejudice should reasonably be conditioned upon the parties bearing responsibility for their own costs and attorneys' fees. (*See* Defs.' Opp'n 20:1)  Under the present circumstances, this accusation is nothing short of astonishing.  By baselessly opposing Righthaven's judicious efforts to forever dismiss this lawsuit, and by refusing to let this case end despite Righthaven's willingness to afford the Defendants a conclusive, conciliatory resolution**, *it is the Defendants – and not Righthaven – who are holding the Court hostage by needlessly perpetuating this litigation*.** Furthermore, this backwards contention made by the Defendants glosses over a subtle, yet very important distinction: Righthaven understands the Court's power to authorize an award of attorneys' fees, but, as discussed in the preceding section, Righthaven ultimately reserves the well-established right to withdraw its voluntary dismissal if such a condition is imposed. Righthaven's position is buoyed by the notion that, in this case, it would be highly inappropriate for the Court to award attorneys' fees because: (1) no exceptional circumstances exist that would justify such an award, (2) Righthaven's infringement action against the Defendants is neither frivolous nor was it filed in bad faith, and (3) the statutory attorneys' fees analysis, as set forth in the Copyright Act, weighs heavily in Righthaven's favor under the current facts. *See* 17 U.S.C. § 505.

**1.** ***No Exceptional Circumstances Exist***

---

merits.  The attorneys' fees accumulated by the Defendants, including those accumulated as a direct result of the Defendants' ongoing flood of unnecessary briefing and discovery requests, will likely prove far too onerous and burdensome.  Though Righthaven is clearly willing to concede this matter on the merits pursuant to the terms outlined in the 41(a)(2) Motion, the Defendants continue to inexplicably drive up their litigation costs despite the absence of a need to do so.

The Defendants' claim that an award of attorneys' fees is justified in light of this matter's "exceptional circumstances" is highly erroneous. (Defs.' Opp'n 20:8-10)  The record currently before the Court cannot remotely be classified as one bearing the exceptional circumstances that many courts find necessary in order to impose a fee award when ruling upon a motion to voluntarily dismiss with prejudice. *See, e.g., Mobile Power Enterprises, Inc. v. Power Vac, Inc.,* 496 F.2d 1311, 1312 (10th Cir. 1974).  In fact, the argument made by the Defendants on this topic, and the case law cited in support thereof, plainly demonstrates the complete ***absence*** of such circumstances in this lawsuit.

First, Righthaven reiterates that this matter remains in the infancy stages of litigation.  At the time Righthaven filed its Motion for Voluntary Dismissal, discovery had not commenced, and the only significant documents filed with the Court were Righthaven's original Complaint (Docket No. 1-0) and the Defendants' Answer and Counterclaim (Docket No. 13-0).  Though, as noted above, the Defendants have since piled on costly, unnecessary filings and propounded a proverbial mountain of discovery requests, not a single hearing has been docketed with the Court, not a single item of evidence has been produced, and the parties are nowhere near beginning preparations for trial.  And notwithstanding the Defendants' seemingly vexatious efforts to increase their attorneys' fees despite Righthaven's offer to voluntarily dismiss this action with prejudice, the legal work thus far performed by the parties remains rather minimal when compared to matters subjected to extensive discovery or fully litigated through trial.  Summarily, it is hard to imagine how the Defendants, at this stage of the case, can viably demonstrate the existence of any exceptional circumstances.

Second, the authority cited by the Defendants ironically validates the impropriety of their argument.  The Defendants' refer almost exclusively to the Tenth Circuit's decision in *AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir. 1997) ("*AeroTech*"), supposedly as a means of substantiating their claim concerning the existence of exceptional circumstances. (Defs.' Opp'n 20:6-8)  Of great moment, and as the Defendants correctly point out, the court in *AeroTech* explained that exceptional circumstances can arise "when a litigant makes a ***repeated practice*** of bringing claims and then dismissing them with prejudice after inflicting substantial litigation

10

costs on the opposing party and the judicial system." *AeroTech,* 110 F.3d at 1528 (emphasis added).  Apparently in an effort to connect the logical dots and draw (or manufacture) a parallel between the Tenth Circuit's discussion in *AeroTech* and Righthaven's business practice, the Defendants follow up this citation by concluding that the present circumstances are "certainly" exceptional because Righthaven has filed "almost 179 lawsuits in six months." (Defs.' Opp'n 20:8-10)  However, the Defendants do not demonstrate, or even attempt to demonstrate, that Righthaven has made a "repeated practice" of filing and voluntarily dismissing lawsuits with prejudice only after inflicting substantial defense fees on each defendant. *AeroTech,* 110 F.3d at 1528.  In fact, the Defendants fail to identify *a single, additional lawsuit* filed by Righthaven in which the matter was voluntarily dismissed with prejudice in a manner similar to the scenario described by the Tenth Circuit in *AeroTech*.  While Righthaven has prudently used Rule 41(a)(2) as a mechanism for concluding many of its copyright actions, these filings have been the result of agreeable resolutions reached between the parties (contrary to the extensive, excessively litigious briefing presently before the Court). *See, e.g., Righthaven LLC v. Hyde Park Communications, Inc.,* (D. Nev.) 2:10-cv-01064-HDM-RJJ (Docket No. 7-0) ("Righthaven and Hyde Park have agreed to settle the matter by a written agreement.").  Specifically, as of the date of this filing, Righthaven has reached mutually agreeable resolutions with approximately 107 copyright defendants by way of written settlement agreement. (Mangano Decl. ¶ 7.) Significantly, this entire volume of Rule 41(a)(2) case resolution filings is entirely incomparable to the chain of briefing in the instant matter.  Thus, it is not surprising that the Defendants' Opposition fails to highlight even a single instance (let alone multiple instances) in which Righthaven has improperly invoked 41(a)(2) as a procedural mechanism.  Thus, the "repeated practice" standard established in *AeroTech* – and the legal consequences associated therewith – simply do not apply.[2]

---

[2] Nowhere in the *AeroTech* opinion is there any indication that the plaintiff had made "a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." *AeroTech,* 110 F.3d at 1528.  As such, it is not surprising that the Tenth Circuit ultimately affirmed the lower court's decision to deny the award of attorneys' fees sought by the defendant. *Id.* at 1529.

Perhaps realizing the complete absence of legal authority to support their position, the Defendants conclude their exceptional circumstances argument with a self-serving, vituperative rant against Righthaven's business model. (Defs.' Opp'n 20: 11-19)  This attack, laden with unsubstantiated, inaccurate factual assertions, has virtually no bearing on the applicable "exceptional circumstances" analysis and is noticeably detached (from a conceptual argument standpoint) from the Defendants' *AeroTech* discussion in the Opposition's preceding paragraph. Moreover, the attacking statements leveled by the Defendants are as vexatious as they are illogical.  For instance, the Defendants condemn Righthaven for filing suit without first "providing notice and opportunity to take down alleged infringements." (Defs.' Opp'n 20:11-12) However, this argument demonstrates the analytically shallow nature of the Defendants' position, as the Defendants have failed to consider the following factors: (1) an infringer who will knowingly receive a take-down notice prior to facing legal repercussions has no incentive to refrain from infringing until such time as notice is received; (2) copyright owners incur substantial costs and expend substantial time and resources locating and monitoring Internet-based infringements, and said owners should not be prohibited from attempting to recoup said losses (while simultaneously protecting their copyright) from those engaging in infringement; and (3) the provisions of the Digital Millennium Copyright Act ("DMCA") offer protection to DMCA-compliant website operators, including the right to receive take-down notices prior to facing suit, but non-compliant websites are not afforded said right. *See* 17 U.S.C. § 512(c) *et seq*. It is revealing that the Defendants fail to discredit – or even briefly address – any of these squarely relevant (and seemingly obvious) considerations.

The Defendants' claim that Righthaven uses "scare tactics," such as including an allegation for statutory damages in the pleadings, is similarly unfounded. (Defs.' Opp'n 20:13-15)  This conclusory characterization of Righthaven's intent ignores the fact that the Copyright Act expressly provides for statutory damages in the amount of $150,000.00 per infringement whenever the court finds that the infringement was committed willfully. 17 U.S.C. § 504(c)(2). In this regard, Righthaven's basis for alleging willful infringement in its copyright actions is both uncomplicated and jurisprudentially supported: willfulness is established because the infringer

intentionally (and personally) posted the infringement, *or* willfulness is established because the infringer operates a forum-based website and the infringer is "willfully blind to facts that would have caused a reasonable person to know . . . that they were infringing valid copyrights." *Lanard Toys Ltd. v. Novelty, Inc.,* 375 Fed. Appx. 705, 711 (9th Cir. 2010); *see also N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 252-53 (2d Cir. 1992) (willful infringement "may be inferred from the defendant's conduct.").  As such, Righthaven has a good-faith, legally well-founded basis for alleging willful infringement in its copyright actions, thereby validating Righthaven's inclusion of a statutory damages allegation under Section 504(c)(2).  This proposition is by no means diminished simply due to the Defendants' legally unfounded, conclusory attacks on Righthaven's underlying intent.

## 2. *This Lawsuit is Neither Frivolous on its Merits Nor the Product of Bad Faith Litigation*

No reasonable argument can be made that the instant lawsuit, or the sum of Righthaven's lawsuits, are legally frivolous.[3]  Similarly, there is no evidence whatsoever – notwithstanding the Defendants' bald-faced, unsupported assertions – that Righthaven is, or has ever been, motivated by bad faith with respect to any of its legal filings.  Consequently, neither of these accusations, both of which have been contrived by the Defendants for the apparent purpose of garnering public ill-will towards Righthaven, provides a legitimate basis for imposing attorneys' fees as a condition of dismissal.

While the extreme brevity of the Defendants' discussion concerning frivolity and bad faith is – standing alone – admittedly an insufficient reason to summarily dismiss the Defendants' argument, the complete absence of legal authority cited in support of the Defendants' position is far more revealing. (*See* Defs.' Opp'n 20-21)  The Defendants open their argument by accurately referring to a 1963 decision rendered by the District of Maryland,

---

[3] In this regard, it is noteworthy that the Defendants fail to address the string of recent opinions rendered by this Court, summarized on pages 20-22 of Righthaven's 41(a)(2) Motion.  These opinions clearly reflect that this Court has confirmed the legitimacy and legal sufficiency of numerous Righthaven copyright suits substantially similar to the present action.  In doing so, this Court has arguably established, *ipso facto,* that said lawsuits are, at least at the pleading level, neither frivolous nor objectively unreasonable. (*See* Mot., pgs. 20-22)

wherein the court found that attorneys' fees can be awarded upon a showing of frivolity or the plaintiff's bad faith. *Lawrence v. Fuld,* 32 F.R.D. 329,331-32 (D. Md. 1963). (Defs.' Opp'n 20:23-24)  Thereafter, the Defendants thereafter fail to cite even a single piece of additional authority to substantiate the notion that the merits of this case, or Righthaven's intentions at the time of filing, rise to such an objectionable level.

The Defendants similarly fail to cite any pertinent facts demonstrating either the frivolity of Righthaven's suit or Righthaven's bad-faith approach to this litigation.  Instead, the Defendants futilely note that Righthaven's allegation concerning the seizure of the Democratic Underground domain name as part of its prayer for relief (*see* Compl. – "Prayer for Relief") is both "contrary to the Copyright Act" and an "obvious effort to instill fear of consequences completely disproportionate to the issues in the case." (Defs.' Opp'n 20-21)  However, this self-serving, false characterization of law and fact is entirely unsupported and falls well short of the legal standards for frivolity and bad faith.  A claim is frivolous only if it is "legally and factually baseless from an objective perspective." *United States Philips Corp. v. Synergy Dynamics International, LLC,* 2006 WL 3453225, at *6 (D. Nev. Nov. 28, 2006); *see also Molski v. Rapazzini Winery,* 400 F. Supp. 2d 1208, 1210 (N.D. Cal. 2005) (a claim is frivolous if it is lacking a legal basis or legal merit).  Moreover, attorneys' fees are rarely awarded on the basis of bad faith litigation; awarding such fees on grounds of bad faith "is punitive and should be imposed only in exceptional cases." *Rodriguez v. United States,* 542 F.3d 704, 711 (9th Cir. 2008) (internal quotation marks omitted).  At present, the exactitude of the Defendants' partial copying and unauthorized republication of the same (*see* Compl. Ex. 1-2.) directly undermines any contention that Righthaven's instant copyright claim is frivolous or that Righthaven's filing was motivated by bad faith.  Consequently, an award of attorneys' fees would be utterly inappropriate on this basis.

**3.**   ***Application of the Present Facts to the § 505 Analysis Clearly Demonstrates the Impropriety of a Potential Fee Award***

14

a.  **_The Defendants' Degree of Success Must Be Viewed in its Proper
Context_**

The Defendants' argument concerning the first fair use factor, the degree of success
obtained, fails to venture beyond the analytical surface.  The Defendants brashly conclude that,
because they will be the recipient of a judgment on the merits as a result of Righthaven's
dismissal efforts, that "[t]his factor strongly supports an award of attorneys' fees." (Defs.' Opp'n
22:6-7)  In this regard, the Defendants act as if this matter has been fully litigated and that
Righthaven is only choosing to concede this suit after having exhaustively explored each and
every possible theory of liability.  This is not the case.  Righthaven's dismissal efforts are not the
result of extensive briefing, voluminous discovery, oral argument before the Court, or the
presentment of evidence.  Contrarily, the Defendants' success in this matter is largely technical –
the product of Righthaven's decision to avoid bringing duplicative, simultaneous appeals before
the Ninth Circuit out of respect for judicial economy.  In that vein, the Defendants are unable to
explain the clear distinction between the instant case and cases such as _Pythagoras Intellectual
Holdings, LLC v. Stegall,_ 2009 WL 3245000 (C.D. Cal. Oct. 5, 2009), wherein the court found
that "the degree of success obtained by Defendants was high" because the plaintiffs' claims had
been dismissed after nearly two years of expensive, ongoing litigation. _Id._ at 1-2.  By
comparison, the instant matter was initiated less than six months ago, with Righthaven's original
dismissal Motion being filed just three months after the filing of the Complaint (filed August 10,
2010).  Accordingly, the degree of the Defendants' success is undoubtedly offset – at least in
significant part – by these unique circumstances, precluding an award of attorneys' fees on these
grounds.

b.  **_The Instant Infringement Claim, Like All Righthaven Infringement
Claims, is Both Meritorious and Objectively Reasonable_**

The Defendants assert a variety of arguments in an attempt to attack the reasonableness
of Righthaven's underlying infringement claim, none of which effectively advance the
Defendants' position.  Ironically, the Defendants' discussion on this topic highlights a number of
issues which actually strengthen Righthaven's legal footing.  Additionally, the Defendants

conspicuously fail to address significant portions of Righthaven's argument concerning objective reasonableness.  Such omissions should not go unnoticed.

The Defendants' arguably backward approach to the § 505 analysis is exemplified by the Defendants' statements about fair use.  While the merits of the fair use issue have been substantially briefed by both parties in separate filings, Righthaven did briefly touch upon fair use in the original 41(a)(2) Motion. (Mot. 2:24-26)  discussing this reference, the Defendants shortsightedly assert that "[o]n fair use, Righthaven asserts only that 'reasonable minds may differ,' while failing to present any analysis of fair use that might 'reasonably' support its claim . . ." (Defs.' Opp'n 22:15-17)  This statement is baffling.  Apparently, absent any substantiating authority, the Defendants are of the belief that Righthaven was required to provide the Court with a full-fledged fair use analysis as part of its 41(a)(2) dismissal Motion, and that Righthaven's failure to do so thereby evidences the objective unreasonableness of the underlying infringement lawsuit.  Moreover, the Defendants' contention completely ignores the venerably established rule that the burden for demonstrating fair use rests with the defendant, not the plaintiff. *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 (1994).  This burden did not somehow shift to Righthaven simply because Righthaven moved for voluntary dismissal, thus the Defendants' argument in this regard is entirely without merit.

The Defendants' reference to Righthaven's obligations under Rule 11 further aids Righthaven's cause.  The Defendants mention that Righthaven, as a party to "179 cases," is repeatedly "subject to Rule 11's pre-filing inquiry." (Defs.' Opp'n 22:12-13)  The Defendants are apparently reminding Righthaven that the instant filing, along with all other Righthaven other copyright suits, are subject to Rule 11 standards of diligence. *See* Fed. R. Civ. P. 11(b).  However, such a reminder is entirely unnecessary: in the approximately 202 copyright suits filed by Righthaven over the past year, ***not a single Rule 11 motion has been served upon Righthaven by any copyright defendant***, nor has any such motion been filed with the Court. (Mangano Decl. ¶¶ 8-9.)  In fact, it is Righthaven, and not Righthaven's defendants, who has had a proper basis for moving for Rule 11 sanctions. *See, e.g., Righthaven LLC v. Dr. Shezad Malik Law Firm, P.C.,* (D. Nev.) 2:10-cv-0636-RLH-RJJ (Docket No. 13-0).  In sum, the Defendants'

16

reference to Rule 11 in the Opposition has the ultimate effect of further strengthening Righthaven's legal standing with the Court.

Finally, the Defendants fail to rebut, in any capacity, the presumption of reasonableness afforded to Righthaven arising from Righthaven's copyright ownership.  Specifically, the Defendants summarily ignore the line of cases cited in Righthaven's Motion establishing that a copyright action supported by the plaintiff's presentment of copyright ownership (via copyright registration or application) is generally construed by the court as an objectively reasonable, colorable claim for infringement. *See Twentieth Century Fox Film Corp. v. Streeter,* 438 F. Supp. 25 1065, 1075 (D. Ariz. 2006); *National Nonwovens, Inc. v. Consumer Products Enterprises, Inc.,* 397 F. Supp. 2d 245, 260 (D. Mass. 2005).  As Righthaven has specifically alleged, and attached proof of: (1) Righthaven's copyright ownership in and to the infringed literary work, (Compl. ¶¶ 10,28.) (Compl. Ex. 4.) and (2) the Defendants' infringement of Righthaven's copyrighted work, (Compl. ¶ 13.) (Compl. Ex. 3.) Righthaven has unequivocally established at least a *colorable,* objectively reasonable claim for infringement.  The Defendants' failure to address this principle speaks for itself.

### c.  <u>The Defendants' Arguments on Motivation and Deterrence are Unsubstantiated, Speculative, and Vexatious</u>

Much like the preceding argument on reasonableness, the Defendants' arguments concerning Righthaven's allegedly improper motive and the need for deterrence are entirely predicated on wholly unsupported, self-serving factual assertions.  This demeaning, offensive (and arguably malicious) approach has no place in the current lawsuit and should be left out of the Court's final analysis.

The Defendants' strategy here is not surprising given the unduly hostile nature of the preceding arguments.  However, as has been the case with the Defendants' entire Opposition, the absence of factual support and applicable legal authority ultimately manifests, leaving nothing more than an unpersuasive bed of insults.  For instance, the Defendants almost immediately begin by stating that Righthaven's "motive is purely mercenary," and that Righthaven "has built

a business model with Stephens Media around bringing hundreds of strike suits for use of excerpts or copies of *LVRJ* articles, month after month." (Defs.' Opp'n 23:17-19)  Revealingly, the Defendants do not expound upon, or explain in any capacity, the manner in which Righthaven's motive is "mercenary."  Nor do the Defendants legitimately explain, beyond asserting false characterizations, the manner in which any of Righthaven's lawsuits have been improper.  Similarly, the Defendants do not justify the legitimacy of their attacks in the face of the numerous favorable rulings Righthaven has received from this Court concerning a variety of legal issues raised in other, substantially similar Righthaven-initiated infringement cases. (*See* Mot. 20-22)

EFF's erroneous attacks continue throughout this argument.  The Defendants go on to state that Righthaven is "armed with statutory remedies," and that said remedies "overwhelm the actual value of the uses challenged." (Defs.' Opp'n 23:19-20)  This accusation exemplifies the absurdity of the Defendants' position.  First, the "statutory remedies" references by the Defendants are those which have been ***specifically afforded by Congress via the Copyright Act***. *See* 17 U.S.C. § 504 *et seq*. Furthermore, the Defendants are apparently acting as expert witnesses by offering definitive conclusions regarding the present and future value of the infringed work's reproduction.  Realistically, the Defendants have no idea as to the past, present, or future value of infringed work, including its potential for licensing.  However, the Defendants instead choose to make vexatious, conclusory assertions despite having no factual or legal basis for doing so.  The Court should ignore such thoughtless arguments.

### 4.   *Independent Adjudication of the Counterclaim is Wholly Unnecessary and Would Needlessly Perpetuate this Litigation*

There is simply no need to perpetuate this litigation, regardless of the Defendants' entirely superfluous counterclaim.  The Defendants' counterclaim is predicated a single claim for relief: declaration of no copyright infringement. (*See* Defs.' Answer and Counterclaim ¶¶ 184-196.)  In other words, the relief sought by the Defendants is the exact inverse of the relief sought by Righthaven in the original Complaint. (*See* Compl. ¶¶ 34-46.)  However, Righthaven's

41(a)(2) Motion clearly, and **unequivocally**, establishes that the infringement alleged by Righthaven did not occur for the purposes of this lawsuit. (*See* Mot. 3:9-11) (awarding the Defendants "a full and final judgment on the merits in the Defendants' favor, just as if the Defendants were to prevail at trial.").  As such, the relief sought by the Defendants in the counterclaim has been fully achieved by way of Righthaven's voluntary dismissal.  In that vein, the legal theory upon which that conclusion was reached is rendered entirely irrelevant.  Accordingly, the Defendants' unfounded contention that they are nevertheless entitled to a full adjudication of each defense theory proffered in the pleadings would be nothing more than an exercise in redundancy and a substantial waste of judicial resources (and legal expenses).  ***Righthaven is conceding the exact judgment sought by the Defendants.  It is remarkable that the Defendants find this to be insufficient.***

Furthermore, the Defendants' assertion that absent further adjudication, Righthaven will be free to re-initiate this lawsuit is undermined by the doctrine of *res judicata*.  This doctrine, one founded upon claim preclusion, prohibits litigation in a subsequent suit of any claim that was raised (or could have been raised) in a preceding suit. *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir.1997).  *Res judicata* is applicable "whenever there is: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001).  This principle is directly applicable at present.  First, an identity of claims is clearly established as any action for infringement of the subject work would clearly rise from the same, or a substantially similar, nucleus of operative facts.[4]  Second, assuming this matter is voluntarily dismissed with prejudice, a final judgment on the merits in the Defendants' favor will have been reached. *See, e.g., Smoot v. Fox,* 340 F.2d 301, 303 (6th Cir. 1964).  Finally, as Righthaven is the copyright owner of the infringed work, (*see* Compl. ¶ 28.) any future lawsuit for infringement against the Defendants would, once again, be a Righthaven-initiated suit, thereby reestablishing identity (and/or privity) between Righthaven and the Defendants.

---

[4] "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir.2000).

Barring a separate and distinct act of infringement by the Defendants, Righthaven will have no basis upon which it can re-assert the instant lawsuit in the future, as doing so would be precluded by the doctrine of *res judicata*.  As such, the Defendants' theory regarding Righthaven's ability to re-file is both factually and legally erroneous.  Ultimately, there is no basis upon which the Defendants' can reasonably argue that they are entitled to the Court's independent adjudication of the pending counterclaim.  Both Righthaven's infringement claim, and the mirroring counterclaim needlessly filed by the Defendants, will be fully resolved upon the Court's dismissal of this matter with prejudice.

## II.   <u>CONCLUSION</u>

For the reasons set forth above, Righthaven respectfully requests that this Court grant Righthaven's Motion for Voluntary Dismissal with Prejudice pursuant to the terms outlined in Righthaven's Proposed Order of Dismissal, (Mot. Ex. 1.) including the full adjudication or dismissal of the pending Counterclaim (Docket No. 13-0).

Dated this 7th day of January, 2011.

RIGHTHAVEN LLC


By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701

*Attorneys for Plaintiff/Counterdefendant
Righthaven LLC*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of Righthaven LLC and that on this 7TH day of January, 2011, I caused the **REPLY IN SUPPORT OF PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE AND ADJUDICATION OR DISMISSAL OF COUNTERCLAIM** to be served by the Court's CM/ECF system to the following:

Chad A. Bowers, Esq.
CHAD A. BOWERS LTD.
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
E-mail: bowers@lawyer.com

Laurence F. Pulgram, Esq.
FENWICK & WEST
555 California Street, 12th Floor
San Francisco, California 94104
E-mail: lpulgram@fenwick.com

Kurt Opsahl, Esq.
Corynne McSherry, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
E-mail: kurt@eff.org
E-mail: corynne@eff.org

*Attorneys for Defendant/ Counterclaimant*

J. Colby Williams, Esq.
CAMPBELL AND WILLIAMS
700 South Seventh Street
Las Vegas, Nevada 89101
E-mail: jcw@campbellandwilliams.com

*Attorneys for Counterdefendant Stephens Media LLC*

By:     /s/ Raisha Y. Gibson
          An employee of Righthaven LLC

21