SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven LLC*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff Righthaven LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>                    Plaintiff,<br><br>v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 2:10-cv-01356-RLH-RHH<br><br>**RIGHTHAVEN LLC'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

Righthaven LLC ("Righthaven") hereby opposes Democratic Underground, LLC's and David Allen's (collectively referred to herein as "Defendants") cross-motion for summary judgment. (Doc. # 45.)  This opposition is based on the pleadings and papers on file in this

action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Righthaven regretfully is compelled to file this opposition to Defendants' cross-motion for summary judgment.  As the Court is aware, Righthaven has sought by way of motion to voluntarily dismiss its claims in this case with prejudice.  Prior to doing so, Righthaven hoped such a result could be amicably obtained through an agreement with opposing counsel.  Those efforts proved fruitless, thereby compelling Righthaven to ask this Court's assistance in obtaining such a result.

Righthaven's dismissal efforts, which are intended to reduce the burden on this Court and to lessen the parties' fees and costs incurred in prosecuting this action, have shockingly been met with litigation tactics designed to foster a polar opposite result in the hope of burdening Righthaven with an award of unprecedented attorneys' fees and costs.   For instance, as Righthaven was seeking dismissal with prejudice of its claims in this case, Defendants nevertheless escalated the litigation by asserting a redundant counterclaim against Righthaven and also naming Stephens Media, LLC ("Stephens Media") as a third-party defendant. Defendants continued their apparent ploy to run up unnecessary litigation costs by having two attorneys from the Electronic Frontier Foundation ("EFF") along with two attorneys from the San Francisco-based firm Fenwick & West LLP participate in the Federal Rule of Civil Procedure 26(f) case conference (the "Early Case Conference") despite the fact that a draft scheduling order was circulated days in advance of the conference.  Similarly, during a recent meet and confer conference regarding the simple issue concerning the perceived insufficiency of Righthaven's identification of persons with knowledge, and despite Defendants' own disclosure of all Righthaven personnel, four attorneys participated in the conference – two from Fenwick & West LLP, one attorney from EFF, and Defendants' local counsel.  It would not be surprising to learn that this 10-minute conference call will likely result in $500 to $1,000 in attorneys' fees

allegedly incurred in the defense of an action that Righthaven has asked this Court to dismiss with prejudice.

Defendants' litigation cost driven agenda is further evidenced by the fact that they have propounded requests for admission, interrogatories and requests for production of documents to Righthaven and to Stephens Media despite the pending motion for voluntary dismissal with prejudice.  Defendants have also sought to increase the costs of litigation in this matter by raising such trivial matters as the sufficiency of Righthaven's and Stephens Media's initial disclosures despite Defendants having already disclosed virtually every Righthaven-affiliated person and virtually every key Stephens Media employee or former employee as persons with knowledge.  While Righthaven has advised that it has complied with its initial disclosure requirements, and it has along with Stephens Media supplemented said disclosures, Defendants continue to maintain that they are entitled to preclude witnesses and evidence at the inception of this case and despite having full knowledge of the information that they maintain should be barred from use.  Simply put, this is just another hamster wheel Defendants have elected to force Righthaven to traverse in order to increase their litigation costs given the pending motion for voluntary dismissal.

Defendants' apparent intent to inflict an unnecessary and clearly inflated attorneys' fees award in this case aside, there is simply no basis to grant their cross-motion for summary judgment at this stage of the proceedings – and particularly in view of Righthaven's pending motion for voluntary dismissal with prejudice.  Adjudication of Defendants' cross-motion for summary judgment is replete with material issues of fact and neither party has secured any discovery responses in this case as of this filing.  Furthermore, while Righthaven has sought Defendants' substantive comments with regard to a proposed stipulated protective order circulated shortly after the Early Case Conference, Defendants have failed to do so.  Thus, while Defendants have propounded discovery requests, their own inaction clearly precludes Righthaven's and Stephens Media's ability to produce materials that would be entitled to designation under the stipulated protective order.  Of course, having now pointed out this obvious oversight by Defendants' counsel, it is fully anticipated that they will make every effort to take corrective action by the time they file their response to Righthaven's opposition and, in

doing so, somehow cast aspersions in an attempt to make Righthaven responsible for their own neglect.

The lack of written discovery efforts aside, the fact remains that no depositions have been taken in this case. Righthaven's justification for delaying such expensive and time-consuming efforts is readily apparent in the fact that it is seeking authorization to voluntarily dismiss its claims against Defendants with prejudice. Obviously, should Righthaven's motion be denied, it will proceed with the normal course of discovery and explore the numerous material issues of fact raised by Defendants' cross-motion for summary judgment. Righthaven's discovery efforts in this regard would necessarily include, but certainly not be limited to, deposing David Allen and Kurt Opsahl, both of whom have submitted declarations in support of Defendants' cross-motion for summary judgment. Mr. Allen's and Mr. Opsahl's sworn statements in support of Defendants' cross-motion for summary judgment were only placed at-issue upon their submission to this Court. It is axiomatic that Righthaven, at a minimum, should be entitled to examine the veracity of Mr. Allen's and Mr. Opsahl's previously unknown, sworn statements by way of deposition prior to the adjudication of Defendants' cross-motion for summary judgment, which is nothing more than an additional procedural mechanism for increasing litigation costs with the hope that an award of attorneys' fees and costs will financially cripple Righthaven.

Even in the event the Court were somehow persuaded that substantive discovery was unnecessary to rule on the cross-motion for summary judgment, Righthaven maintains that the host of admissions made in the Defendants' submission precludes granting the relief requested. As discussed below, Defendants cannot escape copyright infringement liability by turning a blind eye toward the conduct of 165,000 users and some 52 million posts since 2001. Defendants admittedly own and maintain, which necessarily includes an obligation to monitor content, posted on the Democratic Underground's website (the "Website"). Defendants' claimed inability to do so because it only employees three people is laughable.

Likewise, Righthaven asserts that Defendants are not entitled to a finding of fair use as a matter of law at this stage of the proceedings. Once again, setting obvious material issues of fact aside, Defendants have admitted sufficient facts in support of their cross-motion for summary

judgment to warrant its denial on fair use grounds.  The Court, however, need not resolve these thorny issues if Righthaven's motion for voluntary dismissal with prejudice is granted and Defendants' redundant and unnecessary counterclaim is dismissed.

## II.    APPLICABLE STANDARDS

Entry of summary judgment is only proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  This burden is only discharged through the submission of admissible evidence in support of the claimed basis for relief.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990).  As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Id.* at 256.

Federal Rule of Civil Procedure 56 ("Rule 56") must be construed "with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury."  *Celotex Corp.,* 477 U.S. at 327.  Summary judgment is proper only after there is an adequate opportunity for discovery.  *Id.* at 326.  This is particularly true when evidence is presented by a moving party in support of summary judgment on matters exclusively within their possession or based on their knowledge and there has not been an adequate opportunity to conduct discovery on those matters.  *See Anderson,* 477 U.S. at 257.  In fact, "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted as a matter of course."

*International Raw Materials, Ltd. v. Stauffer Chem. Co.,* 898 F.2d 946, 949 (3d 1990)(internal quotation marks omitted).

Application of the foregoing standards in view of the record before the Court demonstrates that summary judgment is unwarranted based on Defendants' arguments that no volitional act of infringement was committed or that their infringing conduct falls within the Fair Use exception.   This conclusion is particularly warranted given the fact discovery has yet to be conducted in this case by Righthaven and Righthaven has sought to voluntarily dismiss its claims with prejudice.

## III.   ARGUMENT

### A.   *Defendants' Cross-Motion for Summary Judgment is Rendered Moot if the Court Grants Righthaven's Motion to Voluntarily Dismiss its Claims With Prejudice.*

As discussed above, Defendants' desire to drive up the costs is readily apparent from their contentious litigation tactics and over-staffing of this action with high-priced, Northern California-based counsel.  For instance, in one simple meet and confer conference regarding the alleged insufficiency of Righthaven's identification of persons with knowledge in this case, four attorneys were apparently compelled to participate – two associates from Fenwick & West LLP, one senior attorney from EFF, and Defendants' local counsel.  Defendants' contentious litigation tactics are further evidenced by their filing of the cross-motion for summary judgment on the very Complaint that Righthaven has asked this Court to voluntarily dismiss with prejudice.  (*See* Doc. # 45 at 11:20-21, "Defendants cannot be liable on this Complaint on at least two grounds . . . .")

It is without question that if the Court dismisses Righthaven's Complaint with prejudice, as requested, the cross-motion for summary judgment is rendered moot, thereby obviating the need to evaluate the myriad of genuine issues of material fact presented in the cross-motion and also eliminating the need to undertake the factually intensive fair use analysis advanced by Defendants.  This result is compelled regardless of whether Stephens Media's motion to dismiss is granted or whether Defendants' counterclaim is allowed to survive despite its redundant and unnecessary nature.  Defendants have moved for summary judgment as to the claims for relief

6

alleged in Righthaven's Complaint. (*See* Doc. # 45 at 11:20-21.) If Righthaven's Complaint is dismissed, the operative pleading being challenged by Defendants' cross-motion for summary judgment no longer exists. Defendants would have secured a dismissal with prejudice and all of the accompanying claim and issue preclusion benefits from this adjudication. Moreover, as pointed out in Righthaven's and Stephens Media's other filings, the non-infringement finding sought in Democratic Underground's counterclaim would be unnecessary, thereby highlighting the redundancy of their allegations. Accordingly, if Righthaven's request for a voluntary dismissal of its claims with prejudice is granted, Defendants' cross-motion for summary judgment is rendered moot and need not be substantively adjudicated by the Court under a Rule 56 analysis.

    **B.**   ***Genuine Issues of Material Fact Raised by Defendants' Own Evidence and Upon Which Righthaven Has Not Had an Opportunity to Conduct Discovery Precludes Entry of Summary Judgment.***

    The evidence submitted in support of the cross-motion clearly raises genuine issues of material fact that precludes entry of summary judgment in Defendants' favor – particularly given that the vast majority of Defendants' evidence is information exclusively within their knowledge and is submitted via declaration from persons who have not been deposed are directed to issues upon which discovery has not been conducted. Entry of summary judgment is inappropriate under such circumstances. *See Anderson,* 477 U.S. at 257. As such, Righthaven is being "railroaded" by an unquestionably premature motion for summary judgment.[1] *See Celotex Corp.,* 477 U.S. at 326.

---

[1] Righthaven will be filing a separate request for an opportunity to conduct discovery on these issues under Federal Rule of Civil Procedure 56(d)(formerly codified under "Rule 56(f)). Such a request need not be filed concurrently with this opposition, but must be made prior to any hearing on the motion for summary judgment. *See Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990).

### 1. Genuine Issues of Material Fact Concerning Defendants' Assertion That They Did Not Commit a "Volitional Act" Sufficient to Establish Infringement.

As discussed below, Righthaven disagrees with Defendants' interpretation of the standards necessary to establish the existence of a volitional act for direct infringement liability. However, even under Defendants' skewed interpretation of the volitional act requirement, genuine issues of material fact are clearly raised by the evidence relied upon in support of the cross-motion for summary judgment.

For instance, Defendants allege that they "operate the DU Website, upon which a third party posted allegedly infringing material . . ." and such conduct does not state a claim for direct copyright infringement." (Doc. # 45 at 18:10-11.)  Defendants further argue that "neither Democratic Underground nor David Allen engaged in any volitional act to display the Excerpt." (*Id.* at 18:12-14.)  As support for these propositions, Defendants rely on the declaration of Mr. Allen.  (*Id.*)  As the Court is aware, Mr. Allen can only competently testify with regard to matters within his personal knowledge and that would otherwise be admissible under the Federal Rules of Evidence.  *See Orr v. Bank of America, NT & SA,* 285 F.3d 764, 778 (9th Cir. 2002); *Bank Melli v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir. 1995).  Despite these standards, Defendants ask the Court to accept that no volitional acts were taken through Mr. Allen's declaration.  However, Mr. Allen's own declaration states that "[i]n addition to myself, two other individuals work for Democratic Underground." (Doc. # 48 at 2  ¶ 4.)  No other corroborating evidence is submitted by these two other individuals in support of the cross-motion.  No evidence, beyond the acts personally taken by Mr. Allen may be competently considered by the Court in deciding the cross-motion.  Moreover, the lack of supporting evidence from the other two unnamed employees certainly supports and inference that such testimony may differ from that offered by Mr. Allen.

Likewise, Defendants' evidence raises genuine issues of material fact with regard to the acts taken by them and whether such actions constitute volitional conduct on their part. Defendants are simply wrong on this point.  Liability for direct infringement is justified where an

Internet-based defendant has downloaded copyright protected material, stored such material on its computer server, and displayed such material on its own website. *Cf. CoStar Group, Inc v. LoopNet, Inc.,* 373 F.3d 544, 551 (4th Cir. 2004)("*CoStar*"); *accord Religious Tech. Ctr v. Netcom On-Line Communication Servs., Inc.,* 907 F.Supp. 1361, 1368, (N.D. Cal. 1995)("*Netcom*")(holding that an Internet access provider's temporary storage of copyrighted materials on its system and the failure to "maintain an archive of files for its users" did not support direct infringement liability). Such volitional acts by the owner and operator of a website far exceed the merely transitory conduct engaged in by Internet Service Providers (or "ISP"), which merely act as conduits of information like "a traditional telephone company when it transmits the contents of users' conversations." *Id.* Ironically, Defendants' own counsel of record in this case, Kurt B. Opsahl, argued unsuccessfully in *CoStar Group* that ISP should be found liable for direct infringement. Thus, not only should he be intimately familiar with the decision in *CoStar,* which extensively examined the decision in *Netcom*, but he should also readily appreciate that the case before this Court is does not involve an ISP – it involves Defendants who own the website on which the Work was displayed without authorization and they own the server upon which the unauthorized copy of the Work is stored and continues to be stored.

Righthaven's interpretation of direct infringement liability is without precedent. For instance, virtually identical direct liability theories were acknowledged by the court in *Playboy Enter., Inc. v. Webbworld, Inc.,* 991 F. Supp. 543 (N.D. Tex. 1997)("*Playboy*"). The court in *Playboy* found the defendant liable for direct copyright infringement despite a claim that it served "as a mere conduit between subscribers and adult-orientated newsgroups." *Id.* at 552. In doing so, the defendant in *Playboy* relied on the decision in *Netcom*, just as the Defendants do so in this action. *Id.* In rejecting the defendant's arguments, the court reasoned that "Webbworld did not function as a passive conduit of unadulterated information." *Id.* "On the contrary, Webbworld exercised total dominion and control over the content of its site and product offered to its clientele." *Id.* Such activity clearly supported sufficient volitional conduct for direct infringement liability despite the holding in *Netcom* and in view of the defendant's hosting,

control and maintenance of the website accused of displaying the infringing content.  This is precisely the facts before this Court.  It should not be misled or otherwise erroneously convinced that this is an action seeking to impose direct infringement liability on an ISP or other passive conduit Internet provider.

Righthaven's statements in this regard are not without evidentiary support.  In fact, the Court need look no further than Mr. Allen's declaration for this evidence, which at a minimum raise genuine issues of material facts with regard to the "volitional" nature of Defendants' conduct.  For instance, Mr. Allen admits that "Democratic Underground maintains a website at www.democraticunderground.com (the "DU Website")."  (Doc. # 48 at 2 ¶ 2.)  Thus it is beyond question that Defendants own the website at-issue in this case.  Mr. Allen additionally states under penalty of perjury that "[t]he DU website is devoted to ***disseminating*** and discussing political news and progressive politics."  (*Id.* at 2 ¶ 3.)   Mr. Allen further acknowledges that user contributions are stored on "a database on the server that hosts the DU Website."  (*Id.* at 2 ¶ 7.) Mr. Allen also admits that "Democratic Underground hosts the posted material . . . in order to make that material available to other users upon those users' request."  (*Id.* at 2 ¶ 3.)  Moreover, Mr. Allen concedes that reader requests for material, such as the unauthorized copy of the Work, is "sent to the server."  (*Id.* at 2 ¶ 8.)  The request is then sent by software which retrieves "the contents of that post from the database . . . ."  (Doc. 48 at 3 ¶ 8.)  Mr. Allen also avers that he had never read the unauthorized copy of the Work prior to the lawsuit.  (*Id.* at 4 ¶ 21.)

The genuine issues of material fact raised by Mr. Allen's declaration establish that Defendants are not entitled to summary judgment on their argument that they did not engage in a volitional act sufficient to support liability.  *See Gospel Missions of America v. City of Los Angeles,* 298 F.3d 1099, 1103 (moving party's own evidence established summary judgment could not be granted).  Moreover, as discussed above, these facts clearly demonstrate that this case falls well outside the ISP-based decisions in *CoStar* and *Netcom*.  First, there is absolutely no evidence presented in support of the cross-motion for summary judgment that Defendants operate an ISP.  In fact, the evidence before the Court unquestionably establishes, through Mr. Allen's sworn declaration: (1) that Defendants own the Website responsible for posting the

unauthorized copy of the Work; (2) the unauthorized copy of the Work was and is stored on their server; (3) the unauthorized copy of the Work is accessed by users through software which interacts with and retrieves a copy of the unauthorized Work from their server.  All of these acts rise well beyond the mere conduit actions of the ISP discussed in *CoStar* and in *Netcom*.  In fact, they fall squarely within the decision reached in *Playboy*. While Righthaven maintains that these fact support a finding that Defendants' can and should be held directly liable for copyright infringement, at a the very least these facts give rise to genuine issues of material fact which preclude entry of summary judgment.

Further supporting denial of Defendants' cross-motion is the fact that Righthaven has not engaged in discovery in this action.  While it is likely that Defendants will attempt to clarify the above evidentiary statements made by Mr. Allen in response to Righthaven's arguments, Righthaven has not deposed Mr. Allen at this stage of the proceedings.  This underlying reason for this decision should be readily apparent by the fact that Righthaven has sought to voluntarily dismiss this action with prejudice.  Mr. Allen's deposition, if required because the Court denies Righthaven's request to voluntarily dismiss the Complaint, would certainly seek to explore the numerous factual issues which are not addressed in his declaration.  For instance, what is the "software" and the corresponding functionality employed by Defendants' operation of the DU Website which is referred to in Mr. Allen's declaration?  (Doc. # 48 at 3 ¶ 8.)  Was this software purchased by Defendants?  Was this software designed by or for Defendants or otherwise modified for use in connection with the DU Website?  Similar genuine issues of material fact exist with regard to the "server" used by Defendants.  (*Id.* at 2-3 ¶¶ 7-8.)  What acts do take to Defendants their maintain their server and the content stored thereon?  Do Defendants have any internal procedures or reporting mechanisms which track content accessed by users from their server?   While Mr. Allen states that he never read or otherwise viewed the Work before this case was filed, there is absolutely no evidence before the Court about whether his other two employees had viewed the Work when it was posted, whether they had received any user notices that it may infringe the copyright holder's rights, or, if so, whether they failed to take corrective action.  In this regard, it should be noted that Mr. Allen does not identify these other two

employees in his declaration.  Moreover, Defendants' own initial disclosures only identify Mr. Allen and one other employee – thus leaving the identity of the third person a complete mystery at this stage of the proceedings.  All of these unexplored discovery issues directly relate to the genuine issue of material fact asserted by Defendants – that their did not engage in sufficient volitional acts to justify direct copyright infringement liability.  Absent providing Righthaven an opportunity to explore these issues, entry of summary judgment is inappropriate.

### 1.  *Genuine Issues of Material Fact Concerning Defendants' Assertion That Their Infringing Conduct Qualifies as Fair Use.*

Defendants alternatively ask this Court to enter summary judgment in their favor by finding their infringing conduct qualifies as fair use.   Once again, Defendants' own evidence submitted in support of their motion support its denial, either through the existence of genuine issues of material fact or due to Righthaven's inability to explore these genuine issues of material fact through discovery.

Fair use is an affirmative defense upon which a defendant bears the burden of proof and the burden of persuasion.  *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1158 (9th Cir. 2007).  "In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Anderson,* 477 U.S. at 254.  As explained by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"):

> "Fair use is a mixed question of law and fact.  If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."

*Los Angeles News Serv. v. KCAL-TV Channel 9,* 108 F.3d 1119, 1120 (9th Cir. 1997)(quoting *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1150 (9th Cir. 1986)).

Further complicating entry of summary judgment in fair use cases is that the Court's inquiry is not controlled by a bright line test.  Specifically, when a copyright defendant asserts the affirmative defense of fair use, the district court must consider the following factors: "(1) the

purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the work as a whole; and (4) the effect of the use upon the potential market for the work or the value of the work." *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001) (internal quotation marks omitted); *see also* 17 U.S.C. § 107. The fair use doctrine requires a "case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577 (1994). Courts are required to consider and weigh all four factors when conducting a fair use analysis. *Id.* Conducting such an analysis as a matter of law requires that controlling facts be presumed or admitted. *See Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir. 1986). Here, Defendants' evidence gives rise to numerous issues of material fact that preclude entry of summary judgment in their favor on the issue of fair use.

### a.    The purpose and character of use raises genuine issues of material fact.

Turning to the first factor in the fair use analysis, which calls for consideration of "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). In considering the purpose and character of the use, courts must determine whether the alleged infringing publication, when comparatively viewed with the copyrighted work, "merely replaces the object of the original creation or instead adds a further purpose or different character." *Napster, Inc.,* 239 F.3d at 1015. Stated differently, the "purpose and the character of use" factor involves resolving the question as to "whether the allegedly fair use was 'transformative,' *i.e.*, whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d 924, 938 (9th Cir. 2002) (*quoting Campbell,* 510 U.S. at 579). This inquiry has a wide-ranging impact on the fair use analysis: "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579.

To begin with, Defendants utilized the unauthorized copy of the Work for the exact same purpose as the source publication – to inform members of the public about politically related

issues.  This is, according to Mr. Allen's sworn declaration, the precise nature and purpose of the Democratic Underground's website.  (Doc. # 48 at 2 ¶ 2.)  Thus, Defendants' use of the work was not "transformative," but rather sought to replace information that could have rightfully been obtained from the Work in the source publication.  These similar purposes – between that of the source publication's dissemination of the Work and the Defendants' display of the unauthorized version on the Website – at a minimum raises a genuine issue of material fact as to this aspect of the first fair use factor's analysis.

Further demonstrating the impropriety of summary judgment, Defendants' own evidence clearly reveals the unauthorized copy of the work was used for a commercial purpose.  Mr. Allen readily admits that "[t]he DU Website is supported, in part, by advertising revenue generated by display of advertising on the site." (Doc. # 48 at 2 ¶ 6.)  He also acknowledges that "[t]he DU Website currently has more than 165,000 registered users . . ." all of which are undoubtedly exposed to advertising contained on the site and which Defendants undoubtedly tout to advertisers when setting rates for placing an advertisement on the site.  (*Id.* at 2 ¶ 5.)  Mr. Allen further admits that "approximately 565 views . . ." of the unauthorized Work occurred during the "92 days it was posted and available at the DU Website." (*Id.* at 4 ¶ 16.)  While Defendants attempt to minimize the commercial use related to the unauthorized posting of the Work, it nevertheless was commercial use.  Moreover, for purposes of deciding the cross-motion, this conclusion can be reached despite Righthaven's inability to conduct discovery given the procedural posture of this case.

Even in view of Democratic Underground's reliance on advertising revenue and the admitted exposure to such advertisements by the considerable viewers of the unauthorized Work, , the Ninth Circuit has nevertheless held that a "[d]irect economic benefit is not required to demonstrate a commercial use." *See Napster, Inc.,* 239 F.3d at 1015.  In other words, in the context of fair use, "monetary gain is not the sole criterion . . ." *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) ("*Worldwide Church*")(emphasis added).  Instead, the threshold for commercial use can be satisfied if the defendant's use of the infringed work generates good will for, and promotes, the defendant's

14

underlying operation. *See Free Republic I,* 1999 WL 33644483, at *15-16 (finding of fair use is supported by "the fact that defendants' web page is enhanced by use of the articles, and that [sic] fact that the copying assists in generating support, both financial and non-financial, for their operation"). This concept is directly applicable at present.

Logic dictates that the Defendants' display of the Work's politically-related content on the Website directly enhances the Website's purpose, helps generate interest in the Democratic Underground's purpose, potentially leads to new members/viewers of the Website, and likely results in increased advertising revenues generated by the ad banners contained on the Website. Thus, even if the Court were to accept that only a marginal financial benefit was received by Defendants based on the uncontested declaration of Mr. Allen, there still exists ample issues of material fact that support a finding of commercial use, thereby justifying denial of the cross-motion for summary judgment. Further supporting this conclusion is the fact that Righthaven has yet to depose Mr. Allen in this case or the other Democratic Underground employee disclosed by Defendants in their initial disclosures. Moreover, Defendants have not even disclosed the identity of the third employee as required under Federal Rule of Civil Procedure 26(f). Accordingly, significant genuine issues of material fact exist which preclude entry of summary judgment – particularly given the obvious need to conduct substantive discovery in the event the Court decides to deny Righthaven's request to voluntarily dismiss its Complaint with prejudice. This requirement aside, Righthaven maintains that the record before the Court weighs against a finding of fair use as to the first factor.

> **b.      *The nature of the copyrighted work is not amenable to summary judgment.***

The second factor in the fair use analysis calls for consideration of "the nature of the copyrighted work." 17 U.S.C. § 107(2). This factor "turns on whether the work is informational or creative." *Worldwide Church,* 227 F.3d at 1118. Righthaven asserts that this factor weighs strongly against a finding of fair use, or at a minimum raises a genuine issue of material fact, because Defendants copied the Work without authorization and the subject matter was clearly subject to copyright protection.

As a news article, the Work is admittedly based on fact.  However, the manner in which the Work's content is structured and articulated demonstrates considerable creativity and effort undertaken by the author in bringing the material to print.  Furthermore, regardless of the Work's arguably factual nature, the Defendants' copying of the Work is not somehow exempted from liability.

The Defendants are not permitted to commit blatant copyright infringement simply because the Work's highly expressive attributes are coupled with substantial factual content.  The "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers, Inc.,* 471 U.S. at 547.  Moreover, written news articles reflect the reporter's creative endeavors in compiling a piece for dissemination. *Los Angeles Times v. Free Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000) ("*Free Republic II*").  As noted by the court in *Free Republic II,* "a news reporter must determine which facts are significant and recount them in an interesting and appealing manner." *Id.*

Defendants attempt to traverse the clear mandates of copyright protection by referring the Court to the decision reached by Judge Hicks in the *Realty One* case.  (Doc. # 45 at 21:15-17.)  As argued vehemently in Righthaven's submissions to this Court, Judge Hicks' decision was in error. Quite simply, Judge Hicks may have concluded that the material at-issue in that case was factual in nature.  That said, fair use is a case-by-case analysis. *Campbell,* 510 U.S. at 577.  Defendants have undertaken absolutely no substantive analysis of the material misappropriated by them other than to direct this Court to Judge Hicks' determination in a separate proceeding involving a completely different copyrighted work.  If the Court were to adopt such reasoning, then any literary work based entirely or in part on the factual recitation of an author would fail to meet the requirements of the second fair use analysis prong.  Righthaven submits that Defendants' argument in this regard not only misstates the law, but it serves to eviscerate the rights afforded to all who engage in the creation of copyright protectable literary works.  Accordingly, Righthaven submits that Defendants have failed to establish that the second fair use factor weighs in favor of a fair use finding – particularly given the procedural posture of this

case, in which Righthaven has elected not to engage in discovery due to its pending voluntary motion to dismiss with prejudice.

>          c.          *The amount and substantiality of the Work taken does not*
>                      *support a finding of fair use amenable to disposition by summary*
>                      *judgment.*

The third factor examined under a fair use analysis requires the Court to consider "the amount and substantiality of the portion used in related to the copyrighted work as a whole."  *See* 17 U.S.C. § 107(2).  Here, Defendants ask the Court to employ at bright line test under this factor – that 10% replication of a copyrighted literary work is entitled to a finding of fair use.  (Doc. # 45 at 22:10-23:4.)  This is neither the law nor does it justify entry of summary judgment in favor of Defendants given the record before the Court.

To begin with, fair use is a case-by-case analysis. *Campbell,* 510 U.S. at 577.  While Defendants attempt to construct a bright line rule based on cited authority that anywhere between 4.3% and 8% have been afforded fair use protection, it simply does not follow that this means all copyrighted literary works within these arbitrary parameters warrant fair use protection.  (*See* Doc. # 45 at 22:18-26.)  Similarly, Defendants' citation to Judge Hicks' decision in *Realty One*, which involved the unauthorized replication of over 25% of a literary work, fails to establish a bright line test amenable to summary judgment in this case.  (*Id.* at 22:27-23:4.)  To employ such an analysis would run completely contrary to established precedent and unnecessarily subject this Court to reversal on appeal.

To begin with, Defendants have cited absolutely no authority which stands for the proposition that the amount of misappropriated literary content in this case warrants fair use protection as a matter of law.  Certainly given the number of lawyers defending this action, at least one would have uncovered a case that definitively foreclosed Righthaven's right of recovery if such a case existed.  In view of no such controlling authority, and in further view of the inquiry mandated by case law, Righthaven asserts that the Court must look at the content of the work taken without authorization in view of its content as a whole.  That said, the Untied States Copyright Office has advised in Circular 21 entitled "Reproduction lf Copyrighted Works

by Educators and Librarians", which would seem presumptively entitled to fair use protection, that unauthorized replication of 10% of a literary work may be deemed unacceptable.  (Mangano Decl. Ex. 2 at 6.)  The same 10% threshold is set forth with regard to the unauthorized replication of non-performance related copyrighted works used for educational purposes.  (*Id.* at 7.)

The United States Copyright Office's publication aside, Judge Hicks' decision in *Realty One* cannot support entry of summary judgment in favor of Defendants in this case.  With regard to the amount of copyrighted material misappropriated in *Realty One*, Judge Hicks relied on the decision in *Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d 924 (9th Cir. 2002)("*CBS*") to so conclude that insufficient material was replicated by the defendant in *Realty One* to justify a finding of infringement in view of the fair use doctrine.  Simply put, and with all deference, Judge Hicks' reliance on *CBS* for this proposition was wrong.  The Ninth Circuit determined in *CBS* that, despite only a few second of the Reginald Denny beating was used by the defendants, the amount and substantiality factor was neutral.  *CBS Broad., Inc.,* 305 F.3d at 941.  Thus, not only was a bright line test not established in *CBS*, but Judge Hicks' apparent reasoning that the work at-issue in that case failed to warrant such protection clearly does not entitle Defendants to a finding that the third fair use analysis factor weighs in their favor. Simply put, aside from their citation to other cases, which do not involve the degree of replication before this Court, and their citation to Judge Hicks' apparent erroneous rationale in *Realty One*, Defendants have offered no evidence, competent or otherwise, which would weigh in favor of a fair use finding as to the third factor.  This is particularly true given the complete lack of discovery undertaken by Righthaven in view of its pending motion for voluntary dismissal with prejudice.

### *d.   The fourth fair use factor is not amenable to summary judgment.*

The fourth factor examined under a fair use analysis requires the Court to consider "the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  As the owner of the copyrighted Work, Righthaven is entitled to a presumption of market harm in light of the commercial elements associated with the Defendants' infringement. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984)("*Sony Corp.*").  In view of this

presumption and in further view of the commercial nature of Defendants' misappropriation of the Work, summary judgment is completely inappropriate.

As discussed above, the commercial elements surrounding the Defendants' unauthorized display of the Work on the Democratic Underground's website, and the commercial elements of the Website in general, are such that material impairment of the Work's market is presumed. (Doc. # 48 at 2 ¶¶ 5-6, at 4 ¶ 16.)  In *Sony Corp.*, the Supreme Court explained that "[i]f the intended *use* is for commercial gain, that likelihood [of market harm] may be presumed." *Sony Corp.,* 464 U.S. at 451.  As discussed earlier, Defendants' admittedly received web traffic related to their unauthorized display of the Work.  While discovery has not been able to be conducted in the extent of this benefit, the Website does unquestionably derive revenue from advertisement placed on the Website.  Moreover, as also discussed above, posting of the infringing copy of the Work resulted in a commercial advantage by offering the Work free of charge to those visiting the Website.  While subject to discovery, this commercial advantage certainly fostered hopes of attracting support for Defendants' cause and which could additionally result in the organization receiving credibility and goodwill beyond monetary donations of membership revenue. *Cf. Worldwide Church,* 227 F.3d at 1118.  In view of the commercial nature of Defendants' misappropriation of the Work, the Court is compelled, at a minimum, to presume impairment of the Work's market and conclude that the fourth factor weighs against a finding of fair use. *See Sony Corp.*, 464 U.S. at 451.  Accordingly, given the procedural posture of this case, Defendants are not entitled to entry of summary judgment given the record before the Court.

IV.   **CONCLUSION**

For the foregoing reasons, Righthaven maintains that disposition of Defendants' cross-motion for summary judgment is unnecessary should the Complaint be dismissed with prejudice. Alternatively, Righthaven maintains that significant and genuine issues of material fact exist which preclude entry of summary judgment in favor of Defendants – particularly given the procedural posture of this case and in view of Righthaven electing not to engage in otherwise unnecessary discovery given the pending motion to dismiss with prejudice.

1          Righthaven additionally requests the Court enter such relief as it deems just and

2    appropriate in view of the record before it in this action.

3

4          Dated this 7th day of January, 2011.

5

6                              SHAWN A. MANGANO, LTD.

7                              By: /s/ Shawn A. Mangano

8                              SHAWN A. MANGANO, ESQ.
                          Nevada Bar No. 6730

9                              shawn@manganolaw.com
                          9960 West Cheyenne Avenue, Suite 170

10                             Las Vegas, Nevada  89129-7701
                          Tel: (702) 304-0432

11                             Fax: (702) 922-3851

12                             J. CHARLES COONS, ESQ.
                          Nevada Bar No. 10553

13                             ccoons@righthaven.com
                          *Assistant General Counsel at Righthaven LLC*

14                             Righthaven LLC
                          9960 West Cheyenne Avenue, Suite 210

15                             Las Vegas, Nevada 89129-7701
                          (702) 527-5900

16                             *Attorneys for Plaintiff Righthaven LLC*

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 7th day of December, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.


SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
*Assistant General Counsel at Righthaven LLC*
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

*Attorneys for Plaintiff Righthaven LLC*