**EXHIBIT "2"**

Case 2:10-cv-01356-RLH -GWF   Document 60   Filed 01/10/11   Page 2 of 12



# Copyright
United States Copyright Office

# Reproduction of Copyrighted Works by Educators and Librarians

Many educators and librarians ask about the fair use and photocopying provisions of the copyright law. The Copyright Office cannot give legal advice or offer opinions on what is permitted or prohibited. However, we have published in this circular basic information on some of the most important legislative provisions and other documents dealing with reproduction by librarians and educators.

Also available is the 1983 Report of the Register of Copyrights on Library Reproduction of Copyrighted Works (17 U.S.C. 108). The Report, seven appendixes, and other related materials can be purchased from the National Technical Information Service (NTIS), U.S. Department of Commerce, 5285 Port Royal Road, Springfield, VA 22161. Go to the NTIS website at *www.ntis.gov*. For further information, call NTIS at 1-800-553-6847 or (703) 605-6000.

The 1988 five-year Report of the Register of Copyrights on Library Reproduction of Copyrighted Works is also available from NTIS.

## A. Introductory Note

### The Subjects Covered in This Booklet

The documentary materials collected in this circular deal with reproduction of copyrighted works by educators, librarians, and archivists for a variety of uses, including:

- Reproduction for teaching in educational institutions at all levels and
- Reproduction by libraries and archives for purposes of study, research, interlibrary exchanges, and archival preservation.

The documents reprinted here are limited to materials dealing with reproduction. Under the copyright law, reproduction can take either of two forms:

- The making of *copies*: by photocopying, making microform reproductions, videotaping, or any other method of duplicating visually-perceptible material and
- The making of *phonorecords*: by duplicating sound recordings, taping off the air, or any other method of recapturing sounds.

The copyright law also contains various provisions dealing with importations, performances, and displays of copyrighted works for educational and other noncommercial purposes, but they are outside the scope of this circular. You can view and download the statute from the Copyright Office website at

C 21.1109

*www.loc.gov*. To purchase a copy, go to *http://bookstore.gpo.gov* and search for Circular 92. For information about specific provisions, write to:

*Library of Congress*
*Copyright Office-COPUBS*
*101 Independence Avenue SE*
*Washington, DC 20559-6304*

**A Note on the Documents Reprinted**

The documentary materials in this booklet are reprints or excerpts from six sources:

1 **The Copyright Act of October 19, 1976.** This is the copyright law of the United States, effective January 1, 1978 (title 17 of the *United States Code*, Public Law 94-553, 90 Stat. 2541).

2 **The Senate Report.** This is the 1975 report of the Senate Judiciary Committee on S. 22, the Senate version of the bill that became the Copyright Act of 1976 (S. Rep. No. 94-473, 94th Cong., 1st Sess., November 20 (legislative day November 18, 1975)).

3 **The House Report.** This is the 1976 report of the House of Representatives Judiciary Committee on the House amendments to the bill that became the Copyright Act of 1976 (H.R. Rep. No. 94-1476, 94th Cong., 2d Sess., September 3, 1976).

4 **The Conference Report.** This is the 1976 report of the "committee of conference on the disagreeing votes of the two Houses on the amendments of the House to the bill (S. 22) for the general revision of the Copyright Law" (H.R. Rep. No. 94-1733, 94th Cong., 2d Sess., September 29, 1976).

5 **The Congressional Debates.** This booklet contains excerpts from the *Congressional Record* of September 22, 1976, reflecting statements on the floor of Congress at the time the bill was passed by the House of Representatives (122 *Cong. Rec.* H 10874-76, daily edition, September 22, 1976).

6 **Copyright Office Regulations.** These are regulations issued by the Copyright Office under section 108 dealing with warnings of copyright for use by libraries and archives (37 *Code of Federal Regulations* §201.14).

Items 2 and 3 on this list—the 1975 Senate Report and the 1976 House Report—present special problems. On many points the language of these two reports is identical or closely similar. However, the two reports were written at different times, by committees of different Houses of Congress, on somewhat different bills. As a result, the discussions on some provisions of the bills vary widely, and on certain points they disagree.

The disagreements between the Senate and House versions of the bill itself were resolved when the Act of 1976 was finally passed. However, many of the disagreements as to matters of interpretation between statements in the 1975 Senate Report and in the 1976 House Report were left partly or wholly unresolved. It is therefore difficult in compiling a booklet such as this to decide in some cases what to include and what to leave out.

The House Report was written later than the Senate Report, and in many cases it adopted the language of the Senate Report, updating it and conforming it to the version of the bill that was finally enacted into law. Thus, where the differences between the two Reports are relatively minor, or where the discussion in the House Report appears to have superseded the discussion of the same point in the Senate Report, we have used the House Report as the source of our documentation. In other cases we have included excerpts from both discussions in an effort to present the legislative history as fully and fairly as possible. Anyone making a thorough study of the Act of 1976 as it affects librarians and educators should not rely exclusively on the excerpts reprinted here but should go back to the primary documentary sources.

**B. Exclusive Rights in Copyrighted Works**

*1. Text of Section 106*

**NOTE:** The following is a reprint of the entire text of section 106 of title 17, *United States Code*, as amended in 1995 and 2002.

**§ 106 · Exclusive rights in copyrighted works**

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and

other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

## 2. Excerpts from House Report on Section 106

**NOTE:** The following excerpts are reprinted from the House Report on the new copyright law (H.R. Rep. No. 94-1476, pages 61–62). The text of the corresponding Senate Report (S. Rep. No. 94-473, pages 57–58) is substantially the same.

### Section 106. Exclusive Rights in Copyrighted Works

### General scope of copyright

The five fundamental rights that the bill gives to copyright owners—the exclusive rights of reproduction, adaptation, publication, performance, and display—are stated generally in section 106. These exclusive rights, which comprise the so-called "bundle of rights" that is a copyright, are cumulative and may overlap in some cases. Each of the five enumerated rights may be subdivided indefinitely and, as discussed below in connection with section 201, each subdivision of an exclusive right may be owned and enforced separately.

The approach of the bill is to set forth the copyright owner's exclusive rights in broad terms in section 106, and then to provide various limitations, qualifications, or exemptions in the 12 sections that follow. Thus, everything in section 106 is made "subject to sections 107 through 118," and must be read in conjunction with those provisions.

• • •

### Rights of reproduction, adaptation, and publication

The first three clauses of section 106, which cover all rights under a copyright except those of performance and display, extend to every kind of copyrighted work. The exclusive rights encompassed by these clauses, though closely related, are independent; they can generally be characterized as rights of copying, recording, adaptation, and publishing. A single act of infringement may violate all of these rights at once, as where a publisher reproduces, adapts, and sells copies of a person's copyrighted work as part of a publishing venture. Infringement takes place when any one of the rights is violated: where, for example, a printer reproduces copies without selling them or a retailer sells copies without having anything to do with their reproduction. The references to "copies or phonorecords," although in the plural, are intended here and throughout the bill to include the singular (1 U.S.C. §1).

Reproduction.—Read together with the relevant definitions in section 101, the right "to reproduce the copyrighted work in copies or phonorecords" means the right to produce a material object in which the work is duplicated, transcribed, imitated, or simulated in a fixed form from which it can be "perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." As under the present law, a copyrighted work would be infringed by reproducing it in whole or in any substantial part, and by duplicating it exactly or by imitation or simulation. Wide departures or variations from the copyrighted work would still be an infringement as long as the author's "expression" rather than merely the author's "ideas" are taken. An exception to this general principle, applicable to the reproduction of copyrighted sound recordings, is specified in section 114.

"Reproduction" under clause (1) of section 106 is to be distinguished from "display" under clause (5). For a work to be "reproduced," its fixation in tangible form must be "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." Thus, the showing of images on a screen or tube would not be a violation of clause (1), although it might come within the scope of clause (5).

### C. Fair Use

### 1. Text of Section 107

**NOTE:** The following is a reprint of the entire text of section 107 of title 17, *United States Code* as amended in 1990 and 1992.

### § 107 · Limitations on exclusive rights: Fair use

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use

made of a work in any particular case is a fair use the factors to be considered shall include —

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

### 2. Excerpts from House Report on Section 107

NOTE: The following excerpts are reprinted from the House Report on the new copyright law (H.R. Rep. No. 94-1476, pages 65–74). The discussion of section 107 appears at pages 61–67 of the Senate Report (S. Rep. No. 94-473). The text of this section of the Senate Report is not reprinted in this booklet, but similarities and differences between the House and Senate Reports on particular points will be noted below.

#### a. House Report: Introductory Discussion on Section 107

NOTE: The first two paragraphs in this portion of the House Report are closely similar to the Senate Report. The remainder of the passage differs substantially in the two Reports.

*Section 107. Fair Use*

**General background of the problem**
The judicial doctrine of fair use, one of the most important and well-established limitations on the exclusive right of copyright owners, would be given express statutory recognition for the first time in section 107. The claim that a defendant's acts constituted a fair use rather than an infringement has been raised as a defense in innumerable copyright actions over the years, and there is ample case law recognizing the existence of the doctrine and applying it. The examples enumerated at page 24 of the Register's 1961 Report, while by no means exhaustive, give some idea of the sort of activities the courts might regard as fair use under the circumstances: "quotation of excerpts in a review or criticism for purposes of illustration or comment; quotation of short passages in a scholarly or technical work, for illustration or clarification of the author's observations; use in a parody of some of the content of the work parodied; summary of an address or article, with brief quotations, in a news report; reproduction by a library of a portion of a work to replace part of a damaged copy; reproduction by a teacher or student of a small part of a work to illustrate a lesson; reproduction of a work in legislative or judicial proceedings or reports; incidental and fortuitous reproduction, in a newsreel or broadcast, of a work located in the scene of an event being reported."

Although the courts have considered and ruled upon the fair use doctrine over and over again, no real definition of the concept has ever emerged. Indeed, since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts. On the other hand, the courts have evolved a set of criteria which, though in no case definitive or determinative, provide some gauge for balancing the equities. These criteria have been stated in various ways, but essentially they can all be reduced to the four standards which have been adopted in section 107: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."

These criteria are relevant in determining whether the basic doctrine of fair use, as stated in the first sentence of section 107, applies in a particular case: "Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."

The specific wording of section 107 as it now stands is the result of a process of accretion, resulting from the long controversy over the related problems of fair use and the reproduction (mostly by photocopying) of copyrighted material for educational and scholarly purposes. For example, the reference to fair use "by reproduction in copies or phonorecords or by any other means" is mainly intended to make clear that the doctrine has as much application to photocopying and taping as to older forms of use; it is not intended to give these kinds of reproduction any special status under the fair use provision or to sanction any reproduction beyond the normal and reasonable limits of fair use.

Similarly, the newly-added reference to "multiple copies for classroom use" is a recognition that, under the proper circumstances of fairness, the doctrine can be applied to reproductions of multiple copies for the members of a class.

The Committee has amended the first of the criteria to be considered—"the purpose and character of the use"—to state explicitly that this factor includes a consideration of "whether such use is of a commercial nature or is for non-profit educational purposes." This amendment is not intended to be interpreted as any sort of not-for-profit limitation on educational uses of copyrighted works. It is an express recognition that, as under the present law, the commercial or non-profit character of an activity, while not conclusive with respect to fair use, can and should be weighed along with other factors in fair use decisions.

### General intention behind the provision

The statement of the fair use doctrine in section 107 offers some guidance to users in determining when the principles of the doctrine apply. However, the endless variety of situations and combinations of circumstances that can rise in particular cases precludes the formulation of exact rules in the statute. The bill endorses the purpose and general scope of the judicial doctrine of fair use, but there is no disposition to freeze the doctrine in the statute, especially during a period of rapid technological change. Beyond a very broad statutory explanation of what fair use is and some of the criteria applicable to it, the courts must be free to adapt the doctrine to particular situations on a case-by-case basis. Section 107 is intended to restate the present judicial doctrine of fair use, not to change, narrow, or enlarge it in any way.

### b. House Report: Statement of Intention as to Classroom Reproduction

NOTE: The House Report differs substantially from the Senate Report on this point.

#### (i) *Introductory Statement*

#### Intention as to classroom reproduction

Although the works and uses to which the doctrine of fair use is applicable are as broad as the copyright law itself, most of the discussion of section 107 has centered around questions of classroom reproduction, particularly photocopying. The arguments on the question are summarized at pp. 30–31 of this Committee's 1967 report (H.R. Rep. No. 83, 90th Cong., 1st Sess.), and have not changed materially in the intervening years.

The Committee also adheres to its earlier conclusion, that "a specific exemption freeing certain reproductions of copyrighted works for educational and scholarly purposes from copyright control is not justified." At the same time the Committee recognizes, as it did in 1967, that there is a "need for greater certainty and protection for teachers." In an effort to meet this need the Committee has not only adopted further amendments to section 107, but has also amended section 504(c) to provide innocent teachers and other non-profit users of copyrighted material with broad insulation against unwarranted liability for infringement. The latter amendments are discussed below in connection with Chapter 5 of the bill.

In 1967 the Committee also sought to approach this problem by including, in its report, a very thorough discussion of "the considerations lying behind the four criteria listed in the amended section 107, in the context of typical classroom situations arising today." This discussion appeared on pp. 32–35 of the 1967 report, and with some changes has been retained in the Senate report on S. 22 (S. Rep. No. 94-473, pp. 63–65). The Committee has reviewed this discussion, and considers that it still has value as an analysis of various aspects of the problem.

At the Judiciary Subcommittee hearings in June 1975, Chairman Kastenmeier and other members urged the parties to meet together independently in an effort to achieve a meeting of the minds as to permissible educational uses of copyrighted material. The response to these suggestions was positive, and a number of meetings of three groups, dealing respectively with classroom, reproduction of printed material, music, and audio-visual material, were held beginning in September 1975.

#### (ii) *Guidelines with Respect to Books and Periodicals*

In a joint letter to Chairman Kastenmeier, dated March 19, 1976, the representatives of the Ad Hoc Committee of Educational Institutions and Organizations on Copyright Law Revision, and of the Authors League of America, Inc., and the Association of American Publishers, Inc., stated:

> *You may remember that in our letter of March 8, 1976 we told you that the negotiating teams representing authors and publishers and the Ad Hoc Group had reached tentative agreement on guidelines to insert in the Committee Report covering educational copying from books and periodicals under Section 107 of H.R. 2223 and S. 22, and that as part of that tentative agreement each side would accept the amendments to Sections 107 and 504 which were adopted by your Subcommittee on March 3, 1976.*

*We are now happy to tell you that the agreement has been approved by the principals and we enclose a copy herewith. We had originally intended to translate the agreement into language suitable for inclusion in the legislative report dealing with Section 107, but we have since been advised by committee staff that this will not be necessary.*

As stated above, the agreement refers only to copying from books and periodicals, and it is not intended to apply to musical or audiovisual works.

The full text of the agreement is as follows:

## Agreement on Guidelines for Classroom Copying in Not-For-Profit Educational Institutions with respect to books and periodicals

The purpose of the following guidelines is to state the minimum and not the maximum standards of educational fair use under Section 107 of H.R. 2223. The parties agree that the conditions determining the extent of permissible copying for educational purposes may change in the future; that certain types of copying permitted under these guidelines may not be permissible in the future; and conversely that in the future other types of copying not permitted under these guidelines may be permissible under revised guidelines.

Moreover, the following statement of guidelines is not intended to limit the types of copying permitted under the standards of fair use under judicial decision and which are stated in Section 107 of the Copyright Revision Bill. There may be instances in which copying which does not fall within the guidelines stated below may nonetheless be permitted under the criteria of fair use.

### Guidelines

*I. Single Copying for Teachers*

A single copy may be made of any of the following by or for a teacher at his or her individual request for his or her scholarly research or use in teaching or preparation to teach a class:

- A  A chapter from a book
- B  An article from a periodical or newspaper
- C  A short story, short essay or short poem, whether or not from a collective work
- D  A chart, graph, diagram, drawing, cartoon or picture from a book, periodical, or newspaper

*II. Multiple Copies for Classroom Use*

Multiple copies (not to exceed in any event more than one copy per pupil in a course) may be made by or for the teacher giving the course for classroom use or discussion; provided that:

- A  The copying meets the tests of brevity and spontaneity as defined below and,
- B  Meets the cumulative effect test as defined below and,
- C  Each copy includes a notice of copyright

### Definitions

*Brevity*

i  Poetry: (a) A complete poem if less than 250 words and if printed on not more than two pages or, (b) from a longer poem, an excerpt of not more than 250 words.

ii Prose: (a) Either a complete article, story or essay of less than 2,500 words, or (b) an excerpt from any prose work of not more than 1,000 words or 10% of the work, whichever is less, but in any event a minimum of 500 words.

[Each of the numerical limits stated in "i" and "ii" above may be expanded to permit the completion of an unfinished line of a poem or of an unfinished prose paragraph.]

iii Illustration: One chart, graph, diagram, drawing, cartoon or picture per book or per periodical issue.

iv "Special" works: Certain works in poetry, prose or in "poetic prose" which often combine language with illustrations and which are intended sometimes for children and at other times for a more general audience fall short of 2,500 words in their entirety. Paragraph "ii" above notwithstanding such "special works" may not be reproduced in their entirety; however, an excerpt comprising not more than two of the published pages of such special work and containing not more than ten percent of the words found in the text thereof, may be reproduced.

*Spontaneity*

i  The copying is at the instance and inspiration of the individual teacher, and

ii The inspiration and decision to use the work and the moment of its use for maximum teaching effectiveness are so close in time that it would be unreasonable to expect a timely reply to a request for permission.

*Cumulative Effect*

i  The copying of the material is for only one course in the school in which the copies are made.
ii Not more than one short poem, article, story, essay or two excerpts may be copied from the same author, nor more than three from the same collective work or periodical volume during one class term.
iii There shall not be more than nine instances of such multiple copying for one course during one class term.

[The limitations stated in "ii" and "iii" above shall not apply to current news periodicals and newspapers and current news sections of other periodicals.]

*III. Prohibitions as to I and II Above*

Notwithstanding any of the above, the following shall be prohibited:

A  Copying shall not be used to create or to replace or substitute for anthologies, compilations or collective works. Such replacement or substitution may occur whether copies of various works or excerpts therefrom are accumulated or reproduced and used separately.
B  There shall be no copying of or from works intended to be "consumable" in the course of study or of teaching. These include workbooks, exercises, standardized tests and test booklets and answer sheets and like consumable material.
C  Copying shall not:
   a  substitute for the purchase of books, publishers' reprints or periodicals;
   b  be directed by higher authority;
   c  be repeated with respect to the same item by the same teacher from term to term.
D  No charge shall be made to the student beyond the actual cost of the photocopying.

>    Agreed March 19, 1976.
>    Ad Hoc Committee on Copyright Law Revision:
>       By Sheldon Elliott Steinbach.
>    Author-Publisher Group:
>    Authors League of America:
>       By Irwin Karp, Counsel.
>    Association of American Publishers, Inc.:
>       By Alexander C. Hoffman,
>       Chairman, Copyright Committee.

*(iii) Guidelines with Respect to Music*

In a joint letter dated April 30, 1976, representatives of the Music Publishers' Association of the United States, Inc., the National Music Publishers' Association, Inc., the Music Teachers National Association, the Music Educators National Conference, the National Association of Schools of Music, and the Ad Hoc Committee on Copyright Law Revision, wrote to Chairman Kastenmeier as follows:

> *During the hearings on H.R. 2223 in June 1975, you and several of your subcommittee members suggested that concerned groups should work together in developing guidelines which would be helpful to clarify Section 107 of the bill.*
>
> *Representatives of music educators and music publishers delayed their meetings until guidelines had been developed relative to books and periodicals. Shortly after that work was completed and those guidelines were forwarded to your subcommittee, representatives of the undersigned music organizations met together with representatives of the Ad Hoc Committee on Copyright Law Revision to draft guidelines relative to music.*
>
> *We are very pleased to inform you that the discussions thus have been fruitful on the guidelines which have been developed. Since private music teachers are an important factor in music education, due consideration has been given to the concerns of that group.*
>
> *We trust that this will be helpful in the report on the bill to clarify Fair Use as it applies to music.*

The text of the guidelines accompanying this letter is as follows:

**Guidelines for Educational Uses of Music**

The purpose of the following guidelines is to state the minimum and not the maximum standards of educational fair use under Section 107 of H.R. 2223. The parties agree that the conditions determining the extent of permissible copying for educational purposes may change in the future; that certain types of copying permitted under these guidelines may not be permissible in the future, and conversely that in the future other types of copying not permitted under these guidelines may be permissible under revised guidelines.

Moreover, the following statement of guidelines is not intended to limit the types of copying permitted under the standards of fair use under judicial decision and which are stated in Section 107 of the Copyright Revision Bill. There may be instances in which copying which does not fall within the guidelines stated below may nonetheless be permitted under the criteria of fair use.

A Permissible Uses

1 Emergency copying to replace purchased copies which for any reason are not available for an imminent performance provided purchased replacement copies shall be substituted in due course.

2 For academic purposes other than performance, single or multiple copies of excerpts of works may be made, provided that the excerpts do not comprise a part of the whole which would constitute a performable unit such as a section[1], movement or aria, but in no case more than 10 percent of the whole work. The number of copies shall not exceed one copy per pupil.[2]

3 Printed copies which have been purchased may be edited or simplified provided that the fundamental character of the work is not distorted or the lyrics, if any, altered or lyrics added if none exist.

4 A single copy of recordings of performances by students may be made for evaluation or rehearsal purposes and may be retained by the educational institution or individual teacher.

5 A single copy of a sound recording (such as a tape, disc, or cassette) of copyrighted music may be made from sound recordings owned by an educational institution or an individual teacher for the purpose of constructing aural exercises or examinations and may be retained by the educational institution or individual teacher. (This pertains only to the copyright of the music itself and not to any copyright which may exist in the sound recording.)

B Prohibitions

1 Copying to create or replace or substitute for anthologies, compilations or collective works.

2 Copying of or from works intended to he "consumable" in the course of study or of teaching such as workbooks, exercises, standardized tests and answer sheets and like material.

3 Copying for the purpose of performance, except as in A(1) above.

4 Copying for the purpose of substituting for the purchase of music, except as in A(1) and A(2) above.

5 Copying without inclusion of the copyright notice which appears on the printed copy.

(*iv*) *Discussion of Guidelines*

The Committee appreciates and commends the efforts and the cooperative and reasonable spirit of the parties who achieved the agreed guidelines on books and periodicals and on music. Representatives of the American Association of University Professors and of the Association of American Law Schools have written to the Committee strongly criticizing the guidelines, particularly with respect to multiple copying, as being too restrictive with respect to classroom situations at the university and graduate level. However, the Committee notes that the Ad Hoc group did include representatives of higher education, that the stated "purpose of the ... guidelines is to state the minimum and not the maximum standards of educational fair use" and that the agreement acknowledges "there may be instances in which copying which does not fall within the guidelines ... may nonetheless be permitted under the criteria of fair use."

The Committee believes the guidelines are a reasonable interpretation of the minimum standards of fair use. Teachers will know that copying within the guidelines is fair use. Thus, the guidelines serve the purpose of fulfilling the need for greater certainty and protection for teachers. The Committee expresses the hope that if there are areas where standards other than these guidelines may be appropriate, the parties will continue their efforts to provide additional specific guidelines in the same spirit of good will and give and take that has marked the discussion of this subject in recent months.

c. **House Report: Additional Excerpts**

NOTE: Under the heading "Reproduction and uses for other purposes," the House Report, at pages 72–74, parallels much of the material appearing at pages 65–67 of the Senate Report under the same heading, but with some differences.

The concentrated attention given the fair use provision in the context of classroom teaching activities should not obscure its application in other areas. It must be emphasized again that the same general standards of fair use are applicable to all kinds of uses of copyrighted material, although the relative weight to be given them will differ from case to case.

• • •

A problem of particular urgency is that of preserving for posterity prints of motion pictures made before 1942. Aside from the deplorable fact that in a great many cases the only existing copy of a film has been deliberately destroyed, those

Case 2:10-cv-01356-RLH -GWF   Document 60   Filed 01/10/11   Page 10 of 12

that remain are in immediate danger of disintegration; they were printed on film stock with a nitrate base that will inevitably decompose in time. The efforts of the Library of Congress, the American Film Institute, and other organizations to rescue and preserve this irreplaceable contribution to our cultural life are to be applauded, and the making of duplicate copies for purposes of archival preservation certainly falls within the scope of "fair use."

* * *

During the consideration of the revision bill in the 94th Congress it was proposed that independent newsletters, as distinguished from house organs and publicity or advertising publications, be given separate treatment. It is argued that newsletters are particularly vulnerable to mass photocopying, and that most newsletters have fairly modest circulations. Whether the copying of portions of a newsletter is an act of infringement or a fair use will necessarily turn on the facts of the individual case. However, as a general principle, it seems clear that the scope of the fair use doctrine should be considerably narrower in the case of newsletters than in that of either mass-circulation periodicals or scientific journals. The commercial nature of the user is a significant factor in such cases: Copying by a profit-making user of even a small portion of a newsletter may have a significant impact on the commercial market for the work.

The Committee has examined the use of excerpts from copyrighted works in the art work of calligraphers. The committee believes that a single copy reproduction of an excerpt from a copyrighted work by a calligrapher for a single client does not represent an infringement of copyright. Likewise, a single reproduction of excerpts from a copyrighted work by a student calligrapher or teacher in a learning situation would be a fair use of the copyrighted work.

The Register of Copyrights has recommended that the committee report describe the relationship between this section and the provisions of section 108 relating to reproduction by libraries and archives. The doctrine of fair use applies to library photocopying, and nothing contained in section 108 "in any way affects the right of fair use." No provision of section 108 is intended to take away any rights existing under the fair use doctrine. To the contrary, section 108 authorizes certain photocopying practices which may not qualify as a fair use.

The criteria of fair use are necessarily set forth in general terms. In the application of the criteria of fair use to specific photocopying practices of libraries, it is the intent of this legislation to provide an appropriate balancing of the rights of creators, and the needs of users.

### 3. Excerpts from Conference Report on Section 107

NOTE: The following excerpt is reprinted from the Report of the Conference Committee on the new copyright law (H.R. Rep. No. 94-1733, page 70).

*Fair Use*

#### Senate bill

The Senate bill, in section 107, embodied express statutory recognition of the judicial doctrine that the fair use of a copyrighted work is not an infringement of copyright. It set forth the fair use doctrine, including four criteria for determining its applicability in particular cases, in general terms.

#### House bill

The House bill amended section 107 in two respects: in the general statement of the fair use doctrine it added a specific reference to multiple copies for classroom use, and it amplified the statement of the first of the criteria to be used in judging fair use (the purpose and character of the use) by referring to the commercial nature or nonprofit educational purpose of the use.

#### Conference substitute

The conference substitute adopts the House amendments. The conferees accept as part of their understanding of fair use the "Guidelines for Classroom Copying in Not-for-Profit Educational Institutions" with respect to books and periodicals appearing at pp. 68–70 of the House Report (H. Rept. No. 94-1476, as corrected at p. H 10727 of the *Congressional Record* for September 21, 1976), and for educational uses of music appearing at pp. 70–71 of the House report, as amended in the statement appearing at p. H 10875 of the *Congressional Record* of September 22, 1976. The conferees also endorse the statement concerning the meaning of the word "teacher" in the guidelines for books and periodicals, and the application of fair use in the case of use of television programs within the confines of a nonprofit educational institution for the deaf and hearing impaired, both of which appear on p. H 10875 of the *Congressional Record* of September 22, 1976.

### 4. Excerpts from Congressional Debates

NOTE: The following excerpts are reprinted from the *Congressional Record* of September 22, 1976, including statements by Mr. Kastenmeier (Chairman of the House Judiciary Subco

Case 2:10-cv-01356-RLH -GWF   Document 60   Filed 01/10/11   Page 11 of 12

mittee responsible for the bill) on the floor of the House of Representatives.

Mr. KASTENMEIER ... Mr. Chairman, before concluding my remarks I would like to discuss several questions which have been raised concerning the meaning of several provisions of S. 22 as reported by the House Judiciary Committee and of statements in the committee's report, No. 94-1476.

・・・

Another question involves the reference to "teacher" in the "Agreement on Guidelines for Classroom Copying in Not-for-Profit Educational Institutions" reproduced at pages 68–70 of the committee's report No. 94-1476 in connection with section 107. It has been pointed out that, in planning his or her teaching on a day-to-day basis in a variety of educational situations, an individual teacher will commonly consult with instructional specialists on the staff of the school, such as reading specialists, curriculum specialists, audio-visual directors, guidance counselors, and the like. As long as the copying meets all of the other criteria laid out in the guidelines, including the requirements for spontaneity and the prohibition against the copying being directed by higher authority, the committee regards the concept of "teacher" as broad enough to include instructional specialists working in consultation with actual instructors.

Also in consultation with section 107, the committee's attention has been directed to the unique educational needs and problems of the approximately 50,000 deaf and hearing-impaired students in the United States, and the inadequacy of both public and commercial television to serve their educational needs. It has been suggested that, as long as clear-cut constraints are imposed and enforced, the doctrine of fair use is broad enough to permit the making of an off-the-air fixation of a television program within a nonprofit educational institution for the deaf and hearing impaired, the reproduction of a master and a work copy of a captioned version of the original fixation, and the performance of the program from the work copy within the confines of the institution. In identifying the constraints that would have to be imposed within an institution in order for these activities to be considered as fair use, it has been suggested that the purpose of the use would have to be noncommercial in every respect, and educational in the sense that it serves as part of a deaf or hearing-impaired student's learning environment within the institution, and that the institution would have to insure that the master and work copy would remain in the hands of a limited number of authorized personnel within the institution, would be responsible for assuring against its unauthorized reproduction or distribution, or its performance or retention for other than educational purposes within the institution. Work copies of captioned programs could be shared among institutions for the deaf abiding by the constraints specified. Assuming that these constraints are both imposed and enforced, and that no other factors intervene to render the use unfair, the committee believes that the activities described could reasonably be considered fair use under section 107.

・・・

Mr. Chairman, because of the complexity of this bill and the delicate balances which it creates among competing economic interests, the committee will resist extensive amendment of this bill. On behalf of the committee I would urge all of my colleagues to vote favorably on S. 22.

Mr. SKUBITZ. Mr. Chairman, will the gentleman yield?

Mr. KASTENMEIER. I am happy to yield to my friend, the gentleman from Kansas.

Mr. SKUBITZ. Mr. Chairman, I thank my friend, the gentleman from Wisconsin, for yielding.

Mr. Chairman, I have received a great deal of mail from the schoolteachers in my district who are particularly concerned about section 107 — fair use — the fair use of copyrighted material. Having been a former schoolteacher myself, I believe they make a good point and there is a sincere fear on their part that, because of the vagueness or ambiguity in the bill's treatment of the doctrine of fair use, they may subject themselves to liability for an unintentional infringement of copyright when all they were trying to do was the job for which they were trained.

The vast majority of teachers in this country would not knowingly infringe upon a person's copyright, but, as any teacher can appreciate, there are times when information is needed and is available, but it may be literally impossible to locate the right person to approve the use of that material and the purchase of such would not be feasible and, in the meantime, the teacher may have lost that "teachable moment."

Did the subcommittee take these problems into consideration and did they do anything to try and help the teachers to better understand section 107?

Have the teachers been protected by this section 107?

Mr. KASTENMEIER. Mr. Chairman, in response to the gentleman's question and his observations preceding the question, I would say, indeed they have.

Over the years this has been one of the most difficult questions. It is a problem that I believe has been very successfully resolved.

Section 107 on "Fair Use" has, of course, restated four standards, and these standards are, namely: The purpose and character of the use of the material; the nature of the copyrighted work; the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and the effect of the use upon the potential market for or value of the copyrighted work.

These are the four "Fair Use" criteria. These alone were not adequate to guide teachers, and I am sure the gentleman from Kansas (Mr. Skubitz) understands that as a schoolteacher himself.

Therefore, the educators, the proprietors, and the publishers of educational materials did, at the committee's long insistence, get together. While there were many fruitless meetings, they did finally get together.

Mr. Chairman, I will draw the gentleman's attention to pages 65 through 74 in the report which contain extensive guidelines for teachers. I am very happy to say that there was an agreement reached between teachers and publishers of educational material, and that today the National Education Association supports the bill, and it has, in fact, sent a telegram which at the appropriate time I will make a part of the Record and which requests support for the bill in its present form, believing that it has satisfied the needs of the teachers:

NATIONAL EDUCATION ASSOCIATION
*Washington, D.C., September 10, 1976.*

*National Education Association urgently requests your support of the Copyright Revision bill, H.R. 2223, as reported by the Judiciary Committee. This compromise effort represents a major breakthrough in establishing equitable legal guidelines for the use of copyright materials for instructional and research purposes. We ask your support of the committee bill without amendments.*

JAMES W. GREEN
*Assistant Director for Legislation.*

Mr. SKUBITZ. Mr. Chairman, if the gentleman will yield further, then the NEA is satisfied with the language in the bill as it now stands; is that correct?

Mr. KASTENMEIER. The gentleman is correct.

Mr. SKUBITZ. Mr. Chairman, I thank the gentleman.

## D. Reproduction by Libraries and Archives

### 1. *Text of Section 108*

**NOTE:** The following is a reprint of the entire text of section 108 of title 17, *United States Code* as amended in 1992, 1998, and 2005.

### § 108 · Limitations on exclusive rights: Reproduction by libraries and archives

(a) Except as otherwise provided in this title and notwithstanding the provisions of section 106, it is not an infringement of copyright for a library or archives, or any of its employees acting within the scope of their employment, to reproduce no more than one copy or phonorecord of a work, except as provided in subsections (b) and (c), or to distribute such copy or phonorecord, under the conditions specified by this section, if —

   (1) the reproduction or distribution is made without any purpose of direct or indirect commercial advantage;

   (2) the collections of the library or archives are (i) open to the public, or (ii) available not only to researchers affiliated with the library or archives or with the institution of which it is a part, but also to other persons doing research in a specialized field; and

   (3) the reproduction or distribution of the work includes a notice of copyright that appears on the copy or phonorecord that is reproduced under the provisions of this section, or includes a legend stating that the work may be protected by copyright if no such notice can be found on the copy or phonorecord that is reproduced under the provisions of this section.

(b) The rights of reproduction and distribution under this section apply to three copies or phonorecords of an unpublished work duplicated solely for purposes of preservation and security or for deposit for research use in another library or archives of the type described by clause (2) of subsection (a), if —

   (1) the copy or phonorecord reproduced is currently in the collections of the library or archives; and

   (2) any such copy or phonorecord that is reproduced in digital format is not otherwise distributed in that format and is not made available to the public in that format outside the premises of the library or archives.

(c) The right of reproduction under this section applies to three copies or phonorecords of a published work