LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:     (415) 875-2300
Facsimile:     (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:     (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>                Plaintiff,<br><br>        v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>                Defendants. | Case No. 10-01356-RLH (GWF)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>                Counterclaimant,<br><br>        v.<br><br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>                Counterdefendants. | |

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3    INTRODUCTION AND SUMMARY ........................................................................ 1

4    ARGUMENT ........................................................................................................... 3

5    I.    SUMMARY JUDGMENT FOR DEMOCRATIC UNDERGROUND IS
           APPROPRIATE UNDER THE VOLITIONAL ACT DOCTRINE................................. 3
6
7    II.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THE EXCERPT'S
           APPEARANCE IN THE DEMOCRATIC UNDERGROUND DISCUSSION
           FORUM WAS FAIR USE ................................................................................ 6
8
9          A.    Plaintiff Raises No Genuine Issue of Material Fact As to the Purpose and
                 Character of the Use .............................................................................. 7

10         B.    Plaintiff Raises No Genuine Issue of Material Fact As to the Nature of the
                 Copyrighted Work ................................................................................. 9
11
12         C.    Plaintiff Raises No Genuine Issue of Material Fact As to the Amount and
                 Substantiality of the Work Taken ........................................................ 10

13         D.    Plaintiff Raises No Genuine Issue of Material Fact As to the Potential
                 Effect of the Use On the Market For the Work .................................... 12
14
15   III.  THERE IS NO BASIS IN THE LAW FOR RIGHTHAVEN'S DEMAND FOR
           TRANSFER OF THE DEMOCRATIC UNDERGROUND DOMAIN NAME ............. 14

16   IV.   RIGHTHAVEN IS NOT ENTITLED TO A CONTINUANCE TO TAKE
           DISCOVERY IT HAS NOT SHOWN NECESSARY OR LIKELY TO ALTER A
17         RULING ON SUMMARY JUDGMENT ............................................................ 14

18   V.    THE ISSUES RAISED IN THE MOTION FOR SUMMARY JUDGMENT
           WOULD NOT BE MOOTED BY A GRANT OF VOLUNTARY DISMISSAL ........... 16
19
20         A.    Regardless Of Voluntary Dismissal of the Complaint, the Counterclaim
                 Requires A Determination That Reposting the Article Would Be Fair Use ........ 16

21         B.    Stephens Media's Limited Consent to be Bound by This Court Does Not
                 Resolve This Litigation as to Stephens Media .................................... 17
22
     VI.   PLAINTIFF'S CLAIMS THAT DEFENDANTS HAVE MULTIPLIED THIS
23         PROCEEDING IS BOTH IRRELEVANT AND FALSE ................................................ 18

24   CONCLUSION ........................................................................................................ 20

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4
*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)............................................................................ 9, 10

5
*Anderson v. Liberty Lobby, Inc.*,
6    477 U.S. 242 (1986).......................................................................................... 5, 6

7
*Ashton-Tate Corp. v. Ross*,
    916 F.2d 516 (9th Cir. 1990)................................................................................ 15

8
*Blanch v. Koons*,
9    467 F.3d 244 (2d Cir. 2006)................................................................................... 8

10
*Brae Transp., Inc. v. Coopers & Lybrand*,
    790 F.2d 1439 (9th Cir. 1986)............................................................................... 15

11
*Broadcast Music, Inc. v. Roger Miller Music, Inc.*,
12    396 F.3d 762 (6th Cir. 2005)................................................................................. 11

13
*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)...................................................................................... *passim*

14
*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
15    508 U.S. 83 (1993)............................................................................................. 16

16
*Cartoon Network LP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)............................................................................. 4, 11

17
*CoStar Group, Inc. v. LoopNet, Inc.*,
18    373 F.3d 544 (4th Cir. 2004).......................................................................... 3, 4, 6

19
*Degussa Admixtures, Inc. v. Burnett*,
    471 F. Supp. 2d 848 (W.D. Mich. 2007) ................................................................. 3

20
*Dep't of Water and Power of the City of Los Angeles v. ABB Power T & D Co.*,
21    902 F. Supp. 1178 (C.D. Cal. 1995).......................................................................... 6

22
*Elvis Presley Enters., Inc. v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003)................................................................................. 13

23
*Family Home and Finance Ctr., Inc. v. Federal Home Loan Mortg. Corp.*,
24    525 F.3d 822 (9th Cir. 2008)................................................................................. 15

25
*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................. 6, 13

26
*Fisher v. Dees*,
27    794 F.2d 432 (9th Cir. 1986)................................................................................... 7

28

1

**TABLE OF AUTHORITIES**
**(Continued)**

2

Page(s)

3

4

*Frederick S. Wyle, Prof'l. Corp. v. Texaco, Inc.*,
   764 F.2d 604 (9th Cir. 1985)...................................................................................... 5

5

*Johnson v. Mitsubishi Digital Elecs. America, Inc.*,
   365 Fed. Appx. 830 (9th Cir. 2010) ......................................................................... 15

6

7

*Los Angeles News Serv. v. KCAL-TV Channel 9*,
   108 F.3d 1119 (9th Cir. 1997)........................................................................ 7, 10, 12

8

*Los Angeles News Serv. v. Reuters Television, Int'l.*,
   149 F.3d 987 (9th Cir. 1998)..................................................................................... 10

9

*Los Angeles News Serv. v. Tullo*,
   973 F.2d 791 (9th Cir. 1992)..................................................................................... 10

10

11

*Los Angeles Times v. Free Republic*,
   54 U.S.P.Q.2d 1453 (C.D. Cal. 2000) ("*Free Republic II*") ........................... 10, 11

12

*Los Angeles Times v. Free Republic*,
   1999 WL 33644483 (C.D. Cal. Nov. 8 1999) ("*Free Republic I*")...................... 8, 9

13

14

*Mass. Sch. of Law at Andover v. American Bar Ass'n*,
   142 F.3d 26 (1st Cir. 1998) ...................................................................................... 15

15

*Mattel, Inc. v. Walking Mt. Prods.*,
   353 F.3d 792 (9th Cir. 2003)................................................................................. 7, 14

16

17

*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................ 5, 6

18

*Mother & Father v. Cassidy*,
   338 F.3d 704 (7th Cir. 2003)...................................................................................... 3

19

20

*Nat'l Union Fire Ins. Co v. Argonaut Ins. Co.*,
   701 F.2d 95 (9th Cir. 1983)................................................................................ 2, 5, 15

21

*Nord v. Kelly*,
   474 F. Supp. 2d 1088 (D. Minn. 2007) ..................................................................... 2

22

23

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007)................................................................................. 7, 8

24

*Playboy Enters., Inc. v. Webbworld, Inc.*,
   991 F. Supp. 543 (N.D. Tex. 1997)......................................................................... 3, 4

25

26

*Qualls By and Through Qualls v. Blue Cross of California, Inc.*,
   22 F.3d 839 (9th Cir. 1994) ...................................................................................... 6

27

28

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................................... 3, 4

*Righthaven LLC v. Realty One Group, Inc.*,
    2010 U.S. Dist. LEXIS 111576 (D. Nev. Oct. 19, 2010)...................................... 10, 11, 12, 13

*Riviera v. Distribs., Inc. v. Jones*,
    517 F.3d 926 (7th Cir. 2008)........................................................................................ 3

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)...................................................................................................... 12

*State of Cal., on Behalf of the California Dept. of*
*Toxic Substances Control v. Campbell*,
    138 F.3d 772 (9th Cir. 1998)........................................................................................ 15

*Stewart v. Evans*,
    351 F.3d 1239 (D.C. Cir. 2003) .................................................................................. 2

*United States ex rel. Small Business Admin. v. Light*,
    766 F.2d 394 (8th Cir. 1985)........................................................................................ 2

*Video-Cinema Films, Inc. v. CNN, Inc.*,
    2001 U.S. Dist. LEXIS 25687 (S.D.N.Y. Nov. 28, 2001) ........................................ 13

*VISA Int'l Serv. Ass'n v. Bankcard Holders of America*,
    784 F.2d 1472 (9th Cir. 1986)...................................................................................... 15

**STATUTES**

17 U.S.C. § 107 ................................................................................................................ 7, 13

17 U.S.C. § 505 ................................................................................................................ 20

**RULES**

Fed.R.Civ.P. 26 .............................................................................................................. 7

Fed.R.Civ.P. 56(d) ............................................................................................... *passim*

Local Rule 56-1................................................................................................................ 1

**OTHER AUTHORITIES**

NIMMER ON COPYRIGHT, §13.05[A][2][a]...................................................................... 10

1

### INTRODUCTION AND SUMMARY

2       That this case should never have been brought, and that Democratic Underground should

3   never have been put to the requirement of responding to it, finds its greatest support to date in

4   Righthaven's Opposition to Defendants' Cross-Motion for Summary Judgment.[1]  Simply put,

5   Righthaven fails to identify a single material fact that is subject to genuine dispute.  In response to

6   Defendants' "Concise Statement of Facts Not Genuinely in Dispute" (Motion at 3-7)—which

7   cited the precise evidence demonstrating both lack of a volitional act and fair use—Righthaven

8   stands mute.  Righthaven has ignored its duty, under Local Rule 56-1, to provide:

9

10

11

> a concise statement setting forth ***each fact material to the disposition of the motion which the party claims is or is not genuinely in issue***, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.

12   LR 56-1 (emphasis added).  Remarkably, Righthaven provides no statement of facts at all—much

13   less identification of what it admits to be undisputed or claims is in dispute.  Accordingly, the

14   facts set forth in Democratic Underground's Motion stand unrefuted.

15       The reason no genuine factual disputes have been identified is because none exist.  On the

16   volitional act element, it is undisputed that third party Pampango, not Democratic Underground,

17   posted the Excerpt; that, as a result of automated processes and, without any action by the

18   Defendants, it appears on democraticunderground.com; and that it was taken down within two

19   days of Defendants' first knowledge of the allegations in  this lawsuit.  On the four fair use

20   factors, it is undisputed that (i) the Excerpt was posted on a discussion forum with the purpose of

21   fomenting public comment and criticism; (ii) the nature of the Article's content is self-evident,

22   and factual; (iii) an amount of less than 10% of the Article was excerpted; and (iv) no harm to the

23   value of the work has been shown.  Indeed, any evidence of harm to the value of a *Las Vegas*

24   *Review-Journal* news article would be in the possession of Righthaven and Stephens Media, yet

25

26

27

28

---

[1]  The same abbreviations and defined terms will be used in this Reply as in Democratic Underground's initial Motion.  In addition, Defendants' Cross-Motion for Summary Judgment (Dkt. 45) shall be referred to herein as "Motion," and Righthaven LLC's Opposition to Defendants' Cross-Motion for Summary Judgment (Dkt. 58) shall be referred to as "Opposition" or "Opp."  The declaration of Shawn A. Mangano In Support Of Righthaven LLC's Request For Denial Or Continuance Of Defendants' Cross-Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56(d) (Dkt. 61) shall be referred to as "Rule 56(d) Decl."

1    they have presented none.  This Motion therefore must be granted:  even Righthaven

2    acknowledges that, absent a material factual dispute, the Court determines as a matter of law

3    whether there was fair use.  Opp. at 12:19 (citing Ninth Circuit cases).

4           Instead of showing a factual dispute, Righthaven hides behind two other arguments, each

5    insufficient to preclude summary judgment.  *First*, it notes that it has not deposed the declarants

6    attesting to the undisputed facts.  Opp. at 7, 11, 15.  However, this is not a barrier, as summary

7    judgment may be granted without discovery where the facts of record reveal no basis for dispute.

8    *See, e.g., Stewart v. Evans,* 351 F.3d 1239, 1245-46 (D.C. Cir. 2003); *United States ex rel. Small*

9    *Business Admin. v. Light*, 766 F.2d 394, 397 (8th Cir. 1985); *Nord v. Kelly*, 474 F. Supp. 2d 1088,

10   1093 (D. Minn. 2007).  Simply doubting a declarant is insufficient: "neither a desire to cross-

11   examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert

12   summary judgment."  *Nat'l Union Fire Ins. Co v. Argonaut Ins. Co*., 701 F.2d 95, 97 (9th Cir.

13   1983).  The Ninth Circuit has stringently required that any party opposing summary judgment on

14   the basis of a need for discovery under Rule 56(d) specify exactly what discovery devices it

15   intends to use, what facts it expects to elicit, and how those facts would preclude summary

16   judgment.  Righthaven's untimely Rule 56(d) declaration fails to explain how any fact it expects

17   to elicit could prevent summary judgment.  See Dkt. 61.  In fact, discovery will not change

18   anything about the legal issues before this Court, as explained below.  Simply put, Righthaven

19   has identified no undiscovered fact that could have a material impact on this Motion.

20          *Second*, Righthaven attempts to mask the propriety of summary judgment by accusing

21   Defendants and the EFF of "vexatious" litigation tactics.  None of the accusations relate to the

22   legal or factual issues necessary to decide summary judgment.  Without rising to Righthaven's

23   bait, suffice it to say that the facts reflect that Defendants' efforts to defeat this meritless lawsuit

24   have been entirely appropriate, as explained in Part VI below.

25          Righthaven is no doubt vexed by the filing of a meritorious summary judgment motion.

26   But that hardly makes the Motion "vexatious," much less provides grounds to deny it.  The Court

27

28

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF CROSS-MOTION FOR                        2            CASE NO. 2:10-CV-01356-RLH (GWF)
SUMMARY JUDGMENT

1   should grant summary judgment on the Complaint in favor of Defendants.[2]

2   <u>**ARGUMENT**</u>

3   **I.    SUMMARY JUDGMENT FOR DEMOCRATIC UNDERGROUND IS**
    <u>**APPROPRIATE UNDER THE VOLITIONAL ACT DOCTRINE**</u>

4

5          There is no dispute as to all the facts necessary to determine that Defendants are not liable

6   for copyright infringement pursuant to the volitional act doctrine of the *Religious Tech. Ctr. v.*

7   *Netcom On-Line Commc'n Servs.,* 907 F. Supp. 1361 (N.D. Cal. 1995), series of cases.  Instead,

8   Righthaven's Opposition is based on its misunderstanding of the applicable law and purported

9   disputes of facts that, at best, are immaterial.

10         Righthaven relies primarily upon *Playboy Enters., Inc. v. Webbworld, Inc*., 991 F. Supp.

11  543 (N.D. Tex. 1997).  It interprets that decision to hold that the volitional act doctrine does not

12  apply outside of Internet Service Providers (ISPs) that enable access to the Internet.  Opp. at 9.

13  To the contrary, *Webbworld* did not address this question, and Righthaven's theory has been

14  flatly rejected by *Netcom* and the two Circuit Court cases that *have* considered the issue.

15         In *Netcom*, the court ruled on the liability of both Netcom, an access provider, and

16  Mr. Klemesrud, the operator of a Bulletin Board System (BBS).  A BBS is an early style of

17  Internet forum, the technological predecessor to Democratic Underground's Website.  The

18  *Netcom* court denied direct liability, holding that the "allegations against Klemesrud fail for the

19  same reason the court found that Netcom was entitled to judgment as a matter of law on the direct

20  infringement claim." *Netcom,* 907 F. Supp. at 1381.

21         *CoStar Group, Inc. v. LoopNet, Inc*., 373 F.3d 544 (4th Cir. 2004), concerned defendant

22

23

24  _____
    [2]   As stated in the Motion, Righthaven has no right to condition its voluntarily dismissal of the Complaint on
25  preclusion of Democratic Underground's assertion of its right to apply for statutorily provided attorneys' fees.  In
    response, Righthaven falsely asserts that Democratic Underground cited only one case for this proposition.  Dkt. 57
    at 7.  But the Opposition ignores both *Mother & Father v. Cassidy,* 338 F.3d 704 (7th Cir. 2003) and Judge
26  Easterbrook's persuasive explanation in *Riviera v. Distribs., Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008).  Moreover,
    Righthaven's effort to distinguish *Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp. 2d 848 (W.D. Mich. 2007), is
27  unavailing, as Righthaven merely points out factual differences of no consequence to the legal rule that a voluntary
    dismissal cannot avoid a statutory entitlement to attorneys' fees.  Should this Court agree with Defendants'
    authorities, and expressly enter dismissal of the Complaint subject to a right to apply for attorneys' fees (and without
28  the right to withdraw such dismissal), then, but only then, would this summary judgment motion be unnecessary.

LoopNet's online real estate website.[3]  Like Democratic Underground, LoopNet's website hosted content uploaded by the customers of the service, but did not provide Internet access.  LoopNet owned the website and owned the servers.  Thus, like here, *CoStar* found no infringement by a defendant who "own[s] the website on which the Work was displayed without authorization and [who owns] the server upon which the unauthorized copy of the Work is stored."  Opp. at 9:15-17 (describing Democratic Underground); *see also* Opp. at 10:9-19; Rule 56(d) Decl. ¶ 8 (summarizing other facts showing Democratic Underground did not engage in a volitional act).[4]

Likewise, in *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008), the Second Circuit rejected the argument that the *Netcom* decision should be pigeonholed to Internet access providers, agreeing with *CoStar* that the volitional act rule was derived from the Copyright Act, not the unique circumstances of the Internet.  *Id.* at 131.  Accordingly, the Second Circuit applied the *Netcom* rule to a remote digital video recording system.

Moreover, *Webbworld* is distinguishable on its facts.  First, unlike this case, the court found that Webbworld "took 'affirmative steps to cause the copies to be made.' . . . Such steps included using the ScanNews software to troll the Usenet for Webbworld's product." *Webbworld,* 991 F. Supp at 552 (quoting *Netcom,* 907 F. Supp. at 1381).  By contrast, the undisputed facts show that posts on the Democratic Underground forum are supplied by users, not gathered by Democratic Underground.  Dkt. 48, Declaration of David Allen ("Allen Decl.") ¶¶ 7-8.[5]  Moreover, Webbworld's software was specifically designed by Webbworld to cull images from Usenet newsgroups devoted to *Playboy* content, newsgroups with names like "alt.sex.playboy" or "alt.mag.playboy."  *Webbworld,* 991 F. Supp at 552-53.  Democratic Underground's Website is not designed to cull any content, much less content from the *LVRJ*.

---

[3] Righthaven is correct that Defendants' counsel Kurt Opsahl argued *CoStar v. LoopNet* before the Fourth Circuit. *See* Opp. at 9:10-17.  However, it is mistaken about the side—Mr. Opsahl represented LoopNet, who prevailed. CoStar was ably represented by Walter Dellinger III and Jonathan Hacker of O'Melveny & Myers LLP.

[4]  Righthaven cites these facts under the mistaken impression that these facts distinguish *CoStar*.  While they do not help Righthaven's legal argument, they do show that Righthaven does not dispute the facts necessary to rule on the volition issue. *See* Opp. at 10:27 (noting that the "evidence before the Court unquestionably establishes" facts that support a finding of no volitional act.)

[5]  Contrary to Righthaven's assertion (Opp. 8:18-25; Rule 56(d) Decl. ¶ 10) this Court does not need declarations from every employee at Democratic Underground to rule on this Motion.  Mr. Allen has personal knowledge of how his website operates technically, and his declaration is sufficient to show that no volitional act occurred. Allen Decl. ¶¶ 1, 5.

1   Allen Decl. ¶¶ 5, 7.  Thus, even if Webbworld had satisfied the volitional act requirement by

2   collecting the infringing works and posting them, Democratic Underground did no such thing.

3          Finally, Righthaven attempts to manufacture a genuine issue of material fact by posing a

4   series of questions about Democratic Underground's operation.  Opp. at 11-12; Rule 56(d) Decl.

5   ¶ 9.  But Righthaven makes no attempt to show why the answers to these questions are material to

6   this litigation.  They are not.

7          A fact is material if it might affect the outcome of the suit under the applicable substantive

8   law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The key relevant fact here is

9   that Pampango posted the Excerpt—an undisputed fact, and one as to which no discovery is

10  sought.  Instead, Righthaven's first few questions center around Democratic Underground's

11  server and software, who made them, and how they operate.  But there is no explanation as to

12  why this could make any difference, or what possible configuration Righthaven somehow

13  believes could rise to the level of a volitional act.  Righthaven apparently hopes that the answers

14  will undermine the credibility of Mr. Allen's declaration, but its desire to cross-examine is

15  insufficient as a matter of law.  *Nat'l Union Fire Ins. Co.*, 701 F.2d at 97.  As the Ninth Circuit

16  has explained, Righthaven "may not simply rest on the hope of discrediting movant's evidence at

17  trial."  *Frederick S. Wyle, Prof'l. Corp. v. Texaco, Inc*., 764 F.2d 604, 608 (9th Cir. 1985).

18  Righthaven "must do more than simply show that there is some metaphysical doubt as to the

19  material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  It is

20  undisputed that the Excerpt here was uploaded by Pampango, and details about website software

21  not shown to be relevant cannot raise a factual issue.

22         Righthaven's second set of questions focus on knowledge of Democratic Underground

23  employees.  However, Righthaven offers no facts suggesting that it, or anyone else, gave notice to

24  Democratic Underground of its objection to Pampango's post.  It thus offers no basis to question

25  that no one at Democratic Underground knew of the claimed infringement until the time the post

26  was removed, and no basis to believe any contrary information could be adduced by discovery.

27  Moreover, Righthaven fails to explain how the answers to these questions could be material in

28  light of Democratic Underground's explanation that knowledge would *not* be sufficient to

1    constitute a volitional act, and that the case most directly on point—*CoStar*—found no volitional

2    act even where employees reviewed each post before it went live.  *See* Motion at 9-10; *see also*

3    *Qualls By and Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994)

4    (affirming summary judgment because "the information sought by [litigant's] attorney would not

5    have shed light on any of the issues upon which the summary judgment decision was based").

6    Indeed, Righthaven's Opposition does not respond at all to the authorities demonstrating that

7    knowledge is not sufficient to constitute a volitional act.

8         As Righthaven acknowledges, "[i]n ruling on a motion for summary judgment, the judge

9    must view the evidence presented through the prism of the substantive evidentiary burden." Opp.

10   at 12:16-17 (quoting *Anderson*, 477 U.S. at 254).  Volition is an element of Righthaven's cause of

11   action.  *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (holding that "[a]

12   plaintiff must also show volitional conduct on the part of the defendant in order to support a

13   finding of direct copyright infringement").  Since Democratic Underground has put forth facts

14   showing a lack of volition, Righthaven "must come forward with 'specific facts showing that

15   there is a genuine issue for trial.'"  *Matsushita* at 587 (citation omitted).  Questions, especially

16   immaterial ones, are not a substitute for specific material facts.  *See Dep't of Water and Power of*

17   *the City of Los Angeles v. ABB Power T & D Co.*, 902 F. Supp. 1178 (C.D. Cal. 1995) (granting

18   summary judgment where "plaintiffs have not shown that the questions they wish to ask would

19   shed light on their arguments.").

20        Since Righthaven has not raised any genuine issues of material fact that would preclude

21   summary judgment, has conceded facts that support summary judgment, and has failed to

22   distinguish the long line of precedent establishing the volitional act doctrine, this Court should

23   grant summary judgment in favor of Defendants.

24   **II.     SUMMARY JUDGMENT IS APPROPRIATE BECAUSE THE EXCERPT'S**
         **APPEARANCE IN THE DEMOCRATIC UNDERGROUND DISCUSSION**
25       **FORUM WAS FAIR USE**

26        Though Righthaven suggests that application of the fair use doctrine requires a "case-by-

27   case analysis" (Opp. at 13), it also concedes that, where the relevant facts are undisputed, the

28   Court may determine on summary judgment whether the challenged use qualifies as fair use.

DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF CROSS-MOTION FOR                    6              CASE NO. 2:10-CV-01356-RLH (GWF)
SUMMARY JUDGMENT

Opp. at 12; *Los Angeles News Serv. v. KCAL-TV Channel 9,* 108 F.3d 1119, 1120 (9th Cir. 1997); *see also Mattel, Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 800 (9th Cir. 2003) (fair use is a mixed question of fact and law, and where material facts are not in dispute, summary judgment is appropriate).[6]  Righthaven's mere assertion that there are factual questions cannot overcome its failure to identify any single factual dispute that could make a difference.

### A.     Plaintiff Raises No Genuine Issue of Material Fact As to the Purpose and Character of the Use.

Righthaven entitles its discussion regarding factor 1—the purpose and character of the use—as a discussion about "genuine issues of material facts" (Opp. at 13:12); however, a closer look reveals that Righthaven does not dispute any of the facts set forth by Defendants. *See* Opp. at 13:11-15:20.  Nor does Righthaven articulate any new facts that would be revealed in discovery that could create a genuine issue.[7]  *See id.* at 15:12-20.  Rather, Righthaven simply disagrees about which side this factor favors—a disagreement that, while unfounded, presents merely an issue of law for the Court.

It is undisputed that the Excerpt was posted on a discussion forum with the purpose (and effect) of encouraging public comment and criticism among a politically interested group.  Opp. at 13:27-14:2; Complaint, Ex. 3.  Such use for the purpose of criticism, comment and education, is highly transformative and provides a significant benefit to the public.  *See Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) (criticism and comment are recognized as canonical examples of transformative use); 17 U.S.C. § 107 (expressly recognizing protection for uses "such as criticism, [and] comment"); *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1163 (9th Cir. 2007) (recognizing the need to assess the benefit to the public from the use at issue);

---

[6]  Plaintiff misinterprets *Fisher* to say that "[c]onducting such an analysis [of weighing the fair use factors] as a matter of law requires that controlling facts be presumed or admitted."  Opp. at 13:7-10 (citing *Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir. 1986).  This case sets forth no such requirement.  But even if it did, Righthaven has tacitly conceded Defendants' Concise Statement of Facts by failing to dispute any of them.

[7]  Plaintiff's argument as to the "requirement" of conducting discovery prior to deciding summary judgment is contrary to the law, as discussed in Part IV, *infra.*  Further, Plaintiff's claim that Federal Rule of Civil Procedure 26 requires Defendants to identify all employees at Democratic Underground (Opp. at 15:12-16) is incorrect.  Rule 26 requires identification of persons having "discoverable information . . . that the disclosing party may use to support its claims or defenses."  That the third employee has no such knowledge and was therefore not identified in Defendants' disclosures hardly requires his deposition.  Righthaven's claim that Defendants were required to identify *all* employees is especially ironic since Righthaven failed to identify a single witness by name in its initial disclosures.  *See* Part VI, *infra.*

1  *Blanch v. Koons*, 467 F.3d 244, 253-54 (2d Cir. 2006) (same).  Use of the short Excerpt on a left-

2  wing political website, alongside a separate link to the full original, was thus substantially

3  transformative of the original news publication of the whole Article, and provided a unique

4  opportunity and context for commentary that benefits the public.

5       Righthaven also has no response to the proposition that the minimally commercial nature

6  of the use at issue is not determinative, and is of limited importance, given both the highly

7  transformative use and its public benefit.  *Campbell,* 510 U.S. at 579 (holding purely commercial

8  use of excerpt in highly remunerative but transformative sound recording was still fair use);

9  *Perfect 10,* 508 F.3d at 1164, 166 (Google's use of thumbnail images was fair despite a

10  commercial purpose because it was outweighed by the benefit to the public and transformative

11  nature of the use); *Blanch*, 467 F.3d at 253-54 (affirming grant of summary judgment on fair use

12  grounds despite "substantial" commercial use because of the broader public benefits of the use

13  and its transformative nature).  Righthaven simply ignores the rule.

14       In any event, Righthaven raises no question of fact with respect to the purpose of the use.

15  Righthaven mentions the declaration of Mr. Allen, stating that the DU Website is supported, in

16  part, by advertising revenue.  Opp. at 14:8-11.  Indeed, Defendants have admitted that the DU

17  Website generated less than $2.00 of revenue, total, from the page displaying the Excerpt.  Allen

18  Decl. ¶ 19.  Righthaven does not dispute this fact—it merely uses it to support its point that the

19  use was commercial.  *See id.*  At most, Righthaven states that it would like to question Mr. Allen

20  about the "exact commercial nature" of the use that he already explained.  Rule 56(d) Decl. ¶ 11.

21  As noted above, the desire to cross-examine to test credibility, without any explanation of what

22  facts could change the outcome, cannot defeat summary judgment.  Whatever the "exact" amount

23  of dollars at issue here, its magnitude cannot overcome the transformative nature of the use to

24  promote criticism and commentary.

25       Righthaven's reliance on the unpublished decision in *Los Angeles Times v. Free Republic*

26  ("*Free Republic I*") is misplaced because the facts here are distinguishable.  1999 WL 33644483

27  (C.D. Cal. Nov. 8, 1999); Opp. at 14-15.  In *Free Republic I*, the court was faced not with a single

28  short excerpt of one article.  Instead, it was looking at wholesale copying of "thousands of [Los

1   Angeles] Times and [Washington] Post news articles," which were alleged to be copied in their

2   entirety.  *Free Republic I*, 1999 WL 33644483 at *9.  In considering the "nature of the use," the

3   *Free Republic I* court noted that the display of works for purpose of facilitating commentary or

4   criticism *was* transformative, but that copying thousands of articles verbatim was not.  *Id*. at *9-

5   *10.  It also explicitly considered the numbers of articles copied, and the fact that these full copies

6   supplanted the demand to purchase archived copies from the newspapers.  Weighing all these

7   factors, it concluded that the nature of the use on balance favored the plaintiffs.  *Id*.  Here, by

8   contrast, the use was far more transformative, with only 10% of one Article posted on the DU

9   Website; with only a single Excerpt, not thousands of articles, in issue; and with a link connecting

10  to the original Article.  The use of the Excerpt did not to displace sales of archives—it is

11  undisputed that the Article remains available on the *LVRJ* for free.  Dkt. 47, Declaration of Kurt

12  Opsahl ("Opsahl Decl.") at ¶ 3.

13      **B.      Plaintiff Raises No Genuine Issue of Material Fact As to the Nature of the
                  Copyrighted Work.**
14

15          Similarly, Righthaven raises no genuine issue of material fact as to factor two—the nature

16  of the copyrighted content.  Nor can it, as the content is self-evident, undisputed, and has been

17  submitted as part of the record.  Complaint, Ex. 2; *see also* Opp. at 16:1 ("the Work is admittedly

18  based on fact").  Again, it is the legal significance of the undisputed facts that Righthaven

19  attempts to dispute.  And again, Righthaven has no answer to established law, to wit, that the

20  second factor analysis "calls for recognition that some works are closer to the core of intended

21  copyright protection than others."  *Campbell*, 510 U.S. at 586.  Factual works fall further from this

22  core of intended protection than purely creative works.  *See A&M Records, Inc. v. Napster, Inc*.,

23  239 F.3d 1004, 1016 (9th Cir. 2001) (citing *Campbell,* 510 U.S. at 586).

24          As another smokescreen, Righthaven asserts that the second factor analysis "raises a

25  genuine issue of material fact, because [1] Defendants copied the Work [2] without authorization

26  and [3] the subject matter was clearly subject to copyright protection."  Opp. at 15:26-28.  So

27  where is the factual dispute?  The parties agree that the posted Excerpt is a copy of part of the

28  news Article.  The fact that copying occurred holds no weight, as fair use is a defense to copying,

1   and as such, it presupposes that some copying has occurred.  *See Campbell,* 510 U.S. at 590.  For

2   the same reason, "the mere fact that the copied portions are themselves copyrightable cannot

3   incline the second factor against fair use."  NIMMER ON COPYRIGHT, §13.05[A][2][a].  Nor does

4   authorization or lack thereof have any bearing upon the *nature* of the original work.  The work at

5   issue is a published, freely available, fact-based, online news article, and it would remain so

6   regardless of authorization.

7       Righthaven warns fervently that, were the Court to adopt the reasoning of Defendants

8   (and Judge Hicks in *Realty One*) on the second factor analysis, then "any literary work based

9   entirely or in part on the factual recitation of an author would fail to meet the requirements of the

10  second fair use analysis prong."  Opp. at 16:22-23.  Righthaven misses the point.  The very

11  purpose of this factor in the fair use balancing test is to attribute less protection to works that are

12  primarily factual in nature.  *See Campbell,* 510 U.S. at 586; *A&M Records,* 239 F.3d at 1016;

13  *Righthaven LLC v. Realty One Group, Inc.,* 2010 U.S. Dist. LEXIS 111576, at *5 (D. Nev.

14  Oct. 19, 2010).

15      Finally, in another misplaced legal argument, Righthaven cites *Los Angeles Times v. Free*

16  *Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. 2000) ("*Free Republic II*") for the proposition

17  that "a news reporter must determine which facts are significant and recount them in an

18  interesting and appealing manner."  *See* Opp. at 16, 17.  Yet, Righthaven overlooks that *Free*

19  *Republic II* found that the second factor *favored* fair use, precisely because the work was a piece

20  of news reporting:  "'[T]he more informational or functional the plaintiff's work, the broader

21  should be the scope of the fair use defense.'"  *Free Republic II*, 54 U.S.P.Q.2d at 1467 (quoting

22  Nimmer §13.05[A][2][a]).[8]  Here, as in *Free Republic II,* the "second factor weighs in favor of a

23  finding of fair use of the news articles."  54 U.S.P.Q.2d at 1467.

24   **C.    Plaintiff Raises No Genuine Issue of Material Fact As to the Amount and**
        **Substantiality of the Work Taken.**

25

26      The amount and substantiality of the work taken is a fact easily determined by comparing

27  _____

    [8]   The Ninth Circuit has regularly found that the second factor favors fair use when the original work is news
28  reporting.  *See Los Angeles News Serv. v. Reuters Television, Int'l.,* 149 F.3d 987, 994 (9th Cir. 1998); *Los Angeles
    News Serv.,*108 F.3d at 1122;  *Los Angeles News Serv. v. Tullo,* 973 F.2d 791, 798 (9th Cir. 1992).

1    the Article to the Excerpt:  5 sentences were used out of a 50 sentence article, or 10%.  *Compare*

2    Complaint, Ex. 3 to Ex. 2.  Righthaven does not dispute the amount copied.  *Id.*  Righthaven

3    similarly does not dispute that, rather than copying the entire Article, the post on the DU Website

4    provided a link to the full Article at the *LVRJ* website.  *Id*. Ex. 3.

5         Righthaven seeks to argue the legal significance of the undisputed facts, yet it cannot cite

6    a single case where an excerpt this small has been found to infringe, let alone one in a discussion

7    forum.  *See* Opp. at 17:3-18:22.  The best it can muster is a citation to United States Copyright

8    Office Circular 21, entitled "Reproduction of Copyrighted Works by Educators and Librarians," a

9    publication that actually *supports* Defendants' position.[9]  Righthaven quotes a portion of the

10   Circular's standards, noting that, for education, "unauthorized replication of 10% of a literary

11   work may be deemed unacceptable" and that "[t]he same 10% threshold is set forth with regard to

12   unauthorized replication of non-performance related copyrighted works used for educational

13   purposes."  Opp. at 17:27-18:5.  Yet, in the portion Righthaven omits to discuss, Circular 21

14   provides that copies may be made of:  "Either ***a complete article, story or essay of less than***

15   ***2,500 words*** or (b) an excerpt from any prose work of not more than 1,000 words or 10% of the

16   work, whichever is less, but ***in any event a minimum of 500 words.***"  Circular 21 at 6 (Dkt. 60,

17   Mangano Decl. Ex. 2) (emphasis added).  Under this standard, Democratic Underground could

18   have copied the Article in its entirety, as the Article is 1409 words long (*i.e.*, less than 2,500).  In

19   addition, the Excerpt at issue is less than 500 words, and therefore it is fair use under each of the

20   two separate standards of the Circular.

21        Righthaven continues to urge the Court to ignore a key decision in this District that found

22   a larger excerpt of copyrighted works to constitute fair use.  *See* Opp. at 17; *Realty One,* 2010

23   U.S. Dist. LEXIS 111576, at *5 (finding by Judge Hicks that for a blog, copying only the first

24   eight sentences of a thirty sentence *LVRJ* article, or 26%, was sufficiently small to warrant

25   dismissal on fair use grounds).  Meanwhile, Righthaven has no answer to the fact that it

26

---

27   [9] Copyright Office interpretations are not binding but are "entitled to respect insofar as they are persuasive." *Broadcast Music, Inc. v. Roger Miller Music, Inc.,* 396 F.3d 762, 778 (6th Cir. 2005); *see also Cartoon Network.,* 536 F. 3d at 129 (The "Copyright Office's pronouncement deserves only . . . deference based on its 'power to

28   persuade.'") (citation omitted).  Circular 21 persuasively shows that the Excerpt is an acceptable amount of copying.

1   acknowledged to Judge Hicks in *Realty One* that use of excerpts *greater* in proportion than here

2   would be fair use. *See* Motion at 14.[10]  As no disputed facts exist with regard to the amount or

3   substantiality of the Article taken, this factor favors fair use as a matter of law. *See Los Angeles*

4   *News Serv.,* 108 F.3d at 1120.

5         **D.**    **Plaintiff Raises No Genuine Issue of Material Fact As to the Potential Effect**
                  **of the Use On the Market For the Work.**

6

7         Righthaven fails to identify a single factual dispute as to any harm to the value of the

8   Article resulting from the Excerpt appearing on the DU Website. *See* Opp. at 18:23-19:20.  It

9   attempts no showing, for example, that it received a dime less from advertisers, or that revenues

10  from future archived copies will decline, due to a short portion (excluding the actual poll

11  numbers) having appeared elsewhere.  Any evidence of harm to the value of a *LVRJ* news article

12  would be exclusively in the possession of Righthaven and Stephens Media, yet they have

13  presented no evidence to support harm, nor claimed to need discovery to prove harm to the

14  work's value. *See* Rule 56(d) Decl.

15        Instead, Righthaven relies entirely on a flawed assertion that because Democratic

16  Underground allegedly benefited (to the tune of less than $2 in advertising revenue) from the

17  Excerpt's posting, this equates to harm to the copyright holder.  That argument is a non-sequitor.

18  The fact that Democratic Underground used the Excerpt in a transformative way does not mean

19  that the value of the Article was reduced.  Righthaven wrongly asserts that there is a presumption

20  of market harm in any case of commercial use, citing *dicta* in *Sony Corp. of Am. v. Universal City*

21  *Studios, Inc.,* 464 U.S. 417 (1984), but ignoring later, dispositive Supreme Court jurisprudence.

22  Specifically, in its 1994 *Campbell* decision*,* the Supreme Court clarified that no presumption

23  applies absent "verbatim copying of the original ***in its entirety*** for commercial purposes," since

24  absent such "mere duplication" there was no basis to presume that the copy "serves as a market

25  replacement" for the original. *Campbell,* 510 U.S. at 591 (emphasis added).  When, "on the

26

---

27  [10]  In opposition to the motion to dismiss in *Realty One,* Righthaven asserted that had the copying been limited to the first two paragraphs of the article it would likely have constituted a fair use. *See Righthaven LLC v. Realty One*

28  *Group, Inc.,* Case No. 2:10-cv-01036-LRH-PAL, Dkt. 12 at 10-11.  In that case, the first two paragraphs contained three sentences of the 28 sentence article, more than the 10% copied here. *See id.* Dkt. 1, Exs. 2, 3.

1   contrary, the second use is transformative, market substitution is at least less certain, and market

2   harm may not be so readily inferred." *Id.*  Accordingly, the *Campbell* Court reversed the Court of

3   Appeals' application of a presumption of market harm in that case, in a decision that decisively

4   rejects Righthaven's assertion of a presumption here.  *See also Elvis Presley Enters., Inc. v.*

5   *Passport Video,* 349 F.3d 622, 631 (9th Cir. 2003) ("The more transformative the new work, the

6   less likely the new work's use of copyrighted materials will affect the market for the materials.").

7   As the Supreme Court stated, "[i]f, indeed, commerciality carried presumptive force against a

8   finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the

9   preamble paragraph of § 107, including news reporting, comment, criticism, teaching,

10  scholarship, and research, since these activities 'are generally conducted for profit in this

11  country.'"  *Campbell,* 510 U.S. at 584.

12       Here, the Excerpt was not "mere duplication" for commercial purposes:  the copying at

13  issue was 10%, not the entirety; the use was transformative—creating a forum for comment and

14  criticism; and the Excerpt was posted with a link to the Article on the lvrj.com website,

15  generating traffic to instead of keeping it away from the original Article.  Such circumstances

16  favor a finding of fair use.  *Id.*; *Realty One,* 2010 U.S. Dist. LEXIS 111576, at *6 (Judge Hicks

17  found fair the use of a significantly larger portion of a *LVRJ* article on a similar blog published

18  with a link to the original article at it could not "satisfy a reader's desire to view and read the

19  article in its entirety").

20       Finally, Righthaven can show no harm to the value of the work it claims to now own

21  because it has admitted that *its* business is based entirely on lawsuits seeking to capitalize on

22  infringement, not on any exploitation of the work.  Opsahl Decl. Ex. B (Righthaven is a

23  "technology company whose only job is to protect copyrighted content."); *see Video-Cinema*

24  *Films, Inc. v. CNN, Inc.,* 2001 U.S. Dist. LEXIS 25687, at *32 (S.D.N.Y. Nov. 28, 2001) (finding

25  no market harm when only payments were settlements to avoid litigation); *Field,* 412 F. Supp. 2d

26  at 1118 (fourth factor supported fair use where there was no evidence of any market for plaintiff's

27  made-for-litigation writings).  Righthaven has raised no facts to suggest that it stands to lose any

28  licensing, display, or other revenues.  It has acknowledged it has no such revenues.  Indeed, it is

1  undisputed that the Article remains available for free on the *LVRJ* website, and that Righthaven

2  receives *no compensation* for the *LVRJ's* use.  Opsahl Decl. ¶ 3; Reply Declaration of Kurt

3  Opsahl In Support Of Defendants' Motion for Summary Judgment ("Opsahl Reply Decl."), Ex. C

4  (Response 44).

5  \*   \*   \*   \*

6  As Righthaven has not raised any issues of material fact, and all four factors weigh in

7  favor of finding fair use, the Court should grant summary judgment of non-infringement to the

8  Defendants.  Moreover, even if the Court were to conclude that some factor did not weigh

9  entirely in favor of fair use, this would still not preclude summary judgment, as the balancing of

10  factors still presents a question of law for the Court.  *See Mattel,* 353 F.3d at 800 (fair use is a

11  mixed question of fact and law and where material facts are not in dispute, summary judgment is

12  appropriate).  The overwhelming and undisputed facts support summary judgment here.

13  **III.   THERE IS NO BASIS IN THE LAW FOR RIGHTHAVEN'S DEMAND FOR**
   **TRANSFER OF THE DEMOCRATIC UNDERGROUND DOMAIN NAME**

14

15  Righthaven does not present any argument in support of its demand for transfer of a

16  domain name, nor oppose any argument made by Democratic Underground in support of

17  summary judgment.  *See* Motion at 16.  Accordingly, this Court should grant summary judgment

18  against Righthaven's demand to control the democraticunderground.com domain name.

19  **IV.   RIGHTHAVEN IS NOT ENTITLED TO A CONTINUANCE TO TAKE**
   **DISCOVERY IT HAS NOT SHOWN NECESSARY OR LIKELY TO ALTER A**

20  **RULING ON SUMMARY JUDGMENT**

21  Righthaven insists throughout its Opposition that the Court cannot rule on Defendants'

22  Motion for Summary Judgment until Righthaven has conducted depositions.  Opp. at 4:3, 4:9,

23  6:6, 7:17, 11:14, 15:13.  Righthaven maintains, without authority, that it is "axiomatic" that it

24  should be "entitled to examine the veracity" of statements made by Defendants' declarants,

25  despite Righthaven's failure to raise a single disputed fact that is material to the resolution of this

26  Motion.  Opp. at 4:13-15.  Under these circumstances, continuing summary judgment and

27  prolonging litigation of the Complaint for discovery to occur is not appropriate.

28  The party opposing a motion for summary judgment and seeking a continuance for

1    discovery must show "(1) that they have set forth in affidavit form the ***specific facts that they***

2    ***hope to elicit*** from further discovery, (2) ***that the facts sought exist***, and (3) that these sought-

3    after facts ***are 'essential' to resist*** the summary judgment motion."  *State of Cal., on Behalf of the*

4    *California Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)

5    ("*Dept. of Toxic Substances*") (emphasis added); *see also*, *VISA Int'l Serv. Ass'n v. Bankcard*

6    *Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986).

7           Although Righthaven has now belatedly filed a Rule 56(d) declaration,[11] it complies with

8    none of these three obligations.  "Rule 56(f) requires affidavits setting forth the particular facts

9    expected from the movant's discovery.  Failure to comply with the requirements of Rule 56(f) is a

10   proper ground for denying discovery and proceeding to summary judgment."  *Brae Transp., Inc.*

11   *v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986) (addressing Rule 56(d) at its former

12   location).  An abstract plan to conduct depositions, alone, fails to identify any specific facts that

13   such discovery might reveal.  *Nat'l Union Fire Ins. Co*., 701 F.2d at 97; *see also Johnson v.*

14   *Mitsubishi Digital Elecs. America, Inc.*, 365 Fed. Appx. 830, 833 (9th Cir. 2010) ("vague

15   references to 'discovery disputes' and the need to 'accumulate evidence' were insufficient to

16   satisfy Rule 56(f)'s specificity requirement").

17          Moreover, as discussed above, the few subjects Righthaven identifies as subject for

18   discovery, for example, Defendants' software, servers and internal procedures, are all immaterial.

19   *See* Opp. at 11.  Even if they were material, Righthaven has failed to identify any answers it

20   would expect to find in response to its questions that, if discovered, would contradict any material

21   fact.  Righthaven posits questions that appear generically relevant at best, not specific facts that

22   exist and that would preclude summary judgment.  *See Family Home and Finance Ctr., Inc. v.*

23   *Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

24          Righthaven's position that summary judgment is "proper only after there is an adequate

---

25   [11]  Righthaven filed no Rule 56(d) request until January 24, two weeks after its opposition to summary judgment.
26   Dkt. 61. Rule 56(d) contemplates the filing of a request when "opposing the motion," not later.  The only Court of
     Appeals that has considered the time for a request held that a request "normally should precede or accompany the
27   response to the summary judgment motion or follow as soon as practicable thereafter."  *Mass. Sch. of Law at
     Andover v. American Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998).  In the present case, there was nothing justifying
     Righthaven's delay.  While Righthaven cites *Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990), that case
28   simply held that a filing *after* the hearing was too late, not that a Rule 56(d) request could be withheld until after
     filing an opposition to the motion where there is no reason to do so.

1   opportunity for discovery" (Opp. at 5:22-23) begs the question of what is adequate given the

2   particular issues in play.  Righthaven's accusations, vague references, and questions concerning

3   immaterial facts fail to provide any basis for a continuance.  Therefore, the Court can and should

4   grant Defendants' Motion.

5   **V.    THE ISSUES RAISED IN THE MOTION FOR SUMMARY JUDGMENT WOULD
        NOT BE MOOTED BY A GRANT OF VOLUNTARY DISMISSAL**

6

7       **A.    Regardless Of Voluntary Dismissal of the Complaint, the Counterclaim
                Requires A Determination That Reposting the Article Would Be Fair Use.**

8           As an alternative basis for the Court to deny the Motion for Summary Judgment,

9   Righthaven argues that the issues the Motion presents will be moot if the Court grants

10  Righthaven's motion to dismiss the Complaint, and that the Counterclaim is merely "redundant"

11  (Opp. at 2:17) and therefore would also be disposed of by such a voluntary dismissal.  Opp. at

12  7:3-7.  Neither argument can withstand scrutiny.  Voluntary dismissal of the Complaint would not

13  avoid this Court's need to address the merits this Motion raises.

14          First, Righthaven's argument that dismissal of the Complaint moots the Counterclaim

15  continues to ignore settled law that a counterclaim for declaratory relief will stand even after the

16  complaint's dismissal when, as here, the counterclaim seeks relief not necessarily decided by

17  dismissal—in particular, a declaration of the invalidity of the right allegedly infringed.  *See*

18  Motion at 26-29; Dkt. 46 ("Opp. to SM MTD") at 12-16.  Righthaven and Stephens Media filed

19  37 pages of combined reply briefing on their Motions to Dismiss.  Dkts. 56, 57.  Yet they offer no

20  response to *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993), or the numerous other

21  authorities cited in the Motion that a voluntary dismissal cannot warrant the Counterclaim's

22  dismissal when it would not necessarily provide certainty as to issues presented by Counterclaim.

23          Moreover, Righthaven (and Stephens Media) ignore the fact that the Complaint's

24  dismissal will not provide Democratic Underground a determination of its right to ***repost*** the

25  Excerpt, consistent with its practice of maintaining a complete record of all postings at the DU

26  Website.  *See* Motion at 27; Allen Decl. ¶ 25; Opp. to SM MTD at 17.  Although a dismissal

27  would be *res judicata* precluding another claim for Pampango's posting, the reposting at the

28  instigation of Democratic Underground will present different factual circumstances that, unlike

1   the original posting by Pampango, could be a volitional act.  Thus, to ensure that its rights to

2   repost are protected (Allen Decl. ¶ 25), Democratic Underground needs at least a determination

3   that a posting of the Excerpt constitutes fair use.

4          Righthaven has never stipulated that Democratic Underground is permitted to repost the

5   Excerpt.  Nor has Stephens Media, which indisputably holds "rights of reversion" in the Article

6   (Dkt. 38, SM MTD Williams Decl. Exh. 1) and continues to display the Article on the *LVRJ*

7   website claiming a copyright in its Stephens Media's name.  Opsahl Decl. ¶ 3.  In fact,

8   Righthaven maintains that it could still pursue another claim for a "separate and distinct act of

9   infringement by the Defendants."  Dkt. 57 ("Righthaven Reply ISO MTD") at 20:1.  This Court

10  therefore will need to decide the merits of the fair use issue regardless of a dismissal of the

11  Complaint in order to resolve the continuing issues presented by the Counterclaim regarding the

12  right to repost the Excerpt.

13         Finally, it should be recalled that the merits were first raised by Righthaven, when it

14  argued that the Court should find its claims "objectively reasonable" and "non-frivolous" as one

15  factor justifying dismissal combined with denial of Defendants' attorneys' fees.  Dkt. 36

16  ("Motion to Voluntarily Dismiss") at 14.  The Court will have to consider the merits in that

17  context, so there is little more to determine summary judgment.  For all these reasons,

18  Righthaven's motion to voluntarily dismiss cannot warrant avoidance of consideration of the

19  merits, and, if anything, has already put the Court to that task.

20         **B.      Stephens Media's Limited Consent to be Bound by This Court Does Not
                     Resolve This Litigation as to Stephens Media.**

21

22         Stephens Media's has submitted a carefully phrased offer to be "bound by the final

23  outcome of this litigation" but only "**insofar as it relates to Stephens Media's ability to sue for**

24  **infringement on any reversionary interest it may possess in the literary work at issue**."  SM

25  Reply at 2-3 (emphasis added).  That offer is cold comfort for Democratic Underground,

26  however, since a mere dismissal of the Complaint would not determine *anyone's* ability to sue

27  over Democratic Undergrounds reposting, and thus, by definition, would not bind Stephens

28  Media as to such reposting.

1       Moreover, although Stephens Media tacitly admits it has a reversionary interest in the

2  copyright, it and Righthaven have still failed to provide the Court with the terms of that

3  reversionary interest.  SM MTD Ex. 1.  The sole purpose of the assignments to Righthaven is to

4  allow Stephens Media's surrogate to prosecute lawsuits.  It therefore seems likely that the

5  reversion to Stephens Media will be triggered by the lawsuit's completion—a fact that, if revealed

6  by discovery, will further support the sham nature of the assignment.  However, should the

7  assignment be found to be sham, and Righthaven's claims rejected on that basis, Stephens

8  Media's limited consent to be bound by the final outcome here would be ineffective.  A finding

9  that the *assignment* was sham would not then preclude Stephens Media from suing in its own

10  name, or from granting an assignment to another party.  Thus, Stephens Media's limited

11  "consent" would not protect Democratic Underground.

12       Similarly, Stephens Media's limited consent to be bound only as to its "ability to sue on

13  any reversionary interest" would exclude it from being bound by numerous other results in this

14  action that may resolve any other subject.  For example, Stephens Media would escape being

15  bound by any determination that Righthaven is merely acting as its agent, that Righthaven is its

16  alter ego, that the conduct of this action constitutes barratry, champerty and maintenance, or that

17  *both* Counter-Defendants must pay Defendants' attorneys' fees.

18       The fact that Stephens Media does not want to be a party does not allow it to exit the case,

19  avoid discovery, and avoid being bound by all that occurs.  The only means to obtain a final

20  determination binding Stephens Media and its reversionary interest is by having Stephens Media

21  as a party.

## VI.   PLAINTIFF'S CLAIMS THAT DEFENDANTS HAVE MULTIPLIED THIS PROCEEDING IS BOTH IRRELEVANT AND FALSE

24       Righthaven expends numerous pages both in its Opposition and its Reply on its Motion to

25  Dismiss hurling invective at Defendants for purportedly "multiplying the proceedings."  *See* Opp.

26  at 2-5; Righthaven Reply ISO MTD at 2-5; Rule 56(d) Decl. ¶ 6.  As an initial matter,

27  Righthaven's complaints have no bearing on the merits of Defendant's motion.  Even if

28  Righthaven's characterizations were accurate (they are not), none of the issues raised explain why

1    summary judgment is not appropriate or point toward any genuine dispute of material facts.

2          That said, Righthaven's complaints are preposterous.  First, Righthaven has only itself to

3    blame that this Motion is now pending.  Righthaven could have easily ended this dispute (and

4    ongoing fees), by dismissing without condition or by withdrawing its conditions after Defendants

5    filed for summary judgment.  Instead, Righthaven gambled that it would be allowed to walk away

6    without consequence.  Since Righthaven's dismissal is contingent on an unacceptable condition,

7    however, Defendants have no choice but to prepare a defense, and they are doing so.

8          Second, Defendants are hardly "over-litigating" in an effort to accrue fees.   Whatever fee

9    claim Defendants ultimately present will be reviewed by this Court for its reasonableness.

10   Righthaven's objection that any fee claim, or any Court award, will be excessive is premature at

11   best.  If there is a time to argue that excessive fees are being sought, it will be in response to an

12   actual motion to recover them.  More importantly, however, Defendants' counsel has done

13   precisely what was needed to move toward a prompt conclusion of the case – no more, no less.

14         For example, Democratic Underground has indeed initiated discovery, whether or not

15   Righthaven desires it.  *See* Opp. at 3.  Democratic Underground believes the complaint can be

16   resolved without discovery—which is why it moved for summary judgment.  Nonetheless, the

17   parties are bound by a Court-ordered discovery schedule that imposes real deadlines, with expert

18   disclosure due by March 30.  *See* Dkt. 54 ("Joint Discovery Plan and Scheduling Order").

19   Righthaven stipulated to this discovery plan *after* it moved for voluntary dismissal.  *See* Dkt. 42.

20   Although it could have sought a stay, it did not, and the clock is therefore running.

21         In order to protect their ability to mount a defense, Defendants had to start the discovery

22   process to ensure adequate time to gather information.  Defendants were wise to do so, as

23   Righthaven's responses have been both untimely, woefully inadequate, and peppered with

24   nonsensical objections.  Righthaven has thus far admitted or denied only 5% of the Requests for

25   Admissions, answered none of the Interrogatories, and produced exactly zero documents.  Opsahl

26   Reply Decl. ¶ 16. [12]   The rest: all objections.  These will take time to resolve, and Defendants

27
28

---

[12] Righthaven faults Defendants for not returning a proposed protective order over the Christmas holiday, yet Defendants offered proposed language over two weeks ago, to which Righthaven has not responded.  In the meantime, Righthaven has refused to produce *any* documents.  Opsahl Reply Decl. ¶¶ 16-17.

1   must proceed on the schedule the Court ordered, unless and until the case is dismissed, settled, or

2   resolved on summary judgment.

3      As for Righthaven's complaint that Defendants pressed to obtain adequate initial

4   disclosures, that is a "hamster wheel" Righthaven itself chose to traverse.  *See* Opp. at 3.

5   Righthaven's initial disclosures failed to name *even one individual* with potential knowledge

6   upon whom it intended to rely at trial, choosing instead to 'disclose' that there were unspecified

7   "person[s] most knowledgeable" of certain topics—which is, of course, no disclosure of

8   witnesses at all.  Opsahl Reply Decl. ¶ 3, Ex. A.  When Defendants protested, Righthaven's

9   supplement identified an EFF attorney as a witness (on pejorative topics unrelated to any claim or

10   defense), but *again* failed to name a single Righthaven witness having discoverable information.

11   Opsahl Reply Decl. ¶¶ 4-5, Ex. B.  Before finally agreeing to identify individuals, Righthaven

12   avoided Defendants' efforts to confer for weeks, and then insisted that Defendants' local counsel

13   be present for the call, over Defendants' objection that his presence was not required.  Opsahl

14   Reply Decl. ¶¶ 6-14.  Incredibly, Righthaven now complains of the number of attorneys *it insisted*

15   *attend the call,* as purported evidence of a "shocking litigation tactic" and effort to run up fees.

16   Opp. at 2.

17      Righthaven's overblown rhetoric about "inflated" fees and "vexatious" litigation is

18   baseless.  Democratic Underground, the target of an overreaching lawsuit, is simply defending

19   itself and protecting its right to move for fees under Section 505 of the Copyright Act.

20   **CONCLUSION**

21      For the foregoing reasons, the Court should enter summary judgment on the Complaint in

22   this action, based both on lack of a volitional act of copyright infringement, and fair use.

23   Dated:  January 28, 2011     FENWICK & WEST LLP

24                By:   /s/ *Laurence F. Pulgram*

25                  LAURENCE F. PULGRAM, ESQ

26                Attorneys for Defendant and Counterclaimant
                  DEMOCRATIC UNDERGROUND, LLC, and

27                Defendant DAVID ALLEN

28