LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:      (415) 875-2300
Facsimile:      (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone:      (415) 436-9333
Facsimile:      (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:      (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>    Defendants. | Case No. 10-01356-RLH (GWF)<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM ADDRESSING RECENTLY PRODUCED EVIDENCE RELATING TO PENDING MOTIONS** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>    Counterclaimant,<br><br>v.<br><br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>    Counterdefendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendant / Counterclaimant Democratic Underground LLC and Defendant David Allen (collectively "Democratic Underground" or "Defendants"), respectfully submit this Supplemental Memorandum to bring to the Court's attention key evidence just produced in discovery that is highly relevant to the three currently pending motions.  Specifically, on February 28, 2011, Cross-Defendant Stephens Media, LLC produced, belatedly, a copy of the Strategic Alliance Agreement between itself and Righthaven, LLC.[1]  *See* Declaration of Laurence Pulgram ("Pulgram Decl."), Exhibit A (hereafter, the "Agreement").  This Agreement, never before revealed to any Court in this District, on its face purports to be the master agreement that governs *all the assignments Righthaven has sued upon in this Court.*

The terms of the Agreement provide substantial evidence that: (1) Righthaven has been conveyed no rights in the work at issue other than the right to sue for infringement, a fact that renders the assignment to Righthaven invalid; (2) Stephens Media is the real party in interest, engaging Righthaven as its agent to prosecute this action;  (3) Stephens Media retains the right to sue Democratic Underground under the Agreement, thereby giving rise to a live and genuine controversy with Stephens Media; and (4) Righthaven has been granted no rights to exploit the work in question, and thus, for the purpose of fair use analysis, can suffer no harm from the use of the Excerpt by Democratic Underground.

Defendants request that the Court consider this Agreement as a further basis upon which to deny the two Motions to Dismiss filed by Righthaven and Stevens Media, and to grant Defendants' Motion for Summary Judgment on the issue of fair use.  Given that this material was only recently and belatedly produced, Defendants could not have addressed it in any of the prior briefing.  *See, e.g.*, *United States v. Maris*, 2011 WL 468554, at *5 n.5 (D. Nev. Feb. 4, 2011) (granting leave to file supplemental materials even after the hearing on a motion for summary judgment); *Mitchel v. Holder*, 2010 WL 816761, at *1 n.1 (N.D. Cal. Mar. 9, 2010) (granting

---

[1] Stephens Media's responses to Defendants' First Requests For Production of Documents were due on January 18, 2011, ten days before Defendants' Reply in Support of their Cross-Motion.  By failing to produce this evidence until February 28, Stephens Media precluded its earlier submission.  For its part, Righthaven has still not produced this, or any other, document.

leave to file supplemental brief in support of motion for summary judgment addressing newly

discovered evidence);  *Lumsden v. United States*, 2010 WL 2232946, at *1 (E.D. N.C. June 3,

2010) (granting leave to submit additional newly discovered evidence in support of motion for

summary judgment).

In particular, Defendants submit that the Agreement demonstrates a compelling need for

the Court to adjudicate the issues raised by the Counterclaim as to the sham and unenforceable

nature of the assignments to Righthaven, as that issue may affect and dispose of hundreds of cases

now improperly pending in this District.

## THE STRATEGIC ALLIANCE AGREEMENT

In Support of its Motion to Dismiss, Stephens Media presented the Court with a purported

"Copyright Assignment," in the same form Righthaven has repeatedly presented in this District as

purportedly creating its right to sue.  *See* Stephens Media's Motion to Dismiss or Strike ("Dkt.

38"), Exh. 1.  Stephens Media relied on this Copyright Assignment as the sole evidence from

which it claimed that:  (1) "Righthaven, not Stephens Media, holds the exclusive right to seek

legal redress" for infringement (Dkt. 38. at 6);  (2) "Stephens Media **would be legally barred**

**from [suing]"** Democratic Underground, even if it wanted to (*id* at 7); and (3) there was

"absolutely no evidence" to support Defendant's assertion that the assignment was a sham or that

Righthaven is acting as Stephens Media's agent.  *Id.*

In response, Defendants pointed out that the "Copyright Assignment" did not identify any

actual rights under the Copyright Act assigned to Righthaven.  *See* Defendants' Memorandum in

Opposition to Stephens Media LLC's Motion to Dismiss and Joinder  ("Dkt. 46") at 6.  Rather

the Assignment circularly defined the rights assigned to include "all copyrights requisite to have

Righthaven recognized as the copyright owner of the Work for purpose of Righthaven being able

to claim ownership."  Dkt. 38, Exh. 1.  Defendants also noted that, by its terms, the "Copyright

Assignment" provided that it was subject to an undefined "right of reversion" to Stephens Media

and also referred to unidentified "monetary commitments and commitment to services provided"

which had not been disclosed to the Court.  *See* Dkt. 46 at 5-6.  Defendants advised the Court that

1   "when produced in discovery, [additional documents would] reveal the actual flow of obligations,

2   control, and funding between Righthaven and Stephens Media."  *Id.*

3       The Strategic Alliance Agreement, dated January 18, 2010, now supplies much of the

4   missing information.  This Agreement provides for a 50/50 split of lawsuit recoveries between

5   Stephens Media and Righthaven (less "Costs").  *See* Agreement, Section 5.[2]  The Agreement

6   further reveals a naked assignment to Righthaven of rights to sue for infringement, without

7   conveying any exclusive rights under Section 106 of the Copyright Act to exploit Stephens

8   Media's work.  Section 7.2 expressly *denies* Righthaven any rights other than to pursue

9   infringement actions:

10          7.2    Despite any such Copyright Assignment, Stephens Media
            shall retain (and is hereby granted by Righthaven) an exclusive
11          license to Exploit the Stephens Media Assigned Copyrights for any
            lawful purpose whatsoever and ***Righthaven* shall have no right or
12          license to Exploit or participate in the receipt of royalties from
            the Exploitation of the Stephens Media Assigned Copyrights
13          other than the right to proceeds in association with a Recovery.**
            To the extent that *Righthaven's* maintenance of rights to pursue
14          infringers of the Stephens Media Assigned Copyrights in any
            manner would be deemed to diminish Stephens Media's right to
15          Exploit the Stephens Media Assigned Copyrights, *Righthaven*
            hereby grants an exclusive license to Stephens Media to the greatest
16          extent permitted by law so that Stephens Media shall have
            unfettered and exclusive ability to Exploit the Stephens Media
17          Assigned Copyrights.

18   Section 7.2. (bold emphasis added); *see also* Schedule 1 – Definitions (defining "Exploit").  Thus,

19   although the "Copyright Assignment" characterized itself as a transfer of "all copyrights *requisite*

20   to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven

21   being able to claim ownership as well as the right to seek redress for  past, present and further

22   infringements of the copyright," (Dkt. 38, Exh. 1 (emphasis added)), the Strategic Alliance

23   Agreement's specific terms provide that "Righthaven shall have no right or license to Exploit …

24   the Stephens Media Assigned Copyrights " other than to share the proceeds of a Recovery in

25   litigation.[3]   Section 7.2.  Indeed, the Agreement specifically says that Stephens Media "shall

26

27   _____
     [2] All citations to "Sections" will refer to the Agreement, Pulgram Declaration Exhibit A.

28   [3] "Recovery" is defined as "any and all Sums received, transferred to, assigned, conveyed, paid or otherwise obtained
     by Stephens Media and/or Righthaven relating to, arising or resulting from (whether directly or indirectly) a

1   *retain*" these rights, showing that no rights were transferred in the first place.  *Id.* (emphasis

2   added).

3          In operation, the Agreement also makes clear Righthaven's role as Stephens Media's

4   agent.  Stephens Media may assign copyrights of its choice to Righthaven to search for

5   infringement.  Sections 3.1; 3.2.  Once a copyright is purportedly "assigned" to Righthaven,

6   Stephens Media "engages" Righthaven on an exclusive basis to perform searching for copyright

7   infringement and pursuit of infringement actions.   Section 3.1 - 3.3.  Should Righthaven

8   ultimately choose not to serve as agent to commence an infringement action on a particular

9   assignment, "then Righthaven shall reassign the Assigned Copyright to Stephens Media."

10  Section 3.3.  Should Righthaven desire to sue, however, Stephens Media still controls whether

11  suit will be brought through its right to send a "Declination Notice," upon receipt of which

12  "Righthaven shall not take any Infringement Action with respect to the particular putative

13  infringer set forth in any Declination Notice."  Section 3.3.  The bases upon which Stephens

14  Media may stop a suit – even after it has "assigned" the purported right to sue – include whenever

15  the person targeted "is a present or likely future valued business relationship of Stephens Media

16  or otherwise would . . . result in an adverse result to Stephens Media."  *Id.*

17         Even after suit is brought, Stephens Media retains an absolute right of reversion, subject

18  only to later reimbursement of Righthaven's investment in the litigation.  Section 8, entitled

19  "***Stephens Media's Right of Reversion"*** states:  "Stephens Media shall have the right at any time

20  to terminate, in good faith, any Copyright Assignment (the 'Assignment Termination') and enjoy

21  a right to complete reversion to the ownership of any copyright that is the subject of a Copyright

22  Assignment . . . ." Section 8.

23         The right of reversion specifically contemplates that Stephens Media may, in such

24  instances, continue to prosecute any litigation itself, providing that Stephens Media must, after

25  such reversion, pay Righthaven's costs associated with the "early termination" of the assignment

26  "[w]ithin ten (10) days of receipt of any Recovery by Stephens Media" for the alleged

27  
28  Disposition, including, without limitation, all Sums paid by way of damages, costs and attorneys fees with respect to
    or arising from an Infringement Action." *See* Schedule 1 – Definitions.

1    infringement.  Section 8.

2         Moreover, the Strategic Alliance Agreement also suggests that Stephens Media continues

3    to exert direct control over Righthaven's internal operations.  The Agreement recites that it is part

4    of an "integrated transaction" that requires that Righthaven proceed under a separate Operating

5    Agreement that has been requested by Defendants, though not yet produced.  Section 2; Pulgram

6    Decl., ¶ 10.  The Strategic Alliance Agreement recites that, under the Operating Agreement, one

7    of the owners of Righthaven must be a "Stephens Media Affiliate" called SI Content Monitor,

8    LLC, which "is presently and shall throughout the Term be Controlled by common owners [with

9    Stephens Media] with no material variation in said ownership."  Section 2(a).  This further

10   suggests that Stephens Media, through the Operating Agreement can also exert direct control over

11   Righthaven – though the precise facts await further document production.

12                                    **DISCUSSION**

13   **I.    THE AGREEMENT SUBSTANTIATES DEMOCRATIC UNDERGROUND'S
              STANDING TO SUE STEPHENS MEDIA AS REAL PARTY IN INTEREST.**
14
              Stephens Media has argued that it is an improper party because, "[c]omplete ownership of
15
     the work being sued upon has been transferred to Righthaven without any ambiguity" and
16
     because "Righthaven, not Stephens Media, is . . . the only party vested with the right to sue . . . ."
17
     Stephens Media's Reply in Support of Motion to Dismiss or Strike ("Dkt. 56") at 4, 10.  The
18
     Strategic Alliance Agreement eviscerates this argument and exposes the plain falsity of these
19
     assertions.  The Agreement shows not only (1) that Stephens Media controlled the choice to
20
     "assign" rights in this particular News Article (Section 3.1), and then (2) controlled whether the
21
     News Article would actually be sued upon (Section 3.3), but also, (3) that Stephens Media, to this
22
     day, has an absolute right to reversion, under which it may continue the lawsuit as it wishes in its
23
     own name (Section 8).  Indeed, Stephens Media even retains the ability to encumber the asset it
24
     has purportedly assigned with a "security interest, pledge, hypothecation, lien or other
25
     encumbrance" – behavior consistent only with ownership.  *See* Section 9.3 and Schedule 1 -
26
     Definitions.
27
              Likewise, the Agreement destroys Stephens Media's assertion that there is nothing but
28

1    "fantasy" behind Defendants assertion that Righthaven acts as Stephens Media's agent.  Dkt. 56

2    at 8.  The Agreement describes Stephens Media's "engagement" of Righthaven to bring suit;

3    gives Stephens Media the ability to decide, even after "assignment," whether to sue; gives

4    Stephens Media the proceeds after Righthaven receives a 50% commission;[4] and allows Stephens

5    Media to terminate the agency at any time by exercising its reversion rights.  Sections 3.3, 7, 8.

6    And the Agreement also describes an Operating Agreement that *requires* a Stephens Media

7    Affiliate with common ownership to participate in operating Righthaven.  Section 2.

8         In short, the Agreement adds substantial additional evidence to the already extensive

9    factual allegations showing a live case and controversy against Stephens Media.

10   **II.    THE AGREEMENT SUBSTANTIATES THE NEED TO RESOLVE THE**
         **COUNTERCLAIM'S ALLEGATIONS THAT THE ASSIGNMENT IS INVALID,**
11       **SHAM, AND UNENFORCEABLE.**

12        The Agreement also further undermines the arguments of both Stephens Media and

13   Righthaven that this Court need not decide the Counterclaim's request for declaration of the

14   invalidity and unenforceability of the assignment.  As Defendants have already argued, it is

15   *precisely* this sort of counterclaim, seeking resolution of the *validity* of the right assertedly

16   infringed, that the Supreme Court has held must survive a dismissal with prejudice of a claim for

17   infringement.  Dkt. 46 at 13-14 (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83

18   (1993)).  This newly-produced evidence underscores the importance of addressing that question

19   now.

20        On the question of validity, the Counterdefendants have argued that other rulings on

21   motions to dismiss Righthaven's prior lawsuits supposedly "upheld the validity" of the form

22   "Copyright Assignment."  *See, e.g.*, Dkt. 56 at 4-5; and Righthaven's Motion for Voluntary

23   Dismissal ("Dkt. 36") at 20-21.  But for each of those rulings (which came on motions to dismiss)

24   Righthaven had withheld from the Court the Strategic Alliance Agreement and its definition of

25   rights actually conveyed – thereby concealing that "Righthaven shall have no right or license to

26

27   ───────────────
     [4]   Defendants also note that the litigation proceeds due Stephens Media pursuant to this Agreement provide the
         company with a direct, pecuniary interest in the outcome of this case, and therefore Stephens Media should have
28       been listed in Righthaven's Certificate of Interested Parties. Dkt. 5.

1   Exploit . . . the Stephens Media Assigned Copyrights" other than to share with Stephens Media

2   the "Recovery" from litigation.[5]  Sections 5 and 7.2.  As a result, this is the first case in which any

3   Court will have the information necessary to assess the validity of the assignment.

4          Rather than dismiss the Counterclaim as "unnecessary," this Court will need to determine

5   whether the rights assigned under the Agreement comport with the settled requirement that "only

6   owners of an exclusive right in a copyright may sue" for infringement.  *Silvers v. Sony Pictures*

7   *Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005).  In *Silvers*, the *en banc* Ninth Circuit held that an

8   assigned "right to sue for an accrued claim for infringement is not [one of the] exclusive

9   right[s]" in copyright that can provide standing to sue. Such exclusive rights are limited to those

10  specified in Section 106 of the Copyright Act, such as the right to copy, distribute, perform, etc.

11  *See id.* at 884.  Thus, in *Silvers*, the author of a work made for hire, who subsequently had been

12  granted by her employer (the copyright holder) "all right, title and interest in and to any claims

13  and causes of action against [specified infringers]," had no legal or beneficial interest in the

14  underlying copyright itself, and thus could not initiate suit, because none of the individual

15  exclusive rights under § 106 had been granted to her. *See id.* at 883.  In support of its

16  Counterclaim, Democratic Underground asserts that the same rule applies here.  The Agreement

17  expressly *denies* Righthaven *any* rights other than the right to sue on the copyright, with all rights

18  to exploit the copyright being retained by Stephens Media.  *See* Section 7.2.  Thus, Righthaven's

19  claim has been baseless and Stephens Media has been the real party in interest from the outset.

20         The fact that the Agreement applies to *all* Righthaven assignments from Stephens Media,

21  not merely to this News Article, makes the Counterclaim all the more important.  Now that the

22  Agreement's terms are finally before the Court, this Court's determination of the validity of

23  Righthaven's assignment may effectively dispose of hundreds of Righthaven cases.

24

25  [5] For example, *in Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, (D. Nev.) 2:10-cv-0636-RLH-RJJ  (cited in
    RH's motion (Dkt. 36) at 21),  Righthaven incorrectly stated  that"[i]n the present action, there is no division of

26  copyright ownership as was the case in *Silvers*; Righthaven is the owner of both the exclusive rights in and to the
    Work and the owner of all accrued causes of  action." 2:10-cv-0636, Dkt. 11 at 13: 2-3 and  Dkt. 13 at 12:24-26.

27  This is incorrect because Righthaven owns none of the exclusive rights specified in Section 106, all of which were
    "retained" by Stephens Media.

28

1

2

**III.    THE AGREEMENT SUBSTANTIATES THE OBJECTIVE UNREASONABLENESS OF PLAINTIFF'S CLAIMS AND THE PROPRIETY OF AN ATTORNEYS' FEE AWARD.**

3    Righthaven argued in its Motion that it should be allowed to voluntarily dismiss without

4    paying attorneys' fees because the "objective reasonableness" of its claims had purportedly been

5    validated by the courts' refusal to dismiss its prior claims for lack of standing.  Dkt. 36. at 20-22.

6    As just explained, however, those prior rulings resulted from Righthaven's withholding of the

7    Agreement from the Court.  With the Agreement now on record, it appears indisputable that

8    Righthaven's assignment of the cause of action is invalid under *Silvers*, rendering Righthaven's

9    claim objectively unreasonable.

10   **IV.    THE AGREEMENT SUBSTANTIATES THE FACT THAT RIGHTHAVEN FACES NO POSSIBLE MARKET HARM THROUGH DEFENDANTS' USE**

11

12   Finally, the Agreement further substantiates the impossibility of harm to Righthaven's

     market for the work, as relevant to the fourth factor of the fair use analysis.  Under the

13   Agreement, Righthaven is expressly prohibited from *any rights* to exploit the work – other than

14   the supposed right to sue for copyright infringement.  Section 7.2.  Thus, no use of the work

15   could have any possible impact on Righthaven (even if the use "should become widespread," *cf.*

16   *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 451 (1984)), because Righthaven

17   has no rights in the work – other than the illusory "right" to litigate the work for a share of the

18   recovery.  *See generally* Defendants' Reply Memorandum in Support of Cross Motion for

19   Summary Judgment ("Dkt. 62") at 13-14 (discussing lack of market harm).

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1

## <u>CONCLUSION</u>

2

For these reasons, Defendants respectfully request that the Court consider the Strategic

3

Alliance Agreement in its adjudication of the three motions now pending before it.

4

5

Dated:  March 4, 2011                                    FENWICK & WEST LLP

6

7

                                                                By:    /s/ Laurence F. Pulgram

8

                                                                       LAURENCE F. PULGRAM, ESQ

9

                                                                Attorneys for Defendant and Counterclaimant

10

                                                                DEMOCRATIC UNDERGROUND, LLC, and
                                                                Defendant DAVID ALLEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28