```
 1  CAMPBELL & WILLIAMS
    DONALD J. CAMPBELL, ESQ. (1216)
 2  J. COLBY WILLIAMS, ESQ. (5549)
 3  700 South Seventh Street
    Las Vegas, Nevada 89101
 4  Telephone: (702) 382-5222
    Facsimile: (702) 382-0540
 5  Email: djc@campbellandwilliams.com
 6         jcw@campbellandwilliams.com
 7  Attorneys for Counterdefendant
 8  Stephens Media, LLC
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>Defendants. | Case No.: 2:10-cv-01356-RLH-GWF<br><br>**COUNTER-DEFENDANT STEPHENS MEDIA LLC'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM ADDRESSING RECENTLY PRODUCED EVIDENCE RELATING TO PENDING MOTIONS AND JOINDER IN RIGHTHAVEN'S RELATED RESPONSE** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>Counterclaimant,<br><br>v.<br><br>RIGHTHAVEN LLC, a Nevada limited-liability company; and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>Counterdefendants. | |



Counterdefendant Stephens Media LLC ("Stephens Media") hereby submits the instant Response to Defendants' Supplemental Memorandum Addressing Recently Produced Evidence Relating to Pending Motions (Dkt. No. 79, filed April 15, 2011) (the "Supplemental Memorandum"). Stephens Media likewise Joins in the Response to the Supplemental Memorandum filed by Righthaven, LLC ("Righthaven") this same date.

**POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Stephens Media contended in its Motion to Dismiss or Strike (Dkt. No. 38, filed November 17, 2010) and its subsequent Reply brief (Dkt. No. 56, filed January 7, 2011) that the Counterclaim filed against it by Defendants Democratic Underground, LLC ("DU") and David Allen should be dismissed because there is no justiciable case or controversy between these parties or an imminent threat thereof. *See* Dkt. No. 38 at 4:20 – 8:21; Dkt. No. 56 at 14:24 – 15:18. Stephens Media's production and this Court's unsealing of the Strategic Alliance Agreement ("SAA") between Stephens Media and Righthaven does nothing to undermine that contention.

Production of the SAA does not change the undisputed facts that Stephens Media neither sued nor threatened to sue Defendants for copyright infringement. To the contrary, Stephens Media has expressly disavowed any intent to sue Defendants for the manner in which they used the subject article on the occasion in question and has agreed to be bound by the final result of the litigation (regardless of the outcome) on this issue. As will be briefly revisited below, when a party disclaims its assertion of countervailing rights, the "live controversy" that is required throughout all stages of the litigation by Article III of the United

States Constitution ceases to exist and, in this case, renders Defendants' Counterclaim against Stephens Media moot.

Before addressing the foregoing issue, however, Stephens Media believes it is important to respond to certain commentary made by the Court that presents a blemished portrait of Stephens in this action. Specifically, the Court commented in its Order filed April 14, 2011 that "Righthaven and Stephens Media have attempted to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar, with defendants who do not want to incur the costs of defending the lawsuits[.]" *See* Dkt. No. 94 at 2:7-9. Most respectfully, Stephens Media disagrees with this characterization of its intentions.

It is widely known that traditional media sources, including newspapers, face a myriad of challenges that threaten their survival in the digital era. Indeed, news stories and websites chronicling the imminent death of the American newspaper abound.[1] Whether this doomsday scenario applies to a given newspaper is, of course, fact specific but there can be no dispute that all newspapers face increasing competition from countless websites on the internet. And while vigorous competition is the foundation of a free market, unfair competition is actionable. Many of the websites that traffic in the news of the day create no original content of their own. More often than not, they simply aggregate work that originated in a newspaper. To create that original work, newspapers must pay professional reporters and editors to conduct research, interview and vet sources, cover official proceedings or other events being

---

[1] *See, e.g.,* Eric Alterman, *Out of Print, The death and life of the American newspaper* (available at http://www.newyorker.com/reporting/2008/03/31/080331fa_fact_alterman); Linton Weeks, *Chronicling the Death of American Newspapers* (available at http://www.npr.org/templates/story/story.php?storyId=101237069); www.newspaperdeathwatch.com ("Chronicling the Decline of Newspapers and the Rebirth of Journalism").

reported on, write the story or editorial, and check for accuracy before publishing. The operator that does nothing more than co-opt a newspaper story for placement on its own website by "cutting and pasting" original content bears none of the very substantial costs associated with creating the original work.

In light of the parasitic business model employed by many website operators, Stephens Media contracted with Righthaven in an effort to curb the unauthorized use of its original content on the World Wide Web. While Stephens Media recognizes that Righthaven has filed a significant number of lawsuits in this district against alleged infringers of Stephens Media copyrights assigned to Righthaven, it respectfully submits that the frequency of suits is directly attributable to the frequency of infringing conduct on the internet. Multiple and successive wrongs, in other words, require multiple and successive responses.[2] Rather than seeking to create a "cottage industry" of litigation, it is Stephens Media's hope that the deterrent effect of the lawsuits filed to date and the rulings issued therein will reduce the amount of infringing conduct to a level where such litigation becomes altogether unnecessary.

. . . .

. . . .

. . . .

---

[2] Righthaven is scarcely the only entity to pursue internet-based copyright infringements on a large scale. *See, e.g., Recording Industry Ass'n of America v. Diamond Multimedia Sys. Inc.*, 180 F.3d 1072, 1074 (9th Cir. 1999) ("RIAA fights a well-nigh constant battle against internet priracy, monitoring the Internet daily, and routinely shutting down pirate websites by sending cease and desist letters and bringing lawsuits."); *Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000 (9th Cir. 2004); http://www.mpaa.org/contentprotection/faq (MPAA "aggressively pursu[es] those who engage in the mass production and distribution of illegal copies of copyrighted film and TV shows[.]"). The newspaper industry is likewise establishing a digital rights organization, News Licensing Group, to license and enforce the intellectual property rights of content creators. See http://www.mediabistro.com/tvnewser/former-abc-news-boss-david-westin-to-head-up-news-licensing-group_b61628.

## II. THE TERMS OF THE SAA DO NOT CREATE A LIVE CASE OR CONTROVERSY—OR A THREATENED CASE OR CONTROVERSY—BETWEEN DEFENDANTS AND STEPHENS MEDIA.

Stephens Media did not bring this action. Defendants made Stephens Media a party to the litigation by way of their Counterclaim. The Counterclaim, in turn, asserts a single cause of action for "Declaration of No Copyright Infringement." *See* Dkt. No. 13 at 24:2-28.

Like Article III of the United States Constitution, the federal statute authorizing declaratory relief actions, 28 U.S.C. § 2201, requires the existence of an actual case or controversy between the parties in order to invoke the jurisdiction of the federal courts. *See Gator.Com Corp., v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005). The controversy must remain "live" throughout all stages of the litigation. *Id.* When this condition is not met, the case will become moot and subject to dismissal. *Id.* at 1129 (dismissing suit seeking declaratory judgment where parties entered settlement agreement while appeal was pending notwithstanding that terms of settlement agreement contained a contingency payment tied to outcome of the appeal). In actions seeking declaratory relief, the Ninth Circuit has articulated the following test for mootness: "[do] the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment[?]" *Id.* The answer to that question here is "no."

Defendants contend that a live case and controversy exists with Stephens Media because the terms of the SAA reveal, *inter alia*, that Stephens Media (i) controlled the choice to assign rights in the subject news article, (ii) controlled whether the article would actually be sued upon, and (iii) has a right of reversion "under which it *may* continue the lawsuit as it wishes in its own name." *See* Dkt. No. 79 at 5:13-26 (emphasis added). Assuming,

*arguendo*, that Defendants' interpretation of the SAA is correct,[3] Defendants fail to account for the fact that Stephens Media has expressly disavowed any intent to sue Defendants for the manner in which they used the subject article on the occasion in question and has agreed to be bound by the final result of the litigation on this issue regardless of the outcome.

The Supreme Court has recognized that the requisite case or controversy is lacking where one of the parties disavows its intention to take the challenged action at issue. In *Eccles v. Peoples Bank of Lakewood Village*, for example, the respondent ("Bank") sought a declaration that a condition imposed by the Board of Governors ("Board") for membership in the Federal Reserve System was invalid. 333 U.S. 426, 427-28 (1948). When events occurred that arguably triggered application of the condition at issue, the Bank asked the Board to withdraw it. *Id.* at 428-29. The Board refused, and the Bank filed suit. *Id.* While the matter was being litigated in the lower courts, the Board formally disavowed any intention to invoke the condition against the Bank. *Id.* at 430-31.

In light of the Board's position, "what the Bank really fear[ed], and for which it [sought] relief, [was] that under changed conditions, at some future time, it may be required to withdraw from membership[.]" *Id.* at 432. The *Eccles* court held that "[t]he occurrence of these contingent events, necessary for injury to be realized, is too speculative to warrant anticipatory judicial determinations." *Id.* It concluded:

> Where administrative intention is expressed but has not yet come to fruition, or where that intention is unknown, we have held that the controversy is not yet ripe for equitable intervention. Surely, when a body such as the Federal Reserve Board has not only not asserted a challenged power but has

---

[3] Stephens Media does not agree with Defendants' interpretation that the SAA deprives Righthaven of standing and renders Stephens Media the real party in interest in this action. Rather than add to the already voluminous papers filed in this action, Stephens hereby joins in the treatment of this issue contained in Righthaven's Response to the Supplemental Memorandum filed this same date.

Page 6 of 10

expressly disclaimed its intention to go beyond the legitimate 'public interest' confided to it, a court should stay its hand.

*Id.* at 434-35 (internal citations omitted). Other courts have reached the same result. *See, e.g., Drew Chemical Co. v. Hercules Inc.*, 407 F.2d 360, 362-63 (2d Cir. 1969) (action for declaratory judgment that patent was not infringed and was invalid was properly dismissed for lack of justiciable controversy where there had been a formal confession by defendant that plaintiff's sample product did not infringe and that defendant had no present intention to sue plaintiff for infringement of patent); *Super Sack Mfg. Corp. v. Chase Packaging, Corp.*, 57 F.3d 1054, 1058-59 (Fed.Cir. 1995) (patent holder's renunciation through counsel of all infringement claims arising from competitor's currently manufactured products mooted competitor's counterclaim seeking declaration of patent invalidity) *overruled on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007),[4] *Texas v. West Publishing Co.*, 681 F.Supp. 1228, 1230-31 (W.D.Tex. 1988) (declaratory relief action seeking declaration of copyright invalidity or "fair use" was dismissed for lack of actual controversy where copyright holder had not complained of publication or threatened litigation).

Stephens Media moved to dismiss this action on grounds that no actual controversy exists between it and defendants given that Stephens Media did not bring this action and has disavowed any intent to sue defendants for its past use of the article.[5] The Court's

---

[4] *Super Sack* is cited favorably by the Ninth Circuit in *Gator.Com. See* 398 F.3d at 1130-31.

[5] In an attempt to create a live controversy with Stephens Media, Defendants have previously argued that, upon a finding of fair use, they desire and intend to restore the subject post and the comments of users responding to it. *See* Dkt. No. 46 at 7:17-20. To the extent Defendants' proposed conduct mirrors its previous use of the article, it would be covered by Stephens Media's representation that it has no intent to sue for such use. To the extent Defendants' proposed conduct contemplates a different use of the article, Defendants would be



CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540

interpretation of the SAA—whatever its decision—does not change the foregoing. Should the Court find that the SAA negates the copyright assignment at issue herein, then Stephens Media would remain the copyright owner and would have standing to sue for its infringement. Stephens Media, though, has already indicated it will not be pursuing such an action. Should the Court find that the SAA does not impact the validity of the copyright assignment, then Righthaven's status as the copyright assignee gives it standing to maintain the action. Righthaven, for its part, already moved to voluntarily dismiss this action nearly *six months ago*. See Dkt. No. 36. The bottom line is that while much has been made about the terms of the SAA, it adds little to the case or controversy calculus given the procedural posture of this particular matter.[6]

### III. CONCLUSION

For the reasons set forth above and in the papers previously filed herein, Stephens Media respectfully requests that this Court grant its Motion to Dismiss or Strike the

. . . .

. . . .

---

seeking an improper advisory opinion based on hypothetical facts. *See Gator.Com*, 398 F.3d at 1132 ("Our role is neither to issue advisory opinions nor declare rights in hypothetical cases[.]") (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)); *Super Sack*, 57 F.3d at 1059-60 (even though patentee's promise not to sue did not cover products competitor could make, sell or use in the future, residual possibility of future infringement suit based on competitor's future acts was too speculative to support declaratory relief counterclaim).

[6] It is clear that Defendants want the Court to address the terms of the SAA in this action as they believe that an interpretation their favor "may effectively dispose of hundreds of Righthaven cases." *See* Dkt. No. 79 at 7:20-23. While Defendants' invitation to clear the Court's docket by way of a single ruling in this case may seem attractive on the surface, the reality is that "[c]ourts must exercise caution in entertaining declaratory relief actions where rulings are sought that would reach far beyond the particular case." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265, 1271 (S.D. Cal. 2007) (citing *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).

1  Counterclaim.

2     Dated this 9th day of May, 2011.

3
4                                    Respectfully submitted,

5                                    CAMPBELL & WILLIAMS

6                                    By  /s/ *J. Colby Williams*
                                        DONALD J. CAMPBELL, ESQ. (#1216)
7                                       J. COLBY WILLIAMS, ESQ. (#5549)
                                        700 South Seventh Street
8                                       Las Vegas, Nevada 89101
                                        Telephone: (702) 382-5222
9                                       Facsimile: (702) 382-0540
10
11                                   Attorneys for Counterdefendant
                                     Stephens Media, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing **Response to Defendants' Supplemental Memorandum Addressing Recently Produced Evidence Relating to Pending Motions and Joinder in Righthaven's Related Response** was served on the 9th day of May, 2011 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

                                                                /s/ *J. Colby Williams*
                                                         An employee of Campbell & Williams



CAMPBELL
& WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
PHONE: 702/382-5222
FAX: 702/382-0540