SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

*Attorney for Plaintiff/Counterdefendant Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>Defendants. | Case No.: 2:10-cv-01356-RLH-GWF<br><br>**RIGHTHAVEN LLC'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM ADDRESSING RECENTLY PRODUCED EVIDENCE RELATING TO PENDING MOTIONS** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>Counterclaimant,<br><br>v.<br><br>RIGHTHAVEN LLC, a Nevada limited-liability company; and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>Counterdefendants. | |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Congress authorized a limited monopoly in copyrighted works "to motivate the creative activity of authors and inventors by the provision of a special reward." *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429.   Yet, since the proliferation of the internet and the number of people with websites and blogs, copyright holders have seen their works repeatedly copied and posted online without permission, recognition, or compensation.  That is the case here, where Defendants displayed an unauthorized reproduction of an article by the *Las Vegas Review-Journal*, which is owned by Stephens Media LLC ("Stephens Media") The abundance of infringement just like the one at issue here is why Stephens Media entered into an agreement with Righthaven to help it pursue these infringers.

Part of the strategy to pursuing online infringers requires Stephens Media to assign its copyright in a particular work to Righthaven, along with the right to sue for past, present and future infringement.  It is black letter law that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has standing to pursue a claim for infringement.  This is a much different situation than in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005), where the plaintiff, assigned only a ***bare right to sue*** for past copyright infringement, lacked standing.

Contrary to Defendants' assertions, the record before the Court does not substantiate the need to resolve their counterclaim contentions that the copyright assignment is invalid, unenforceable, and a sham.  (Doc. # 79 at 8.)  Moreover, the record fails to support a finding that this action was objectively unreasonable when filed.  (*Id.* at 8.)  Rather, as argued below, the assignment conveyed ownership of the work to Righthaven together with the right to sue for past copyright infringement as required under *Silvers*.  Given these circumstances Righthaven's claims are objectively reasonable.  Accordingly, neither an adjudication of Defendants' sham assignment counterclaim allegations nor is an award of attorneys' fees is warranted should Righthaven be allowed to voluntarily dismiss this action with prejudice.

Righthaven asserts that it has standing to sue for past infringement under *Silvers*, which has always been the parties' intent.  To further clarify their mutual intent, declarations from the parties to the transaction have submitted supporting declarations.   Thus, to the extent the Court finds that anything in the Strategic Alliance Agreement ("SAA") or copyright assignment is ambiguous such that it is unclear whether Righthaven has standing, it may interpret these agreements to confer full ownership rights in Righthaven.  The Court's ability to do this is also expressly set forth in the SAA, which vests the Court with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties."  (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

In an effort to cure any possible doubt as to whether Righthaven has full ownership in an assigned copyright, Righthaven and Stephens Media have recently executed a Clarification and Amendment to Strategic License Agreement (the "Amendment"), which not only makes clear that Righthaven has full ownership rights in any assigned copyright, it gives Stephens Media only a non-exclusive right to use an assigned work.

Finally, Defendants' claim that the SAA demonstrates that Righthaven faces no possible market harm under the fourth fair use analysis factor is misplaced.  (Doc. # 79 at 8.)  This case involves a claim of past copyright infringement that was assigned to Righthaven, who then sought redress for this accrued claim by filing suit against the Defendants.  The SAA does not change this fact.  Given that Righthaven was assigned the accrued copyright infringement claim against the Defendants, the market harm analysis is appropriately directed toward the holder of the work at the time the infringement occurred.  To the extent the Court believes otherwise despite the Defendants failure to cite any specific authority in support of their contention, the Amendment clarifies that Stephens Media is granted a non-exclusive license and is paid an annual license fee.  (*See* Gibson Decl. Ex. 3, Hinueber Decl. Ex. 3.)  These rights and benefits weigh against a finding of fair use under the fourth analysis factor.

## II.    STATEMENT OF FACTS

Righthaven is the owner of a copyright registration for the literary piece "Tea Party power fuels Angle" (the "Work"), which originally appeared in the *Las Vegas Review-Journal*

on or about May 13, 2010.  (Doc. # 1 at 3; Gibson Decl. ¶ 3; Hinueber Decl. ¶ 3.)  Righthaven has alleged that Defendants displayed an unauthorized copy of the Work shortly after it was published and continued to display this unauthorized copy until, at least, receiving notice of this lawsuit.  (Doc. # 1 at 4.)

On July 8, 2010, Stephens Media, the original owner of the Work, assigned all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements (the "Assignment").  (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1; *see also* Doc. #1 at 4.)  Righthaven filed for registration of the Work with the United States Copyright Office (the "USCO") on July 9, 2010.  (Doc. # 1-1 at Ex. 4; Gibson Decl. ¶ 4.)

As argued below, Righthaven has standing to maintain this action because it was properly assigned the accrued infringement claim along with ownership of the Work through the Assignment.  Righthaven's standing to bring this action for the accrued past infringement of the Work demonstrates, along with the other evidence already before the Court, demonstrates the objective reasonableness of its claims and the utter uselessness of adjudicating Defendants' Counterclaims, which have been brought to needlessly drag Stephens Media into this case.

## III.    ARGUMENT

Standing is a jurisdictional requirement that can be raised at any time, including *sua sponte* by the court, as is the case here.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008).  Pursuant to Section 501(b) of the Copyright Act, only "the legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement. *Silvers*, 402 F.3d at 884.  Section 106 of the Act, in turn, defines the exclusive rights that can be held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and to distribute copies).  Exclusive rights in a copyright may be transferred and owned separately—for example, through assignment or an exclusive license—but no exclusive rights exist other than those listed in Section 106.  *Silvers*, 402 F.3d at 885.  While the right to assert an accrued cause of action for copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright.  *See id.* at 890.

As the assignee-owner of the full right and title in and to the Work, Righthaven has standing to sue for acts of copyright infringement occurring after it acquired ownership of the copyright.  Pursuant to the express terms of the Assignment, Stephens Media also expressly transferred to Righthaven the right to assert accrued causes of action for infringement of the Work, giving Righthaven standing to sue for Defendants' infringement, even though that infringement occurred prior to the Assignment.  (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.)  In addition, Stephens Media and Righthaven recently executed a clarification and amendment to the SAA in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  This Amendment has cured any defects in standing that existed under the parties' original contractual relationship.  (*Id.*)  Therefore, as set forth below, Righthaven respectfully requests that the Court find that Righthaven has standing to maintain this action.[1]  With such a finding, the Court must necessarily reject Defendants' contention this action was objectively unreasonable when filed and it must further reject their plea that the Assignment must be found invalid through an adjudication of their counterclaim allegations.

### A.   Pursuant to the Written Assignment, Righthaven Has Standing to Sue for Past Infringement.

Binding precedent establishes that the assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring this case and establishes that the action was not, as Defendants' contend, objectively unreasonable when filed.  In *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work.  *Id.* at 889-90.  In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the

---

[1] If the Court finds that despite the parties' Amendment to the SAA, Righthaven still lacks standing, Righthaven requests that it be granted leave to join Stephens Media as a plaintiff in order to cure the jurisdictional deficiency.  *See Benchmark Homes, Inc. v. Legacy Home Builders L.L.C.*, 2006 WL 208830, at *1 (D. Neb. Jan. 26, 2006) (granting plaintiff's request for leave to join real party in interest after finding that plaintiff lacked standing to sue under Copyright Act).

Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased.  *Silvers,* 402 F.3d at 889.

Multiple courts in this district have already determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers*, based on the plain language of the copyright assignment: (1) *Righthaven LLC v. Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. March 30, 2011); (2) *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010); and (3) *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).  (*See also* Gibson Decl. ¶¶ 9-10.)Just like the assignments at issue in the cases, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all accrued causes of action for copyright infringement.  (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred upon Righthaven the exclusive rights required under the Copyright Act to bring suit for ***both*** past and future acts of infringement.  As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work.  It also sought registration of the Work with the USCO and brought suit against a blatant infringer.

Nothing in the SAA's provisions alter the unambiguous language of the Assignment or the rights that Righthaven acquired.[2]  First, the SAA does not effectuate the assignment of any

---

[2]  Righthaven further contends that Defendants' lack standing to challenge the contractual validity of the SAA.  Courts have held, that as a matter of public policy, it would be inequitable to allow an infringer to use the validity of transfer of rights to a copyrighted work as a defense when no dispute exists between the parties to the transfer.  *See Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428-29 (9th Cir. 1996); *Elden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36-37 (2d Cir. 1982); *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141 F.Supp.2d 224, 227-28 (D. P.R. 2001)(denying motion to dismiss for lack of standing based on alleged invalidity of transfer of copyrighted interest).  Moreover, as a matter of general contract law, only the contracting parties to an agreement have standing to attack its validity.  *See, e.g., Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 792 (8th Cir. 1967).

work.  (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights.  (*Id.*)  The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works.  (*Id.*)  But the SAA itself does not cause an assignment of property rights.

Nor does the SAA's right of reversion provision have any impact on Righthaven's present standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions.  (*Id.* § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, unless and until Stephens Media exercises its right of reversion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Gibson Decl. Ex. 2 § 8; Hinueber Decl. Ex. 2 § 8.), and there is nothing in the record to suggest it will.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights."  *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment transfers all rights, title and interest in and to the assigned property.  *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee ***prior to being divested through licensure***.

While the transactional structure described in the SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here.  As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement.  *Silvers,* 402 F.3d at 889-90.

The transactional structure under the SAA and the actual assignment of rights comport with the holding in *Silvers*.  Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned.  (*See, e.g.,* Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.)  While Righthaven promises under the SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until ***after*** the assignment of ownership rights and the right to sue for past infringements is conveyed.  This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims.  Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the SAA.

**B.**     **The Court Should Construe the Contracts to Convey to Righthaven All Rights Necessary for It to Have Standing.**

Under Nevada law,[3] the Court should interpret the contracts to find that they convey any and all rights necessary to establish Righthaven as the true and lawful owner of the copyright to the Work.  To the extent there is any ambiguity with respect to whether the Assignment sufficiently conveyed the rights to Righthaven so that it has standing to bring this action, the court should look to parties' intent.  *Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 488, 117 P.3d 219, 224 (2005) (internal quotation omitted).  Moreover, pursuant to the express

---

[3] The SAA expressly states that it is governed by Nevada law.  (Gibson Decl. ¶ 5, Ex. § 15.3; Hinueber Decl. ¶ 5, Ex. § 15.3.)

language of the SAA, if any portion of the SAA is deemed void or unenforceable, the Court is contractually vested with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties." (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

There can be no question that the parties intended to convey to Righthaven any right necessary for it to bring suit. As set forth in the accompanying declarations and as reflected in the SAA, the Assignment, and the recently-executed Amendment discussed below, the parties to the SAA and the Assignment intended to vest copyright ownership of specific works in Righthaven so as to grant it the right to sue for infringement, including past infringement, while still permitting Stephens Media to use the works going forward based on a license of rights to do so from Righthaven. (Gibson Decl. ¶¶ 5-12, Exs. 2-3; Hinueber Decl. ¶¶ 5-11, Exs. 2-3.) Accordingly, the Court should construe the contracts in such a way that they convey to Righthaven all rights that are necessary to have standing to maintain this action. If the Court does so, Righthaven has always had standing to bring this suit, its claims are objectively reasonable and Defendants' counterclaim allegations concerning the validity of the Assignment do not demand adjudication.

### C.    Standing Is Also Effected by the Amendment.

As stated above, Righthaven has standing to bring suit pursuant to the Assignment and SAA, which expressly confer (and reflect the intent to confer) full copyright ownership on Righthaven. Nevertheless, to further clarify the parties' intent—and to preempt any future challenges to Righthaven's standing—Righthaven and Stephens Media have clarified and amended their intent when entering into the SAA as set forth in the supporting declarations and in the Amendment. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.) In the Amendment, Righthaven and Stephens Media promise to execute individual assignments for certain copyrighted works (as before), but Righthaven promises to grant Stephen's media only a non-exclusive license to Exploit the work. (Gibson Decl. Ex. 3 at 1-2; Hinueber Decl. Ex. 3 at 1-2.) As a mere holder of the right to use the assigned copyrighted work, Stephens Media would not have standing to sue for infringement. *See, e.g., Silvers* 402 F.3d at 884-85. Thus, the sole party

holding any exclusive rights, and the attendant standing to sue for infringement, would be Righthaven.  *See id.*  This agreement reflects the parties' intent to transfer full rights in the copyright to Righthaven.  (Gibson Decl. ¶¶ 5-12, Ex. 3; Hinueber Decl. ¶¶ 5-11, Ex. 3.)  Further, the Amendment extinguishes the "right of reversion" previously held by Stephens Media, and replaces it with a standard option to re-purchase the copyright upon the satisfaction of certain conditions.  (Gibson Decl. Ex. 3 at 2-3; Hinueber Decl. Exs. 3 at 2-3.)  The Amendment also contains provisions requiring Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the beneficial owner in the Work, in addition to its status as legal owner. (*Id.* at 1-2.)

Courts frequently allow parties to a copyright transfer to subsequently clarify or amend their agreement in order to express their original intent to grant the assignor the right to sue for infringement.  *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (recognizing that an oral assignment can be confirmed later in writing); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994); *see also Sabroso Publ'g, Inc.,* 141 F. Supp. 2d at 228; *Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 318 (S.D.N.Y. 1996) (giving effect to a "very late" amendment granting the plaintiff the right to bring the accrued causes of action); *Goldfinger Silver Art Co., Ltd. v. Int'l Silver Co.,* 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (holding that plaintiff could cure standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993) (holding that second assignment cured standing defect).

Given that the parties to the Assignment and the Amendment do not dispute the rights in the Work and the Defendant has not been prejudiced in any way by the Amendment, the Court—if it finds that original standing was defective—should allow the Amendment to cure the defect without dismissing the case.[4]  *See Intimo, Inc.,* 948 F. Supp. at 317-18; *Infodek, Inc.,* 830 F.

---

[4]  Federal Rule of Civil Procedure 17(a) additionally supports Righthaven's request to have the parties' intent to grant the company standing to bring this action by recognizing and giving effect

Supp. at 620; *Wade Williams Dist., Inc. v. Am. Broad. Co., Inc.,* 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005); *see also Dubuque Stone Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir. 1966); *Kilbourn v. Western Surety Co.,* 187 F.2d 567, 571 (10th Cir. 1951).  Doing so would cure any technical standing defects promotes judicial economy and reduces litigation costs that would necessarily arise from the dismissal and re-filing of a new action.  *Intimo, Inc.,* 948 F. Supp. at 318-19.

### D.      The SAA Does Not Materially Alter the Fourth Fair Use Analysis Factor.

As argued above, Righthaven has standing to maintain this action given the conveyance of ownership in and to the Work along with the right to sue for accrued infringement claims, which is exactly the nature of the claims in this case.  This is an action for past infringement that has validly been assigned along with ownership of the Work as required by *Silvers*.  As such, the Court's analysis under the fourth fair use factor should remain focused on the market harm to the holder at the time of infringement.  Righthaven's alleged inability to exploit the Work in view of the SAA does not alter this fact.  To the extent the Court finds otherwise, Righthaven asks the Court to consider the SAA together with the Amendment, which delineates the non-exclusive rights granted to Stephens Media and the associated annual license fees associated with these rights.  (*See* Gibson Decl. Ex. 3, Hinueber Decl. Ex. 3.)  These rights and benefits weigh against a finding of fair use under the fourth analysis factor.

## IV.    CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court find that Righthaven has standing to maintain this infringement action, that its claim was not objectively unreasonable when brought, and that the supplemental evidence does not weigh in favor of fair use under the fourth analysis factor.

Dated this 9th day of May, 2011.

                                   SHAWN A. MANGANO, LTD
                                   By: /s/ Shawn A. Mangano
                                   SHAWN A. MANGANO, ESQ.
                                   *Attorney for Righthaven LLC*

---

to the Amendment through ratification. *See Clarkson Co. Ltd. v. Rockwell Int'l Corp.,* 441 F. Supp. 792, 797 (N.D. Cal. 1977).

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 9th day of May, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*