LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:     (415) 875-2300
Facsimile:     (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:     (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>                    Defendants.<br>――――――――――――――――――――――<br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>                    Counterclaimant,<br><br>          v.<br><br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>                    Counterdefendants. | Case No. 2:10-01356-RLH (GWF)<br><br><br><br><br><br><br><br>**DEFENDANT DEMOCRATIC UNDERGROUND LLC'S REPLY TO STEPHENS MEDIA'S RESPONSE TO THE SUPPLEMENTAL MEMORANDUM** |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    Counterdefendant Stephens Media LLC ("Stephens Media") requested "leave to file a

3 supplemental brief that responds to the new evidence and arguments presented in Defendants'

4 Supplemental Memorandum."  Dkt. 80 at 3:16-18.  This Court granted Stephens Media's request,

5 allowing Stephens Media to file a "response to the Supplemental Memorandum."  Dkt. 94 at

6 2:23-24.  However, in its response (Dkt. 99 ("Response")), Stephens Media elected not to address

7 the Supplemental Memorandum or explain important questions raised by the Strategic Alliance

8 Agreement ("SAA").  Dkt. 101, Ex. 2.  Instead, Stephens Media chose to raise a new argument

9 about mootness, ironically, even as it joined (Dkt. 99 at 2:5-6 and 6:28) Righthaven's response

10 that proposes to *add Stephens Media as a plaintiff* pursuant to Federal Rule of Civil Procedure

11 17(a).  *See* Dkt. 100 at fn.1 (5:26-28) and fn.4 (10:28 and 11:28)).  As explained below, Stephens

12 Media's failure to oppose the Supplemental Memorandum or explain the SAA is fatal to its

13 motion to dismiss and its credibility, and Democratic Underground's counterclaim is not moot.

14 ## I.    STEPHENS MEDIA FAILS TO RESPOND TO THE SUPPLEMENTAL MEMORNDUM OR THE STRATEGIC ALLIANCE AGREEMENT

15    After a several page digression on the state of the newspaper industry, Stephens Media

16 briefly mentions some of the arguments raised by Defendant and Counterclaimant Democratic

17 Underground, LLC ("Democratic Underground" or "DU").  *See* Dkt. 99 at 5:23-28.  It does not

18 dispute these arguments or contend DU's interpretation of the SAA is incorrect.  *Id.* at 6:1.

19 Instead, Stephens Media merely contests the conclusion drawn from these arguments—that the

20 SAA shows that Stephens Media is the real party in interest—and deputizes Righthaven's

21 Response (Dkt. 100) to explain why.  Dkt. 99 at 6:26-28.  Democratic Underground addresses

22 those arguments in its reply to Righthaven's Response, filed herewith.

23    Stephens Media's Response not only fails to respond to the issues raised by the SAA or

24 argued in the Supplemental Memorandum, it also fails to address the numerous factual

25 inconsistencies between its prior statements to this Court and the information revealed by the

26 SAA.  Below are some examples of Stephens Media's incorrect statements, which remain

27 unexplained.

28

| Stephens Media Statements to the Court | Contradictions in the SAA |
|---|---|
| "Stephens Media's involvement with Righthaven ... is limited to its role as the assignor of the subject copyright." Stephens Media Motion to Dismiss (Dkt. 38) at 2:16-18. | Section 2 (describing SAA as "integrated transaction" with the formation of Righthaven, requiring that a "Stephens Media Affiliate" with "common owners" be a member of Righthaven LLC)

Section 3.1 and 3.3 (describing procedures for Stephens Media to identify copyright to sue over, and to control whether to file litigation)

Section 9 (describing limits and obligations imposed upon Stephens Media, including obligations to cooperate in litigation) |
| "Upon entering into the Righthaven Assignment on or about July 19, 2010, Stephens Media did not own the copyright, or any of its divisible rights, in and to the Work." *Id.* at 4:7-11. | Section 7.2 (Stephens Media "shall retain" an exclusive license in all of the divisible rights) |
| "Complete ownership of the work being sued upon has been transferred to Righthaven without any ambiguity." Stephens Media Reply in Support of Motion to Dismiss (Dkt. 56) at 4:8-9.

"The ownership of the work at issue was vested in Righthaven and remains with Righthaven so long as the Assignment is valid." *Id.* at 6:26-7:2. | Section 7.2 (Stephens Media "shall retain" an exclusive license in all of the divisible rights)

Section 3.3 (automatic reversion of assignment if Righthaven fails to sue)

Section 9.3 (Stephens Media has a right to mortgage the copyrights it purportedly assigned) |
| "Stephens Media has never been identified or disclosed as a party who has a direct pecuniary interest in the outcome of any Righthaven case.  And for good reason..."[1] *Id.* at 10:20-22 | Section 5 (providing for a 50/50 split in each litigation Recovery (less costs) between Righthaven and Stephens Media) |

_____

[1] It is true that none of the Certificates of Interested Parties filed by Righthaven in over 200 lawsuits in this Court have identified or disclosed Stephens Media as a party who has a direct pecuniary interest in the outcome—notwithstanding the SAA.  *See e.g.* Dkt. 5.  What is false is Stephens Media's representation to the Court that there is a "good reason" for this.

| | |
|---|---|
| "Righthaven must make business decision that are in the best interest of Righthaven regardless of the impact on Stephens Media..." *Id.* at 11:27-28 | Section 3.1 (providing Stephens with control over which copyrights are part of Righthaven's campaign) |
| "[N]either Stephens Media, not any other Righthaven customer, exercises control over Righthaven's method of copyright enforcement." *Id.* at 12:19-21 | Section 3.3 (providing that Stephens Media may stop a lawsuit from being filed on a variety of grounds, including the defendants "otherwise would be a person that, if the subject of an Infringement Action, would result in an adverse result to Stephens Media.") |
| | Section 8 (providing unilateral right to reversion of the purportedly assigned work) |
| | Section 9.4 (discussing procedure for Stephens Media to "reduce, adjust, settle or compromise" infringement) |

In addition, Stephens Media raised new contradictions with the declaration recently filed by its general counsel, Mark Hineuber.  Dkt. 101.  Previously, Stephens Media had asserted that "[o]n or about **July 18, 2010**, Stephens Media entered into a copyright assignment with Righthaven (the 'Righthaven Assignment')."  Dkt. 38 at 3:24-26 (emphasis added).  Counsel for Stephens Media attached a purported assignment bearing that date to his declaration.  Dkt. 38, Ex. 1 .  Yet in the new declaration, Mr. Hineuber attached a different assignment (using the same form), purportedly of the same work, dated **July 8, 2010**.  Dkt. 101, Ex. 1.  Stephens Media offers no explanation for this discrepancy.[2]

Finally, another declaration recently filed by Mr. Hineuber further evidences the contradictions between the assertions Stephens Media has made and the facts.  Stephens Media attached what it called an "exemplar" of the letters Righthaven would send to Stephens Media in each case prior to commencing litigation.  *See* Dkt. 105-1 ¶ 6 and Ex. A.  The letter states "[i]f you wish for Righthaven to refrain from pursuing infringement actions with respect to any or all of the Stephens Articles, please advise us within five business days."  *Id.* at Ex. A.  This directly

---

[2] The registration in Righthaven's name attached to the complaint is dated July 9, 2010, prior to the date of the assignment to Righthaven first attested to, making the difference in dates important.  In addition, this new assignment has never been produced in discovery by Stephens Media or Righthaven.  Instead, Stephens Media's discovery responses repeatedly referred to the July 19, 2010 assignment, which it now ignores.  *See generally* Stephens Media responses to DU's requests for production quoted in DU's Motion to Compel (Dkt. 95).  No discovery responses have been changed.

1   contradicts Stephens Media's prior assertion that "neither Stephens Media, nor any other

2   Righthaven customer, exercises control over Righthaven's method of copyright enforcement."

3   Dkt. 56 at 12:19-21.

4        This pattern of unexplained contradictions seriously diminishes Stephens Media's

5   credibility, and DU respectfully requests that this Court consider them when evaluating the

6   weight to give Stephens Media's other representations to the Court.

7   **II.      THE COUNTERCLAIM IS NOT MOOT**

8        As the Ninth Circuit has found, "[t]he burden of demonstrating mootness is a heavy one,"

9   (*Northwest Envt'l Defense Ctr. v. Gordon,* 849 F.2d 1241, 1244 (9th Cir. 1988) (citing *County of*

10  *Los Angeles v. Davis,* 440 U.S. 625 (1979))) and Stephens Media has not met it.  As Democratic

11  Underground has already demonstrated, there is an actual controversy between Stephens Media

12  and DU warranting a declaratory judgment.  *See* Dkt. 46.  Stephens Media now attempts to avoid

13  that conclusion by asserting that the controversy between the parties is moot.  However, the new

14  statements in Stephens Media's Response regarding its litigious intent against Democratic

15  Underground, like those that Stephens Media purports to have made in the past, are far too

16  ambiguous to moot the live case or controversy between the parties.  To the contrary, "the facts

17  alleged, under all the circumstances, show that there is a substantial controversy, between parties

18  having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

19  declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (citation

20  omitted).

21       **A.      Stephens Media's Equivocal Disavowals Do Not Moot the Controversy**

22       Stephens Media claims to have mooted the counterclaim by referring back to a "proffer" it

23  offered in Stephens Media's Reply in Support of Motion to Dismiss.  That language reads:

24  "Stephens Media will consent to being bound by the final outcome of this litigation insofar as it

25  relates to Stephens Media's ability to sue for infringement on any reversionary interest it may

26  possess in the literary work at-issue."  *See* Dkt. 56 at 2:26-28.  Manifestly, this is not a concession

27  that DU's conduct did not infringe, or a covenant not to sue over the past alleged infringement or

28  reposting of the Excerpt.  Accordingly, Stephens Media's agreement to be "bound by the final

1   outcome" of Righthaven's claim does not moot the case or controversy between Stephens Media

2   and DU.

3       For example, a final outcome that granted Righthaven's voluntary dismissal would not

4   prevent Stephens Media from suing Democratic Underground on these same issues when it

5   reposts the story or resolve the controversy between the parties.  Even assuming that Stephens

6   Media's "proffer" would bind it on the merits by Righthaven's dismissal as to Pampango's initial

7   post (which is itself unclear), that would not preclude Stephens Media from asserting

8   infringement by Righthaven if Democratic Underground, in its own new volitional act, reposted

9   the article as it desires to do to maintain its complete archive. *See* Declaration of David Allen,

10  Dkt. 48 ¶ 25.  Likewise, a final outcome that determined that Stephens Media was the real party

11  in interest and dismissed Righthaven's claim for lack of standing or champerty would not resolve

12  the controversy between Stephens Media and DU.

13      Stephens Media further muddies the water with other references to its so-called disavowal

14  sprinkled throughout its Reply in Support of Motion to Dismiss (Dkt. 56) and its Response to the

15  Supplemental Memorandum (Dkt. 99) (*see e.g.* Dkt. 56 at 2 and 15, Dkt. 99 at 2, 6, 7 and 8.);

16  indeed, those varying statements merely reinforce the point that a clear, unequivocal and binding

17  concession that the appearance of the Excerpt on the DU Website is not infringing and a covenant

18  not to sue DU or its users over the conduct at issue is needed before the controversy at issue can

19  be resolved.[3]  The string of haphazard statements throughout Stephens Media's briefing is subject

20  to nuances, caveats and limitations.  Democratic Underground should not be left with the prospect

21  of litigating the interpretation and meaning of all of these statements in order to resolve this

22  controversy.  Only a declaration of non-infringement will be sufficient to unequivocally estop

23  Stephens Media from pursuing further litigation against DU concerning these matters.

24      Even if there was an unequivocal covenant in its briefs, Stephens Media completely

25  undercuts its purported disavowal by joining in Righthaven's Response to the Supplemental

26

27  [3] In addition, as discussed above, Stephens Media has made representations in its briefs that have been contradicted
    by the facts. This gives Democratic Underground and this Court reason to give little weight to Stephens Media's
28  ambiguous statements about its true intentions.

DEFENDANT'S REPLY TO STEPHENS
MEDIA'S RESPONSE TO THE                    5                CASE NO. 2:10-CV-01356-RLH (GWF)
SUPPLEMENTAL MEMORANDUM

1    Memorandum, which declares an intention to *add Stephens as a plaintiff* in Righthaven's

2    copyright infringement action against DU should this Court finds that Righthaven on its own

3    lacks standing.  Dkt. 100 at fn.1 and fn.4.  This does not sound like the strategy of a party that has

4    no intention of pursuing a claim, either on its own behalf or through its agent Righthaven.[4]

5                    **B.       The Cases Cited By Stephens Media Does Not Demonstrate Mootness**

6           Moreover, the cases that Stephens Media has cited in support of its mootness argument are

7    readily distinguishable and do not support dismissal of the counterclaim.  For its primary legal

8    authority, Stephens Media points to *Eccles v. Peoples Bank of Lakewood Village*, a Supreme

9    Court case from 1948.  333 U.S. 426 (1948).  In *Eccles*, a bank that was already a member of the

10   Federal Reserve System sought to have a condition of membership declared invalid.  Although

11   the bank had no apparent intention or desire for the triggering circumstances to occur, the bank

12   was concerned that the condition might nevertheless be triggered at some future point in time.  In

13   addition, the bank reasoned that the Federal Reserve Board might one day decide to reverse its

14   policy and seek to rescind the bank's membership, even though the Board had already considered

15   the bank's current status and—after an independent investigation, consideration of statements

16   from the bank, and unanimous vote—concluded that "the public interest" called for retaining its

17   membership.  The Court held that the bank's purported concerns about possible future loss of

18   membership based on contingent events were too speculative and attenuated to create a ripe

19   controversy, especially where important public-law policy issues were concerned.

20          As Democratic Underground has already demonstrated, however, the context of its

21   Counterclaim for a declaration of noninfringement is hardly speculative or attenuated:  the

22   content, over which Democratic Underground has already been sued, was posted in DU's forums

23   (in other words, the condition giving rise to the controversy exists).  Moreover, the litigation was

24   initiated by an agent (Righthaven) that Stephens Media exclusively engaged for the express

25

---

26   [4] Stephens Media's unclear statements may be the result of Section 9.4 of the SAA, which requires that Stephens
     Media "not reduce, adjust, settle or compromise any infringement of Stephens Media Assigned Copyrights except as
27   approved in writing by Righthaven" or Section 9.6, which requires Stephens Media to "cooperate fully" with
     Righthaven.  Whatever Stephens Media's difficulties may be, DU remains entitled to a clear declaration of non-
28   infringement.

1   purpose of bringing copyright infringement suits, *i.e.*, the controversy is imminent. *See* SAA §

2   3.4 ("Stephens Media hereby engages Right*haven* throughout the Term on an exclusive basis to

3   undertake ... the pursuit of Infringement Actions.").

4       Stephens Media's ambiguous statements about its litigious intent are a far cry from a

5   federal agency's thoughtfully considered disavowal of any intention to reverse itself in

6   contravention of "the legitimate 'public interest.'" *Eccles,* 333 U.S at 435.  Indeed, as the Ninth

7   Circuit has observed, "[a] declaratory judgment action is not moot unless it is absolutely clear that

8   the defendant will never renew its allegedly wrongful behavior." *Bancroft & Masters, Inc. v.*

9   *Augusta Nat'l Inc.***,** 223 F.3d 1082, 1085 (9th Cir. 2000) (*citing FTC v. Affordable Media, LLC,*

10  179 F.3d 1228, 1238 (9th Cir.1999).

11      Stephens Media also cites *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir.

12  2005); however, the facts of that case are inapposite.  There, the question of mootness arose due

13  to the declaratory judgment *plaintiff's* agreement, pursuant to settlement terms, to cease engaging

14  in the activity that gave rise to its declaratory relief action, not the defendants assertion that it

15  would be bound by certain outcomes against other litigants.

16      Stephens Media's additional cases are inapposite.  In *Drew Chem. Co. v. Hercules, Inc.*,

17  407 F.2d 360, 362 (2d Cir. 1969), there had "been a formal concession that the patent was not

18  infringed."  Stephens Media has never conceded that the copyright at issue was not infringed, and

19  has joined several Righthaven briefs that repeatedly and emphatically assert that DU's use was

20  infringing.

21      As Stephens Media concedes, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d

22  1054 (Fed. Cir. 1995) was overruled by *MedImmune* where the Supreme Court significantly

23  loosened the standards for declaratory relief actions.  Nevertheless, Stephens Media cites it for the

24  proposition that the company can be bound by the representations of its counsel.  As discussed

25  above, the problem is not whether Stephens Media can be bound by its counsel's statements, the

26  problem is with the statements themselves.

27      For example, in *Sunshine Kids Juvenile Prods., LLC v. Indiana Mills & Mfg., Inc.*, 2011

28  WL 862038, at * 3-5 (W.D. Wash. Mar. 9, 2011), the court rejected a mootness claim that was

1    based on statements made by counsel.  There, the problem was not who made the statement, but

2    that the court was "unable to conclude that the covenant is exhaustive enough to eliminate the

3    uncertainty, and therefore the controversy, surrounding Sunshine's legal rights." *Id.* at *5.  One

4    problem was that the covenant in *Sunshine Kids* did not cover Sunshine's customers, even though

5    there was a pattern of threats, including the threat of litigation, against customers.  *Id.*  Likewise,

6    Stephens Media has a pattern of threats of litigation (*see* Dkt. 46 at 9), but has refused to agree

7    not to sue Defendants' users who might post on its forums, like the user in this litigation.[5]

8    Indeed, the record establishes that DU Website users have already refrained from posting due to

9    the threat of litigation.  Allen Decl., Dkt. 48 at ¶ 30 and Ex. C.  "[C]ourts recognize that when a

10   defendant's conduct, expressed or implied, creates the fear that customers face an infringement

11   suit or the threat of one, the controversy is sufficiently immediate and real." *Sunshine Kids,* 2011

12   WL 862038, at *4 (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc*., 846 F.2d 731, 736

13   (Fed. Cir. 1988) and *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783-784 (7th Cir. 1979)).

14         Like Stephens Media (Dkt. 99 at fn.5), the defendant in *Sunshine Kids* also argued that a

15   declaratory relief suit over future actions was too speculative but refused to covenant not to sue

16   for future products.  *Id.* at *3-4.  The mootness argument failed because the plaintiff had future

17   plans that might lead to a lawsuit, just as Democratic Undergound has future plans that may lead

18   to a lawsuit over Stephens Media's copyright—it plans to repost the article at issue and continue

19   to provide a message board upon which users may post content.  Allen Decl., Dkt. 48 at ¶¶ 24-29.

20         Likewise, in *Diamonds.net LLC v. Idex Online, Ltd.,* 590 F. Supp. 2d 593, 600 (S.D.N.Y.

21   2008) the court found a covenant not to sue insufficient.  There, the promise covered only the

22   defendant's website "as it currently exists as of the date of this covenant, or previously existed."

23   Distinguishing *Super Sack*, the court noted that, even if *Super Sack* remained good law following

24   *MedImmune*, the narrower covenant was insufficient and failed to account for activity planned by

25   the counterclaimant.  *Id.* at 600.  Here, Stephens Media's purported promise not to sue is even

26   ───────────────

27   [5] Stephens Media's agent Righthaven has already expanded its litigation campaign to include individuals who post on message boards.  *See* Steve Green, "Five more Righthaven copyright lawsuits filed," *Las Vegas Sun* (Mar. 8, 2011) (discussing several such lawsuits), available at http://www.lasvegassun.com/news/2011/mar/08/five-more-righthaven-suits-filed/.

28

1    narrower, buried in multiple inconsistent statements that are heavily nuanced with limitations.

2         Finally, *The State of Tex. v. West Publ'g. Co.*, 681 F. Supp. 1228 (W.D. Tex. 1988) does

3    not help Stephens Media's argument.  As Stephens Media candidly notes, the dismissal of the

4    declaratory judgment action depended on that fact that the "copyright holder had not complained

5    or threatened litigation."  Dkt. 99 at 7:17-18.  As DU has amply explained in its Response to the

6    Motion to Dismiss (Dkt. 46), Stephens Media has made numerous complaints and threats of

7    litigation.  Indeed, even in its most recent brief Stephens Media lauded the efforts of its agent

8    Righthaven in filing "a significant number of lawsuits in this district against alleged infringers of

9    Stephens Media copyrights . . . ."  Dkt. 99 at 4:9-11.  This is hardly the brief of a company that is

10   not intent of pursing alleged infringement again and again.

11        Accordingly, Stephens Media cannot moot the "case or controversy" that exists between

12   Stephens Media and Democratic Underground with narrow and ambiguous representations about

13   its intent or not to pursue further litigation against Democratic Underground.

14   **III.    DEMOCRATIC UNDERGROUND MUST BE ALLOWED DISCOVERY BEFORE STEPHENS MEDIA'S MOTION TO DISMISS MAY BE GRANTED**

15

16        As discussed thoroughly in the accompanying response to Righthaven's brief, the SAA,

17   even if coupled with the Amendment, already presents this Court with sufficient irrefutable

18   evidence of the sham nature of the Assignment for the Court to find the Assignment is invalid and

19   to deny Stephens Media's Motion to Dismiss.  However, if this Court is not yet prepared to find

20   the Assignment by Stephens Media to be sham, Democratic Underground must have the

21   opportunity to bolster its arguments with discovery.

22        Righthaven and Stephens Media argue that this Court should re-write the SAA to conform

23   to their alleged intent at the time of drafting.  Dkt. 100 at 8:19-9:16.  They cite to a provision of

24   the SAA that purports to require this Court to interpret the contract in the event of any dispute.

25   SAA § 15.1 ("such court *shall* correct the defect in a narrowly tailored manner to approximate the

26   manifest intent of the Parties." (emphasis added)).  They do not provide any authority that

27   suggests that parties may contractually agree to impose such requirements for the Court, much

28   less that such a provision would somehow bind the Court to reconstruct a contract at the parties'

1   request to the detriment of a  non-party to the contract.  But even supposing this provision were

2   valid, it would not help Righthaven or Stephens Media.  As the declarations of Mr. Hinueber

3   (Dkt. 101) and Mr. Gibson (Dkt. 102) show, their manifest intent was to transfer effectively only

4   a cause of action to Righthaven, while retaining the complete rights of ownership for Stephens

5   Media.  This is exactly what *Silvers* forbids, and this Court cannot reform their contracts to

6   achieve an unlawful result.

7          However, if there was any doubt whether their intent was to form a champertous contract

8   to get around *Silvers*—or any other question that the Assignment is ineffective to confer

9   standing—Democratic Underground is entitled to discovery, including depositions of these two

10  declarants, so it can prove the sham nature of this Assignment.  Defendants have been diligent in

11  seeking discovery on this point, and have a pending motion to compel.  Dkt. 95.[6]  But both

12  Stephens Media and Righthaven have refused to provide documents about the formation of

13  Righthaven and the SAA— claiming to the Magistrate Judge that all information other than the

14  express terms of the SAA itself is not discoverable, even as they submit testimony on this Motion

15  as to the SAA's meaning and their intention in entering it.  See Dkt. 105 at 9:18-13:7 and Dkt.

16  106 at 12:21-13:7.  At a minimum, before this Court could grant Stephens Media's motion to

17  dismiss, DU must be able to conduct discovery into this important issue.

18                                          **<u>CONCLUSION</u>**

19         For these reasons stated above and in its prior briefing, Defendant Democratic

20  Underground respectfully requests that this Court deny Stephens Media's Motion to Dismiss.

21
22  Dated:  May 20, 2011                          FENWICK & WEST LLP

23
24                                               By:  ____ /s/ *Laurence F. Pulgram*____
                                                      LAURENCE F. PULGRAM
25
                                                 Attorneys for Defendants
26

27  _____
    [6] The parties stipulated and this Court ordered deposition discovery stayed pending ruling on the currently pending
28  motions.  Dkt. 70.

DEFENDANT'S REPLY TO STEPHENS
MEDIA'S RESPONSE TO THE                    10          CASE NO. 2:10-CV-01356-RLH (GWF)
SUPPLEMENTAL MEMORANDUM