LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice)*
cwebb@fenwick.com
JENNIFER J. JOHNSON (CA State Bar No. 252897) (*pro hac vice*)
jjjohnson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

RIGHTHAVEN LLC, a Nevada limited liability company,

Plaintiff,

v.

DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,

Defendants.

---

DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,

Counterclaimant,

v.

RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,

Counterdefendants.

Case No. 2:10-01356-RLH (GWF)

**DEFENDANTS' REPLY IN SUPPORT OF FIRST MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AGAINST STEPHENS MEDIA**

# TABLE OF CONTENTS

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Stephens Media Has Not Met Its Burden Of Showing That Information Related to the Formation of Righthaven Is Not Discoverable ..... 3

1. Stephens Media Cannot Now, Five Months After Discovery Requests Were Served, Assert New Objections To The Requests At Issue In This Motion ..... 3

B. Stephens Media Has Not Met Its Burden Of Showing That Information Related to the News Article, Including Communications About the SAA, Is Not Discoverable ..... 6

1. Parol Evidence Is Admissible Where The Contract Is Ambiguous ..... 7

2. Where, As Here, the Unlawful Nature of the Contract Is At Issue, Extrinsic Evidence Is Admissible ..... 9

3. That the Parties Have Thus Far Relied On The SAA and Assignment Does Not Prevent Democratic Underground From Discovering Other Evidence ..... 10

C. Stephens Media Has Waived Its Objections Based on the Attorney-Client or Work-Product Privileges By Failing To Produce A Privilege Log ..... 11

III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Akers v. Keszei*, 2009 U.S. Dist. LEXIS 106247 (D. Nev. Oct. 27, 2009) .... 11

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) .... 2

*Carl Ziess Vision Int'l GMBH v. Signet Armorlite*, 2009 WL 4642388 (S.D. Cal. 2009) .... 12

*Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184 (D. Nev. 2006) .... 9

*DIRECTV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002) .... 2

*Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001) .... 9

*Industrial Indem. Co. v. Aetna Cas. & Sur. Co.*, 465 F.2d 934 (9th Cir. 1972) .... 9

*Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524 (D. Nev. 1997) .... 2

*Kaldi v. Farmers Ins. Exchange*, 21 P.3d 16 (Nev. 2001) .... 9

*Koninklijke Philips Elecs. N.V.v. KXD Tech., Inc.*, 2007 U.S. Dist. LEXIS 17540 (D. Nev. March 12, 2007) .... 2, 11, 13

*McCullough v. Dairy Queen, Inc.*, 195 F.Supp. 918 (E.D. Pa. 1961) .... 4

*Phase II Chin, LLC, et al. v. Forum Shops, LLC, et al.*, Dkt. 198, Case No. 2:08-cv-00162-JCM-GWF (D. Nev. Mar. 2, 2010) .... 12, 13

*United States v. Stepney*, 246 F. Supp. 2d 1069 (9th Cir. 2003) .... 12

*United States v. Weissman*, 195 F.3d 96 (2d Cir.1999) .... 12

**RULES**

Fed. R. Civ. P. 26 .... 2

Fed. R. Civ. P. 26(b)(5) .... 11

**TABLE OF AUTHORITIES**
**(Continued)**


**Page(s)**

**OTHER AUTHORITIES**

8 Wright & Miller, *Federal Practice and Procedure* § 2016.1 (3d Ed. 2010) .......... 12

Advisory Committee Notes, 146 F.R.D. 401 (1993) .......... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

While Stephens Media attempts to deflect their failure to make discovery with an Opposition riddled with mischaracterizations,[1] it still fails to meet its burden of showing that the information sought by Defendants is not discoverable.

*First*, Stephens Media makes the meritless assertion that Defendants are entitled to only two documents to resolve Defendants' affirmative defenses and Counterclaim—the Assignment and the Strategic Alliance Agreement ("SAA"); that these two documents are purportedly clear and unambiguous; and that the parol evidence rule bars admission of any other documents, thereby relieving Stephens Media of its duty to produce anything else. This assertion is both patently wrong and particularly ironic, given that Stephens Media and Righthaven have submitted declarations as to the meaning and intent of those documents, specifically asking the Court to look outside of the SAA to determine its intent. *See* Stephens Media's Opposition to Motion to Compel ("Opposition"), Dkt. 105 at 9:18-13:7 and Righthaven's Opposition to Motion to Compel, Dkt. 106 at 12:21-13:7. As Stephens Media has explicitly raised the parties' intent in drafting the SAA, it cannot now claim that it is unambiguous. Furthermore, as the core of Defendants' allegations is that the Assignment is a sham, parol evidence is admissible to prove that the Assignment is *not* what it purports to be. Thus Defendants are entitled to discovery on the formation of Righthaven and the drafting and meaning of the SAA.

*Second,* having made no defensible objections to the Requests at issue, Stephens Media now attempts to rely on objections to Requests *not* at issue in this Motion, hoping to incorporate new objections it failed to make at the outset or in any meet and confer. Stephens Media cannot refuse to produce documents responsive to the Requests at issue on the basis of objections to

[1] For example, Stephens Media states, "DU repeatedly asserts that Stephens Media has only produced 14 documents. This is false. Rather, Stephens Media has produced approximately 161 documents in this proceeding." Opp. at 4. In fact, Stephens Media has produced 161 *pages* of documents consisting of 14 documents in its first production, plus the Operating Agreement produced three weeks later, as accurately described in Democratic Underground's motion and supporting declaration. Ironically, Mr. Williams lists by bullet point in his declaration each of the documents produced thus far by Stephens Media – 15 bullet points – despite his assertion that Stephens Media has produced 161 documents. Williams Decl. at ¶ 5. That the Operating Agreement is 67 pages long does not make it 67 separate documents—it is one document. Regardless, Stephens Media does not dispute that it has produced no documents relating to the creation of Righthaven aside from the Operating Agreement and the SAA.

other requests or boilerplate objections in the preface to its response.

*Third*, Stephens Media's failure to provide a privilege log is not excused by its (unasserted) objections and its claim of a common interest privilege with Righthaven. Stephens Media has not only failed to prove such a common interest privilege; it has inexcusably failed, in response to a specific request to produce all documents upon which a common interest *might* be based, even to *log* the documents that would allow determination of the common interest privilege. No privilege can be maintained after deliberate refusal to reveal even the basis for a privilege claim, for four months. The privilege claims are waived.

Finally, Stephens Media asks that the Court ignore Defendants' assertion that documents sought in this case are relevant to the hundreds of other lawsuits filed by Righthaven, implying that potential relevance to multiple lawsuits undermines their relevance to this particular suit. It does not. As stated in its Motion, Defendants ask the Court to compel production of documents that are likely to lead to admissible evidence relevant to this suit, including Democratic Underground's Counterclaim and Defendants' affirmative defenses – documents about (1) the formation of Righthaven and (2) the assignment of the copyright at issue, including communications leading up to the SAA. As Stephens Media has evaded this discovery for five months and has yet to meet its burden of showing that this information is not discoverable, Stephens Media should be ordered to produce the requested discovery, including that as to which any conceivable privilege has been waived, within ten days of the Court's order.

## II. <u>ARGUMENT</u>

Stephens Media does not even attempt to dispute the familiar legal principles governing this motion. Under Rule 26, "the scope of discovery is broad[,] and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528 (D. Nev. 1997). The party resisting discovery carries a "heavy burden" of showing why discovery should not be allowed. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). This burden includes "clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship); *see also Koninklijke Philips Elecs. N.V.v. KXD Tech., Inc.*, 2007 U.S. Dist. LEXIS

17540, at *12 (D. Nev. March 12, 2007) (Foley J.) ("the objecting party must specifically detail the reasons why each request is irrelevant"). Stephens Media has still not met its burden of showing that the sought information is not discoverable.

**A. Stephens Media Has Not Met Its Burden Of Showing That Information Related to the Formation of Righthaven Is Not Discoverable.**

Stephens Media asserts two primary reasons for withholding documents related to the formation of Righthaven,[2] neither of which holds water: (1) that Stephens Media asserted objections to Requests other than those at issue in this motion, and therefore the Court should additionally consider Stephens Media's objections to unrelated Requests as if they had been asserted to the Requests at issue; and (2) that the only two documents necessary to resolve Defendants' claims related to the documents sought are the Assignment and the SAA.[3]

1. Stephens Media Cannot Now, Five Months After Discovery Requests Were Served, Assert New Objections To The Requests At Issue In This Motion.

Stephens Media directs the Court to numerous discovery Requests not at issue in this motion in an attempt to incorporate unrelated objections into their response to the Requests that are at issue. Any objection not originally asserted has long since been waived.

As to Request 36, seeking all documents relating to the creation of Righthaven, Stephens Media claims that "Democratic Underground conveniently ignores the topics of relevance, undue burden, and the overbroad nature of the request on the alleged basis that Stephens Media failed to object on those grounds." Opp. at 7. Stephens Media *did* fail to object on relevance. Its sole objection to this Request reads: "The foregoing document Request is overbroad and unduly burdensome ***insofar as*** **it is asking Stephens Media to produce documents *from* a wholly separate entity**" (emphases added). Stephens Media only objected to producing documents to the extent they were in the possession of others. That objection cannot, in any way, immunize

---

[2] Among other Requests, Defendants have moved on two Requests related to the formation of Righthaven: Request No. 36 (seeking all documents referring or relating to the creation of Righthaven) and Request No. 53 (seeking all communications between Stephens Media and Jackson Farrow, general counsel for SI Content Monitor). *See* Motion to Compel at 14.

[3] Stephens Media also alleges that these are the only documents it needs to produce in response to Defendants' requests concerning assignment of rights in the News Article, including communications about the SAA. Defendants address this argument below in Section B.

Stephens Media from producing the documents admittedly in its own possession.

Stephens Media then attempts to incorporate objections made in response to entirely separate Requests, reaching the puzzling conclusion that "Democratic Underground selectively directed the Court's attention to Request Nos. 36 and 53 in hopes of persuading it that Stephens Media did not assert certain objections thereto." Opp. at 9. Stephens Media has no basis to object to Defendants' moving only on certain Requests, not all of them. What Stephens Media characterizes as "cherry picking" is Democratic Underground's proper effort to focus this motion on limited discovery, directed at the most significant and clearly discoverable evidence sought on this particular issue. Stephens Media's objections to entirely separate requests are irrelevant as to whether Stephens Media had valid objections to the proper Requests Defendants have moved on. Defendants had no chance – much less a duty – to meet and confer on objections never made, *even in Stephens Media's supplemental responses*, to Requests 36 and 53.[4] Discovery is not a game where the responding party gets to change the rules, or its answers, four months after responding and after a motion to compel has already been made.

Tellingly, nowhere in its Opposition does Stephens Media state that it is not in possession of communications related to the formation of Righthaven. It asserts that Stephens Media is neither a founder nor funder of Righthaven, thus it "would not even be privy to *all* such communications" and that the request "should be directed to Righthaven." Opp. at 14 (emphasis added). Firstly, Defendants have directed this request to Righthaven, but like Stephens Media, Righthaven has not produced any such communications. Secondly, Stephens Media's assertion that it was not a founder or funder is disputed given its previous statements that it "grubstaked Righthaven." *See* Dkt. 47, Exh. B. But in any event, even if Stephens Media was technically not a funder, it will still be party to communications among those who were direct founders, and it would still have directed communications to those who were. It must be remembered that the

[4] Even if Stephens Media had asserted an objection to Request 36 as being overbroad, which it did not, the ancient trial court opinion it cites in support, *McCullough v. Dairy Queen, Inc.*, 195 F.Supp. 918 (E.D. Pa. 1961), is both non-binding authority and distinguishable. In *McCullough*, the discovery sought "all reports, correspondence, memoranda, papers, etc." pertaining to every contract entered by Dairy Queen with every licensee over history of the company – i.e. documents related to thousands of relationships and thousands of negotiations. Here, Democratic Underground seeks information related to one transaction - negotiation of the relationship that is the focus of the validity of creation of Righthaven and the purported assignment of the News Article at issue.

SAA to which Stephens Media was a party is part of an "integrated transaction" with the formation of Righthaven (SAA § 2), and that Stephens Media's affiliate SI Content Monitor is a direct owner of Righthaven—and, indeed, is referred to as "Stephens" in the Righthaven Operating Agreement. Operating Agreement, Dkt. 107-2 at 1. That Stephens Media may not have *all* documents requested does not alleviate it of its duty to produce all communications over which it does have possession, custody or control.

As to Request 53, seeking all communications with Jackson Farrow, it is undisputed that Mr. Farrow is general counsel for SI Content Monitor, the Stephens entity that owns half of Righthaven, and that Mr. Farrow signed the Operating Agreement for Righthaven in his role as Managing Director of Stephens Capital Partners LLC, an entity which is the manager of SI Content Monitor. Stephens Media's Opposition, for the first time, argues that this request is overbroad because Jackson Farrow is, in addition, general counsel for Stephens Capital Partners LLC. Opp. at 13. Stephens Media claims that Mr. Farrow, wearing his Stephens Capital Partners general counsel hat rather than his hat as the managing director of the manager of SI Content Monitor (50% owner of Righthaven), had communications with Stephens Media about subjects unrelated to Righthaven. That may be. But as Stephens Media has not produced a single document that clarifies what hat(s) Jackson Farrow was wearing in addition to his role as SI Content Monitor's counsel, Democratic Underground could not have previously resolved this.[5] More importantly, if Stephens Media believed this request was overbroad because it asked for documents not related to Righthaven, this would not excuse its refusal to produce *any* communications that *were* related to Righthaven. Stephens Media had a duty (i) to produce the relevant documents, and (ii) to identify Mr. Farrow's other position(s) during the meet and confer process, not to conceal that fact as a silent basis for objecting, on overbreadth, to producing anything. Defendants would have, and still do, agree to production limited to communications with Mr. Farrow related to Righthaven and SI Content Monitor.[6] If, as Stephens Media now

[5] As discussed in the Counterclaim (Dkt. 13 ¶ 30), Democratic Underground knew that Mr. Farrow was also the Secretary of SF Holding Corp. and Stephens Holding Company, but was unaware of his role(s) in Stephens Capital Partners, or its role as manager of SI Content Monitor.

[6] If communications were to Stephens Capital Partners in its role as manager of SI Content Monitor, however, production would not be excused.

claims, Mr. Farrow wears multiple hats, Defendants have no objection to limitation of this Court's order to produce to communications with Mr. Farrow relating in any way to Righthaven, assignment of copyrights, or SI Content Monitor.[7]

**B. Stephens Media Has Not Met Its Burden Of Showing That Information Related to the News Article, Including Communications About the SAA, Is Not Discoverable.**

Stephens Media spends a great portion of its brief asserting that Democratic Underground is not entitled to the discovery sought because it is "irrelevant" due to the parol evidence rule. Opp. at 9-13. As to the Assignment, Stephens Media discusses the Assignment as if it is one document, when Stephens Media itself has referred to multiple different Assignments related to the single work at issue in this case. In its recent responsive briefing to Judge Hunt on the meaning of the SAA, Stephens Media attached a new and differently dated Assignment to one of its declarations. *See* Dkt. 101, Exh. 1. The new assignment produced to Judge Hunt is dated July 8, 2010. Incredibly, however, it has still never been produced in discovery by Stephens Media.[8] Instead, Stephens Media's discovery responses repeatedly refer to the July 19, 2010 assignment, which it also provided to the Court in November of 2010 as indicative of its purported lack of remaining ownership interest in the copyright (Dkt. 38, Exh. 1). *See* Stephens Media's Responses to Democratic Underground's Requests for Production (Dkt. 96, Exhs. D, K), as quoted in Democratic Underground's Motion to Compel (Dkt. 95). Where did the new assignment come from? Defendants do not know, because, in addition to failing to produce it in discovery, Stephens Media refuses to produce (or log) any other communications. What Defendants do know is that the new Assignment is suspicious at least. The original Assignment's date of July 19, 2010 is ten days *after* the date Righthaven purported to register the copyright in its own name—meaning, its registration with the copyright office would have occurred before it even

---

[7] Democratic Underground notes that this new revelation that Mr. Farrow represents Stephens Media's affiliate SI Content Monitor as well as Stephens Media's affiliate Stephens Capital Partners (along with Stephens Media's manager(s) SF. Holding Corp and Stephens Holding Co.) shows the purported distinctions between Stephens Media and SI Content Monitor to be even less credible, and the idea that Stephens Media has no access to SI Content Monitor's materials simply a ruse.

[8] The first Defendants saw of this assignment was when it was attached to declarations filed on May 9, 2011. Dkts. 101, Exh. 1; 102, Exh. 1. Yesterday, Righthaven produced its "Sixth" Supplement to Initial Disclosures, which attached the July 8, 2010 Assignment. Righthaven has never produced this Assignment in response to Defendants' discovery Requests.

received anything from Stephens Media. The new Assignment dated as of July 8, 2010, seems intended to solve that problem, but at least begs the question of the legitimacy of this entire process.[9]

Aside from the deceptive Assignments themselves, Stephens Media's arguments that no other documents "need" to be produced are flawed for several reasons, including: (1) parol evidence is allowed to establish intent where parties' intention is ambiguous, especially where, as here, Stephens Media has itself submitted parol evidence as to its intent in executing the SAA; (2) the parol evidence rule does not bar discovery where fraud, sham or collusion are at issue; and (3) that the parties have thus far relied on the SAA and Assignment certainly does not prevent Democratic Underground from discovering other evidence.

1. Parol Evidence Is Admissible Where The Contract Is Ambiguous.

Stephens Media and Righthaven submitted to Judge Hunt on May 9 two declarations providing self-serving explanation of their intent in entering the SAA, along with a "Clarification and Amendment" to the SAA. To this Court, however, they now reverse their position, asserting that the SAA is clear and unambiguous on its face, and that no parol evidence may be admitted. Dkt. 101, ¶¶ 6-7, 9, 11-12, Exh. 3; Dkt. 102, ¶¶ 6-8, 11-13. As Democratic Underground has explained, the SAA shows that the Assignment is a sham—however, to the extent that Stephens Media and Righthaven claim otherwise, it is, at best, ambiguous. If the SAA clearly showed a proper assignment, Stephens Media and Righthaven would not have needed to clarify their intent, through declarations or the execution and submission of the Clarification and Amendment. Specifically, Stephens Media submitted the following in its Declaration of Mark Hinueber (Dkt. 101):

Paragraph 6: " The intent of the parties when entering into the SAA was to describe general, mutually agreed upon procedures under which Stephens Media could assign all rights, title and interest to certain copyrighted works to Righthaven, including the right to seek redress

---

[9] On May 24, 2011 Righthaven filed an Erratum and Clarification to Response to Defendants' Supplemental Memorandum acknowledging the discrepancies existing between execution dates of the Assignment, yet Righthaven fails to explain why there are two Assignments, or why both Righthaven and Stephens Media have failed to produce the July 8 Assignment in discovery, months after Righthaven realized that there were two Assignments. *See* Dkt. 109 at 2-3.

for past, present and future infringement. Following such an assignment, the parties intended to permit Stephens Media to continue to display or otherwise use the assigned content through the grant of a license from Righthaven."

Paragraph 7: "At all times, it was Stephens Media's intent through the execution of each particular assignment to grant all ownership rights to Righthaven, along with the right to sue for all past, present and future copyright infringement."

Paragraph 9: "It was not Stephens Media's intent to divest or otherwise impair Righthaven's ability to file or otherwise maintain copyright infringement actions based on content and/or other protectable material specifically assigned to Righthaven through the license-back rights described in the SAA. Rather, it was Righthaven's and Stephens Media's intent in this regard to acknowledge Stephens Media's ability to continue to use the assigned content as licensee in the same general manner it had done prior to entering in the SAA, such as the archiving of prior published literary works on the LVRJ Website."

Paragraph 11: "Stephens Media and Righthaven have also affirmatively attempted to clarify their mutual intent when they entered into the SAA by preparing and executing a Clarification and Amendment to the Strategic Alliance Agreement (the "Amendment"), effective as of January 18, 2010, which is the same Effective Date of the SAA."

Stephens Media then attaches as Exhibit 3 the Clarification and Amendment, which displays an execution date of May 9, 2011.

As evidenced above, Stephens Media does not believe the SAA is clear and unambiguous on its face. Moreover, Stephens Media and Righthaven cannot submit testimony as to the parties' intent 16 months after the fact, submit a Clarification and Amendment signed the day they submit their brief to Judge Hunt, and simultaneously assert that inquiry by Defendants into what the parties actually intended, communicated to each other and drafted *contemporaneous to the actual execution of the SAA and creation of Righthaven*, is irrelevant.

As Stephens Media and Righthaven have themselves raised the issue of ambiguity of the SAA, they are precluded from now asserting that it is unambiguous. The law is clear that the parol evidence rule only bars admission of extraneous evidence where the written contract is clear

and unambiguous on its face. *See Kaldi v. Farmers Ins. Exchange*, 21 P.3d 16, 21 (Nev. 2001). Even in a dispute between parties to a contract, the parol evidence rule allows evidence of intent when the parties' intention is ambiguous, as well as parol evidence to prove such ambiguity. *See Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 828 (9th Cir. 2001) (allowing extrinsic evidence of parties' intent in granting copyright license - "if a party's extrinsic evidence creates the possibility of ambiguity, a court may not rely on the text of the contract alone to determine the intent of the parties"). As such, parol evidence is obviously admissible and discoverable by Defendants, and Stephens Media should be ordered to produce documents responsive to Request Nos. 3, 4, 10, 36, 53 and 69.[10]

2. Where, As Here, the Unlawful Nature of the Contract Is At Issue, Extrinsic Evidence Is Admissible.

In addition to the parol evidence rule being inapplicable, it is beside the point: this is not a situation in which two parties to the contract disagree about the meaning of unambiguous terms; rather, this is a case of a third party asserting that the written contract is not what the two parties state it is. Evidence extrinsic to the contract is permitted to prove that the contract is a sham, collusive, and that it hides other, non-contractual purposes. *See Industrial Indem. Co. v. Aetna Cas. & Sur. Co.*, 465 F.2d 934, 937 (9th Cir. 1972) ("[i]n the *absence* of fraud, duress, mutual mistake, or ambiguity, the parol evidence rule requires the exclusion of extrinsic evidence.") (emphasis added); *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1191 (D. Nev. 2006) ("parol evidence is admissible if the party attacking the instrument can establish fraud or mistake. . . [including] breach of confidence concerning its use"). One does not expect the four corners of the contract to acknowledge that it is a sham intended to afford standing where the law does not provide it. Extrinsic evidence is indisputably discoverable to attempt to bolster that case.

[10] Request Nos. 3 (documents concerning the assignment of rights in the News Article), 4 (communications between Righthaven and any other person or entity relating to assignment or reversion of rights in the News Article), 10 (documents relating to the "right of reversion"), 36 (documents relating to the creation of Righthaven), 53 (communications with Jackson Farrow) and 69 (documents relating to Stephens Media's statement that its "involvement with Righthaven. . . is limited to its role as the assignor of the subject copyright.").

3. That the Parties Have Thus Far Relied On The SAA and Assignment Does Not Prevent Democratic Underground From Discovering Other Evidence.

Stephens Media falsely asserts that "the only two documents relied upon by Stephens Media, Righthaven, and – most notably – Democratic Underground when addressing the issue of standing are the Assignment and SAA." Opp. 10, fn. 3. To the contrary, as discussed above (Section B.1), Stephens Media and Righthaven have relied on other documents—both declarations introducing extrinsic evidence as to their intent, and the "Clarification and Amendment to Strategic Alliance Agreement." As to Democratic Underground, the reason it has "only" relied on these two documents is obvious – *Stephens Media and Righthaven have not produced other relevant documents.*

The fact that Defendants are able to make arguments from the SAA's content does not foreclose Defendants from also having access to other evidence of collusion and sham purpose.[11] Possession of some evidence—in the form of documents designed by one's opponent for publication or, in the case of the "Clarification," designed to improve the record—hardly precludes discovery of other, non-public documents. Stephens Media has failed to meet its burden of establishing that such materials are irrelevant, and as such, should be ordered to produce relevant documents in its possession, custody and control responsive to Request Nos. 3 (documents concerning the assignment of rights in the News Article), 4 (communications between Righthaven and any other person or entity relating to assignment or reversion of rights in the News Article), 10 (documents relating to the "right of reversion"), 53 (communications with Jackson Farrow) and 69 (documents relating to Stephens Media's statement that its "involvement with Righthaven. . . is limited to its role as the assignor of the subject copyright.").

[11] Furthermore, in response to Defendants' assertion of relevance as to documents related to the SAA, as they relate to whether Righthaven has standing to assert claims for copyright infringement, Stephens Media has asserted that this "issue has little to do with the matters presently before His Honor." Opp. at 3. That the SAA on its own affirms Defendants' allegations that Righthaven does not have standing to sue does not negate the relevance of documents surrounding the SAA to other issues in this case asserted by Democratic Underground, including the Counterclaim against Stephens Media, which alleges that the assignment was a sham, that Righthaven exists solely to file copyright claims, and that Stephens Media is the real party in interest, and including Defendants' affirmative defenses of unclean hands, barratry, champerty and maintenance, copyright misuse and lack of damages. Dkt. 13.

**C. Stephens Media Has Waived Its Objections Based on the Attorney-Client or Work-Product Privileges By Failing To Produce A Privilege Log.**

Stephens Media argues that, although it has not logged a single privileged document in five months, its privileges are not waived because it never agreed to produce anything, and therefore there is still nothing yet "otherwise discoverable." But Stephens' after-the-fact characterization of whether it has a production obligation is not controlling.

*First*, there were no unresolved objections to the Requests that are the subject of this motion. Motion to Compel at 17-18, 25-26. Stephens Media's only answer to this fact is a futile attempt to incorporate objections included in response to other requests. *See* Section A.1, *supra*.

*Second*, even by Stephens Media's own cited authorities, Stephens Media has waived its privilege-based objections by its conduct here. The Rule 26(b)(5) Advisory Committee Notes which Stevens Media quotes state that Stevens Media "should make its objection to the breadth of the request and, with respect to the documents [that are not overbroad], produce the unprivileged documents and describe those withheld under the claim of privilege." Opp. at 15; Advisory Committee Notes, 146 F.R.D. 401 (1993). Stephens Media's objection that Request 58 for Mr. Farrow's communications is overbroad as it relates to "all communications" cannot excuse its refusal to produce *any* communications related to Righthaven in Mr. Farrow's representative capacity as SI Content Monitor's counsel or his role as Managing Director of its manager, or its failure to log its communications related to Righthaven. Stephens Media was required to produce and/or log these communications and object to the remainder as overbroad, not withhold all. If, as Stephens Media suggests, a party need only assert unsubstantiated and unexplained objections to justify its refusal to produce a privilege log as to obviously relevant material, and need only produce a log after the Court orders the production, the Court would need to intervene in the discovery process for every case in which privilege was asserted, and there would be no consequence for failing to log privileged documents and communications. This is not the law. *See Koninklijke Philips Elecs. N.V v. KXD Tech., Inc.*, 2007 U.S. Dist. LEXIS 17540, at *14 (D. Nev. Mar. 12, 2007) (privilege objections waived where party did not provide privilege logs or affidavits supporting generalized objections based on privilege); *Akers v. Keszei*, 2009 U.S.

Dist. LEXIS 106247, at *8-9 (D. Nev. Oct. 27, 2009) (Foley, J.) (same).

*Third*, as also noted by Stephens Media, Stephens Media's failure to produce a log could be tolerated only if the grounds for objection were "sufficiently substantial to excuse immediate presentation of detailed justification for privilege claims." Opp. at 15; 8 Wright & Miller, *Federal Practice and Procedure* § 2016.1 (3d Ed. 2010). They are not. Here, Stephens Media's bases for refusing to produce documents cannot possibly justify its failure to provide a detailed justification for its privilege claims. Its objections based on the parol evidence rule—on the very issue on which it has submitted declarations—is meritless. So are the claims of relevancy that that were never asserted as objections, and the refusal to produce any documents or a log due to "overbreadth" when a portion of the request were obviously relevant, and the objection was neither explained or narrowed in good faith during the meet and confer process.

*Fourth,* Stephens Media has not provided sufficient proof of a common interest with Righthaven to possibly justify that privilege. As this Court has held, the party claiming privilege must show "(1) that both parties' interests be identical, not similar, (2) that the common interest is legal, not solely commercial, and (3) that the communication is shared with the *attorney* of the member of the community of interest." *Phase II Chin, LLC, et al. v. Forum Shops, LLC, et al.*, Dkt. 198, Case No. 2:08-cv-00162-JCM-GWF, at *12 (D. Nev. Mar. 2, 2010) (emphasis in original) (citing *Carl Ziess Vision Int'l GMBH v. Signet Armorlite*, 2009 WL 4642388, at *7 (S.D. Cal. 2009)). The Court further held that "[a]lthough a written agreement is the most effective method of establishing a common interest agreement, an oral agreement whose existence, terms and scope are proved by the party asserting it, may provide a basis for the requisite showing." *Id.* at *13.[12] Stephens Media has made no such showing. It has not provided the terms or scope of any agreement, oral or written. It merely asserts that Stephens Media and

[12] The only purportedly binding authority cited by Stephens Media with respect to the non-requirement of a written agreement, "*United States v. Stepney*, 246 F. Supp. 2d 1069, 1080, fn. 5 (9th Cir. 2003)," is not actually a Ninth Circuit case, but is a non-binding Northern District of California case. Moreover, the full footnote provides better context as to this requirement: "No written agreement is generally required to invoke the joint defense privilege. The existence of a writing does establish that defendants are collaborating, thus guarding against a possible finding that a particular communication was made spontaneously rather than pursuant to a joint defense effort. *See United States v. Weissman*, 195 F.3d 96, 98-99 (2d Cir.1999) (finding no joint defense agreement in place at the time communication took place). A written joint defense agreement also protects against misunderstandings and varying accounts of what was agreed to by the attorneys and their clients." The Court ultimately ordered that "[a]ny joint defense agreement entered into by defendants must be committed to writing, signed by defendants and their attorneys, and submitted *in camera* to the court for review prior to going into effect." *Id.* at 1086.

Righthaven "have operated with the understanding that all communications between them are protected."[13] Opp. at 16, fn. 6; Williams Decl., ¶ 4. This is plainly insufficient to support any such privilege claim. *See Phase II Chin,* Dkt. 198, Case No. 2:08-cv-00162-JCM-GWF, at *12-13.

Moreover, although Stephens Media asserts that it has not "executed a final joint defense agreement" with Righthaven, it does not deny that there *are* unproduced documents relating to the alleged joint defense. Opp. at 16, fn. 6. Defendants explicitly asked for all documents concerning such a relationship, not merely final agreements. Request 7; Motion to Compel at 28-29. Not only has it failed to produce such documents, it has failed to produce a log of them—even though they are obviously within the scope of discovery absent existence of a privilege. Indeed, in its actual response to the Requests, Stephens Media affirmatively responded that it *would* provide an appropriate privilege log of all such materials – without limiting its response to "final executed agreements," yet it has not produced or logged any communications or drafts. Where Stephens Media has not even logged the documents purportedly forming the basis for a joint defense agreement—despite an obligation to do so under the rules, despite its own undertaking over three months ago to do so, despite repeated requests from Defendants to do so, and despite the Order of this Court that such log be provided within 21 days of the date for production of documents (Dkt. 54 at 7)—it has waived the protection of privilege for such Requests, as well as protection of the joint defense agreement itself. *See Koninklijke Philips Elecs.*, 2007 U.S. Dist. LEXIS 17540, at *14 (waiver where party fails to produce a log).

Stephens Media cannot assert common interest privilege, refuse to present a privilege log, prevent Democratic Underground from refuting its common interest claim and still maintain its privilege claim.

## III. <u>CONCLUSION</u>

For these reasons, Defendant Democratic Underground respectfully requests that this Court grant Defendants' Motion to Compel Production of Documents from Stephens Media on

[13] Furthermore, Mr. Williams has not established foundation to show how he has personal knowledge as to the beliefs held by Stephens Media and Righthaven when negotiating the SAA, as the SAA was negotiated eleven months before Mr. Williams began representing Stephens Media in this matter.

Requests 3, 4, 7, 10, 36, 53 and 69. The Court should order all documents in Stephens Media's possession, custody and control, including those in the control of its agents including SI Content Monitor, produced within ten days of its order. And the Court should order that all privileges have been waived as to these categories and as to any responsive materials within the scope of the Court's order.

Dated: May 26, 2011

FENWICK & WEST LLP

By: /s/ *Laurence F. Pulgram*
Laurence F. Pulgram

Attorneys for Defendant and Counterclaimant DEMOCRATIC UNDERGROUND, LLC, and Defendant DAVID ALLEN