1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

**\* \* \***

RIGHTHAVEN LLC, a Nevada limited-liability company,

               Plaintiff,

    vs.

DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,

               Defendants.

_____

DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,

               Counterclaimant,

    vs.

RIGHTHAVEN, LLC, a Nevada limited-liability company; and STEPHENS MEDIA LLC, a Nevada limited-liability company,

               Counterdefendants.

_____

Case No.: 2:10-cv-01356-RLH-GWF

**O R D E R**

(Motion for Voluntary Dismissal with Prejudice–#36; Motion to Dismiss or Strike–#38; Motion for Summary Judgment–#45)

/

/

1

Before the Court is Plaintiff/Counterdefendant Righthaven LLC's **Motion for Voluntary Dismissal with Prejudice** (#36, filed Aug. 10, 2010).  The Court has also considered Defendant/Counterclaimant Democratic Underground, LLC and David Allen's (collectively "Democratic Underground") Opposition (#44, filed Dec. 7, 2010), and Righthaven's Reply (#57, filed Jan. 7, 2011).

Also before the Court is Counterdefendant Stephens Media LLC's **Motion to Dismiss or Strike** (#38, filed Nov. 17, 2010).  The Court has also considered the Democratic Underground's Opposition (#46, filed Dec. 7, 2010), and Stephens Media's Reply (#56, filed Jan. 7, 2011).

Also before the Court is Democratic Underground's **Motion for Summary Judgment** (#45, filed Dec. 7, 2010).  The Court has also considered Righthaven's Opposition (#58, filed Jan. 8, 2011), and Democratic Underground's Reply (#62, filed Jan. 28, 2011).

Finally, the Court allowed and ordered supplemental briefing relevant to the three motions under consideration because of important evidence that only came to light after these motions were fully briefed.  Accordingly, the Court has considered Democratic Underground's Supplemental Memorandum Addressing Recently Produced Evidence (#79, filed Mar. 9, 2011), Stephens Media's Response (#99, filed May 9, 2011), Righthaven's Response (#100, filed May 9, 2011), and Democratic Underground's Replies (##107 and 108, filed May 20, 2011).

## BACKGROUND

This dispute arises out of Democratic Underground's allegedly copyright infringing conduct.  About May 13, 2010, a Democratic Underground user posted a comment on Democratic Underground's website which included a portion of a Las Vegas Review-Journal ("LVRJ") article about Nevada politics, particularly about the Tea Party effect on Sharon Angle's senatorial campaign (the "Work").  The posting included a link to the full article and the LVRJ's website.  As such, Democratic Underground displayed this selection from the article on its website and Righthaven claims that this infringed on the copyright.

AO 72
(Rev. 8/82)

Righthaven claims that after the Work was posted on Democratic Underground's website, it purchased the copyright to the Work from Stephens Media, the owner of the LVRJ, along with the right to sue for past infringement.  (Dkt. #102, Decl. of Steve Gibson, Ex. 1, Copyright Assignment (hereinafter referred to as the "Assignment").)  Righthaven then registered the copyright with the United States Copyright office.  Thereafter, Righthaven sued Democratic Underground alleging copyright infringement.  Democratic Underground, in turn, filed a counterclaim for a declaratory judgment of non-infringement against both Righthaven and Stephens Media, which was not originally a party to this case.  Righthaven has since filed a motion for voluntary dismissal with prejudice due to an adverse fair use ruling by the Honorable Larry R. Hicks, United States District Judge for this district (Righthaven is appealing that decision), Stephens Media has filed a motion to dismiss or strike the counterclaim and a partial joinder to Righthaven's motion, and Democratic Underground has filed a motion for summary judgment on Righthaven's claim.

After these motions were fully briefed, Stephens Media disclosed to Democratic Underground the Strategic Alliance Agreement ("SAA") between Stephens Media and Righthaven.  The SAA defines their relationship and governs all future copyright assignments between them (including the assignment at issue here).  (Dkt. #79, Supplemental Mem. Ex. 1, SAA, dated Jan. 18, 2010.)  After learning the details of this agreement, Democratic Underground sought leave to file a supplemental memorandum addressing this newly discovered evidence and its effect on the outstanding motions.  The Court allowed the supplemental briefing as it too considered the SAA highly relevant to Righthaven's standing in this and a multitude of other pending Righthaven cases.  After considering the supplemental brief and for the reasons discussed below, the Court dismisses Righthaven for lack of standing and, therefore, denies both Righthaven's motion and Democratic Underground's motion as moot.  The Court also denies Stephens Media's motion.

/

AO 72
(Rev. 8/82)

**DISCUSSION**

**I.      Righthaven's Standing to Assert Copyright Claims**

As stated above, before the Court are two motions to dismiss and a motion for summary judgment.  However, the Court must first address the supplemental briefing addressing the SAA and the question of Righthaven's standing to pursue this copyright infringement claim. The Court will then address the outstanding motions.

**A.      Background - The Strategic Alliance Agreement**

Months prior to purportedly assigning the Work to Righthaven, Stephens Media and Righthaven signed a Strategic Alliance Agreement governing future copyright assignments between them.  (Dkt. #79, Ex. 1, SAA, dated Jan. 18, 2010.)  The SAA details the relationship between Righthaven and Stephens Media, explains the rights and responsibilities of each party, and limits and defines future copyright assignments between them.  (*See generally, id*.)  As such, it limits and explains the intent behind the Assignment, which was executed in July 2010.

Critically, the SAA expressly denies Righthaven any rights from future assignments (including the Assignment of the Work) other than the bare right to bring and profit from copyright infringement actions.  This conclusion is clearly expressed in Section 7.2 of the SAA:

> 7.2 **Despite** any such Copyright Assignment, Stephens Media shall **retain** (and is hereby granted by Right*haven*) an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever and **Right*haven* shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery.** To the extent that Righthaven's maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Right*haven* hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. . . .

/

4

1    (*Id.*, Section 7.2 (bold emphasis added, italicization in original)).  The plain and simple effect of

2    this section was to prevent Righthaven from obtaining, having, or otherwise exercising any right

3    other than the mere right to sue as Stephens Media *retained* all other rights.  Even Righthaven's

4    right to sue is not absolute.  The SAA gives Stephens Media the right to prevent Righthaven from

5    suing an alleged copyright infringer for various specific reasons, including that the lawsuit might

6    "result in an adverse result to Stephens Media."  (*Id.*, Section 3.3.)  Other sections also give

7    Stephens Media a right to reversion and other rights which, collectively, destroy Righthaven's

8    supposed rights in the Work.  (*See generally, id.*)  Now that the SAA has shed light upon

9    Righthaven's true interest in the copyright to the Work, Democratic Underground asserts that

10   Righthaven lacks standing to maintain this lawsuit.

11           **B.    Legal Standard**

12           Pursuant to Section 501(b) of the 1976 Copyright Act, 17 U.S.C. § 101, *et. seq.*,

13   (the "Act") only the legal or beneficial owner of an exclusive right under copyright law is entitled,

14   or has standing, to sue for infringement.  *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884

15   (9th Cir. 2005) (*en banc*).  In so holding, the Ninth Circuit followed the Second Circuit's decision

16   in *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982), *superseded by rule*

17   *and statute on other grounds*.  *See also*, *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d

18   971, 980 (2d Cir. 1991) (citing *Eden Toys*, "the Copyright Act does not permit copyright holders to

19   choose third parties to bring suits on their behalf.")  Section 106 of the Act defines and limits the

20   exclusive rights under copyright law.  *Id.* at 884–85.  While these exclusive rights may be

21   transferred and owned separately, the assignment of a bare right to sue is ineffectual because it is

22   not one of the exclusive rights.  *Id.*  Since the right to sue is not one of the exclusive rights,

23   transfer solely of the right to sue does not confer standing on the assignee.  *Id.* at 890.  One can

24   only obtain a right to sue on a copyright if the party also obtains one of the exclusive rights in the

25   copyright.  *See id.*  Further, to obtain a right to sue for past infringement, that right must be

26   expressly stated in the assignment.  *See generally, id.*

AO 72
(Rev. 8/82)

**C.      Analysis**

**1.      Contract Construction**

Righthaven argues that the SAA's provisions, which necessarily include Section 7.2, do not alter the unambiguous language of the Assignment or limit the rights it obtained from Stephens Media in the Assignment.  This conclusion is flagrantly false—to the point that the claim is disingenuous, if not outright deceitful.  The entirety of the SAA was designed to prevent Righthaven from becoming "an *owner* of *any exclusive right* in the copyright. . . .," *Silvers*, 402 F.3d at 886 (emphasis in original), regardless of Righthaven and Stephens Media's *post hoc*, explanations of the SAA's intent or later assignments, (*see generally* Dkt. #101, Decl. of Mark A. Hineuber; Dkt. #102, Decl. of Steven A. Gibson).  Prior to the Assignment, Stephens Media possessed all of the exclusive rights to the Work and, therefore, the right to sue.  Because the SAA limited the language of the Assignment, the Assignment changed nothing save for Righthaven's claim to have the right to sue.  The companies' current attempt to reinterpret the plain language of their agreement changes nothing.  In reality, Righthaven actually left the transaction with nothing more than a fabrication since a copyright owner cannot assign a bare right to sue after *Silvers*.  To approve of such a transaction would require the Court to disregard the clear intent of the transaction and the clear precedent set forth by the *en banc* Ninth Circuit in *Silvers*.

**2.      Stephens Media and Righthaven's Intent**

Righthaven contends that the Court should construe the SAA to grant Righthaven whatever rights are necessary for it to have standing in a copyright infringement action.  First, Righthaven argues that the Court should construe the contract in this manner because in situations where a contract is ambiguous, the Court should look to the parties' intent.  *Sheehan & Sheehan v. Nelson Malley and Co.*, 117 P.3d 219, 223–24 (Nev. 2005).  Accordingly, Righthaven argues that the plain intent of the SAA is to give Righthaven all rights necessary to bring a copyright infringement action.  The Court, however, disagrees with Righthaven's premise because the SAA is not ambiguous.  Righthaven and Stephens Media went to great lengths in the SAA to be sure

AO 72
(Rev. 8/82)

1    that Righthaven did not obtain any rights other than the bare right to sue.  Thus, the Court finds

2    that the plain language of the SAA conveys the intent to deprive Righthaven of any right, save for

3    the right to sue alleged infringers and profit from such lawsuits.  As such, the SAA is not

4    ambiguous and the Court shall not read any ambiguity into it.

5              Second, Righthaven argues that Section 15.1 of the SAA gives the Court authority

6    to correct any provision of the SAA that is deemed void or unenforceable to approximate the

7    manifest intent of the parties.  The problem is that this argument requires a provision of the SAA

8    to be void or unenforceable.  However, Righthaven's problem is not that any provision of the SAA

9    is void or unenforceable but that the SAA simply does not grant Righthaven any of the exclusive

10   rights defined in Section 106 of the Act required for standing.  Therefore, the SAA is not void or

11   unenforceable, it merely prevents Righthaven from obtaining standing to sue from the Assignment.

12   Accordingly, the Court need not and shall not amend or reinterpret the SAA to suit Righthaven's

13   current desires.

14              **3.       Righthaven and Stephens Media's Amendment to the SAA**

15              Notwithstanding the actual transaction that occurred, Righthaven argues that the

16   amendment it executed with Stephens Media on May 9, 2011, the day that they filed their response

17   to the supplemental memorandum validates or fixes any possible errors in the original SAA that

18   would prevent Righthaven from having standing in this matter.  (Dkt. #102, Gibson Decl. Ex. 3,

19   Clarification and Amendment to SAA.)  However, this amendment cannot create standing because

20   "'[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the*

21   *complaint is filed.*'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (quoting

22   *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*).

23   Although a court may allow parties to amend defective allegations of jurisdiction, it may not allow

24   the parties to amend the facts themselves.  *Newman-Green*, 490 U.S. at 830.  As an example, a

25   party who misstates his domicile may amend to correctly state it.  This is an amendment of the

26   allegation.  However, that party is not permitted to subsequently move in order to change his

7

1   domicile and amend accordingly.  This would be an amendment of the jurisdictional facts, which

2   is not allowed.  *See id.*  Here, Righthaven and Stephens Media attempt to impermissibly amend the

3   facts to manufacture standing.  Therefore, the Court shall not consider the amended language of

4   the SAA, but the actual transaction that took place as of the time the complaint was filed.[1]

5            Regardless of this legal principle, Righthaven argues that courts routinely allow

6   parties to a copyright transfer to subsequently clarify or amend their agreements in order to express

7   their original intent to grant the assignee the right to sue for infringement.  Righthaven's assertion

8   is not entirely wrong, but the cases Righthaven cites in support of its proposition are all

9   distinguishable as they deal with matters significantly different than those presently before the

10  Court.  For instance, Righthaven cites multiple cases where courts allowed an oral assignment

11  made prior to initiation of a lawsuit to be confirmed in writing after the initiation of the lawsuit.

12  *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) (allowing an oral

13  assignment to be confirmed in a later writing).[2]  These cases are all distinguishable in that the

14  assignor and assignee in these cases had agreements to transfer the necessary, exclusive rights

15  prior to the initiation of a lawsuit.  The only thing lacking was the written document necessary for

16  a court to recognize the transfer.  In each of these cases, the courts merely gave effect to what the

17  parties had actually done, i.e. recognized rights already actually transferred.  Here, Righthaven

18  does not ask the Court to recognize an oral transfer with a late made written memorandum of the

19  deal, but to fundamentally rewrite the agreement between Righthaven and Stephens Media to grant

20  Righthaven rights that it never actually received.

21

22          [1]  The Court does not determine whether or not the amended SAA would transfer sufficient rights to
23  Righthaven for it to have standing in suits filed after amendment as the Court need not make that determination
     to rule on these motions.  Nonetheless, the Court expresses doubt that these seemingly cosmetic adjustments
24  change the nature and practical effect of the SAA.

25          [2]  *See also, Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)
     ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the
26  transfer ab initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994);
     *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.*, 141 F. Supp. 2d 224, 228 (D.P.R. 2001).

AO 72
(Rev. 8/82)

1        Righthaven cites three other district court cases from other circuits which deal with

2   matters other than oral assignments later ratified by written agreements.  First is a district court

3   case, *Intimo Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315 (S.D.N.Y. 1996), wherein the court

4   allowed the parties to the assignment agreement to amend the agreement to include the right to sue

5   for pre-assignment copyright violations.  Notably, the plaintiff in that case would have maintained

6   standing as not all claims were based on pre-assignment copyright violations.  *Id.* at 318–19.

7   Nonetheless, the *Intimo* court allowed amendment to correct what it found was merely an

8   oversight on the part of the parties because the agreement was silent on pre-assignment copyright

9   violations despite the parties intent to transfer the right to sue on those violations.  Here,

10  Righthaven and Stephens Media may have wanted Righthaven to be able to sue, but the SAA was

11  anything but silent in making sure that Stephens Media *retained* complete control over the Work

12  rather than actually effectuate the necessary transfer of rights.  The entirety of the SAA is

13  concerned with making sure that Righthaven did not obtain any rights other than the right to sue.

14  This careful exclusion of rights made even that transfer ineffectual under *Silvers*.

15       The other two cases are also distinguishable.  The second case, *Infodek, Inc. v.*

16  *Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614 (N.D. Ga. 1993), is based on facts  largely

17  similar to *Intimo* and the same analysis distinguishes it from the present case.  The third is an

18  unreported district court case, *Gondinger Silver Art Co., Ltd. v. Int'l Silver Co.*, No. 95 CIV. 9199,

19  1995 WL 702357 (S.D.N.Y. Nov. 28, 1995), that dealt with a later assignment because there was a

20  dispute as to whether the relevant work was a work made for hire or whether the plaintiff was a co-

21  author of the work.  The *Gondinger* court did not expressly determine the issue, finding that it was

22  irrelevant as there was another basis for standing.  *Id.* at *4–5.  In sum, not one of the cases cited

23  by Righthaven persuade, much less require, the Court to find standing based on Righthaven and

24  Stephens Media's Amended SAA.

25  /

26  /

AO 72
(Rev. 8/82)

### 4.    Democratic Underground's Standing to Challenge the SAA

Righthaven also contends that Democratic Underground lacks standing to challenge the validity of the SAA.  However, Democratic Underground does not actually attack the SAA's validity, Democratic Underground only contends that the SAA prevented the Assignment from transferring the rights Righthaven and Stephens Media currently argue the Assignment transferred. In essence, Democratic Underground simply argues that, under the SAA, the Assignment only transferred one particular right, which failed to have the effect Righthaven wishes it had. Democratic Underground does not contest the SAA's validity or argue that it should be undone in any way.  Further, the *Sylvers* court necessarily allowed the defendant to challenge whether the necessary rights were transferred from the rights holder to the plaintiff in that action.  Otherwise the Ninth Circuit would not have been able address the plaintiff's lack of standing in *Silvers* and hold that a mere right to sue is insufficient to bring a copyright infringement action.

### 5.    Prior Rulings within this District

Finally, Righthaven contends that multiple courts within this district have already determined that Righthaven has standing to bring claims for past infringement under the *Silver* standard based on the plain language of the copyright assignment.  At best, this argument is disingenuous.  As the undersigned issued one of the orders Righthaven cites for this argument, the undersigned is well aware that Righthaven led the district judges of this district to believe that it was the true owner of the copyright in the relevant news articles.  Righthaven did not disclose the true nature of the transaction by disclosing the SAA or Stephens Media's pecuniary interests.  As the SAA makes abundantly clear, Stephens Media *retained* the exclusive rights, never actually transferring them to Righthaven regardless of Righthaven's and Stephens Media's current contentions.  Further, Righthaven also failed to disclose Stephens Media in its certificates of interested parties, despite Stephens Media's right to proceeds from these lawsuits.  (Dkt. #79, Ex. 1, SAA Section 5 (granting Stephens Media a fifty percent interest in any recovery, minus costs).)

/

AO 72
(Rev. 8/82)

1   Since those orders were tainted by Righthaven's failure to disclose the SAA and Stephens Media's

2   true interest, those decisions are not persuasive and do not support standing here.

3              **D.    Righthaven Lacks Standing to Bring this Action**

4              Because the SAA prevents Righthaven from obtaining any of the exclusive rights

5   necessary to maintain standing in a copyright infringement action, the Court finds that Righthaven

6   lacks standing in this case.  Accordingly, the Court dismisses Righthaven from this case. However,

7   Righthaven requests that upon such a finding, the Court grant it leave to join Stephens Media as a

8   plaintiff to cure the jurisdictional defect.  Adding Stephens Media, however, would not cure the

9   jurisdictional defect as to Righthaven.  *Eden Toys*, 697 F.2d at 32 n.3 ("While [Federal Rule of

10  Civil Procedure] 17(a) ordinarily permits the real party in interest to ratify a suit brought by

11  another party, the Copyright Law is quite specific in stating that only the owner of an exclusive

12  right under a copyright may bring suit." (internal citations and quotations omitted).)  Also, as

13  Stephens Media has already been brought into this suit as a counter-defendant to a declaratory

14  judgment claim, the Court finds it unnecessary to join Stephens Media as a plaintiff.  If Stephens

15  Media wishes to assert claims against Democratic Underground, it may do so separately.

16  **II.    Righthaven's Motion and Democratic Underground's Motion are Both Moot**

17             Because the Court has dismissed Righthaven for lack of standing, the Court denies

18  both Righthaven's motion for voluntary dismissal with prejudice and Democratic Underground's

19  motion for summary judgment on Righthaven's claim as moot.  Since Righthaven has been

20  dismissed, its complaint is also dismissed.  This, of course, does not affect Democratic

21  Underground's right to bring a motion for attorney fees under the Act.  Also, the counterclaim

22  against Stephens Media remains and so the Court now turns its attention to Stephens Media's

23  motion.

24  /

25  /

26  /

AO 72
(Rev. 8/82)

1    **III.    Stephens Media's Motion to Dismiss or Strike**

2          **A.    Legal Standard**

3                **1.    Motion to Dismiss Standard**

4                "In this action, as in all actions before a federal court, the necessary and

5    constitutional predicate for any decision is a determination that the court has jurisdiction—that is

6    the power—to adjudicate the dispute." *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998).

7    The purpose of a complaint is two-fold: to give the defendant fair notice of the basis for the court's

8    jurisdiction and of the factual basis of the claim. *See* Fed. R. Civ. P. 8; *Skaff v. Meridien North*

9    *Am. Beverly Hills, LLC.*, 506 F.3d 832, 843 (9th Cir. 2007).  Rule 12(b)(1) of the Federal Rules of

10   Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject

11   matter jurisdiction.  Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in

12   its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction.

13   *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th

14   Cir. 2008).  Although the defendant is the moving party in a motion to dismiss brought under Rule

15   12(b)(1), the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears

16   the burden of proving that the case is properly in federal court.  *McCauley v. Ford Motor Co.*, 264

17   F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178,

18   189 (1936)).

19                Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either facial, confining the

20   inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the

21   complaint.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  "In

22   a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient

23   on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes

24   the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe*

25   *Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A "factual" attack made pursuant

26   to Rule 12(b)(1) may be accompanied by extrinsic evidence.  *Whitethorn v. F.C.C.*, 235 F. Supp.

AO 72
(Rev. 8/82)

1   2d 1092, 1095–96 (D. Nev. 2002) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.

2   1989). Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered

3   in its entirety, fails to allege facts that are sufficient to establish subject matter jurisdiction. *In re*

4   *Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir.

5   2008).

6   **2.    Motion to Strike Standard**

7   Under Rule 12(f) a "court may strike from a pleading … any redundant, immaterial,

8   impertinent, or scandalous matter."  Matter is "immaterial" if it has no bearing on the controversy

9   before the court.  *In re 2TheMart.com, Inc Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

10  Allegations are "impertinent" if they are not responsive to the issues that arise in the action and

11  that are admissible as evidence.  *Id.*  "Scandalous" matter is that which casts a cruelly derogatory

12  light on a party or other person.  *Id.*  A court need not wait for a motion from the parties; it may act

13  on its own to strike matter from a pleading.  Fed. R. Civ. P. 12(f)(1).

14  **B.    Analysis**

15  Stephens Media's motion essentially relies on two separate arguments for its

16  position that there is no justiciable case or controversy: (1) that Stephens Media assigned all of the

17  rights in and to the Work to Righthaven, thus negating the possibility of any case or controversy

18  between Stephens Media and Democratic Underground, and (2) that Democratic Underground's

19  counterclaim will necessarily be adjudicated by a decision on the original complaint and, therefore,

20  should be stricken.  The Court dispelled Stephens Media's first argument in the analysis above.

21  Stephens Media expressly avoided transferring the exclusive rights to the Work to Righthaven by

22  neutering future assignments in the SAA.  As to Stephens Media's second argument, setting aside

23  the fact that Stephens Media was never a party to Righthaven's complaint, that argument is now

24  moot as the Court has dismissed Righthaven's complaint.  Since the complaint has been dismissed,

25  the issues raised by the counterclaim can only be adjudicated by litigating the counterclaim, not the

26  now defunct complaint.

AO 72
(Rev. 8/82)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 1.       Justiciable Case or Controversy

Stephens Media's principle contention for why there is no justiciable case or controversy between Stephens Media and Democratic Underground relied on the Assignment of rights to Righthaven.  Though the Court has refuted this particular argument, the Court will, nonetheless, quickly address the case or controversy requirement for a declaratory judgment action as it still pertains to this case.

The Supreme Court has held that declaratory judgment claims must arise from disputes that are "'definite and concrete, touching the legal relations of parties having adverse legal interests,' . . . 'real and substantial,'" and beget "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.* 549 U.S. 118, 127 (2007). Nonetheless, a party need not "bet the farm" and always actually engage in planned conduct that would result in threatened legal action before bringing a declaratory judgment suit.  *Id.* at 133–34.

Contrary to its assertions in its moving papers, Stephens Media has threatened Democratic Underground with litigation because, according to the SAA, Stephens Media approved or consented to suit against Democratic Underground.  (Dkt. #79, Ex. 1, SAA Section 3.3.) Additionally, Stephens Media's then CEO, Sherman Frederick, generally threatened potential defendants that he would send his "little friend called Righthaven" after them.  (Dkt. #13, Answer and Countercl. ¶ 33.)  Here, Stephens Media actually did send Righthaven after Democratic Underground.  Further, Democratic Underground desires to re-post the allegedly infringing material to maintain a full archive of prior posts on its website.  This could result in new copyright infringement litigation against Democratic Underground if the Court does not declare that the post did not infringe the copyright in the first instance.  This threat of suit is sufficiently real and substantial that an actual case and controversy exists between these parties and warrants a declaratory judgment suit.  Accordingly, and because the Court dismissed Righthaven and its complaint, the Court denies Stephens Media's motion.

AO 72
(Rev. 8/82)

1
### IV.    Order to Show Cause

2            As shown in the preceding pages, the Court believes that Righthaven has made

3  multiple inaccurate and likely dishonest statements to the Court.  Here, however, the Court will

4  only focus on the most factually brazen: Righthaven's failure to disclose Stephens Media as an

5  interested party in Righthaven's Certificate of Interested Parties.  (Dkt. #5.)  Rule 7.1-1 of the

6  Local Rules of Practice for the District of Nevada requires parties to disclose "all persons,

7  associations of persons, firms, partnerships or corporations (including parent corporations) which

8  have a direct, pecuniary interest in the outcome of the case."  This Local Rule requires greater

9  disclosure than Federal Rule 7.1, which only requires non-governmental corporate parties to

10  disclose parent corporations or corporations owning more than 10% of the party's stock.  Frankly,

11  if receiving 50% of litigation proceeds minus costs (Dkt. #79, SAA Section 5) does not create a

12  pecuniary interest under Local Rule 7.1-1, the Court isn't sure what would.

13            Making this failure more egregious, not only did Righthaven fail to identify

14  Stephens Media as an interested party in this suit, the Court believes that Righthaven failed to

15  disclose Stephens Media as an interested party in any of its approximately 200 cases filed in this

16  District.  Accordingly, the Court orders Righthaven to show cause, in writing, no later than two (2)

17  weeks from the date of this order, why it should not be sanctioned for this flagrant

18  misrepresentation to the Court.

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

AO 72
(Rev. 8/82)

15

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Righthaven is dismissed from this case for lack of standing.  As such, Righthaven's complaint is dismissed in its entirety.

IT IS FURTHER ORDERED that Righthaven's Motion for Voluntary Dismissal with Prejudice (#36) is DENIED as moot.

IT IS FURTHER ORDERED that Stephens Media's Motion to Dismiss or Strike (#38) is DENIED.

IT IS FURTHER ORDERED that the Democratic Underground's Motion for Summary Judgment (#45) is DENIED as moot.

IT IS FURTHER ORDERED that Righthaven show cause, in writing, no later than two (2) weeks from the date of this order, why it should not be sanctioned.

Dated: June 14, 2011.

**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)