LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
cwebb@fenwick.com
JENNIFER J. JOHNSON (CA State Bar No. 252897) (*pro hac vice*)
jjjohnson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:     (415) 875-2300
Facsimile:     (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:     (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>Plaintiff,<br>v.<br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>Defendants. | Case No. 2:10-cv-01356-RLH (GWF)<br><br>**DEFENDANT DEMOCRATIC UNDERGROUND'S CONSOLIDATED OPPOSITION TO RIGHTHAVEN'S MOTION TO INTERVENE [DKT 120] AND OPPOSITION TO COUNTER-DEFENDANT STEPHENS MEDIA'S MOTION FOR RECONSIDERATION[DKT 126]** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>Counterclaimant,<br>v.<br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>Counterdefendants. | |

1

2

**TABLE OF CONTENTS**

**Page**

3    INTRODUCTION ..................................................................................................... 1

4    ARGUMENT .......................................................................................................... 5

5    I.    STEPHENS MEDIA CANNOT MEET THE HIGH BURDEN REQUIRED FOR
         THIS COURT TO REVISIT ITS JUNE 14 DECISION. .................................................. 5

6

7         A.    Neither the "Clarification" nor the Restated Amendment to the SSA
                Constitute Newly Discovered Evidence Justifying Reconsideration. ................... 6

8         B.    The Court's June 14 Decision Did Not Result in a Manifest Injustice. ................ 9

9         C.    Stephens Media May Not Reargue the Issues that It Lost. ................................ 10

10   II.   EVEN UNDER THE NEWLY MINTED RESTATED AMENDMENT,
         RIGHTHAVEN HAS NO BASIS TO INTERVENE. ....................................................... 11

11

12        A.    Righthaven's Request, Following Months of Litigation and its Dismissal, is
                Untimely. ...................................................................................................... 12

13        B.    Stephens Media Would Adequately Protect Any Interest Righthaven Might
                Claim. ........................................................................................................... 13

14        C.    Righthaven Has No Protectable Interest in this Litigation. ............................. 14

15

16   III.  THE RESTATED AMENDMENT CANNOT PROVIDE RIGHTHAVEN A
         BASIS TO INTERVENE OR STEPHENS MEDIA A BASIS FOR
         RECONSIDERATION AS IT PERPETUATES A FRAUD ON THE COURT. ........... 25

17

18        A.    Righthaven Has Repeatedly Misrepresented the True Nature of its
                Relationship with Stephens Media to this Court and Attempted to Hide it
                from Litigants and the Court. ......................................................................... 25

19

20        B.    The Restated Amendment Is Just the Next Step in this Fraud. .......................... 28

21   CONCLUSION ...................................................................................................... 30

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Plastic Equip., Inc. v. Toytrackerz, LLC,*
No. 07-2253, 2010 WL 1284471 (D. Kan. Mar. 31, 2010) ...................................................... 8

*Appling v. State Farm Mut. Auto. Ins. Co.,*
340 F.3d 769 (9th Cir. 2003) ................................................................................................. 25

*Arakaki v. Cayetano,*
324 F.3d 1078 (9th Cir. 2003) ............................................................................................... 13

*Backlund v. Barnhart,*
778 F.2d 1386 (9th Cir. 1985) ................................................................................................. 6

*Baucom v. Sisco Stevedoring, LLC,*
No. 06-0785, 2008 WL 2428930 (S.D. Ala. June 12, 2008) .................................................... 7

*Bay County Bar Ass'n. v. Finance Sys., Inc.,*
345 Mich. 434 (1956) ........................................................................................................... 24

*Biesek v. Soo Line R.R. Co.,*
440 F.3d 410 (7th Cir. 2006) ................................................................................................... 7

*Brown v. Kinross Gold, U.S.A.,*
378 F. Supp. 2d 1280 (D. Nev. 2005) ...................................................................................... 6

*Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
309 F.3d 1113 (9th Cir. 2002) ............................................................................................... 12

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988) ................................................................................................................ 6

*Clements v. Airport Auth. of Washoe County,*
69 F.3d 321 (9th Cir. 1995) ........................................................................................ 3, 15, 26

*Del Webb Communities, Inc. v. Partington,*
2009 WL 3053709 (D. Nev. Sept. 18, 2009) ......................................................................... 22

*Del Webb Communities, Inc. v. Partington,*
Case No. 10-15975 (9th Cir. July 20, 2011) .......................................................................... 22

*Dilks v. Aloha Airlines, Inc.,*
642 F.2d 1155 (9th Cir. 1981) ............................................................................................... 14

*Donnelly v. Glickman,*
159 F.3d 405 (9th Cir. 1998) ........................................................................................... 11, 14

*Duarte v. Bardales,*
526 F.3d 563 (9th Cir. 2008) ................................................................................................... 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page(s)

3

*England v. Doyle,*
    281 F.2d 304 (9th Cir. 1960)............................................................................. 25

4

*Fahmy v. Jay-Z,*
    261 F.R.D. 180 (C.D. Cal. 2009) ..................................................................... 15

5

6

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.,*
    499 U.S. 340 (1991)......................................................................................... 16

7

*FM Indus., Inc. v. Citicorp Credit Servs., Inc.,*
    No. 07-C-1794, 2008 WL 4722086 (N.D. Ill. Oct. 21, 2008) .......................... 8, 16

8

9

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994)......................................................................................... 13

10

*Frasure v. U.S.,*
    256 F. Supp. 2d 1180 (D. Nev. 2003) ......................................................... 6, 9, 10

11

*Frazier v. Austin Explosives Co.,*
    No. C-10-2, 2010 U.S. Dist. LEXIS 57625 (S.D. Tex. June 10, 2010) .............. 14

12

13

*Garcia v. Berkshire Life Ins. Co. of America,*
    569 F. 3d 1174 (10th Cir. 2009).................................................................. 25, 26

14

*Gardner v. Nike, Inc.,*
    279 F.3d 774 (9th Cir. 2002)............................................................................ 30

15

16

*Gerlinger v. Amazon.com Inc.,*
    526 F.3d 1253 (9th Cir. 2008).......................................................................... 17

17

*Green v. Ancora-Citronelle Corp.,*
    577 F.2d 1380 (9th Cir. 1978).......................................................................... 15

18

19

*Gruber v. Baker,*
    20 Nev. 453 (Nev. 1890).................................................................................. 22

20

*Grutter v. Bollinger,*
    188 F.3d 394 (6th Cir. 1999)............................................................................ 14

21

22

*Harris v. Emus Records Corp.,*
    734 F.2d 1329 (9th Cir. 1984).......................................................................... 30

23

*HyperQuest, Inc. v. N'Site Solutions, Inc.,*
    559 F. Supp. 2d 918 (N.D. Ill. 2008) ............................................................... 17

24

25

*In re Brooms,*
    447 B.R. 258 (9th Cir. BAP 2011).................................................................... 24

26

*In re Levander,*
    180 F.3d 1114 (9th Cir. 1999).......................................................................... 25

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## TABLE OF AUTHORITIES
### (Continued)

2
Page(s)

3

*In re Repurchase Corp.*,

4
    332 B.R. 336 (Bankr. N.D. Ill. 2005)............................................................... 7

*Incline Energy, LLC v. Penna Group, LLC*,

5
    2011 WL 1304710 (D. Nev. Apr. 1, 2011) ...................................................... 22

6
*Jones v. Aero/Chem Corp.*,

7
    921 F.2d 875 (9th Cir. 1990)........................................................................... 7

*League of United Latin Am. Citizens v. Wilson*,

8
    131 F.3d 1297 (9th Cir. 1997).......................................................................... 12

9
*Lerner v. Fleet Bank*,

10
    318 F.3d 113 (2d Cir.2003)............................................................................... 17

*Liberty Mut. Ins. Co. v. FAG Bearings Corp.*,

11
    335 F.3d 752 (8th Cir. 2003)............................................................................ 16

12
*Lum* v. *Stinnett*,

13
    87 Nev. 402 (Nev. 1971)................................................................................... 22

*Martin v. Morgan Drive Away, Inc.*,

14
    665 F.2d 598 (5th Cir. 1982)............................................................................ 23

15
*Martinez v. Shinseki*,

16
    2:09-cv-01354-RLH-RJJ, 2011 WL 9302 (D. Nev. Jan. 3, 2011)................. 6, 10

*McDowell v. Calderon*,

17
    197 F.3d 1253 (9th Cir. 1999).......................................................................... 9

18
*N.L.R.B. v. Jacob E. Decker & Sons*,

19
    569 F.2d 357 (5th Cir. 1978)............................................................................ 7

*NAACP v. New York*,

20
    413 U.S. 345 (1973) ........................................................................................ 12

21
*Nafal v. Carter*,

22
    540 F. Supp. 2d 1128 (C.D. Cal. 2007) ......................................................... 15, 21

*Nutter v. Clear Channel Commc'ns, Inc.*,

23
    No. 5:02-cv-157, 2006 WL 355181 (N.D. W.Va. Feb. 15, 2006) .................. 7, 8

24
*Pannonia Farms, Inc. v. Re/Max Int'l, Inc.*,

25
    407 F. Supp. 2d. 41, 43 (D. D.C. 2005) ......................................................... 17

26
*Perry v. Schwarzenegger*,

27
    630 F.3d 898 (9th Cir. 2011)......................................................................... 11, 12, 14

28
*Pest Comm. v. Miller*,
    648 F. Supp. 2d 1202 (D. Nev. 2009) ............................................................ 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Petrol Stops Northwest v. Continental Oil Co.*,
   647 F.2d 1005 (9th Cir. 1981)................................................................................ 12

*Phoceene Sous-Marine S.A. v. U.S. Phosmarine, Inc.*,
   682 F. 2d 802 (9th Cir. 1982)................................................................................ 25

*Prosky v. Clark*,
   109 P. 793 (Nev. 1910) ........................................................................................ 22

*Raylon, LLC v. EZ Tag Corp.*,
   6:09-cv-00357-LED (E.D. Tex. Mar. 9, 2011) ...................................................... 27

*Rent Stabilization Ass'n v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993)...................................................................................... 17

*Repurchase Corp. v. Bodenstein*,
   05 B 32933, 2008 WL 4379035 (N.D. Ill. Mar. 24, 2008) ..................................... 7

*Righthaven LLC v. Barham*,
   2011 WL 2473602 (D. Nev. June 22, 2011) ......................................................... 16

*Righthaven LLC v. Democratic Underground, LLC*,
   2011 WL 2378186 (D. Nev. Jun. 14, 2011)....................................................... 1, 16

*Righthaven, LLC v. DiBiase*,
   2:10-cv-01343-RLH, 2011 WL 2473531 (D. Nev. June 22, 2011) ............... *passim*

*Righthaven, LLC v. Dr. Shezad Malik Law Firm P.C.*,
   Case No. 2:10-cv-00636-RLH-RJJ, 2010 WL 3522372
   (D. Nev. Sept. 2, 2010) .......................................................................................... 4

*Righthaven, LLC v. Hoehn*,
   2:11-cv-00050-PMP, 2011 WL 2441020
   (D. Nev. June 20, 2011) .................................................................................. *passim*

*Righthaven, LLC v. Majorwager.com, Inc.*,
   Case No. 2:10-cv-00484-GMN-LRL, 2010 WL 4386499
   (D. Nev. Oct. 28, 2010)........................................................................................... 4

*Righthaven, LLC v. Mostofi*,
   2:10-cv-01066-KJD, 2011 WL 2746315
   (D. Nev. July 13, 2011) ................................................................................... *passim*

*Righthaven, LLC v. Vote For The Worst, LLC, et al.*,
   Case No. 2:10-cv-01045-KJD-GWF (D. Nev. Mar. 30, 2011).............................. 4

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)............................................................................... 17

*Sch. Dist. No. IJ, Multnomah County v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993).................................................................................... 6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Schwartz v. Eliades,*
  113 Nev. 586 (Nev. 1997) ................................................................... 22, 23

*Silvers v. Sony Pictures Entm't, Inc.,*
  402 F.3d 881 (9th Cir. 2005) .............................................................. *passim*

*Spain v. EMC Mortgage Company,*
  No. 07-0308, 2009 WL 2590100 (D. Ariz. Aug. 20, 2009) ...................... 8

*State of Wash. v. United States,*
  214 F.2d 33 (9th Cir. 1954) ...................................................................... 7

*Sybersound Records, Inc. v. UAV Corp.,*
  517 F.3d 1137 (9th Cir. 2008) ................................................................. 17

*Tripati v. Henman,*
  857 F.2d 1366 (9th Cir. 1988) ................................................................. 15

*United States v. Alexander,*
  106 F.3d 874 (9th Cir. 1997) ..................................................................... 9

*United States v. Mendoza,*
  464 U.S. 154 (1984) ................................................................................ 15

*Waite v. Cage,*
  No. 07-37770, 2011 WL 2118803 (S.D. Tex. May 27, 2011) .................... 8

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold &
  Easement in the Cloverly Subterranean,*
  524 F.3d 1090 (9th Cir. 2008) ................................................................. 17

*Wyle v. R.J. Reynolds Indus., Inc.,*
  709 F.2d 585 (9th Cir. 1983) ................................................................... 25

**STATUTES**

17 U.S.C. § 101 .......................................................................................... 21, 29

17 U.S.C. § 505 ............................................................................................... 13

**RULES**

Fed. R. Civ. P. 24 ...................................................................................... 11, 12

Fed. R. Civ. P. 26 ............................................................................................ 28

Fed. R. Civ. P. 59 ................................................................................... 7, 8, 16

Fed. R. Civ. P. 60 ..................................................................................... 7, 16

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

**OTHER AUTHORITIES**

11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2859 (1973) .......................... 7

William Patry, 2 PATRY ON COPYRIGHT (2009) ............................................................. 22, 23, 30

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2   **INTRODUCTION**

3        Through their respective motions to intervene and for reconsideration, Righthaven LLC

4   ("Righthaven") and Stephens Media LLC ("Stephens Media") seek to circumvent this Court's

5   ruling, made after exhaustive briefing, on June 14, 2011 (the "June 14 Decision").  *Righthaven*

6   *LLC v. Democratic Underground, LLC*, 2011 WL 2378186 (D. Nev. Jun. 14, 2011).  The June 14

7   Decision rejected Righthaven's claim to ownership of a genuine copyright interest in the News

8   Article, some 10% of which had been excerpted in a third party's posting to the Democratic

9   Underground website.  The Court held that Stephens Media was the real copyright owner,

10  notwithstanding Righthaven's "disingenuous" and "egregious" assertions to the contrary based on

11  the original Strategic Alliance Agreement (Dkt. 102, Ex. 2 or "SAA").   It also held that

12  Righthaven could not, by purporting to amend the SAA after the fact, manufacture standing to

13  sue.  And while the June 14 Decision expressed this Court's "doubt" that the "cosmetic" changes

14  made through a purported "Clarification" (Dkt. 102 Ex. 3) of the SAA would meet the *Silvers* test

15  for standing (June 14 Decision at *4 n.1) two subsequent decisions in this District have gone

16  further and have rejected the sufficiency of the Clarification to meet the *Silvers* test in final

17  judgments that now amount to collateral estoppel.  *Righthaven, LLC v. Hoehn,* 2:11-cv-00050-

18  PMP, 2011 WL 2441020 (D. Nev. June 20, 2011); *Righthaven, LLC v. Mostofi*, 2:10-cv-01066-

19  KJD, 2011 WL 2746315 (D. Nev. July 13, 2011).

         The June 14 Decision and those that followed left Stephens Media in a predicament of its

20  own making.  Having set up Righthaven as the vehicle to file hundreds of suits to extract nuisance

21  settlements, Stephens Media is now being called to account.  Independent of Righthaven's lack of

22  standing, this Court also held that Democratic Underground's request for declaratory relief

23  against Stephens Media was appropriate, since Stephens Media had both threatened and instigated

24  the suit by its "little friend, Righthaven" on its behalf.  And while the Court stated that

25  Democratic Underground could seek its attorneys' fees against Righthaven, that entity's financial

26  capacity to pay a fee award—having been set up to sue as a surrogate—is far more dubious than

27  that of Stephens Media.

28

1    Thus, in the present attempt to escape the June 14 Decision, Stephens Media filed a

2    motion for reconsideration, based on its argument that the May 9, 2011 Clarification of the SAA

3    successfully divested it of "real party in interest" status.  Conversely, Righthaven, which

4    previously moved to voluntarily *dismiss* its claims against Democratic Underground (Dkt. 36),

5    albeit with improper conditions, has now moved to "intervene," based on having purportedly

6    obtained ownership through the Clarification, and on the argument that Stephens Media cannot

7    defend the interests Righthaven previously sought to abandon.

8    Then, in an even more direct flouting of this Court's orders, Righthaven and Stephens

9    Media ginned up a further amendment of the SAA that purports to recharacterize, *nunc pro tunc*,

10   their relationship for the past 18 months.  Dated July 7, 2011 and labeled a "Restated

11   Amendment," this document now forms the basis for both movants' supplemental memoranda

12   asking to undo the June 14 Decision.  Dkt. 134-1.  This Restated Amendment purports to

13   fundamentally reframe the Righthaven/Stephens Media relationship, as if those parties can

14   collusively rewrite history – and avoid this Court's determinations – by rewriting the documents

15   on which those determinations were based.  It is actually quite a concept:  if the owner of an asset

16   does not like losing in lawsuits about that asset, just give the asset away to an affiliate, and then

17   claim to be immune from suit.

18   For multiple reasons, the Court should deny both the motions for reconsideration and

19   intervention.  There is no basis to grant reconsideration based on "new facts" where the only thing

20   new was invented after a Court's prior decision—for no reason other than to undermine it.

21   Further, collateral estoppel precludes Righthaven's assertion of standing to claim ownership and

22   bring this action.  Dressing up this issue as a "motion to intervene" does not change the calculus.

23   Righthaven cannot seriously contend that there is no party that would adequately defend its

24   interest in its absence, since Stephens Media's defense of the Counterclaim would do exactly that.

25   In all events, if this Court were to find it appropriate or necessary to analyze the third

26   version of the SAA presented in the Restated Amendment, it will find that this third time is no

27   charm.  Righthaven and Stephens Media refuse to recognize that Righthaven's right to litigate

28   these actions has been decided, and that its rights cannot be resurrected by further "clarification"

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  or "restatement" of agreements.  While Righthaven and Stephens Media doubtless are

2  disappointed, the reality is that *Hoehn*, 2011 WL 2441020, *Righthaven, LLC v. DiBiase*, 2:10-cv-

3  01343-RLH, 2011 WL 2473531 (D. Nev. June 22, 2011), and *Mostofi*, 2011 WL 2746315, have

4  each been reduced to a judgment.  Each is not only precedent but subjects Righthaven to issue

5  preclusion as to its standing to sue on the SAA, and as to its inability to cure its lack of standing

6  by any amendment.  *See Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 330 (9th Cir.

7  1995) (issue preclusion—formerly known as collateral estoppel—bars "the re-litigation of an

8  issue that has been actually litigated and necessarily decided").  Moreover, this Court's June 14

9  Decision —holding that Righthaven's subsequent amendments could not resurrect its claim—was

10  specifically adopted as the reasoning for the dismissal that underlies the judgment in *DiBiase*,

11  further precluding relitigation of these issues.  In addition, Righthaven has conceded that the June

12  14 Decision is "law of the case."  Righthaven Motion to Intervene (Dkt. 120) at 3.

13        Accordingly, as a starting point for any analysis, the following issues have been

14  conclusively determined and are beyond further dispute:

15  • "[T]he SAA in its original form qualifies the Assignment with restrictions or
       rights of reversion, such that in the end, Righthaven is not left with ownership
16     of any exclusive rights." *Hoehn*, 2011 WL 2441020, at *5.

17  • "[T]he SAA prevents Plaintiff from obtaining any of the exclusive rights
       necessary to maintain standing in a copyright infringement action." *Mostofi*,
18     2011 WL 2746315, at *5.

19  • "Righthaven and Stephens Media went to great lengths in the SAA to be sure
       that Righthaven did not obtain any rights other than the bare right to sue.
20     Thus, the Court finds that **the plain language of the SAA conveys the intent
       to deprive Righthaven of any right, save for the right to sue alleged
21     infringers and profit from such lawsuits**." June 14 Decision at *4 (emphasis
       added).

22  • "Righthaven and Stephens Media may have wanted Righthaven to be able to
       sue, but the SAA was anything but silent in making sure that Stephens Media
23     retained complete control over the Work rather than actually effectuate the
       necessary transfer of rights. The entirety of the SAA is concerned with making
24     sure that Righthaven did not obtain any rights other than the right to sue." *Id.*
       at *5.
25
26  • "[T]he SAA makes abundantly clear [that] Stephens Media *retained* the
       exclusive rights, never actually transferring them to Righthaven." *Id.* at *6
27     (emphasis original).

28

- The prior orders on motions to dismiss in this district that found standing based upon the assignment alone "were tainted by Righthaven's failure to disclose the SAA and Stephens Media's true interest." *Id.* at *6.[1]

- The "May 9, 2011 Clarification ... does not provide Righthaven with any exclusive rights necessary to bring suit." *Hoehn*, 2011 WL 2441020, at *6[2]

Despite all of this, the present motions first proffered the Clarification, and now the Restated Amendment, as clean slates proving that Righthaven has navigated around the requirements of *Silvers*. Righthaven continues to claim that it and Stephens Media may avoid these adverse rulings by reframing their relationship in as many inconsistent ways as they want, for instance the Restated Amendment provides that "intent of the parties in entering into the SAA and Amendment was to convey all ownership rights and interest in and to any identified Work to Righthaven" (Restated Amendment at 1), the opposite of what this Court found to be the truth.

These mischaracterizations, regardless of the realities of Righthaven and Stephens Media's relationship, show how specious their entire "assignment" construct is. It would make a mockery of this Court's process to adopt the pretense that Righthaven now is in the business of owning and licensing exclusive rights in copyrights, rather than merely suing on them, when it has done, and is empowered to do, nothing else. This is especially true given Righthaven's history of false representation as to the nature of its relationship and Righthaven's authority. Transcript of this Court's ruling at the July 14, 2011 sanctions hearing (Dkt. 137 or "OSC Ruling") at 15 ("The representations about the relationship and the right of Righthaven were misrepresentations. They were misleading"). Righthaven should not be allowed to perpetuate its fraud on the court by mischaracterizing its actual relationship and intentions again and seeking to undue this Court's prior decisions on that basis.

---

[1] The "tainted" decisions are *Righthaven, LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJD-GWF (D. Nev. Mar. 30, 2011) (Dkt. 28); *Righthaven, LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-00484-GMN-LRL, 2010 WL 4386499 (D. Nev. Oct. 28, 2010); *Righthaven, LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No. 2:10-cv-00636-RLH-RJJ, 2010 WL 3522372 (D. Nev. Sept. 2, 2010).

[2] The *Hoehn* decision adopted the conclusion that the May 9, 2011 Clarification did not comport with *Silvers* standard because Stephens Media maintained control over all exclusive rights, as argued by Democratic Underground in its clause-by-clause analysis of the Clarification in this action. *See* Dkt. 107. We will not repeat those arguments here, especially since the Clarification has now been superseded by yet another version.

1    In any event, Righthaven's most recent Restated Amendment could not change the

2  inherently unlawful nature of its relationship with Stephens Media, in either of two respects.

3  First, this Court has already held that it was Righthaven's intent not to receive any rights other

4  than the right to share in the proceeds of another's legal claims. June 14 Decision, at *3 ("In

5  reality, Righthaven actually left the [SAA] transaction with nothing more than a fabrication since

6  a copyright owner cannot assign a bare right to sue after *Silvers*. To approve of such a transaction

7  would require the Court to disregard the clear intent of the transaction and the clear precedent set

8  forth by the *en banc* Ninth Circuit in *Silvers*").  This relationship by definition constitutes

9  champerty, an illegal practice under Nevada law.  *Ex post facto* amendments cannot obscure the

10  champertous nature of Righthaven's pursuit of Stephens Media's claims:  Righthaven's

11  agreements and assignments with Stephens Media are therefore an illegal nullity that can never

12  form the basis for Righthaven to sue or provide any right to intervene.

13    Second, as persuasively argued by Amicus Citizens against Litigation Abuse, and as this

14  Court also recognized at the OSC hearing, the entire Righthaven scheme constitutes the unlawful,

15  unauthorized practice of law.  OSC Ruling at 14 (holding that Righthaven is nothing "but a law

16  firm with a contingent fee agreement masquerading as a company that's a party").  For this reason

17  too, Righthaven's agreements and assignments with Stephens Media must be disregarded, and its

18  claim to standing to intervene—or to sue again—rejected.

19    Righthaven's repeated machinations and motions have multiplied the complexity of this

20  matter.  But it all still adds up to one straightforward conclusion: Righthaven has no standing to

21  pursue any action based on the purportedly assigned copyright here, and, accordingly, no interest

22  in this litigation to protect by intervention.  Stephens Media remains the real party in interest, and

23  cannot justify reconsideration based on newly created evidence.  Enough is enough.  Both

24  motions should be denied, and the case should proceed in accordance with the June 14 Decision.

25                         **ARGUMENT**

26  I.    **STEPHENS MEDIA CANNOT MEET THE HIGH BURDEN REQUIRED FOR
       THIS COURT TO REVISIT ITS JUNE 14 DECISION.**

27

28    This Court correctly denied Stephens Media's motion to dismiss or strike Democratic

Fenwick & West LLP
Attorneys at Law
San Francisco

1   Underground's counterclaim.  Stephens Media's current motion for the Court to reconsider its

2   June 14 Decision must also be denied, as Stephens Media cannot demonstrate the highly unusual

3   circumstances required for reconsideration.  *See Christianson v. Colt Indus. Operating Corp.*, 486

4   U.S. 800, 817 (1988) (holding that "courts should be loathe [to revisit prior decisions of their

5   own] in the absence of extraordinary circumstances").

6       A motion for reconsideration could be appropriate only if "the district court (1) is

7   presented with newly discovered evidence, (2) committed clear error or the initial decision was

8   manifestly unjust, or (3) if there is an intervening change in the controlling law."  *Sch. Dist. No.*

9   *IJ, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993).  Stephens Media

10  demands that this Court revisit its June 14 Decision on the basis of "newly discovered evidence"

11  or alternatively "manifest injustice."[3]  However, Stephens Media has not and cannot identify

12  either "facts or law of a strongly convincing nature" that might justify reconsideration.  *Frasure v.*

13  *U.S.*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003); *Martinez v. Shinseki*, 2:09-cv-01354-RLH-RJJ,

14  2011 WL 9302, at *1 (D. Nev. Jan. 3, 2011).  In addition, Stephens Media impermissibly uses its

15  motion to rehash arguments already made.  *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th

16  Cir. 1985); *Brown v. Kinross Gold, U.S.A.,* 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (holding

17  that "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments

18  upon which the court already has ruled").

19      **A.    Neither the "Clarification" nor the Restated Amendment to the SSA**
         **Constitute Newly Discovered Evidence Justifying Reconsideration.**
20

21      Stephens Media's motion for reconsideration was initially based on its contention that the

22  Court's June 14 Decision "did not consider the effect of the [May 9] Amendment [aka the

23  Clarification] on the issue of standing because its analysis was limited to the jurisdictional

24  allegations existing at the time of the complaint," and therefore that the Clarification "potentially

25  qualif[ies]" as new evidence.  Motion for Reconsideration (Dkt. 126) at 7.  This argument is

26  meritless.  The May 9 Clarification was presented to the Court and its impact fully briefed in

27  _____

28  [3] Stephens Media does not attempt to argue that there has been an intervening change in controlling law, and no such change has occurred.

1   connection with Stephens Media's Motion to Dismiss.  Indeed, the Clarification was executed the

2   day before Stephens Media responded to Democratic Underground's brief that provided the Court

3   with the SAA, in an obvious, if vain, effort to bolster that response.

4          Undeterred, Stephens Media created the new Restated Amendment on July 7, 2011 and

5   now claims that it is "newly discovered evidence."  Dkt. No. 136.  Nonsense.  Reconsideration,

6   like a new trial or relief from judgment, can only be based on evidence that existed at the time the

7   issues in dispute were considered—in other words, the evidence must be newly *discovered*, not

8   newly *created*.[4]  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (motion for

9   reconsideration of judgment must show the evidence existed at the time judgment was rendered);

10  *State of Wash. v. United States,* 214 F.2d 33, 46 (9th Cir. 1954) (newly discovered evidence

11  "refers to evidence in existence at the time of trial, which by exercise of reasonable diligence was

12  not discoverable prior to trial."); *N.L.R.B. v. Jacob E. Decker & Sons*, 569 F.2d 357, 364 (5th Cir.

13  1978) (applying "often stated" norm that "the evidence must be in existence at the time of the

14  trial" in the context of a National Labor Relations Board hearing); *Biesek v. Soo Line R.R. Co.*,

15  440 F.3d 410, 412 (7th Cir. 2006) (declining to consider a stipulation, signed after dismissal of

16  suit, that was "newly created rather than newly discovered"); *In re Repurchase Corp.*, 332 B.R.

17  336, 344 (Bankr. N.D. Ill. 2005), *aff'd sub nom. Repurchase Corp. v. Bodenstein,* 05 B 32933,

18  2008 WL 4379035 (N.D. Ill. Mar. 24, 2008) (holding that post-hearing effort to correct

19  deficiencies in bankruptcy reorganization plan represented "newly created evidence" that cannot

20  be deemed as "newly discovered"); *Baucom v. Sisco Stevedoring, LLC*, No. 06-0785, 2008 WL

21  2428930, at *5 (S.D. Ala. June 12, 2008) (denying reconsideration motion based on "newly

22  created evidence"); *Nutter v. Clear Channel Commc'ns, Inc.*, No. 5:02-cv-157, 2006 WL 355181

23  (N.D. W.Va. Feb. 15, 2006)(discussing denial of motion to alter or amend judgment finding lack

24  of standing where plaintiff subsequently purchased copyright).  The principle that previously

25  nonexistent evidence cannot be considered "newly discovered" for purposes of reconsideration is

26

27  [4] Motions for reconsideration may be brought pursuant to Federal Rules of Civil Procedure 59 or 60(b) or by
discretion of the court, based on timing of the motion and the order or judgment or trial for which reconsideration is
sought.  "The same standard applies to motions on the ground of newly discovered evidence whether they are made

28  under Rule 59 or Rule 60(b)(2)."  *Jones*, 921 F.2d at 878 (*citing* 11 C. Wright & A. Miller, Federal Practice and
Procedure: Civil § 2859 (1973)).

OPP. TO MOTIONS TO INTERVENE AND          7          CASE NO. 2:10-cv-01356-RLH (RJJ)
FOR RECONSIDERATION

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   critical "for the obvious reason that to allow such a procedure could mean the perpetual

2   continuation of all trials" or other adjudications.  *Id.*

3          In *American Plastic Equip., Inc. v. Toytrackerz, LLC,* for example, the court denied a

4   motion to reconsider its dismissal of a copyright infringement suit where plaintiff could not

5   establish ownership of the copyrights in question.  The court held that a retroactive *nunc pro tunc*

6   assignment, introduced after the dismissal order was entered, was "not 'newly discovered'

7   evidence but rather 'newly created' evidence."  No. 07-2253, 2010 WL 1284471, at *10 (D. Kan.

8   Mar. 31, 2010).  *Accord FM Indus., Inc. v. Citicorp Credit Servs., Inc.,*  No. 07-C-1794, 2008 WL

9   4722086, *1–*2 (N.D. Ill. Oct. 21, 2008) (rejecting post-ruling efforts to cure copyright

10  ownership deficiency through introduction of a transfer document that was "newly created for

11  purposes of litigation, not newly discovered evidence").

12         Likewise, in *Spain v. EMC Mortgage Company*, the court rejected as newly discovered

13  evidence a "correction" to a property deed that sought to cure a standing deficiency.  No. 07-

14  0308, 2009 WL 2590100 (D. Ariz. Aug. 20, 2009).  The plaintiff had asked the court to

15  reconsider its finding that, as solely a beneficiary of a trust, plaintiff was not the real party in

16  interest and did not have standing to sue.  The plaintiff based its request on an amended deed with

17  language conveying the property to plaintiff as an individual, instead of as a beneficiary.  Because

18  the corrected deed did not exist "at the time of the proceeding at which the ruling now protested

19  was entered," however, the court declined to consider the correction and denied the motion.  *Id.* at

20  *5 (*citing Duarte v. Bardales,* 526 F.3d 563, 573 (9th Cir. 2008)).

21         Another recent opinion similarly rejected a party's efforts to correct deficiencies in a

22  transfer of contracts that the court had previously deemed void.  *Waite v. Cage*, No. 07-37770,

23  2011 WL 2118803 (S.D. Tex. May 27, 2011).  Appellants sought reconsideration based on

24  acquisition of a retroactively effective license that would enable the transfer appellants sought to

25  effect.  Because appellants did not hold the license on the date that the relevant petition and

26  motions were filed, and therefore "did not 'discover' evidence regarding the licenses but, instead,

27  created such evidence," the court upheld denial of the motion to reconsider.  *Id.* at *4.

28  Regardless of whether a court is considering a motion brought under Rules 59 or 60, following a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  judgment or trial, or for reconsideration of an interlocutory order, this same standard focusing on

2  "newly discovered" evidence applies.  *See generally Frasure,* 256 F. Supp. 2d at 1183.

3      Stephens Media cannot manufacture evidence after the fact and properly deem it "newly

4  discovered" for purposes of reconsideration.  If Stephens Media or Righthaven wished to proceed

5  based on a contractual relationship different from what they presented to the Court—and, indeed,

6  diametrically opposed to their intent as found by the Court—they should have submitted evidence

7  of that purported relationship to the Court prior to its decision, not massage the facts thereafter.

8      **B.      The Court's June 14 Decision Did Not Result in a Manifest Injustice.**

9      Stephens Media attempts to identify an injustice that would justify reconsideration by

10  arguing that it lacks standing to sue for infringement on its own behalf.  It conveniently ignores

11  this Court's June 14 Decision, which is unequivocal: "If Stephens Media wishes to assert claims

12  against Democratic Underground, it may do so separately."  June 14 Decision at *6.  The only

13  basis upon which Stephens Media is even arguably disabled from litigating its own copyright is

14  its own contention that it retroactively transferred those rights *after* this Court found that it could

15  sue on them.  By this rationale, anyone that does not want to be a party to a lawsuit over one of its

16  assets may simply transfer its rights to an affiliate, and thereby avoid the forum in which it was

17  sued, avoid discovery, and avoid being bound by the merits of the decision.  Stephens Media cites

18  no principle that allows that result—and none exists.

19      Moreover, manifest injustice is a high bar, and it cannot be reached by rewriting the facts

20  post-decision to create the purported injustice.  Indeed, even if it had not expressly affirmed

21  Stephens Media's ability to sue, the June 14 Decision would not have been manifestly unjust.

22  Reflecting the exceptional nature of the standard, the Ninth Circuit found no manifest injustice

23  (and overturned a grant of reconsideration) where a criminal defendant's confession was

24  suppressed based in part on subsequently impeached testimony.  *United States v. Alexander*, 106

25  F.3d 874, 878 (9th Cir. 1997).  Likewise, the Ninth Circuit affirmed a denial of reconsideration

26  despite a district court's questionable decision to prohibit disclosure of evidence in a habeas

27  petition.  *McDowell v. Calderon*, 197 F.3d 1253, 1255-56 (9th Cir. 1999) (finding no clear error).

28  Stephens Media's brief presents no cases in which reconsideration was even sought, much less

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    granted, on the basis of manifest injustice.  *See generally* Motion for Reconsideration.  It

2    references one case in which a defendant in a negligence action alleged the related principle of

3    "clear error" by the district court, *Frasure*, 256 F. Supp. 2d at 1180, but that holding weighs

4    against its motion as the court found no clear error and denied reconsideration.

5           Further, Stephens Media had (and has) numerous ready solutions to its self-inflicted

6    quandary.  It could have accepted this Court's June 14 Decision, as well as the *Hoehn* judgment's

7    conclusion that the Clarification was ineffective to transfer ownership, and sued in its own name

8    as this Court authorized.  It could have foregone the Restated Amendment, instead of executing

9    that document in an attempt to divest itself of ownership.  It could now, with one more stroke of a

10   pen, amend its relationship with Righthaven to rescind that Restated Amendment, just as it has

11   repeatedly done before.  Finally, Stephens Media remains free at any time to moot the "case or

12   controversy" question by simply providing an unequivocal covenant not to sue, as Democratic

13   Underground has explained in its earlier briefing.  *See* Dkt. 108 at 4-5.

14          Stephens Media's assertion that it cannot bring suit against Democratic Underground, a

15   belief to which it clings in the face of assurances to the contrary and based on its own post-

16   decision recharacterization of the SAA, is not an injustice, let alone a manifest injustice requiring

17   this Court to reconsider its June 14 Decision.

18          **C.      Stephens Media May Not Reargue the Issues that It Lost.**

19          Stephens Media's motion for reconsideration also improperly rehashes arguments it

20   already made and lost.  *See Martinez*, 2011 WL 9302, at *2 (holding that a "motion for

21   reconsideration is not an avenue to relitigate the same issues and arguments upon which the court

22   already has ruled").  The Motion repeats the earlier filings in which Righthaven (joined by

23   Stephens Media) submitted the Clarification and argued its significance pending the Court's June

24   14 Decision.  Dkt. 126 at 4.[5]

25          Stephens Media has argued throughout its briefs, as it argues again here, that it is not the

---

[5]  Stephens Media does not offer any arguments as to the significance of the Restated Amendment, merely stating
that it "wishes to make the Court aware of the Amended and Restated Amendment so that it has the most current
information regarding the contractual relationship between the parties." Dkt. 126 at 2:26-28.  While this Court could
construe this to mean that Stephens Media has abandoned the arguments made about the defunct Clarification, to the
extent these arguments are meant to apply to the Restated Amendment, they remain impermissible.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

real party in interest; this Court disagreed, as has every other court to consider the issue.  *See, e.g,. Hoehn*, 2011 WL 2441020, *DiBiase*, 2011 WL 2473531, and *Mostofi*, 2011 WL 2746315. For example, Righthaven's Response to Democratic Underground's Supplemental Memorandum (Dkt. 100), which Stephens Media joined, argued that the SAA's "right of reversion provision [does not] have any impact on Righthaven's present standing to sue for past infringement."  Dkt. No. 100 at 7:7-8.  Stephens Media makes the same argument in its present Motion, contending that rights of reversion do not alter the effect of the transfer. Dkt. 126 at 11.  Similarly, the same Supplemental Memorandum Response asserted, based on the Clarification, that Stephens Media is a non-exclusive licensee of Righthaven and therefore does not have standing to sue for infringement.  Dkt. 100 at 9.  In its Motion, Stephens Media again contends that it is merely a non-exclusive licensee lacking standing under the Clarification.  Dkt. 126 at 7, 8, 10.  In addition, both briefs exhaustively pursue the argument that Stephens Media's assignment to Righthaven comports with *Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881 (9th Cir. 2005).  *See, e.g.*, Dkt. 100 at 2, 4-6, 8-10; Dkt. 126 at 4, 7-8, 10, 12-13.  Stephens Media essentially uses its motion for reconsideration to remake arguments already included in its earlier briefing, which it may not do.

Stephens Media cannot demonstrate any valid basis for this Court to revisit its June 14 Decision, much less the extraordinary circumstances required to justify reconsideration. The Court therefore should deny Stephens Media's Motion.

## II.   EVEN UNDER THE NEWLY MINTED RESTATED AMENDMENT, RIGHTHAVEN HAS NO BASIS TO INTERVENE.

As a prerequisite to intervention as a matter of right, an applicant under Federal Rule of Civil Procedure 24(a)(2) must make four showings: that "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (*quoting Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  The applicant bears the burden of showing that its intervention is warranted under this standard, and a failure on any element is fatal

1    to intervention.  *Id*. at 903-05.  Righthaven's motion fails to meet every prong of this test.

2        A.    **Righthaven's Request, Following Months of Litigation and its Dismissal, is**
              **Untimely.**

3

4        Timeliness under Rule 24 "is to be determined from all the circumstances.  And it is to be

5    determined by the court in the exercise of its sound discretion."  *NAACP v. New York*, 413 U.S.

6    345, 366 (1973) (upholding denial of motion to intervene).  In making this determination, the

7    Ninth Circuit generally considers three factors: (1) the stage of the proceeding at which an

8    applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of

9    the delay.  *See, e.g., Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.*,

10   309 F.3d 1113, 1119 (9th Cir. 2002).  Not surprisingly, where the court has already substantially

11   engaged in pretrial proceedings, as here, intervention is disfavored.  *League of United Latin Am.*

12   *Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) ("the fact that the district court has

13   substantively – and substantially – engaged the issues in this case weighs heavily against allowing

14   intervention").  Further, prejudice to the parties caused by the proposed intervenor's delay is

15   considered "the most import factor" for determining timeliness.  *Petrol Stops Northwest v.*

16   *Continental Oil Co.*, 647 F.2d 1005, 1010 (9th Cir. 1981) (affirming denial of intervention

17   request because late stage intervention by party would cause great prejudice to existing party).

18       Righthaven's offers a single sentence contending that its proposed intervention is timely

19   because "Righthaven filed this Application within days after the Court's Order dismissing it from

20   the case."  Dkt. 120 at 4.  What this argument forgets is (i) the ten months of litigation it pursued

21   under both the original SAA and Clarification before attempting to invent this new ground to

22   intervene, during which this litigation has gone through countless rounds of briefing and

23   discovery disputes, now totaling almost 140 docket entries; (ii) the prejudice to Democratic

24   Underground, which (like this Court), devoted substantial efforts to address the issues of standing

25   surrounding Righthaven's misguided copyright enforcement scheme[6]; and (iii) the reason for this

26   delay—Righthaven's sanctionable conduct in misrepresenting to the Court its lack of actual

27   ───────────────

[6] That prejudice includes that, before Righthaven moved to intervene, Magistrate Judge Foley heard, but then
dismissed as "moot" a major discovery motion aimed at Righthaven and Stephens Media's communications and
28   intentions in creating the SAA, due to this Court's June 14 Decision.  Dkt. 95.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    ownership.  Under the three factors governing timeliness, it is far too late to intervene.

2         **B.    Stephens Media Would Adequately Protect Any Interest Righthaven Might**
             **Claim.**
3

4         Where, as here, an applicant's interests are sufficiently represented by a party present in

5    the lawsuit, such as a party with a similar interest in ensuring the same outcome, adequate

6    representation is presumed and the would-be-intervenor must come forward with a "compelling

7    showing" to rebut it.  *See, e.g., Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)

8    (intervention not allowed where present parties shared the same ultimate objective); *Pest Comm.*

9    *v. Miller*, 648 F. Supp. 2d 1202 (D. Nev. 2009) (Hunt, J.) (same); Dkt. 120 at 9 (recognizing that

10   "compelling showing" is required where parties share common ultimate objective).  Thus, even

11   assuming, contrary to fact, that Righthaven had some copyright interest to protect in this lawsuit

12   (*see infra* Part II(C)), Stephens Media will stand in its shoes for the purpose of this litigation.

13        Indeed, Stephens Media is well-placed to defend Democratic Underground's

14   counterclaim.  Righthaven concedes that "Stephens Media has an interest in seeing that the

15   declaratory judgment claim is refuted."  Dkt. 120 at 9.  Moreover, Stephens Media itself also

16   owns 50% of Righthaven through its affiliate SI Content Monitor, which has invested heavily in

17   the enterprise.  Webb Decl. Ex. 1; Righthaven Operating Agreement ("RHOA," Dkt. 107-2) Ex.

18   18-1; SSA § 2 (providing that Righthaven must be owned by Stephens Media affiliate controlled

19   by the same entities that control Stephens Media).  Finally, Stephens Media is strongly

20   incentivized by the Copyright Act's attorneys' fees provisions to resist any finding of non-

21   infringement, lest Democratic Underground would be found to be a prevailing party entitled to an

22   award of its fees.  *See* 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

23        Righthaven nonetheless argues that Stephens Media would not adequately protect its

24   interest in this lawsuit under the theory that the Restated Amendment's labeling of Stephens

25   Media as a mere "non-exclusive licensee" might give rise to a new standing defense.  Dkt. 120

26   at 9.  This is a potential problem of Righthaven's making, based entirely on the Restated

27   Amendment it strategically designed, and about which it therefore can hardly complain.

28        In any event, even ignoring that this Court has held that Stephens Media *is* the real party

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

in interest and remains subject to the counterclaim, there is no basis to rebut a presumption of adequate representation.  Righthaven suggests that because Stephens Media has an *additional* defense (standing) that Righthaven does not have, it cannot adequately represent Righthaven's supposed interest in this case.  This is precisely *not* the rule.  An intervenor's interest will be found inadequately represented when the *intervenor* possesses additional defenses that could not be raised by the present parties, not the other way around.  *See e.g., Grutter v. Bollinger*, 188 F.3d 394, 401 (6th Cir. 1999) (finding intervenor's interest would not be adequately represented, and thus that intervention was proper, because *intervenor had additional defenses* that would likely not be raised by the present defendant).

The fallacy in Righthaven's position is patent when one considers the possible outcomes of Stephens Media's standing defense.  If, as this Court already held, Stephens Media is subject to the counterclaim, it has every incentive to defend on the merits.  If we assume the unlikely event that Stephens Media were successful in showing no case or controversy, what is the ultimate harm to Righthaven's asserted interest?  None.  There would be no adjudication on the merits on infringement and no prejudice whatsoever to Righthaven.

### C.    Righthaven Has No Protectable Interest in this Litigation.

To meet the requirement for intervention, an applicant must also demonstrate a "direct, non-contingent, substantial and legally protectable" interest.  *Dilks v. Aloha Airlines, Inc.*, 642 F.2d 1155, 1157 (9th Cir. 1981).  This means that the applicant must come forward with "(1) . . . an interest that is protected under some law, and (2) [demonstrate] a 'relationship' between its legally protected interest and the . . . claims."  *Donnelly*, 159 F.3d at 409.  Where an applicant's stated basis for intervention is the pursuit of legal claims, as here, a failure of those claims either on the merits or based on a lack of standing forecloses the possibility of any substantial interest.  *Perry*, 630 F.3d at 906 (in the permissive intervention context, while Article III standing is not necessarily required for intervention, where "the specific interest Movant's claim in the litigation would require them to have standing," a lack of standing bars intervention); *Frazier v. Austin Explosives Co.*, No. C-10-2, 2010 U.S. Dist. LEXIS 57625, at *15 (S.D. Tex. June 10, 2010) (lack of standing to pursue claims of patent infringement bars intervention in infringement suit);

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Fahmy v. Jay-Z*, 261 F.R.D. 180, 187 (C.D. Cal. 2009) (denying motion to intervene in

2    continuing litigation by Plaintiff in *Nafal v. Carter*, following its dismissal on standing grounds

3    under *Silvers* (540 F. Supp. 2d 1128 (C.D. Cal. 2007) in part because it amounted to an attempt to

4    relitigate the issue).[7]  Where no such interest exists, necessarily, there is no risk of impairment.

### 1.    Righthaven Is Barred from Arguing that it Has a Significant Interest in this Litigation by Collateral Estoppel.

7        As noted above, Righthaven's application to intervene is based on the idea that any

8    adjudication of non-infringement would impair its rights because it has purportedly become the

9    sole owner of the copyright at issue in this case.  Dkt. 134 at 1; Dkt. 120 at 4. Righthaven is

10   mistaken for several reasons.  The first is that Righthaven is barred by the doctrine of issue

11   preclusion from even arguing that it can cure its lack of standing by amendment.

12       The doctrine of issue preclusion—formerly known as collateral estoppel—bars a party

13   from relitigating issues actually and necessarily decided against them in previous cases.

14   *Clements*, 69 F.3d at 330; *see also United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984)

15   ("Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from

16   relitigating an issue the plaintiff has previously litigated unsuccessfully."); *Green v. Ancora-*

17   *Citronelle Corp.,* 577 F.2d 1380, 1383-1384 (9th Cir. 1978) (recognizing that non-party to

18   original action may rely on issue preclusion to bar relitigation of issues actually and necessarily

19   decided against a party).  This is true even where the defendant seeking to rely on the doctrine of

20   issue preclusion was not a party to the original action (*see Green,* 577 F.2d at 1383-1384), or if

21   Righthaven seeks to appeal all the judgments at issue.[8]  *See Tripati v. Henman*, 857 F.2d 1366,

22   1367 (9th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains all

23   of its res judicata consequences pending decision of the appeal . . . .  To deny preclusion in these

24   circumstances would lead to an absurd result:  Litigants would be able to refile identical cases

25   while appeals are pending, enmeshing their opponents and the court system in tangles

---

[7] As the Court will recall from the briefing on the effect of the Clarification on Righthaven's motion to dismiss, the court in *Nafal* found a lack of standing to pursue a copyright infringement action where the practical realities of the transaction showed that the purported assignee lacked any real ability to exploit the work.  *See* Dkt. 107.

[8] Righthaven has filed a notice of appeal in *Hoehn* and *DiBiase.  Hoehn*, Dkt. 33; *DiBiase,* Dkt. 81.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    of duplicative litigation.") (citations omitted).

2         Issue preclusion applies not merely to the precise issues litigated by a party, but also to

3    "all arguments and evidence that could be presented to resolve the issue." *See, e.g., Liberty Mut.*

4    *Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 762 (8th Cir. 2003).  While the courts will at times

5    allow "newly discovered" evidence to avoid the preclusive effect of a judgment in a subsequent

6    suit, this is only where it was not absent from the previous case by the party's own fault.  *Id*.

7    Here, as amply explained above, we are dealing not with "newly discovered" evidence, but with

8    *newly created* evidence, which cannot provide the basis to avoid the preclusive effect of these

9    previous judgments any more than they can justify reconsideration.

10        A final judgment is a conclusive determination of the issues.  Just as a party cannot

11   manufacture new evidence to avoid a final judgment under Rule 60 or seek a new trial under Rule

12   59, a party cannot use newly created evidence to avoid the preclusive effect of a previous

13   judgment in a new suit in that same context.  *See, e.g., FM Indus.*, 2008 WL 4722086, at *1.

14        Courts in this District have ruled on no less than five separate occasions that Righthaven

15   lacks standing to pursue actions based on purportedly assigned copyrights from Stephens Media,

16   regardless of any claimed amendments.  June 14 Decision at *4; *Hoehn,* 2011 WL 2441020, at

17   *6; *Mostofi*, 2011 WL 2746315 (same); *DiBiase*, 2011 WL 2473531, at *1 (dismissing for lack of

18   standing and incorporating the reasoning of both *Hoehn* and *Democratic Underground*);

19   *Righthaven LLC v. Barham*, 2011 WL 2473602, at *1 (D. Nev. June 22, 2011) (same).  These

20   cases have recognized that the clear intent of the parties was to vest Righthaven solely with the

21   right to sue, a result prohibited by *Silvers*.  *See* June 14 Decision at *3.  Three of these decisions

22   have since been reduced to judgment.  *Hoehn,* Dkt. 30; *DiBiase*, Dkt. 73; *Mostofi*, Dkt. 35.

23        Moreover, because the dismissals in *Hoehn*, *DiBiase* and *Mostofi* each found that

24   Righthaven did not own the copyrighted work at issue, they are final judgments on the merits.  As

25   Righthaven has conceded, the first element of copyright infringement is ownership of a copyright.

26   *See* RH Motion for Voluntary Dismissal (Dkt. No. 36) at 16 (the "law is venerable that to prove

27   copyright infringement, one must demonstrate . . . ownership of the allegedly infringed work.");

28   *see also Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Accordingly, Righthaven cannot avoid the preclusive effect of the adjudications of its lack of

2   ownership because the same lack of ownership precluded standing.  *See, e.g., Pannonia Farms,*

3   *Inc. v. Re/Max Int'l, Inc.*, 407 F. Supp. 2d. 41, 43 (D. D.C. 2005) (plaintiff collaterally estopped

4   from bringing copyright infringement claim by prior decision finding plaintiff lacked standing).

5   "[A]lthough both subject matter jurisdiction and standing (as well as other questions of

6   justiciability) act to limit the power of federal courts to entertain claims, that is, act to limit the

7   courts' 'jurisdiction' in the broadest sense of the term, the two must be treated distinctly."

8   *HyperQuest, Inc. v. N'Site Solutions, Inc*., 559 F. Supp. 2d 918, 920 (N.D. Ill. 2008), *aff'd* 632

9   F.3d 377 (7th Cir. 2011) (quoting *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 n.2 (2d Cir.

10   1993)).  Here, Righthaven's lack of standing is intertwined with the merits issue of ownership,

11   meaning that a dismissal on standing grounds is not a mere jurisdictional dismissal, but a

12   simultaneous dismissal on the merits.  *See id*. at 921 ("There is no question that the Order

13   dismissed HQ's action with prejudice—because HQ lacks standing, it cannot bring suit again.")

14   Indeed, courts routinely dismiss claims with prejudice when the plaintiff is found not to have

15   standing.  *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137 (9th Cir. 2008) (affirming

16   dismissal with prejudice for lack of standing); *Gerlinger v. Amazon.com Inc.,* 526 F.3d 1253 (9th

17   Cir. 2008) (same);  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding

18   when "[t]he question of jurisdiction and the merits of [the] action are intertwined," dismissal for

19   lack of subject matter jurisdiction is improper, and accordingly reviewing the district court's

20   order "not as a dismissal for lack of subject matter jurisdiction but rather as a grant of summary

21   judgment on the merits[.]"); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage*

22   *Leasehold & Easement in the Cloverly Subterranean*, 524 F.3d 1090, 1094 (9th Cir. 2008) ("such

23   an intertwining of jurisdiction and merits may occur when a party's right to recovery rests upon

24   the interpretation of a federal statute that provides both the basis for the court's subject matter

25   jurisdiction and the plaintiff's claim for relief."); *Lerner v. Fleet Bank*, 318 F.3d 113, 116-17 (2d

26   Cir.2003) (lack of standing did not divest court of jurisdiction over the action, because standing

27   was sufficiently intertwined with the merits of the claim, and affirming the district court's

28   granting of defendant's motion to dismiss plaintiffs' civil RICO claim with prejudice not for lack

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    of subject matter jurisdiction, but for failure to state a claim).

2          Righthaven cannot avoid the force of these judgments and their conclusions about the

3    collusive nature of its agency for Stephens Media by inventing new facts in the Restated

4    Amendment.  Nor, having had the front door slammed on its affirmative complaint, may

5    Righthaven try again through the back door of purported "intervention."   The Court's conclusion

6    that Righthaven was *not* intended to have ownership of any rights, and that Stephens was

7    intended to retain complete control, is not subject to relitigation.

8                    **2.      In any Event, the Restated Amendment Cannot Mask the True Role of
                             Righthaven as a Mere Agent for Stephens Media.**

9

10         Even if Righthaven were not barred from arguing the point, it is frankly absurd for

11   Righthaven to claim now that it has suddenly decided to comply with *Silvers* and function as

12   anything other an agent of Stephens Media with the sole purpose of pursing actions for copyright

13   infringement.  The truth is that under the Restated Amendment, as under the SAA and

14   Clarification, Righthaven is still merely Stephens Media's hired gun, with no independent rights

15   or standing to pursue infringement claims as required by *Silvers*.

16         For over a year and a half, Righthaven has operated as the agent of Stephens Media.  *See*

17   June 14 Decision at *7 (noting that Stephens directed Righthaven's efforts to sue).  In addition to

18   having to share 50% of all proceeds with Stephens Media, the remaining 50% flows into a

19   company (Righthaven) in which Stephens Media's affiliate (SI Content Monitor) owns 50% of

20   the company.  RHOA Ex. 18-1; SSA § 2 (providing that Righthaven must be owned by a

21   Stephens Media affiliate controlled by the same entities that control Stephens Media).

22   Righthaven was limited by the original SAA, then the Clarification, as well as by its own

23   Operating Agreement to bringing suits for infringement at Stephens Media's direction and under

24   Stephens Media's control.  *See* June 14 Decision at *6; *Hoehn*, 2011 WL 2441020, at *6; Dkt.

25   107 (analyzing Clarification).  The RHOA defines Righthaven's purpose as to obtain "a limited,

26   revocable assignment (with license-back) of copyrights from third Persons in order to enable the

27   Company to recover damages associated with Identified Infringements."  RHOA § 3.2(c).

28   Righthaven was never intended to exploit any purportedly assigned copyrights other than through

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    litigation.  The RHOA states that an assignor, like Stephens Media, not Righthaven, "would

2    ultimately enjoy the copyright registration upon revocation of the assignment."  *Id*. § 3.2(d).

3           Even the Restated Amendment acknowledges that it was created only because this Court

4    "held that the SAA and Amendment were insufficient to transfer sufficient copyright ownership

5    to Righthaven such that it had *standing to sue* for infringement."  Restated Amendment at 1

6    (emphasis added).  This third rewriting of the SAA, by its terms, was not motivated by a desire to

7    empower Righthaven to do anything other than sue; it was motivated by a desire to provide a

8    patina for a claim of adequacy under *Silvers*.  As Righthaven's own witness declared, the parties'

9    intent is to preserve the rights of "Stephens to continue to display or otherwise use the assigned

10   content through the grant of a license from Righthaven."  Hinueber Decl. (Dkt. 101) ¶ 6; *see also*

11   Gibson Decl. (Dkt. 102) ¶ 6.  In short, Stephens Media intends to maintain its ownership, as if the

12   SAA did not change a thing but the right to sue.

13          The Restated Amendment is just another attempt by contract to accomplish this illegal

14   objective.  Most tellingly, the fundamental premise of the Restated Amendment is one this Court

15   has already found to be false.  It recites that "the intent of the Parties in entering in the SAA and

16   Amendment was to convey all ownership rights in and to any identified Work to Righthaven."

17   Restated Amendment at 1; *see also id.* § 8 (incorporating recitals as substantive terms).  Yet this

18   Court found that "the plain language of the SAA conveys the intent to deprive Righthaven of any

19   right, save for the right to sue alleged infringers and profit from such lawsuits."  June 14 Decision

20   at *4.  Righthaven and Stephens Media cannot, by waving a pen when they choose, change their

21   past intentions to the opposite of what this Court adjudicated, let alone come into bona fide

22   compliance with *Silvers* by doing so.

23          Just as transparently, the Restated Amendment creates bizarre contradictions with its

24   predecessors.  These extend beyond the mutating grants of licenses back from Righthaven to

25   Stephens Media—a grant first labeled "exclusive," then "clarified" to be "non-exclusive" but with

26   Stephens Media retaining a veto over every subsequent license by Righthaven, and now, in the

27   Restated Amendment, purportedly erasing the veto.  Restated Amendment ¶ 7.2.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Indeed, the Restated Amendment shows that the now defunct Clarification was nothing

2   more than an attempt to dig out of the well created by Righthaven's original, and now sanctioned,

3   failure to disclose the SAA.  Take, for example, the Clarification's $1 per year licensing fee

4   payable by Stephens Media.  Righthaven and Stephens Media inserted this provision into the

5   Clarification, claiming it reflected the parties' intent all along.  *See e.g.,* Dkt. 100 at 5 (claiming

6   the Clarification's purpose was to "clarify and effectuate, to the extent not already accomplished,

7   what has at all times been the intent of the parties").  Righthaven did not explain why the parties'

8   supposed intent to have a license fee was overlooked in drafting the first version.  The likely

9   explanation: this new provision was a pretense, designed solely to gin up the subsequent

10  argument that Righthaven was the "beneficial owner," and therefore entitled to sue.  *See id*. at

11  10.[9]  Given that the provision has now disappeared from the Restated Amendment, and there is no

12  evidence any royalties were ever paid, it is difficult to see it as anything other than an attempt to

13  convince the Court to accept a fiction and then issue a decision premised on it.

14    Likewise, under the Clarification, the parties asserted that it "would cause Stephens Media

15  irreparable harm" if Righthaven exploited any of the "assigned" works by granting even one

16  license to which Stephens did not approve.  Clarification ¶ 7.2.  As Judge Pro summarized, under

17  the Clarification, "Stephens Media may obtain injunctive relief against Righthaven to prevent

18  such 'irreparable harm' and, pursuant to the Clarification, Righthaven has no right to oppose

19  Stephens Media's request for injunctive relief."  *Hoehn*, 2011 WL 2441020, at *6.  Righthaven's

20  entry into competing licenses could present a serious problem for Stephens Media's exploitation

21  (in secondary compilations like Lexis-Nexis, for example).  *See* part IV, *infra.* Stephens Media

22  was therefore quite concerned and required a right to reject every license.  But now Righthaven

23  wants this Court to believe that Stephens Media will exercise no sway over Righthaven's rights to

24  license to anyone and everyone—that Stephens Media would have no problem with such

25  "irreparable" harm.  This is so even though the Clarification had such a strong provision, and

26  even though, as this Court held, the original "SAA was anything but silent in making sure that

27

28  _____

[9] As Democratic Underground previously explained, this argument was specious. Dkt. 107 at 8, n.5.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Stephens Media retained complete control over the Work rather than actually effectuate the

2  necessary transfer of rights.  The entirety of the SAA is concerned with making sure that

3  Righthaven did not obtain any rights other than the right to sue." June 14 Decision at *5.  That

4  the parties to the SAA can so blithely recast their agreement—disregarding all the purported

5  economics—reconfirms this Court's recognition that the parties' goal has always been to try to

6  establish Righthaven's right to sue, and nothing more.

7         The Restated Amendment is also replete with internal contradictions.  Despite the

8  purported change in ownership of the copyright, Stephens Media may still maintain its funding

9  securitization.  Restated Amendment ¶ 9.3.  Apparently, Stephens Media has used its copyrights

10 as collateral for financing and needs this provision to avoid problems with lenders.  However, the

11 Restated Amendment's contractual fancy dancing cannot avoid the fundamental problem: "a

12 mortgage . . . or any other . . . hypothecation of a copyright" is a "transfer of copyright

13 ownership."  17 U.S.C. § 101.  This is something that a non-exclusive licensee cannot do, even

14 with the licensors' permission.

15        Several other provisions of the original SAA remain curiously unchanged.   Pursuant to

16 Section 9.4, Stephens Media still might settle an infringement action.  Section 10.2 still

17 contemplates that a "Recovery Instrument" might be in Stephens Media's name.  Section 11 still

18 acknowledges that Stephens Media may be liable for attorneys' fees for an infringement action.

19 The unchanged provisions, of course, reflect the truth underlying the transaction: that Stephens

20 Media is the true owner.

21        *Silvers* requires that the Court look beyond formal recitations to practical reality of the

22 relationship between the parties.  *See Nafal*, 540 F. Supp. 2d at 1144 (rejecting standing for a

23 "glorified non-exclusive licensee" noting that court's cannot "ignore[] reality" in the application

24 of *Silvers* nor accept "formalistic labels" attached by the parties).  No matter what Righthaven

25 and Stephens Media attempt to conjure up with this or any "amendment," it cannot change the

26 true fact, already determined by this Court, that Stephens Media is the real party in interest and

27 the only party with any actual ability to exploit the assigned works.  Righthaven's proffered

28 interest in this litigation fails and its application to intervene should be denied.

**3.     The Restated Amendment is Champertous, Against Public Policy, and Unenforceable.**

The Restated Amendment additionally cannot provide Righthaven any substantial protectable interest in this litigation because it constitutes illegal champerty and accordingly is a nullity.  *See* William Patry, 2 PATRY ON COPYRIGHT, § 5:136 at 5-293 (2009) (noting that in copyright litigation, "the successful assertion of [champerty] results in the voiding of the champertous agreement").

Nevada law recognizes that a champertous contract is void.[10] *Incline Energy, LLC v. Penna Group, LLC,* 2011 WL 1304710, at *4 n.2 (D. Nev. Apr. 1, 2011) ("in Nevada a champertous agreement is not only voidable, but void.") (citing *Schwartz v. Eliades*, 113 Nev. 586, 588 (Nev. 1997); *see also DiBiase,* Righthaven Response to Motion to Dismiss (Dkt. 55) at 17 (conceding "[t]he doctrine of champerty is recognized under Nevada law.").  Under Nevada law, "[t]o maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit."  *Lum* v. *Stinnett*, 87 Nev. 402, 408 (Nev. 1971) (citing *Gruber v. Baker*, 20 Nev. 453 (Nev. 1890)).  "A champertous agreement

---

[10] Last week, the Ninth Circuit issued its opinion in the appeal of *Del Webb Communities, Inc. v. Partington*, 2009 WL 3053709 (D. Nev. Sept. 18, 2009).  *See Del Webb Communities, Inc. v. Partington*, Case No. 10-15975 (9th Cir. July 20, 2011).  On the facts before it, the Ninth Circuit "reject[ed] the district court's reliance on Nevada's common law of champerty to create a tort cause of action for which Del Webb could obtain relief."  *Id.*  No champerty tort claim is at issue in this case; instead the question is whether the champertous agreement is void.  Pursuant to the Nevada cases cited herein, it is.

Righthaven's argument elsewhere (*Pahrump Life*, Dkt. 62) that champerty cannot provide a defense other than to a party to the champertous agreement overstates the holding of *Del Webb*, which did not involve such a defense and therefore could not and did not rewrite Nevada law on that issue.  The *Del Webb* Court noted that no Nevada Supreme Court decision had ever endorsed a tort remedy for champerty and refused to extend the law to do so.  In reaching its decision, the *Del Webb* Court found statements indicating that the Nevada Court did not favor broad extension of the champerty defense, including reasoning from *Prosky v. Clark* that "the great weight of authority is to the effect . . . that the rule rendering contracts void for champerty cannot be invoked except between the parties to the champertous agreement in cases in cases in which such contract is sought to be enforced."  *Del Webb*, Case No. 10-15975 at 9956, citing *Prosky v. Clark*, 109 P. 793, 794 (Nev. 1910).  This statement, describing the "weight of authority" rather than any holding in *Prosky*, was dicta in *Prosky* as well as *Del Webb*—but in it did logically imply to the Ninth Circuit that Nevada Supreme Court was unlikely to *expand* champerty to create an affirmative cause of action.

The *Del Webb* Court also noted that "two other Nevada Supreme Court cases suggest that champerty may have a somewhat broader application than *Prosky* indicates."  In particular, both *Gruber v. Baker*, 24 P. 858 (Nev. 1890), and a much later case, *Lum* v. *Stinnett*, 87 Nev. 402, 408 (Nev. 1971), affirmed champerty defenses that exculpated entities not parties to the champertous contract—in the former a defendant in a fraud action brought by an assignee, and in the latter a defendant of a claim maintained by an insurance carrier for the real party in interest.  The *Del Webb* court did not find that *Prosky's* dictum prevailed over these two Nevada Supreme Court holdings.  It found only that subsequent expressions of the Nevada Supreme Court had downplayed the significance of the champerty defenses in those two cases, so as to "make them poor support for expanding the doctrines" to create a tort claim.  Slip Op. at 10-11 and n. 10.  Thus, *Lum* and *Gruber* remain good law, and continue to support the vitality of champerty as a defense by non-parties to the contract, even if not as a tort claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   is one in which [i] a person without interest in another's litigation [ii] undertakes to carry on the

2   litigation at his own expense, in whole or in part, [iii] in consideration of receiving, in the event of

3   success, a part of the proceeds of the litigation." *Martin v. Morgan Drive Away, Inc*., 665 F.2d

4   598, 603 (5th Cir. 1982), *cert. dismissed*, 458 U.S. 1122 (1982) (quoted with approval by the

5   Nevada Supreme Court in *Schwartz*, 113 Nev. at 588).  In the copyright context a sham

6   assignment designed to hide the parties' true intent to transfer only the right to sue constitutes

7   champerty.  *See* PATRY ON COPYRIGHT, *supra* at § 5:136.

8          Now, as ever, under the Restated Amendment, Righthaven's conduct squarely fits this

9   definition.  Just as before, Righthaven began with no genuine interest in any alleged infringement

10  of the *Review-Journal* article—no one disputes this point.  Further, Righthaven has undertaken

11  Stephens Media's copyright litigation at its own expense.  *See* SAA ¶ 6 ("Righthaven shall be

12  responsible for all Costs incurred in an Infringement Action.") (unchanged by Restated

13  Amendment).  Again, this is undisputed.  Third, Righthaven has done so with the expectation of

14  receiving a part of the litigation proceeds in the event of success.  SAA ¶ 5 (providing Righthaven

15  a 50% split of the Recovery (less costs), unchanged by Restated Amendment).  Likewise,

16  undisputed.  As an unlawful and champertous agreement under Nevada law, Righthaven and

17  Stephens Media's Restated Amendment is void and cannot confer standing or any interest by

18  Righthaven in this litigation.

19         That the Restated Amendment now purports to convey an ownership interest in the

20  copyrights free of some of the restrictions of its predecessor drafts does not change the champerty

21  analysis.  The most recent amendment is merely the next instrument designed to accomplish the

22  champertous scheme.  As Righthaven admits, it executed this latest Restated Amendment in an

23  effort to empower Righthaven to sue because this Court rejected its standing before, and for no

24  other reason.  Restated Amendment at 1.  Executing a document designed to assist a champertous

25  scheme to appear to comply with *Silvers* makes it no less champertous, and no less illegal.

26  Indeed, if a champertous scheme could, once challenged, be immunized by mid-stream

27  reallocation of interests between the parties, the doctrine would be eviscerated:  the parties could

28  always reallocate ownership after the fact and accomplish thereby their illegal objective.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### 4.    The Restated Amendment Amounts to an Illegal Attempt to Practice Law Without a License.

Independently, as has been persuasively argued by Amicus Citizens against Litigation Abuse, Inc., Righthaven's entire business model and relationship with Stephens Media are also illegal as constituting the unauthorized practice of law.  *See generally* Dkt. 132.  Under the Restated Amendment, as with the previous SAA and Clarification, Righthaven remains, in essence, a law firm taking cases on a contingency fee basis, masquerading as a business.  *Id.* at 4-13.  Righthaven takes an "assignment" from Stephens Media in exchange for a 50% share in recovery.  That "assignment," solely for purposes of facilitating a lawsuit, is nothing but an illicit contingency fee agreement.  This exact arrangement has been repeatedly rejected by courts across the country as illegal; it cannot form the basis for standing here.[11]  *Id.*

This Court recognized this point in the recent order imposing Sanctions.  OSC Ruling at 14 ("In the Court's view, the arrangement between Righthaven and Stephens Media is nothing more nor less than a law firm, which incidentally, I don't think is licensed to practice law in this state, but a law firm with a contingent fee agreement masquerading as a company that's a party").  A law firm may not lawfully take cases from its clients to sue on them in its own name.  *See, e.g., Bay County Bar Ass'n. v. Finance Sys., Inc.*, 345 Mich. 434 (1956).  For a law firm to do so without even qualifying to practice in the state or Court is doubly illegal.[12]

In sum, Righthaven's relationship with Stephens Media is improper and cannot provide Righthaven with the right to intervene.  Moreover, given that Righthaven has no substantial protectable interest in this litigation, as a matter of common sense it is not possible for there to be any impairment of those interests.  Independently, for each of the reasons discussed above,

---

[11] Moreover, even in the collection context, raised elsewhere by Righthaven (*Righthaven LLC v. Pahrump Life*, No. 10-cv-10575,  Dkt. 62 at 9), courts recognize that where a party assigns the right to collect on a judgment to another while maintaining and interest in the recovery, they may be engaged in the unauthorized practice of law.  *In re Brooms*, 447 B.R. 258, 266  (9th Cir. BAP 2011) ("[i]f Jorgenson retained any interest in the Judgment or any recovery thereon, then Carter was engaging in the unauthorized practice of law by representing another party when he is not a licensed attorney").

[12] Democratic Underground also notes that under the Nevada Rules of Professional Conduct, a law firm may not share legal fees with a non-lawyer or have non-lawyer investors. Nev. R. Prof. Conduct 5.4. Righthaven is owned by Net Sortie Systems LLC (Steve Gibson's shell company) and SI Content Monitor LLC (an investment vehicle for members of the family of billionaire Warren Stephens who also own Stephens Media). RHOA Ex. 18-1; *see also* SAA § 2. Contrary to the Rules, the "Recovery" that Righthaven splits with Stephens Media includes attorneys' fees. *See* SAA, Schedule 1 – Definitions at 14.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Righthaven's request for intervention should be denied.

2   **III.   THE RESTATED AMENDMENT CANNOT PROVIDE RIGHTHAVEN A BASIS TO INTERVENE OR STEPHENS MEDIA A BASIS FOR RECONSIDERATION AS IT PERPETUATES A FRAUD ON THE COURT.**

4   Additionally, this Court should reject both the application for intervention and the motion

5   for reconsideration because the Restated Amendment furthers Righthaven and Stephens Media's

6   propagation of a fraud on the Court. "A 'fraud on the court' is 'an unconscionable plan or

7   scheme which is designed to improperly influence the court in its decision.'" *Phoceene Sous-*

8   *Marine S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 805 (9th Cir. 1982) (quoting *England v.*

9   *Doyle*, 281 F.2d 304, 309 (9th Cir. 1960)). In response to a fraud upon the court, "the courts have

10  inherent power to dismiss an action or enter a default judgment to ensure the orderly

11  administration of justice and the integrity of their orders." *Id*. at 806; *see also Wyle v. R.J.*

12  *Reynolds Indus., Inc*., 709 F.2d 585, 589 (9th Cir. 1983) ("courts have inherent power to dismiss

13  an action when a party has willfully deceived the court and engaged in conduct utterly

14  inconsistent with the orderly administration of justice.")

15  Democratic Underground does not make this accusation lightly, recognizing that fraud on

16  the court "embraces only that species of fraud which does or attempts to, defile the court itself, or

17  is a fraud perpetrated by officers of the court." *Appling v. State Farm Mut. Auto. Ins. Co*., 340

18  F.3d 769, 780 (9th Cir. 2003) (citing *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999)). A

19  party's failure to disclose information, or even a party's perjury, does not ordinarily constitute

20  fraud on the court. *Id*.   However, "when false evidence or testimony is provided under oath,

21  knowingly and with intent to deceive, a party commits a fraud on the court." *Garcia v. Berkshire*

22  *Life Ins. Co. of America*, 569 F. 3d 1174, 1181 (10th Cir. 2009) (distinguishing "deceptions [that]

23  concerned the issues in controversy, rather than an attempt to delay discovery or trial").

24  **A.   Righthaven Has Repeatedly Misrepresented the True Nature of its Relationship with Stephens Media to this Court and Attempted to Hide it from Litigants and the Court.**

26  Intentional misrepresentation is precisely what has happened here.  Sanctions Minute

27  Order (Dkt. 138) (holding that "Righthaven made intentional misrepresentations to the Court").

28  Righthaven has gone well beyond a simple failure to disclose Stephens Media's direct pecuniary

25

1   interest in this and its hundreds of other cases in this district or presenting "multiple inaccurate

2   and likely dishonest statements to the Court."  June 14 Decision at *9.  As this Court noted:

3   though one could "call it failure to disclose . . .  a stronger term is justified."   OSC Ruling at 17.

4          Led by Steven Gibson (Righthaven's CEO, counsel of record at the inception of this

5   action, and an officer of the court), Righthaven and Stephens Media cooked up a scheme to defile

6   the integrity of the Court by manufacturing a false "Assignment" form to present to litigants and

7   the courts.  Not only was it *designed* to mislead, it in fact *did* mislead "the district judges of this

8   district to believe that it was the true owner of the copyright in the relevant news articles."  June

9   14 Decision at *6.  As a result, the prior orders in this district finding standing based upon the

10   assignment alone "were tainted by Righthaven's failure to disclose the SAA and Stephens

11   Media's true interest."  *Id.* at *6; *see also* Dkt. 138 (holding that "there is a significant amount of

12   evidence that Righthaven made intentional misrepresentations to the Court and also engaged in a

13   concerted effort to hide Stephens Media's role in this litigation.").[13]

14          This Court has held that "the plain language of the SAA conveys the intent to deprive

15   Righthaven of any right, save for the right to sue alleged infringers and profit from such

16   lawsuits."  *Id.* at *4.  Moreover, and as explained above, due to the final judgments against

17   Righthaven on this very issue, Righthaven is precluded from arguing that either the original SAA

18   or the May 9 Amendment intended to assign the copyrights at issue.  *Clements*, 69 F.3d at 330

19   (collateral estoppel, now referred to as issue preclusion  bars "the re-litigation of any issue that

20   has been actually litigated and necessarily decided").

21          Accordingly, it is beyond cavil that, as of January 2010 when they entered the SAA, the

22   parties intended to convey only the right to sue, in contravention of *Silvers*.  Righthaven has

23   admitted, however, that it knew about the *Silvers* rule.  It claimed that "the manner in which the

24   [SAA] was drafted accounted for *Silvers* and any other relevant legal authorities."  Dkt. 78 at 6.

25

26

27

28

[13] Nevertheless, Righthaven continues to cite to these fraudulently obtained opinions.  *See e.g. Righthaven v. Newsblaze*, 11-cv-00720-RCJ, Righthaven Response to Motion to Dismiss (Dkt. 13) at 11-12  (filed July 19, 2011).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The SAA was an intentional effort to circumvent *Silvers'* clear mandate and sue despite it.[14]

2        Rather than argue for a change in the law, Righthaven instead made, as this Court

3    determined, a "concerted effort to hide Stephens Media's role in this litigation" using both a

4    "consistent, repeated failure to identify Stephens Media as having any interest in" the lawsuits,

5    and making representations that were "intentionally untrue."  OSC Ruling at 15-16.  The

6    "Copyright Assignment" speaks vaguely of unidentified "monetary commitments and

7    commitment to services provided" (Gibson Decl., Dkt. 102 Ex. 1) rather than disclosing that

8    Stephens Media got 50% of the proceeds.  Moreover, the "Copyright Assignment" characterized

9    itself as a transfer of "all copyrights requisite to have Righthaven recognized as the copyright

10    owner," obscuring what rights were transferred—which turned out to be only the right to sue.

11        As explained in Democratic Underground's Reply to Righthaven's Response to the OSC

12    re Sanctions, "[t]he purpose of this design is obvious.  In litigation, Righthaven could and did trot

13    out a copy of the one-page Assignment, assert a presumption of ownership based on its

14    fraudulently obtained copyright registration, and yet keep the true nature of the transaction

15    secret."  Dkt. 133 at 9; *see also* OSC Ruling at 15 (Righthaven "claimed that it had various

16    exclusive rights when it knew that the ability to exercise those rights were retained exclusively by

17    Stephens Media.  It constantly and consistently refused to produce the [SAA] agreement.")

18        More insidiously, Righthaven's design takes advantage of the economics of nuisance

19    litigation.  As this Court also recognized, "Righthaven and Stephens Media have attempted to

20    create a cottage industry of filing copyright claims, making large claims for damages and then

21    settling claims for pennies on the dollar." Dkt. 94 at 2; *see also Righthaven, LLC v. Hill*, 1:11-cv-

22    00211-JLK (Dkt. 16) at 2 (D. Colo. April 7, 2011) ("Plaintiff's wishes to the contrary, the courts

23    are not merely tools for encouraging and exacting settlements from Defendants cowed by the

24    potential costs of litigation and liability."); *Raylon, LLC v. EZ Tag Corp.*, 6:09-cv-00357-LED,

25

26    _____

27    [14] Righthaven and Stephens Media's Clarification did not change that result, and Righthaven's suggestion in its Motion to Intervene that the SAA and Clarification are in line with general intellectual property licensing practices is incorrect.  Dkt. 120 at 5-8.  This point was extensively argued in Democratic Underground's amicus brief in the *Pahrump* case in from of Judge Mahan (*Pahrump Life*, Dkt. 50), but suffice it to say, that none of the cases cited by Righthaven deal with a case where a party attempted to create rights in a copyright following multiple court judgments holding that they had none.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   (Dkt. 115) at 5 (E.D. Tex. Mar. 9, 2011) (lambasting "plaintiffs who file cases with extremely

2   weak infringement positions in order to settle for less than the cost of defense and have no

3   intention of taking the case to trial. Such a practice is an abuse of the judicial system and

4   threatens the integrity of and respect for the courts.")

5         Righthaven knew that, before anyone could get to the SAA and challenge its scheme, the

6   defendant would need to file a responsive pleading, hold a Rule 26 conference, exchange initial

7   disclosures, issue requests for the production of documents, negotiate a protective order, meet and

8   confer about Righthaven's refusal to provide documents, move to compel, win the motion to

9   compel and then move to dismiss.[15]  All the while, the defendants would need to fight against

10   Righthaven's efforts to "needlessly increase[] the costs of litigation."  Dkt. 138.  If *pro bono*

11   attorneys had not stepped in to defend some of these actions and uncover the SAA, Righthaven

12   may well have continued its unlawful scheme indefinitely.

13       **B.**    **The Restated Amendment Is Just the Next Step in this Fraud.**

14         The new revision to the SAA is nothing more than an attempt to further the fraud on this

15   Court.  While Stephens Media and Righthaven continue to behave as they always have, and the

16   true nature of their transaction is not substantively changed, they hope that they can keep

17   adjusting the language of the SAA until they find the magic words that turn *Silvers* into a dead

18   letter. No matter how many times they change the labels, the Court need not be deceived.

19         Moving beyond the parties' re-chosen words, it is patent that the Restated Amendment

20   does not reflect the truth about the actual ownership of the copyright.  For example, in 2002,

21   Stephens Media granted ProQuest the ████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████

24   ██████████████████████████████████

25   ██████████████████████████  That license also provides that ████████

26   ████████████████████████████████████

27   ─────────────────
  [15] For example, Defendant Tad DiBiase filed a fee motion in *Righthaven v. DiBiase* showing that the costs of such an endeavor were close to $120,000, even after a substantial discount.  *DiBiase*, 2:10-cv-01343, Motion for Attorneys

28   Fees (Dkt. 78).

Fᴇɴᴡɪᴄᴋ & Wᴇsᴛ LLP
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Sᴀɴ Fʀᴀɴᴄɪsᴄᴏ

1    ███████████████████ Thus, during the term of the ProQuest agreement, ████████████

2    ██████████████████████████████████████████████████████████████

3    ████████████████████████████—yet the Restated Agreement purports to do

4    exactly that. *See* 17 U.S.C. § 101 (defining an exclusive license as a transfer of ownership).

5         Similarly, Stephens Media's license with BurrellesLuce provides that ██████████

6    ███████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████████

8    █████████████████████████████████ Yet, Righthaven has

9    represented to the Court that it "has not engaged in the commercial exploitation of news articles"

10   and "has not derived revenue" from the news articles.[16] *Righthaven v. DiBiase*, Opposition to

11   Motion to Compel, Dkt. 68 at 5.

12        The *Las Vegas Review Journal* uses the ShareThis application on the page of each story it

13   publishes, including, to this day, the News Article at issue here.  Webb Decl. Ex. 6.  In its deal

14   with ShareThis, Stephens Media warranted that it "own[s] or otherwise control[s] *all* of the rights

15   to the" content that will be shared or accessed through the ShareThis Application.  Webb Decl.

16   Ex. 4. (SM000021) (emphasis added).  Moreover, Stephens Media purports to "grant a

17   worldwide, non-exclusive, assignable, fully paid up, and royalty free license" to ShareThis. *Id.*

18   (SM000018).  This representation is entirely inconsistent with its purported grant to Righthaven

19   of all exclusive rights in the News Article (that is still available through ShareThis).

20        Likewise, pursuant to Stephens Media's deal with Lexis-Nexis, ██████████████

21   ████████████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████████

23   This representation, too, is contrary to the purported grant to Righthaven of all exclusive rights,

24   which Lexis-Nexis would infringe by making the News Article available—as it does today.

25   Webb Decl. ¶ 5.

26

27   ───────────────

[16] Righthaven did assert an exception to this blanket statement – the short-lived $1/year licensing fee set forth in the
28   now defunct Amended SAA. As explained above, this license fee was a sham.

Fenwick & West LLP
Attorneys at Law
San Francisco

1    A non-exclusive licensee, as Stephens Media purports to be, has no right to sublicense,

2    absent an explicit provision.  *See Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984)

3    (under the 1909 Copyright Act); *Gardner v. Nike, Inc*., 279 F.3d 774, 781 (9th Cir. 2002)

4    (applying rule in *Harris* to 1976 Copyright Act); William Patry, PATRY ON COPYRIGHT § 5:127 at

5    5-263 (a nonexclusive licensee may not, "absent authorization, sublicense.")  The Restated

6    Amendment contains no provision allowing sublicensing. Nevertheless, the news article at issue

7    in this litigation remains available through ShareThis and on Lexis.  Webb Decl. ¶¶ 4, 5 and Ex 6.

8    Despite these (and other) licensing arrangements in which Stephens Media has been

9    participating since before January 2010, the Restated Amendment asks this court to recognize it

10   as a retroactive transfer of ownership.  Of course, neither Stephens Media nor Righthaven present

11   any evidence that Stephens Media has paid over any royalties it received retroactive to the date

12   Righthaven became the "owner," or that the licenses discussed above have been assigned or

13   otherwise transferred to Righthaven.  The reason is simple: Righthaven's new-found "ownership"

14   exists only on one piece of paper, fabricated solely for the purpose of presenting a new argument

15   to the court.  The truth is reflected in the original SAA and the Clarification, which protected

16   these license arrangements by preventing Righthaven from exploiting the *Las Vegas Review-*

17   *Journal* articles.

18   The Restated Amendment is nothing but a fraud and Righthaven and Stephens Media's

19   presentation of it to this Court are inexcusable.  It cannot support Righthaven's request for

20   intervention or Stephens Media's motion for reconsideration.

21                                  **<u>CONCLUSION</u>**

22   For the foregoing reasons, Counterclaimant Democratic Underground LLC respectfully

23   requests that this Court deny Righthaven's Motion to Intervene and Stephens Media's Motion for

24   Reconsideration.

25   Dated:    July 26, 2011              FENWICK & WEST LLP

26

27                                        By:/s/ Laurence F. Pulgram
                                          Laurence F. Pulgram
                                          Attorneys for Defendant and Counterclaimant
28                                        DEMOCRATIC UNDERGROUND, LLC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO