SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

DALE M. CENDALI, ESQ. (admitted *pro hac vice*)
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900

*Attorneys for Righthaven LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>Defendants.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>Counterclaimant,<br><br>v.<br><br>RIGHTHAVEN LLC, a Nevada limited-liability company; and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>Counterdefendants. | Case No.: 2:10-cv-01356-RLH-GWF<br><br>**RIGHTHAVEN LLC'S REPLY IN SUPPORT OF ITS APPLICATION TO INTERVENE AS OF RIGHT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)** |

1

# I. INTRODUCTION

Righthaven has sought to intervene as a matter of right in this action based on its ownership of the copyrighted work (the "Work") at issue, which was assigned to it, along with the right to sue for past, present and future infringements of the Work (the "Assignment"). As noted in its Application, Righthaven does not seek to challenge the Court's June 14, 2011 standing decision, which was limited to the Assignment and the Strategic Alliance Agreement (the "SAA") prior to being amended on May 9, 2011 (the "Amendment"). (Doc. # 116 at 7-8 n.1.)

Rather, Righthaven seeks to intervene based on its ownership of the Work in view of the Amendment and in further view of the more recent Restated and Amended Strategic License Agreement (the "Restated and Amended SAA"). It is black-letter law that a non-exclusive licensee lacks standing to sue for infringement. *See* 17 U.S.C. § 101; *Silvers v. Sony Pictures Entm't, Inc.*, 402 F. 3d 881, 898 n. 7 (9th Cir. 2005) ("*Silvers*"). Stephens Media LLC ("Stephens Media") is a non-exclusive licensee under the amended SAA. Righthaven is therefore the only party with the ability to sue for infringement of the Work.

In response, Democratic Underground, LLC ("Democratic Underground") has asserted numerous arguments, such as collateral estoppel, fraud upon the Court and champerty, in urging denial of Righthaven's Application. (Doc. # 140.) Ironically for a party seeking to invoke the doctrine of collateral estoppel, Democratic Underground had these exact same arguments rejected by the court in *Righthaven LLC v. Pahrump Life, et al.*, Case No. 2:10-cv-01575-JCM-PAL (Mahan, J.) ("*Pahrump Life*") (Doc. # 63). In dismissing Righthaven's claims without prejudice in view of the original SAA for lack of standing, the refused to apply collateral estoppel or adopt Democratic Underground's champerty and fraud-based arguments. (*Pahrump Life*, Doc. # 63.) Nevertheless, Democratic Underground is apparently perfectly content with trotting out its previously rejected arguments under the hope of garnering a different result from this Court.

As argued in this submission and in its prior submission, Righthaven's ownership of the Work is demonstrated through the Assignment in view of the amended SAA. Once this

conclusion is reached, and which would not be inconsistent with the Court's June 14, 2011 decision given the nature of its standing analysis based on the jurisdictional facts as of the filing of the Complaint, Righthaven's Application should be granted.

## II. ARGUMENT

As the below arguments will demonstrate, Democratic Underground's response to Righthaven's Application does not alter the result that leave to intervene as a matter of right should be granted. This conclusion is warranted because Righthaven is the current owner of the Work, and the only party vested with standing to sue for infringement, based on the amended SAA, which was not fully considered by the Court in its June 14th Order. (Doc. # 116 at 8 n.1.)

In this regard, it is quite telling that Democratic Underground does not substantively challenge the rights granted under the Restated and Amended SAA or that the amended SAA fails to address the concerns expressed by prior decisions in this District. Rather, Democratic Underground is apparently content with relying upon prior arguments that were found to lack merit recently in the *Pahrump Life* case. (*Pahrump Life,* Doc. # 63.) The Court should likewise reject Democratic Underground's arguments and grant Righthaven's Application.

### A. Contrary to Democratic Underground's Contention, Righthaven's Application is Timely.

Democratic Underground argues that Righthaven's Application is untimely. (Doc. # 140 at 12.) In support of its position, Democratic Underground argues: (1) that ten months and substantial litigation has occurred before the Application was filed; (2) Democratic Underground would be prejudiced because it has devoted substantial efforts to addressing the issue of standing; and (3) the reason for delay is due to Righthaven's fault for failing to have true ownership of the Work sued upon. (*Id.*) Democratic Underground's arguments are unpersuasive and should be rejected.

To begin with, Righthaven unquestionably sought to intervene shortly after the Court's June 14, 2011 decision. In doing so, Righthaven clearly acted diligently once it received notice of the Court's decision and appreciated the standing analysis employed in view of its current ownership rights under the amended SAA. *See R & G Mortg. Corp. v. Federal Home Loan*

conclusion is reached, and which would not be inconsistent with the Court's June 14, 2011 decision given the nature of its standing analysis based on the jurisdictional facts as of the filing of the Complaint, Righthaven's Application should be granted.

## II. ARGUMENT

As the below arguments will demonstrate, Democratic Underground's response to Righthaven's Application does not alter the result that leave to intervene as a matter of right should be granted. This conclusion is warranted because Righthaven is the current owner of the Work, and the only party vested with standing to sue for infringement, based on the amended SAA, which was not fully considered by the Court in its June 14th Order. (Doc. # 116 at 8 n.1.)

In this regard, it is quite telling that Democratic Underground does not substantively challenge the rights granted under the Restated and Amended SAA or that the amended SAA fails to address the concerns expressed by prior decisions in this District. Rather, Democratic Underground is apparently content with relying upon prior arguments that were found to lack merit recently in the *Pahrump Life* case. (*Pahrump Life,* Doc. # 63.) The Court should likewise reject Democratic Underground's arguments and grant Righthaven's Application.

### A. Contrary to Democratic Underground's Contention, Righthaven's Application is Timely.

Democratic Underground argues that Righthaven's Application is untimely. (Doc. # 140 at 12.) In support of its position, Democratic Underground argues: (1) that ten months and substantial litigation has occurred before the Application was filed; (2) Democratic Underground would be prejudiced because it has devoted substantial efforts to addressing the issue of standing; and (3) the reason for delay is due to Righthaven's fault for failing to have true ownership of the Work sued upon. (*Id.*) Democratic Underground's arguments are unpersuasive and should be rejected.

To begin with, Righthaven unquestionably sought to intervene shortly after the Court's June 14, 2011 decision. In doing so, Righthaven clearly acted diligently once it received notice of the Court's decision and appreciated the standing analysis employed in view of its current ownership rights under the amended SAA. *See R & G Mortg. Corp. v. Federal Home Loan*

*Mortg. Corp.,* 584 F.3d 1, 8 (1st Cir. 2009) ("[T]he timeliness inquiry centers on how diligently the putative intervenor has acted once he has received actual or constructive notice of the impending threat."). Democratic Underground attempts to improperly construe the length of time encompassed while Righthaven was a party to this action as being material to the Court's timeliness inquiry. Democratic Underground is wrong. Righthaven could not have sought to intervene as a matter of right while it was the Plaintiff in this action. It could only have sought to intervene once it was dismissed as a party to this case and it did so promptly upon this occurring. Even if Democratic Underground's logic were adopted, the mere lapse of time does not render an application untimely. *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984).

While Democratic Underground asserts that granting the Application cause it to suffer prejudice given the "substantial efforts to address the issues of standing . . ." devoted by it in this case. (Doc. # 140 at 12:23-25.) In evaluating the prejudice to an existing party for purpose of deciding whether an application to intervene is timely, the court should not consider "whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *Smith v. Marsh,* 194 F.3d 1045, 1051 (9th Cir. 1999); *see also Edwards v. City of Houston,* 78 F.3d 983, 1002 (5th Cir. 1996); *United States v. Union Elec. Co.,* 64 F.3d 1152, 1159 (8th Cir. 1995). If Democratic Underground's claimed prejudice were grounds to deny the Application, intervention would never be allowed because doing so inevitably prolongs the litigation. *See id.*

In reality, Democratic Underground would suffer absolutely no prejudice if the Application were granted. It apparently intends to litigate its non-infringement counterclaim against Stephens Media. If Righthaven were to re-enter this case, Democratic Underground would be placed in the same position as it was in until the Court's June 14th Order. It has propounded written discovery on both Righthaven and Stephens Media. It has received responses to these discovery requests from Righthaven and from Stephens Media. There is no claim that evidence has been lost over time. Its non-infringement claim raises the same issues that would be raised by Righthaven's complaint in intervention. In sum, it is not like Righthaven is some unknown third party seeking to enter the fray at the last minute. Righthaven's

Application merely seeks to re-establish its position as a party in this dispute based upon its ownership rights to the Work based on the amended SAA.

Democratic Underground's final argument in support of deeming Righthaven's Application untimely asserts that Righthaven's misrepresentations are the alleged reason for the delay in it seeking to intervene. (Doc. # 140 at 12-13.) Democratic Underground provides absolutely no supporting authority that a party's alleged culpability is germane to the Court's timeliness inquiry. Rather, Democratic Underground has simply sought to inject this as part of the inquiry as a means for additional mudslinging. As stated, Righthaven promptly moved to intervene upon its dismissal for lack of standing. Since there was no delay, material or otherwise, in seeking to intervene there are no meaningful grounds to find the Application untimely.

### B. Righthaven Has a Significantly Protectable Interest in The Work.

Righthaven's Application demonstrates that it has a significantly protectable interest as the current owner of the Work based on the amended SAA, thereby satisfying the second intervention as of right requirement under Rule 24(a)(2). Democratic Underground, however, argues that Righthaven does not have such an interest. In attempting to advance this argument, Democratic Underground claims that Righthaven is barred by collateral estoppel from claiming ownership of the Work, that the amended SAA is champertous and unenforceable, and that the SAA constitutes the unauthorized practice of law. (Doc. # 140 at 15-18.) Judge Mahan rejected these very same arguments made by Democratic Underground in the *Pahrump Life* case. This Court should do the same and find that Righthaven has demonstrated significantly protectable interest in support of its Application.

#### *1. Righthaven is not barred by arguing that it has a significantly protectable interest through its ownership of the Work.*

Democratic Underground asserts that Righthaven is barred by the doctrine of collateral estoppel (also known as issue preclusion) from arguing that it has a significantly protectable interest through its ownership of the Work. (Doc. # 140 at 15-18.) As it did in connection with the *Pahrump Life* order to show cause hearing, Democratic Underground has incorrectly applied

the elements of collateral estoppel in order to secure the result it desires.  A dismissal for lack of subject matter jurisdiction, which all of the prior decisions relied upon by Democratic Underground have found, does not constitute an adjudication on the merits as is required for application of collateral estoppel.  In fact, Judge Mahan expressly rejected Democratic Underground's collateral estoppel argument in the *Pahrump Life* case by expressly dismissing Righthaven's claims without prejudice for lack of standing.  (*Pahrump Life,* Doc. # 63.)

A prior federal court decision has preclusive effect where (1) the issue necessarily decided at the previous proceeding is ***identical*** to the one which is sought to be relitigated; (2) the first proceeding ended with a ***final judgment on the merits***; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party a the first proceeding."  *Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir. 2005) (emphasis added) (citing *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir. 2000)); *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001); *W. Radio Servs. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997).

Democratic Underground's flawed issue preclusion analysis can be quickly dispensed of because a dismissal for lack of standing is not a decision on the merits.  *See Stalley v. Orlando Reg. Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Torres-Negron v. J & N Records, LLC,* 504 F.3d 151, 164-65 (1st Cir. 2007) (entry of judgment for lack of subject matter jurisdiction failed to constitute a decision on the merits of copyright infringement allegations); *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1188 (11th Cir. 2003) (stating that a dismissal for lack of subject matter jurisdiction "plainly is not an adjudication on the merits that would give rise to a viable res judicata defense"); *Wages v. IRS,* 915 F.2d 1230, 1234 (9th Cir. 1990) ("A jurisdictional dismissal is not a judgment on the merits."); *GHK Exploration Co. v. Tenneco Oil Co.,* 857 F.2d 1388, 1392 (10th Cir. 1988) ("[A] court-ordered dismissal for lack of subject matter jurisdiction is also not a decision on the merits ...."); *Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030, 1035 (9th Cir. 1985) (holding that a dismissal for lack of subject matter jurisdiction divests the court of the power to make judgments relating to the merits

of the case); *see also* FED. R. CIV. P. 41(b) (involuntary dismissal for lack of jurisdiction is not an adjudication on the merits). Indeed, each of the Righthaven decisions relied upon by Democratic Underground involve a dismissal ***without prejudice pursuant to the express language of Federal Rule of Civil Procedure 41(d), which compels such a conclusion unless the dismissal order states otherwise***. (*See Hoehn,* Docs. # 28 at 7-10, 30; *Mostofi,* Docs. # 34 at 4-8, 35; *DiBiase,* Docs. # 72 at 2, 73.) Moreover, the Court's decision in this case is not a final judgment because it is an interlocutory order. (Doc. # 116 at 11.)

Even assuming the prior decisions in this District did have preclusive effect (which they do not), **none** were based upon the Restated and Amended SAA. In fact, the decisions in *DiBiase, Barham, Mostofi,* along with the decision by this Court, were decided under the unamended SAA. Only the decision in *Hoehn* considered, on a potentially advisory basis, the effect of the Amendment on standing. Therefore, there is an absence of identical issues required to properly apply issue preclusion under controlling Ninth Circuit precedent. *See Kourtis,* 419 F.3d at 994. For at least these reasons, Democratic Underground's collateral estoppel argument fails.

### 3. The Restated and Amended SAA is not champertous, unenforceable or otherwise against public policy.

Democratic Underground next asserts that the Restated and Amended SAA is champertous, unenforceable or otherwise against public policy. (Doc. # 140 at 22-23.) Democratic Underground raised this exact same argument before Judge Mahan in the *Pahrump Life* case and it was rejected. Nevertheless, Democratic Underground has elected to raise it again in hopes of obtaining a different result. As Judge Mahan did, this Court should also reject Democratic Underground's champerty argument.

Putting aside its irrelevance to the issue of standing, Democratic Underground has incorrectly applied the law of champerty—a centuries-old doctrine with limited application – in order to advance its argument that the Restated and Amended SAA is champertous, unenforceable and against public policy. *Prosky v. Clark*, 109 P. 793, 794 (Nev. 1910) ("The reason for the enactment of the English statutes of champerty and maintenance having very

largely ceased to exist, the extent to which the doctrine is applied varies greatly in different states. Some states, for example California, have refused to recognize it at all.").

Under Nevada law, champerty is a contract defense that "cannot be invoked except between the parties to the champertous agreement in cases where such contract is sought to be enforced." *Del Webb Communities, Inc. v. Partington*, 2011 WL 2854086, at *7 (9th Cir. 2011) (citing *Prosky,* 109 P. at 794). Democratic Underground cannot challenge the Restated and Amended SAA as champertous because it was not a party to the agreement—a threshold requirement that it completely ignores. While this, in and of itself, is fatal to Democratic Underground's argument, it should also be noted that even if it could assert champerty, there is no substantive basis to conclude the contractual agreement between Righthaven and Stephens Media is champertous. As stated by the Nevada Supreme Court, an agreement cannot be champertous if the plaintiff has an interest in the litigation:

> Where a person promoting the suit of another has any interest whatever, legal or equitable, in the thing demanded, . . . he is in effect also a suitor according to the nature and extent of his interest. *McIntosh v. Harbour Club Villas Condominium*, 421 So.2d 10, 11 (Fla. Dist. Ct. App. 1982).

*Schwartz v. Eliades,* 939 P.2d 1034, 1036 (Nev. 1997). Moreover, as the U.S. Supreme Court has held, an assignee of an accrued cause of action has standing to bring suit in his or her own name even if there is a promise to remit a portion of any proceeds recovered to the assignor. *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 275 (2008).

Under the Restated and Amended SAA, Righthaven has ownership of all works assigned to it by Stephens Media, along with the right to sue for all past, present and future infringements. As such, it is beyond dispute that Righthaven has an interest in the works upon which its copyright infringement claims are based. This precludes a finding that the Restated and Amended SAA is champertous under Nevada law. *See Schwartz,* 939 P.2d at 1036. Moreover, the fact that Righthaven has agreed to share the proceeds of any recovery for infringement of a work assigned by Stephens Media is not improper. *See Sprint Communications Co., L.P.,* 554 U.S. at 275.

### 3. The Restated and Amended SAA does not constitute the unauthorized practice of law.

Democratic Underground next asserts that the Restated Amendment constitutes an illegal attempt to practice law without a license. (Doc. # 140 at 24-25.) Despite this Court remarks at the recent order to show cause hearing, Righthaven maitains that it is not engaged in the unauthorized practice of law. In fact, this exact same argument was recently rejected by Judge Mahan in the *Pahrump Life* case as demonstrated by his decision to dismiss the case without prejduice for lack of standing.

Righthaven is not a law firm. While it has in-house counsel, all cases in this District are currently handled exclusively by outside counsel licensed to practice in this jurisdiction or with permission to do so from the Court on a *pro hac vice* basis. The fact that Righthaven and Stephens Media may share the proceeds of any recovery related to copyright litigation based on assigned works is neither unlawful nor does it constitute "an illicit contingency fee agreement" as asserted by Amici (Doc. # 58 at 19:4-5). *See Sprint Communications Co., L.P.,* 554 U.S. at 289 ("Petitioners . . . say [] the assignments in this litigation constitute nothing more than a contract for legal services. We think this argument is overstated. There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer (on the lawyer's promise to remit litigation proceeds). The latter confers a property right (which creditors might attach); the former does not."); *see also In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011) ("And for collection purposes, the assignee who holds legal title to the debt according to substantive law is the real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action.")

Democratic Underground cites *Bay County Bar Ass'n v. Finance Sys., Inc.,* 345 Mich. 434 (1956) for the proposition that a law firm cannot sue on clients' cases in its own name. This case is inapposite. As noted, Righthaven is not a law firm. Moreover, under the Restated and Amended SAA, Righthaven has been validly conveyed ownership in the assigned works, along with the right to sue for past, present and future infringements.

While Democratic Underground wishes to characterize the structure of this transaction as analogous to a law firm bringing a client's suit in the firm's own name, this is simply not the case. Ownership of the works is transferred to Righthaven along with right to sue for infringement. Stephens Media's receipt of a non-exclusive license to exploit the works does not alter this conclusion. In fact, given the Stephens Media's non-exclusive license, Righthaven is the only party with standing to sue for copyright infringement. *See Davis,* 505 F.3d at 101 ("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc.,* 74 F.3d at 775 ("[A] person holding a nonexclusive license has no standing to sue for copyright infringement."); *Eden Toys, Inc.,* 697 F.2d at 32 ("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."). Accordingly, there is no justifiable basis to adopt Democratic Underground's claim the Restated and Amended SAA constitutes the unauthorized practice of law or to invoke the overreaching relief of barring Righthaven from relying on the amended version of the SAA or any other subsequent amendment of the SAA in any litigation commenced by the company.

### C. Righthaven's Interests Are Not Adequately Protected Through Stephens Media's Defense of Democratic Underground's Counterclaim.

Democratic Underground further contends that Righthaven's Application should be denied because its interests are adequately protected through Stephens Media's Counterclaim defense. (Doc. # 140 at 13-14.) Democratic Underground's argument is unpersuasive.

Righthaven is only required to make a minimal showing of inadequacy of representation to justify intervention as a matter of right. *See Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003); *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983). Once it is determined that Righthaven has a significantly protectable interest through its ownership of the Work, and that Stephens Media is the holder of a non-exclusive license, it clearly follows that Stephens Media would inadequately represent Righthaven's interests in defending Democratic Underground's Counterclaim and by being unable to assert an affirmative infringement claim.

Simply put, Democratic Underground seeks to litigate its non-infringement claim against Stephens Media because it does not face the threat of an affirmative infringement claim against that Righthaven would assert through its complaint in intervention.

Stephen Media's current status as a non-exclusive licensee bars it from bringing an affirmative copyright infringement claim against Democratic Underground. *See Davis v. Blige,* 505 F.3d 90, 101 (2d Cir. 2007)("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)("[A] person holding a nonexclusive license has no standing to sue for copyright infringement."); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir. 1982)("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.").Righthaven, as owner of the Work, is permitted to bring such a claim as set forth in its proposed complaint in intervention. *See Silvers*, 402 F.3d at 884; *Eden Toys, Inc.,* 697 F.2d at 32; 17 U.S.C. § 101. Denying the Application to intervene as of right would therefore preclude an infringement claim from being asserted against Democratic Underground, which Righthaven's proposed complaint in intervention would assert.

Democratic Underground argues that if Stephens Media's is not the real party in interest based on its standing as non-exclusive licensee is improper, then it will be able to obtain a dismissal without prejudice or otherwise prevail in defense of the Counterclaim.  (Doc. # 140 at 13-14.)  While it is true that Stephens Media would have an incentive to vigorously assert such an argument, Democratic Underground's argument ignores that denying Righthaven's Application permits it to seek a potentially preclusive adjudication on the merits that can be used against Righthaven without its participation and without the risk of facing an affirmative infringement claim.  In essence, Democratic Underground is placed in the enviable procedural posture of having a tremendous amount to gain with little risk if Righthaven's Application were denied.  Democratic Underground's procedural windfall aside, the clear fact remains that Stephens Media cannot assert an affirmative infringement claim, while Righthaven can do so.

Accordingly, Stephens Media cannot adequately protect Righthaven's ownership interest in the Work.  This necessary conclusion supports granting Righthaven's Application.

### D.  The Restated and Amended SAA Does Not Constitute a Fraud Upon The Court.

Democratic Underground next accuses Righthaven of defrauding the Court because it and Stephens Media chose to amend their agreement to comply with the court's ruling in *Hoehn*.  Democratic Underground made this identical argument in the *Pahrump Life* case and Judge Mahan rejected it.  Nevertheless, Democratic Underground trots this same argument out in the hopes of securing a different result in this case, which it should not.

As with its argument in *Pahrump Life*, Democratic Underground makes this serious accusation with absolutely no basis.  As the Ninth Circuit has held, the power of a Court to find that a party has committed fraud on the court "is narrowly construed, applying only to fraud that defiles the court or is perpetrated by officers of the court." *U.S. v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011) (citing *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (describing fraud on the court as "fraud perpetrated by officers of the court that prevents the judicial machinery from performing its impartial task of adjudging cases that are presented for adjudication.")).

Here, Righthaven and Stephens Media revised their agreement in order to comply with the court's decision regarding standing in *Hoehn*.  Not only did Righthaven promptly inform Democratic Underground and all parties in the *Pahrump Life* case of the existence of the Restated and Amended SAA just after it was executed, Righthaven also promptly informed the Court and disclosed the agreement.  In both this case and in *Pahrump Life*, Righthaven affirmatively sought a stipulation giving all parties the opportunity to address standing under this agreement.  Righthaven respectfully submits that its actions were consistent with providing this Court with the information it needs to adjudicate its standing under the Restated and Amended SAA.  Democratic Underground's attempt to use the Court's prior determination concerning Righthaven's failure to disclose Stephens Media as an interested party under the local rules has nothing to do with its standing to sue under the Restated and Amended SAA.

Democratic Underground has failed to cite a single case that prohibits private parties, such as Righthaven and Stephens Media, from amending their contractual agreements to effectuate the parties' intent. Moreover, through Section 15.1 of the SAA, the parties expressly empowered the Court to correct any defective provision in order to approximate the manifest intent of the parties. Indeed, even the U.S. Supreme Court has expressly acknowledged that failure to confer standing upon an assignee of an accrued claim "could easily be overcome" by rewriting the agreement. *See Sprint Communications Co., L.P.,* 554 U.S. at 289. Thus, it would be illogical to hold that such revisions constitute fraud upon this Court. Accordingly, Democratic Underground's argument should be rejected.

### III. CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court grant it request to intervene as of right pursuant to Rule 24(a)(2) in this action. Righthaven additionally requests the Court grant such other relief as it deems just and proper.

Dated this 5th day of August, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

KIRKLAND & ELLIS LLP
DALE M. CENDALI, ESQ. (admitted *pro hac vice*)
dale.cendali@kirkland.com
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900

*Attorneys for Righthaven LLC*

13

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 5th day of August, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.