1  LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
   lpulgram@fenwick.com
2  CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
   cwebb@fenwick.com
3  JENNIFER J. JOHNSON (CA State Bar No. 252897) (*pro hac vice*)
   jjjohnson@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, California 94104
   Telephone: (415) 875-2300
6  Facsimile:  (415) 281-1350

7  KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
   kurt@eff.org
8  CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
   corynne@eff.org
9  ELECTRONIC FRONTIER FOUNDATION
   454 Shotwell Street
10 San Francisco, California 94110
   Telephone: (415) 436-9333
11 Facsimile:  (415) 436-9993

12 CHAD BOWERS (NV State Bar No. 7283)
   bowers@lawyer.com
13 CHAD A. BOWERS, LTD
   3202 West Charleston Boulevard
14 Las Vegas, Nevada 89102
   Telephone: (702) 457-1001
15
   Attorneys for Defendant and Counterclaimant
16 DEMOCRATIC UNDERGROUND, LLC, and
   Defendant DAVID ALLEN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>　　　　Plaintiff,<br>　　v.<br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>　　　　Defendants.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>　　　　Counterclaimant,<br>　　v.<br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>　　　　Counterdefendants. | Case No. 2:10-cv-01356-RLH (GWF)<br><br>**DEMOCRATIC UNDERGROUND'S SURREPLY TO RIGHTHAVEN'S REPLY IN SUPPORT OF APPLICATION TO INTERVENE AND STEPHENS MEDIA'S LIMITED OPPOSITION TO DEMOCRATIC UNDERGROUND'S CONSOLIDATED OPPOSITION** |

## INTRODUCTION

Pursuant to Stipulation and Order of this Court (Dkt. 149), Democratic Underground submits this final brief regarding the impact of the Court's June 14 Order (*Righthaven LLC v. Democratic Underground, LLC*, 2011 WL 2378186 (D. Nev. Jun. 14, 2011)) on future proceedings in this action. As Stephens Media now admits (Dkt. 152), there is no real basis to reconsider the June 14 Order, nor to dismiss Stephens Media from this action. As to Righthaven, the June 14 Order, properly construed, forecloses Righthaven's efforts to intervene based on its latest recharacterization of the Strategic Alliance Agreement ("SAA"). Thus, Democratic Underground respectfully submits that this Court should make clear that its prior ruling has put this matter to rest. Righthaven is not entitled to return to Court—in this action or any other—and pretend that the SAA is something other than what this Court found it to be. While Stephens Media may continue to pursue whatever course it desires, Righthaven's right to sue under the SAA has been determined, and it cannot be revived by any further restatements or clarifications.

## ARGUMENT

**I.  THE JUNE 14 ORDER WAS AN ADJUDICATION ON THE MERITS OF RIGHTHAVEN'S LACK OF OWNERSHIP OF THE COPYRIGHT AT ISSUE, PRECLUDING SUBSEQUENT CLAIMS.**

Righthaven seeks to avoid the definitive effect of this Court's conclusion that it lacked ownership sufficient to pursue a claim under the SAA by claiming that the June 14 Order was merely a decision on jurisdiction. Dkt. 150 at 6. It therefore claims that that Order constituted a dismissal "without prejudice" leaving it free to sue again on the same facts, or whenever it chooses to manufacture new allegations that contradict the facts determined by the Court. *Id*. To support this argument, Righthaven cites generic authorities to the effect that (i) dismissals purely for lack of jurisdiction generally do not constitute dismissals on the merits, and (ii) lack of standing is often equated with lack of jurisdiction, to conclude, (iii) *ipso facto*, a dismissal for lack of standing must be without prejudice or preclusive effect. *Id*. at 6-7.

The syllogism does not hold. None of Righthaven's generic authorities address the present situation, where the determination of lack of "standing" is intertwined with determination of the merits and therefore constitutes a decision on the merits. Righthaven has conceded that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  ownership of a protectable copyright interest is an essential substantive element of any claim for
2  copyright.  *See* Dkt. 140 ("DU Opp.") at 16-18.  Righthaven also has conceded that standing is
3  intertwined with the merits.  *Righthaven LLC v. Eiser*, D.S.C. Case 2:10-cv-03075-RMG (Dkt.
4  68) at 6-7 (filed here as Dkt 154, Ex. 1).  Yet, Righthaven ignores the numerous authorities
5  holding that when standing is intertwined with the merits, dismissal with prejudice is required.
6  *Id.*  It ignores the numerous Ninth Circuit cases in which dismissal for lack of standing constitutes
7  a dismissal with prejudice.  And it ignores decisions, such as *Pannonia Farms, Inc. v. Re/Max*
8  *Int'l, Inc.*, 407 F. Supp. 2d 41, 43 (D.D.C. 2005), where courts have given determinations of lack
9  of copyright ownership preclusive effect as decisions on the merits.  *See also Pony Express*
10 *Records, Inc. v. Springsteen,* 163 F. Supp. 2d 465 (D. N.J. 2001) (giving collateral estoppel effect
11 to British court's determination that plaintiff did not own copyright).

12        Most telling, however, is Righthaven's failure to respond to *HyperQuest, Inc. v. N'Site*
13 *Solutions, Inc.,* 559 F. Supp. 2d 918, 920 (N.D. Ill. 2008), *aff'd* 632 F.3d 377 (7th Cir. 2011),
14 which is directly on point.  In that case, Judge Shadur first dismissed HyperQuest's claims due to
15 lack of ownership of any exclusive right in the copyright, ordering that "both the complaint and
16 this action are dismissed for lack of subject matter jurisdiction." *Id*. at 923.  HyperQuest later
17 argued that this order did not provide a basis for defendant's recovery of attorneys' fees because
18 it was only a ruling on jurisdiction, not a decision on the merits.  Judge Shadur explained that,
19 while his initial use of the term "jurisdiction" might have led to confusion, "[t]here is no question
20 that the Order dismissed HQ's action with prejudice—because HQ lacks standing, it cannot bring
21 suit again." *Id.* at 921.

22        In so ruling, Judge Shadur explained the distinction between lack of jurisdictional power
23 to decide a case (resulting in a dismissal without prejudice), and lack of standing to assert a
24 federal question the court was empowered to decide, quoting *Rent Stabilization Ass'n v. Dinkins,*
25 5 F.3d 591, 594 n.2 (2d Cir. 1993) (emphasis in original):

26    [S]tanding and *subject matter* jurisdiction are separate questions . . . . While standing,
      which is an issue of justiciability, . . . addresses the question whether a federal court may
27    grant relief to a party in the *plaintiff*'s position, subject matter jurisdiction addresses the
      question whether a federal court may grant relief to *any* plaintiff given the claim asserted.
28    Thus, although both subject matter jurisdiction and standing . . . act to limit the power of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

federal courts to entertain claims, that is, act to limit the courts' "jurisdiction" in the broadest sense of the term, the two must be treated distinctly.

*Hyperquest,* 59 F. Supp. 2d at 920 (internal citations omitted).  As in *HyperQuest*, this Court's June 14 Order did not specify whether the dismissal was with or without prejudice.  But as in *HyperQuest*, this Court plainly had power over the federal question presented in this action—indeed, it is proceeding forward with this action with the real party in interest, Stephens Media.

Righthaven's assertion that this Court's dismissal was "without prejudice" is consistent neither with the practical effect of the June 14 Order, nor its language.  The Order noted that dismissal of Righthaven's complaint "of course, does not affect Democratic Underground's right to bring a motion for attorney fees under the Act." *See* June 14 Order at *7; *accord Cadkin v. Bluestone*, 290 Fed. Appx. 58 (9th Cir. 2008) (affirming attorneys' fees after plaintiff found not to own copyright).  The right to fees is consistent with a dismissal *with* prejudice.  Indeed, it is especially important that this Court clarify that its dismissal is with prejudice given that Righthaven (like HyperQuest) is arguing vigorously that dismissals for lack of standing are "mere jurisdictional" dismissals that immunize Righthaven from any fees in the actions it wrongfully commenced.  *Righthaven LLC v. Hoehn*, 2:11-cv-00050-PMP Dkt 38; *Righthaven LLC v. DiBiase*, 2:10-cv-01343-RLH Dkt. 87.

Further, there is nothing in the June 14 Order suggesting that, following its dismissal of Righthaven's claims, this Court intended that Righthaven could return later to sue again.  Instead, this Court held that Stephens Media is the real party in interest, and that "the SAA is not void or unenforceable [or ambiguous], it merely prevents Righthaven from obtaining standing to sue from the Assignment." June 14 Order at *4.  The Court so held knowing that the "Clarification" had been signed by the parties, and that Righthaven was hoping that changing the facts would allow it to try again to create standing.  Nonetheless, the Court ruled that "since the complaint has been dismissed, the issues raised by the counterclaim can only be adjudicated by litigating the counterclaim." *Id.* at *8. The Court affirmatively did not decide whether the Clarification's cosmetic amendments would have made any difference—though it expressed its doubts. *Id.* at *4 n.1.  But the Court did not decline to reach the Clarification so as to preserve Righthaven's ability

1    to create standing on another day; the dismissal for lack of standing recognized that the

2    sufficiency of Righthaven's standing under the SAA had been fully determined.

3        Accordingly, this Court should make clear that its dismissal based on standing, which is in

4    turn based on the lack of the element of ownership of a copyright, was a dismissal with prejudice.

5    That conclusion precludes relitigation of that issue by intervention or otherwise.  *See also*

6    *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1218-19 (10th Cir. 2006) ("It cannot be gainsaid

7    that even a dismissal without prejudice will have a preclusive effect on the standing issue . . . .").

## II. RIGHTHAVEN MISCHARACTERIZES JUDGE MAHAN'S RULING IN *PAHRUMP*.

10       Righthaven's suggestions that Judge Mahan's dismissal of the complaint in the *Pahrump*

11   case allows it to intervene here, and that Democratic Underground's Consolidated Opposition

12   (filed the day before the hearing) somehow defies that ruling, are incorrect in numerous respects.

13   In fact, Judge Mahan's August 12 ruling includes none of the holdings asserted by Righthaven in

14   its brief.  *See Righthaven v. Pahrump Life*, No. 2:10-CV-01575, Dkt. 67. Judge Mahan

15   specifically denied Righthaven's request for leave to amend and dismissed its complaint for lack

16   of standing under the initial SAA.  Judge Mahan had no need to, and did not, address the impact

17   of *HyperQuest* or the arguments that Righthaven had committed a fraud on the court, engaged in

18   champerty, or engaged in the unauthorized practice of law.  Nowhere did Judge Mahan, in

19   dismissing *Pahrump* over Righthaven's objections, reject any of these arguments.

20       Instead, the only open question after Judge Mahan's August 12 ruling is "whether the

21   matter should now be dismissed with or without prejudice" in light of "the relationship of

22   Righthaven's ownership of the copyright at the time the suit was filed to (1) Righthaven's

23   standing in this case and (2) the merits of Righthaven's copyright infringement claim."  *Id*. at 6.

24   While Judge Mahan has asked for further briefing in *Pahrump* to answer this question, this Court

25   is the one to determine whether its June 14 Order constituted a dismissal with or without

26   prejudice. As explained herein, it should be considered to be with prejudice.

DU'S SURREPLY TO RIGHTHAVEN'S
REPLY ISO APP TO INTERVENE AND     4     CASE NO. 2:10-cv-01356-RLH (GWF)
STEPHENS' LIMITED OPP TO DU'S OPP

## III. RIGHTHAVEN DOES NOT MEET THE STANDARDS FOR INTERVENTION.

### A. The Request to Intervene is Untimely.

Righthaven's claim that its intervention is timely ignores the Ninth Circuit's three-prong test. The District Court exercises its discretion in light of (i) the stage of the proceedings, (ii) potential prejudice, and (iii) the length and reason for delay—in this case, some ten months occasioned by Righthaven's misrepresentations to the Court about its ownership interests. *See* DU Opp. at 12.[1] Instead, Righthaven proposes a self-fulfilling test for timeliness—*i.e.*, whether it filed its motion to "intervene," and created new facts, as soon as its original facts were rejected. No court has ever endorsed such a test. Framing a motion as one to intervene does not afford the right to invent new facts ten months into the litigation, after a summary judgment motion and major discovery motions have been fully briefed, but held moot based on the facts Righthaven *originally* submitted. June 14 Order at *7; Dkt. 117 at 2. At a minimum, Democratic Underground would have to present these motions over again, at a cost of many tens of thousands of dollars, due to Righthaven's failure to present its new facts earlier.

Regardless of its "intervention" rubric, Righthaven's motion is ultimately just a motion to reconsider the June 14 holding that it does not have standing, based on new facts belatedly created. As with Stephens Media's motion, "newly created evidence" does not qualify as "newly discovered evidence" that could allow revisiting an issue after it is decided. *See* DU Opp. at 7-9.

### B. Righthaven Has No Protectable Interest.

As explained above, because this Court has already determined that Righthaven has no standing under the SAA, and because Righthaven has no right to revise the facts upon which that determination was based, Righthaven has no protectable interest it may now assert.

Righthaven's claim to a protectable interest also fails for two further reasons. First, as a champertous agreement, the SAA, and any amendments to it, remain unenforceable. Righthaven attempts to avoid this result through oversimplification, arguing that the Ninth Circuit has

---

[1] Remarkably, Righthaven claims, without citation, that its culpability for the delay is of no moment—whereas the Ninth Circuit has specifically described the "reason for the delay" as a key factor. *See, e.g., Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002); *accord League of United Latin Am. Citizens v. Wilson*, 131 F.2d 1297, 1304 (9th Cir. 1997).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  purportedly "held" that champerty is not an available defense.  As previously explained, the Ninth
2  Circuit held only that champerty did not give rise to a tort cause of action.  *See* DU Opp. at 22
3  n.10.  Righthaven has no answer to the fact that the Ninth Circuit *did not* overrule Nevada law
4  recognizing champerty is a defense to claims of tortious conduct.  *See id*.

5      Secondly, Righthaven does not substantively respond to Democratic Underground's fraud
6  upon the court arguments, stating only that it has the right to amend its contract "to effectuate the
7  parties' intent."  Dkt. 150 at 13.  Righthaven incorrectly asserts that Democratic Underground
8  does not dispute that the Restated Amendment qualifies as a transfer of ownership under
9  *Silvers*—ignoring the fact that the Restated Amendment is in direct contradiction of the intent of
10 the original SAA and Clarification and recites as the parties' intent precisely what this Court
11 found it not to be.  DU Opp. at 19.  Its conveyance of a "non-exclusive" license contradicts the
12 original's grant back of an exclusive license.  *Id*.  And its assertion, *nunc pro tunc*, that
13 Righthaven has had a right to exploit the assigned copyrights for the last 18 months contradicts
14 reality—that Righthaven has had nothing other than the right to sue.

15     Moreover, Righthaven's assertion that it has exclusive rights contradicts Stephens Media's
16 actual grant of rights to others.  On its face, the Restated Amendment is a sham, an attempt to
17 engineer a result by false presentation of a reality that did not exist.  Righthaven does not address
18 the contradictions between Stephens Media's licensing deals and the purported transfer of
19 ownership.  Stephens Media also fails to seriously grapple with the issue, responding with a series
20 of factual non-sequiturs.  Dkt. 151 at 4 n.1.  For example, it does not matter if Stephens Media
21 also owns other copyrighted works unaffected by its Righthaven scheme (Hinuber Decl. (Dkt.
22 151-2) ¶ 5), nor that it owned this work prior to the purported assignment.  *Id*. ¶ 6.  What matters
23 is whether Stephens Media still owns the work as reflected by its ongoing conveyance of rights
24 only an owner can.  Nor is it surprising (or relevant) that Stephens Media has disclosed the
25 existence of these licensing deals to its co-conspirator.  *Id*. ¶ 7.  Indeed, these deals were likely
26 one reason the SAA was so clear that Righthaven had no rights to exploit the copyrights.  Instead
27 of providing these irrelevant factual allegations, Stephens Media needed to explain why it is
28 continuing to license rights it claims not to own as a result of its purported exclusive license to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Righthaven.  DU. Opp. at 28-29 (discussing limitations in other Stephens Media licensing deals);

2  Dkt. 140-1 (Webb Decl.) Ex. 3 ¶ 19.  It has failed to do so, choosing instead to support

3  Righthaven's fraud upon this court.

4      Whether Righthaven's new approach, in combination with the prior sanctionable conduct,

5  rises to the level of defiling the Court, or whether it simply reflects the baselessness of

6  Righthaven's ownership claim, it certainly provides further basis to deny intervention.[2]

7      **C.   To the Extent the Court Finds Righthaven Could Have Some Protectable Interest, That Interest Will Be Fully Protected by Stephens Media.**

8

9      Even, assuming arguendo that Righthaven had some protectable interest, Righthaven

10  cannot avoid (and does not try to avoid) the well-settled presumption that its interests will be fully

11  represented by a related party pursuing the same objective.  It also does not dispute that Stephens

12  Media has every incentive to defend against the counterclaim's assertion of fair use, including its

13  owners' substantial investment in Righthaven.

14      Instead, Righthaven argues that its interests are not fully protected only because Stephens

15  Media could not affirmatively recover against Democratic Underground *if* (contrary to the June

16  14 Order) it were now found to be a non-exclusive licensee after it purportedly transferred away

17  ownership via the Restated Amendment.  Dkt. 150 at 10-12.  Righthaven cries crocodile tears,

18  claiming that its purported post-decision transfer has put Democratic Underground in an

19  "enviable" procedural position. *Id.* at 11. The truth is that *Righthaven and Stephens Media*

20  attempted to divest Stephens Media of its claims *after* this Court found the latter to be the real

21  party, solely to undo this Court's order.  They do not dispute that they can also reverse that

22  collusive document's language just as easily as they have repeatedly rewritten it before.

23  / / /

24  / / /

25  / / /

---

26

27  [2] In addition, the proposed complaint (Dkt. 134-2) would violate Rule 11 because it alleges facts that Righthaven knows to be untrue (such as "ongoing" harm, when it knows the post quoting the article has long since been removed) and—inexplicably—it seeks to seize Democratic Underground's domain name, even though this Court found "Righthaven's request for such relief fails as a matter of law." *Righthaven v. DiBiase* 2011 WL 1458778 (D. Nev. April 15, 2011); *accord Righthaven v. Choudhry*, 2011 WL 1743839 (D. Nev. May 3, 2011).

28

## CONCLUSION

For the foregoing reasons, Democratic Underground respectfully requests that this Court deny Righthaven's Application to Intervene and Stephens Media's Motion for Reconsideration.

Dated: August 12, 2011        FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
Laurence F. Pulgram

Attorneys for Counterclaimant
DEMOCRATIC UNDERGROUND, LLC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DU'S SURREPLY TO RIGHTHAVEN'S
REPLY ISO APP TO INTERVENE AND
STEPHENS' LIMITED OPP TO DU'S OPP           8           CASE NO. 2:10-cv-01356-RLH (GWF)