LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
lpulgram@fenwick.com
JENNIFER J. JOHNSON (CA State Bar No. 252897) (*pro hac vice*)
jjjohnson@fenwick.com
CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
cwebb@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300
Facsimile:   (415) 281-1350

KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333
Facsimile:   (415) 436-9993

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys for Defendant and Counterclaimant
DEMOCRATIC UNDERGROUND, LLC, and
Defendant DAVID ALLEN

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>Plaintiff,<br>v.<br><br>DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company; and DAVID ALLEN, an individual,<br><br>Defendants. | Case No. 2:10-cv-01356-RLH (GWF)<br><br>**DEFENDANTS DEMOCRATIC UNDERGROUND AND DAVID ALLEN'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**<br><br>**[17 U.S.C. § 505]** |
| DEMOCRATIC UNDERGROUND, LLC, a District of Columbia limited-liability company,<br><br>Counterclaimant,<br>v.<br><br>RIGHTHAVEN LLC, a Nevada limited liability company, and STEPHENS MEDIA LLC, a Nevada limited-liability company,<br><br>Counterdefendants. | |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

INTRODUCTION ......................................................................................................... 2

FACTUAL BACKGROUND ....................................................................................... 3

    A.    Righthaven's Formation and Stephens Media's Control of its Litigation Campaign ......................................................................................................... 3

    B.    Righthaven's Lawsuit Against Democratic Underground and the Counterclaim Against Stephens Media and Righthaven.......................................... 6

ARGUMENT .................................................................................................................. 9

I.    EACH OF THE NINTH CIRCUIT'S FACTORS SUPPORTS AN AWARD OF ATTORNEYS' FEES. ...................................................................................... 10

    A.    Democratic Underground and David Allen Are Prevailing Parties and Their Success in this Action Was Total......................................................... 10

    B.    Stephens Media's and Righthaven's Pursuit of and Positions in this Lawsuit Were Frivolous and Objectively Unreasonable ..................................... 11

        1.    Stephens Media's and Righthaven's Assertion that Righthaven Had Standing to Pursue its Claims Was Frivolous and Unreasonable ............. 11

        2.    Righthaven and Stephens Media Were Unreasonable in Denying that Democratic Underground Made a Fair Use of the News Article....... 15

    C.    Righthaven and Stephens Media Pursued this Lawsuit and Their Litigation Campaign for Improper Motives........................................................... 16

    D.    An Award of Fees to Democratic Underground Is Supported by the Interests of Compensation and Deterrence. ........................................................ 18

    E.    An Award of Democratic Underground's Attorneys' Fees Would Support the Purposes of the Copyright Act. ....................................................... 19

II.    DEMOCRATIC UNDERGROUND'S ATTORNEYS' FEES ARE REASONABLE AND AT LEAST THE LODESTAR SHOULD BE AWARDED. ...... 21

    A.    Democratic Underground Attorneys' Worked a Reasonable Number of Hours......................................................................................................... 21

    B.    The Rates Sought Are Reasonable Given the Complex Nature of this Case........ 23

    C.    This Case Warrants at Least an Award of the Lodestar Amount, If Not a Multiplier. ...................................................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

      D.     Democratic Underground's Attorneys' Have Absorbed All Costs in this Litigation, to be Paid Only from the Fee Award ................................................... 26

III.    STEPHENS MEDIA AND RIGHTHAVEN SHOULD BE JOINTLY AND SEVERALLY LIABLE FOR DEMOCRATIC UNDERGROUND'S ATTORNEYS' FEES. ................................................................................................... 27

CONCLUSION ........................................................................................................... 30

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Griffin*,
397 F.3d 515 (7th Cir. 2005) .................................................................................. 27

*Apple v. Does*
Santa Clara Superior Ct., Case No. 1-04-cv-032178 ............................................. 24

*Bond v. Blum*,
317 F.3d 385 (4th Cir. 2003) .................................................................................. 20

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
371 F.3d 883 (6th Cir. 2004) ............................................................................. 17, 18

*Compaq Computer Corp. v. Ergonome, Inc.*,
387 F.3d 403 (5th Cir. 2004) .................................................................................. 20

*Cuellar v. Joyce*,
603 F.3d 1142 (9th Cir. 2010) .................................................................................. 9

*Elec. Frontier Foundation v. Office of the Director of National Intelligence*,
No. 07-05278 SI, 2008 WL 2331959 (N.D. Cal. June 4, 2008) ........................... 24

*Entm't Research Group v. Genesis Creative Group*,
122 F.3d 1211 (9th Cir. 1997) .................................................................................. 9

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir. 1996) ("*Fogerty II*") ........................................................... 9

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ("*Fogerty I*") ................................................... 9, 11, 14, 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................ 21

*Hofheinz v. AMC Prods., Inc.*,
2003 U.S. Dist. LEXIS 16940 (S.D.N.Y. Sep. 3, 2003) ....................................... 20

*In re Sony BMG CD Technologies Litigation*
(S.D.N.Y. Case No 1:05-cv-09575-NRB) .............................................................. 24

*In re USA Commercial Mortgage Co.*,
802 F. Supp. 2d 1147 (D. Nev. 2011) .................................................................... 27

*Jones v. Corbis Corp.*,
CV 10-8668-SVW CWX, 2011 WL 4526084
(C.D. Cal. Aug. 24, 2011) ...................................................................................... 25

*Jones v. Espy*,
10 F.3d 690 (9th Cir. 1993) .................................................................................... 27

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975)........................................................................................21, 26

*Kona Enterprises, Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2007)................................................................................27

*Koster v. Perales*,
    903 F.2d 131 (2d Cir. 1990)................................................................................28

*Malijack Productions v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996)................................................................................10

*Mattel, Inc. v. Walking Mountain Productions*,
    2004 U.S. Dist. LEXIS 12469 (C.D. Cal. June 24, 2004) ...............................19, 20

*Mattel Inc. v. Walking Mtn. Productions*,
    353 F.3d 792 (9th Cir. 2003)................................................................................20

*Mayfield v. Koroghli*,
    124 Nev. 343 (2008) ................................................................................27

*Moore v. Jas H. Matthews & Co.*,
    682 F.2d 839 (9th Cir. 1982)................................................................................24

*Netbula v. Chordiant Software, Inc.*,
    Case No. 5:08-cv-00019-JW, Dkt. 594
    (N.D. Cal. Dec. 17, 2010) ................................................................................25

*OPG v. Diebold*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) ................................................................24

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007)................................................................................9, 14

*Righthaven LLC v. Democratic Underground LLC*,
    791 F. Supp. 2d 968 (D. Nev. 2011) .............................................................*passim*

*Righthaven LLC v. DiBiase*,
    Case No. 2:10-cv-01343-RLH, 2011 WL 5101938
    (D. Nev. Oct. 26, 2011) ................................................................................9, 10, 17

*Righthaven, LLC v. Dr. Shezad Malik Law Firm P.C.*,
    Case No. 2:10-cv-00636-RLH-RJJ, 2010 WL 3522372
    (D. Nev. Sept. 2, 2010) ................................................................................26

*Righthaven, LLC v. Hoehn*,
    792 F. Supp. 2d 1138 (D. Nev. 2011 ................................................................12, 18, 29

*Righthaven, LLC v. Jama*,
    2011 WL 1541613 (D. Nev. Apr. 22, 2011) ................................................................18, 20

*Righthaven, LLC v. Majorwager.com, Inc.*,
    Case No. 2:10-cv-00484-GMNLRL, 2010 WL 4386499
    (D. Nev. Oct. 28, 2010)................................................................................26

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Righthaven, LLC v. Realty One Group, Inc.*,
  2010 WL 4115413 (D. Nev. Oct. 19, 2010) ......................................................... 18

*Robinson v. Lopez*,
  69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. 2003) .......................................................... 9

*Silvers v. Sony Pictures Entertainment, Inc.*,
  402 F.3d 881 (9th Cir. 2005)................................................................................ *passim*

*Tavory v. NTP, Inc.*,
  297 Fed. Appx. 986 (Fed. Cir. 2008) ..................................................................... 20

*Turner v. District of Columbia Board of Elections*,
  354 F.3d 890 (D.C. Cir. 2006) .......................................................................... 27, 28

*Twentieth Century Fox Film Corp. v. Entertainment Distribution*,
  429 F. 3d 869 (9th Cir. 2005)................................................................................ 26

*U.S. v. 87 Skyline Terrace*,
  26 F.3d 923 (9th Cir. 1994)................................................................................... 10

*Van Asdale v. International Game Tech.*,
  Case No. 3:04-cv-00703-RAM, 2011 WL 2118637 (D. Nev. May 24, 2011) ................ 21, 26

*Video-Cinema Films, Inc. v. CNN, Inc.*,
  2003 U.S. Dist. LEXIS 4887 (S.D.N.Y. Mar. 31, 2003) ........................................... 17, 18, 20

*Yue v. Storage Tech Corp.*,
  2008 U.S. Dist. LEXIS 68920 (N.D. Cal. Sep. 5, 2008)
  adopted by 2008 U.S. Dist. LEXIS 68801 (N.D. Cal. Sept. 5, 2008)................................... 25

**STATUTES**

17 U.S.C. § 505 ....................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 11 ................................................................................................... 15

Fed. R. Civ. P. 54 ................................................................................................... 26

Fed. R. Civ. P. 54(d)(2)........................................................................................... 1

Local Rule 54-16..................................................................................................... 1

**NOTICE OF MOTION AND MOTION**

Defendant and Counterclaimant Democratic Underground LLC and Defendant David Allen hereby move the Court for an order pursuant to 17 U.S.C. § 505, Federal Rule of Civil Procedure 54(d)(2), and Local Rule 54-16 granting them prevailing parties' attorneys' fees against Plaintiff and Counterdefendant Righthaven LLC and Counterdefendant Stephens Media LLC.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Laurence Pulgram, Kurt Opsahl, and David Allen filed herewith, any further documents filed in support of the motion or cited in the motion, including the records on file in this action, and on such oral argument as the Court may allow.

Dated:  April 10, 2012                              FENWICK & WEST LLP


                                                   By: _____/s/ *Laurence F. Pulgram*_____
                                                          Laurence F. Pulgram

                                                   Attorneys for Defendant and Counterclaimant
                                                   DEMOCRATIC UNDERGROUND, LLC, and
                                                   Defendant DAVID ALLEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This lawsuit, like hundreds of others commenced by Righthaven as the agent of Stephens Media, should never have happened.  Righthaven filed a baseless lawsuit against Defendants Democratic Underground, LLC and David Allen (collectively, "Democratic Underground") for infringement of a copyright (i) that it did not own, and (ii) over an unquestionably fair use. Stephens Media had both a direct financial interest and the power to stop this lawsuit from the beginning.  But it chose not to do so.  Instead, when Democratic Underground filed a Counterclaim against Stephens Media—the true owner of the copyright at issue—seeking to protect itself with a declaration of non-infringement, Stephens Media repeatedly denied that it retained any rights in the copyright, something this Court said was "flagrantly false—to the point that the claim is disingenuous, if not outright deceitful."

The truth, as exposed by this lawsuit, is that Righthaven and Stephens Media entered into a champertous scheme, where Stephens Media would assign Righthaven a bare right to sue on Stephens Media's copyrights, in contravention of well-established Ninth Circuit law.  Righthaven would then proceed to sue hundreds of small website operators and bloggers, hoping to squeeze them for quick, nuisance-value settlements.  But Democratic Underground and Mr. Allen would not be squeezed.  Through their efforts defending against Righthaven's claims and pursuing Democratic Underground's Counterclaim against Stephens Media, they exposed Righthaven and Stephens Media's scheme, leading to the end of Righthaven's litigation campaign.

Democratic Underground and David Allen have been universally successful in this lawsuit, obtaining final judgments on the merits against both Stephens Media and Righthaven. Democratic Underground won dismissal of Righthaven's claim "with prejudice" and "on the merits" based on its lack of ownership of the asserted copyright.  Democratic Underground won summary judgment on its Counterclaim against Stephens Media on the grounds that the posted excerpt was a fair use and because neither Mr. Allen nor Democratic Underground committed a volitional act of copyright infringement.  But this success came at a price.  Democratic Underground and its pro bono counsel were forced to spend well over a thousand hours fighting

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Righthaven and Stephens Media at virtually every step.

2           Under settled law, Mr. Allen and Democratic Underground are entitled to an award of

3    attorneys' fees in the amount of $774,683.25 pursuant to 17 U.S.C. § 505.  Moreover, these fees

4    should be awarded jointly and severally against Righthaven and Stephens Media, due to their

5    concerted efforts in bringing this litigation against Democratic Underground, and due to the

6    common basis of Democratic Underground's defense and prosecution of its Counterclaim.

7    Indeed, Righthaven, ████████████████████, now claims to be judgment proof.  Anything

8    less than a joint and several award would allow Stephens Media to accomplish the wrongful

9    objective of the scheme: to allow the true party in interest to escape responsibility by creating a

10   sham, hired gun company to do its bidding.

11                          **FACTUAL BACKGROUND**

12      A.   **Righthaven's Formation and Stephens Media's Control of its Litigation**
             **Campaign.**
13

14          Righthaven, LLC ("Righthaven") was created ████████████████████████████

15   ████████████████ and for Stephens Media's ultimate benefit.  It acted as a *de facto* law

16   firm to pursue hundreds of no-warning, sham copyright infringement lawsuits against bloggers

17   and website operators who hosted even short excerpts of news articles from Stephens Media's

18   *Las Vegas Review-Journal* newspaper ("LVRJ").  In this endeavor, Righthaven was Stephens

19   Media's agent, contractually controlled by Stephens Media in its litigation campaign.

20          Righthaven and Stephens Media's relationship was documented in Righthaven's

21   Operating Agreement ("RHOA") (Declaration of Laurence Pulgram Decl. ("Pulgram Decl.") Ex.

22   F) and the parties' original Strategic Alliance Agreement ("SAA") (Dkt. 79-1 Ex. A), each of

23   which became publicly exposed through this lawsuit.  The RHOA and SAA are part of a single

24   "integrated transaction."  SAA § 2.  Righthaven is a limited liability company owned by two

25   other limited liability companies, each with a 50 percent stake.  RHOA § 4.1.  As the SAA

26   recites, one of the owners of Righthaven must be a "Stephens Media Affiliate" called SI Content

27   Monitor, LLC, which "is presently and shall throughout the Term be Controlled by common

28   owners [with Stephens Media] with no material variation in said ownership."  SAA § 2(a).  This

owner is composed of members of the Arkansas investment banking billionaire Warren Stephens'
family, and is referred to by the RHOA as "Stephens" (RHOA Preamble).  RHOA § 15.5
(covenanting that SI Content Monitor LLC is "Controlled by members of the family of Warren A.
Stephens and trusts for the benefit of such individuals").  The Stephens Media affiliate
███████████████████████████  RHOA § 9.1.  Public records reflect that the
affiliate, SI Content Monitor, is now dissolved.  Pulgram Decl. Ex. G.

The other owner of Righthaven is a company named Net Sortie Systems, an LLC
controlled and managed by Las Vegas attorney Steve Gibson, the CEO of Righthaven who filed
this action as lead counsel for Righthaven.  Dkt. 1 (Complaint); Dkt. 47 Ex. F; RHOA § 15.5.
████████████████████████████████████████████████████████
RHOA Exhibit 9.1.  There is no record of any other funding or capital contribution to
Righthaven—although, as discussed below, Stephens Media and Righthaven did jointly employ
New York counsel to defend this action.

Under the RHOA, Righthaven's purpose was to receive a "limited, revocable assignment
(with a license-back) of a copyright from Third Persons," most commonly Stephens Media and
the *LVRJ*.  RHOA § 3.2(c).  Righthaven would then obtain a registration listing it as the copyright
owner so it could file lawsuits, with the understanding that the real copyright owner "would
ultimately enjoy the copyright registration."  *Id.* §§ 3.2(c)-(d).  On the same day that Righthaven
executed the RHOA, it entered into the SAA.  Under the terms of the SAA, Righthaven was to
file lawsuits based on uses of Stephens Media's news articles and Righthaven and Stephens
Media would split the proceeds of that litigation fifty-fifty, less any litigation costs.  SAA § 5.

Under the SAA, Stephens Media had the right to control what lawsuits Righthaven
brought and how Righthaven resolved them.  As this Court has noted: "The SAA gives Stephens
Media the right to prevent Righthaven from suing an alleged copyright infringer for various
specific reasons, including that the lawsuit might 'result in an adverse result to Stephens Media.'"
*Righthaven LLC v. Democratic Underground LLC*, 791 F. Supp. 2d 968, 972 (D. Nev. 2011)
(citing SAA § 3.3).  Even after a suit was brought, Stephens Media retained an absolute right of
reversion, subject only to later reimbursement of Righthaven's investment in the litigation.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Section 8, entitled "Stephens Media's Right of Reversion" states: "Stephens Media shall have the

2  right at any time to terminate, in good faith, any Copyright Assignment (the 'Assignment

3  Termination') and enjoy a right to complete reversion to the ownership of any copyright that is

4  the subject of a Copyright Assignment . . . ."  SAA § 8.[1]

5        Righthaven and Stephens Media's arrangement was flawed from the outset as a matter of

6  copyright law.  Stephens Media either would not or could not agree to an outright assignment of

7  copyrights in its news articles to Righthaven, yet governing law explicitly prohibits naked

8  assignments of the right to sue under copyrights.  *Silvers v. Sony Pictures Entertainment, Inc.*,

9  402 F.3d 881 (9th Cir. 2005).  This tension resulted in a convoluted scheme whereby Stephens

10  Media and Righthaven executed documents entitled "Copyright Assignments," purporting on

11  their face to provide Righthaven with all the necessary rights to sue, while underneath, by

12  operation of the SAA, everything other than the right to sue was simultaneously reconveyed to

13  Stephens Media.   In actuality, Stephens Media assigned Righthaven nothing beyond a bare right

14  to sue, in contravention of *Silvers*.  *See* Dkt. 38 Ex. A (Copyright Assignment).

15        It was not apparent to anyone looking at these "assignments," including the courts to

16  which they were presented as evidence of standing, that the SAA stripped Righthaven of anything

17  that resembled a valid conveyance of rights.  The SAA provided that "Righthaven shall have no

18  right or license to Exploit or participate in the receipt of royalties from the Exploitation of

19  Stephens Media Assigned Copyrights other than the right to proceeds in associated with a

20  Recovery" in a lawsuit.  SAA § 7.2.  The SAA explicitly reconveyed to Stephens Media all rights

21  other than the right to sue, while also giving it control over whether or not Righthaven could file

22  suit (*id*. § 3.3), and whether or not to terminate the assignment (*id*. § 8).  Looking to these

23  provisions, this Court concluded that the SAA was specifically designed "to be sure that

24  Righthaven did not obtain any rights other than the bare right to sue."  *Democratic Underground*,

26  [1] The SAA also makes clear Righthaven's role as Stephens Media's agent. Stephens Media may assign copyrights of its choice to Righthaven to search for infringement.  SAA §§ 3.1, 3.2. Once a
27  copyright is purportedly "assigned" to Righthaven, Stephens Media "engages" Righthaven on an exclusive basis to perform searching for copyright infringement and pursuit of infringement
28  actions.  SAA §§ 3.1-3.3.

791 F. Supp. 2d at 973-74.

Despite these provisions, Righthaven repeatedly offered these "assignments," and the registrations obtained on their backs, as proof of its standing to bring lawsuits on Stephens Media news articles. *See, e.g.*, *Righthaven, LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJDGWF, Dkt. 15 at 4; *Righthaven, LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-00484-GMNLRL, Dkt. 9 at 2; *Righthaven, LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No. 2:10-cv-00636-RLH-RJJ, Dkt. 11 at 2. Righthaven never once disclosed the existence or terms of the SAA and its effect on the legitimacy of these notices. Likewise, Stephens Media relied upon the bare "assignment" without disclosing the SAA in its Motion to Dismiss the Counterclaim here. Dkt. 38. The failure to disclose led "the district judges of this district to believe that [Righthaven] was the true owner of the copyright in the relevant news articles." *Democratic Underground*, 791 F. Supp. 2d. at 976. All of this was done in an apparent effort to shield the true copyright owner, Stephens Media, who stood to take 50% of any recovery in a suit on its copyrights, from any adverse consequences of the suits, such as exposure for an opponent's attorneys' fees or the discovery burdens of party status. Righthaven filed a total of 218 cases in this district alone alleging copyright infringement of Stephens Media's content.

**B.      Righthaven's Lawsuit Against Democratic Underground and the Counterclaim Against Stephens Media and Righthaven.**

On May 13, 2010, a Democratic Underground user named "Pampango" posted an excerpt of an article from the *LVRJ* entitled "U.S. Senate Race: Tea Party Power Fuels Angle" on Democratic Underground's website (the "News Article"). *See* Dkt. 1, Ex. 3. The excerpt was almost entirely factual in nature and contained only the first 5 sentence of the 50 sentence News Article. The excerpt included a link for viewers to find the *LVRJ*'s original of the full article. Within 40 minutes, three Democratic Underground users left comments on the post, each of which dealt with the subject matter of the article. *Id.* Ex. 3.

In keeping with its scheme with Stephens Media, Righthaven acquired a "Copyright Assignment" covering the News Article, obtained a registration, and filed suit against Democratic Underground. *See* Dkt. 1 (Complaint); Dkt. 38 Ex. A (Copyright Assignment). For added *in*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*terrorem* effect, the complaint also named the owner of the LLC, David Allen, personally.  Once Mr. Allen learned of this lawsuit, he had no choice but to hire attorneys to defend himself and Democratic Underground.

Unwilling to be bullied into a settlement of a baseless claim, he spent $3,612 on an attorney before engaging  pro bono counsel at the Electronic Frontier Foundation ("EFF").  Declaration of David Allen ("Allen Decl.") ¶ 3, Ex. A.  The EFF subsequently allied with Winston & Strawn, and then Fenwick & West, to defend.  Suspicious of the true relationship between Stephens Media and Righthaven, Democratic Underground filed a Counterclaim for declaratory relief of non-infringement, naming Stephens Media, the true copyright owner, as well as Righthaven, as Counter-Defendants, based on the former's creation of, direction of, control of, financial interest in, and collusion with the latter to pursue meritless claims of infringement.

The litigation that followed resulted in complete victory for Democratic Underground, both on its claim that Stephens Media was the real party in interest, and on the merits of the fair use and volition defenses.  First, this Court ruled that under the SAA, Righthaven was assigned nothing beyond the bare right to sue in contravention of *Silvers*, effectively putting an end to Righthaven and Stephens Media's litigation campaign nationwide.  *Democratic Underground*, 791 F. Supp. 2d at 973-74.  Second, in ruling on Democratic Underground's Motion for Summary Judgment on its Counterclaim against Stephens Media, this Court held that the hosting of the short excerpt of the News Article on the Democratic Underground website was a protectable fair use and did not involve a sufficient volitional act by Democratic Underground and Mr. Allen to constitute direct copyright infringement.  Dkt. 179 (Final Declaratory Judgment).

But getting to these results required Democratic Underground and its counsel to overcome every hurdle that Righthaven and Stephens Media could conceive.  The record of 193 docket entries prior to this motion speaks for itself, but includes the following:

- Righthaven unsuccessfully moved to voluntarily dismiss its complaint, asserting that this would also moot the Counterclaim, but conditioned dismissal on denial of any attorneys' fees to Democratic Underground for winning the dismissal—a condition that Democratic Underground opposed given the efforts at defense already incurred. Dkts. 36, 45, 57.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- Joining in Righthaven's motion, Stephens Media unsuccessfully moved to dismiss the Counterclaim on the basis that it was purportedly not a real party in interest—an argument both parties made before disclosing the SAA.  Dkts. 38, 39, 56.

- In the absence of the SAA, Democratic Underground moved for summary judgment on its fair use and volitional act defenses—a motion that was fully briefed before the SAA was procured.  Dkts. 45, 58, 62.

- Even as it opposed summary judgment on fair use, Righthaven refused to produce a single document in discovery, and Stephens Media produced none of its communications with Righthaven, requiring Democratic Underground to file motions to compel against both opponents. [2]  Dkts. 95, 105, 106, 112.

- Once the SAA was provided, Democratic Underground moved for the right to file supplemental briefing on the standing issue, which this Court granted over Righthaven's objections (which Stephens Media joined).  Dkts. 72, 76, 78, 80, 84.

- Righthaven and Stephens Media further opposed the unsealing of the SAA, moved to strike, and even asked for an order to show cause regarding contempt based on Democratic Underground's having filed the SAA under seal—arguments that this Court rejected, thereby making the SAA known to the litigants in the hundreds of other pending cases.  Dkts. 85-93.

- The Court issued an Order to Show Cause and hearing, based on Righthaven failure to disclose its relationship to Stephens Media, ultimately sanctioning Righthaven $5,000, which has never been paid, and ordering a copy of the hearing transcript filed in each case in which Righthaven's actions were pending.  Dkts. 116, 127, 131, 133, 137-138, 143, 145, 148.

- Bringing in new, high powered New York counsel, Righthaven and Stephens Media twice amended the SAA in an effort to fix the flawed assignment.[3]  Stephens Media moved for reconsideration of this Court's dismissal order,[4] and Righthaven moved to "intervene" based on the second amendment, but this Court again rejected their efforts to avoid Stephens' status as real party in interest.  Dkts. 120, 126, 134, 136, 140, 150, 152, 155, 157.

- When it finally answered the Counterclaim, Stephens Media denied both that the use of the article was fair use and that Democratic Underground had committed no volitional act in displaying Pampango's post—requiring Democratic Underground to file and brief a summary judgment motion on the merits of these issues.  Dkts. 125, 168, 174, 175.

---

[2] Magistrate Judge Foley did not rule on those motions, finding them moot after the Court's dismissal of Righthaven's claims.  Dkt. 117.

[3] On May 9, 2011, Righthaven and Stephens Media entered into a "clarification" of the SAA, purporting to retroactively invest Righthaven with more than a bare right to sue. *See* Clarification and Amendment to SAA (Declaration of Mark A. Hinueber (Dkt. 101), Ex. 3).  Then, given the clear inadequacy of that document, Righthaven and Stephens Media tried again, entering into a "restatement" on July 7, 2011. *See* Amended and Restated SAA (Dkt. 134-1).  Neither could change the fact that no jurisdiction existed at the initiation of this lawsuit or that Righthaven and Stephens Media's relationship was and always will be a sham.

[4] Stephens Media eventually withdrew that motion, but only after forcing Democratic Underground to  respond, again needlessly increasing the fees incurred.  Dkt. 152.

1    • Meanwhile, Righthaven refused to respond to requests to stipulate to entry of a Rule
2       54(b) entry of partial judgment on the complaint.  Instead, Righthaven purported to
        commence an appeal of the denial of its motion to intervene, thereby seeking to obtain
3       appellate review before entry of judgment and adjudication of attorneys' fees.  Dkt.
        166 ; Pulgram Decl. ¶ 21. The appeal was dismissed for failure to prosecute.
        Dkt. 183.
4

5    Despite Righthaven and Stephens Media's coordinated effort to avoid responsibility for this ill

6    considered lawsuit, Democratic Underground prevailed on virtually every issue that the Court

7    decided.

8                                          **ARGUMENT**

9        The Copyright Act permits a district court to "award a reasonable attorney's fee to the

10   prevailing party as part of the costs."  17 U.S.C. § 505.  Fees are proper when either successful

11   prosecution or successful defense of the action furthers the purposes of the Copyright Act.  *See*

12   *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("*Fogerty II*") ("[A] successful defense

13   of a copyright infringement action may further the policies of the Copyright Act every bit as

14   much as a successful prosecution of an infringement claim by the holder of a copyright") (quoting

15   *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994) ("*Fogerty I*")) .  The standards for evaluating

16   whether an award is proper are the same regardless of which party prevails.  *Id*. at 534.

17       The Supreme Court has identified several non-exclusive factors to guide a district court's

18   discretion whether to award attorneys' fees under Section 505: "(1) the degree of success

19   obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual

20   and in the legal components of the case); and (5) the need, in particular circumstances, to advance

21   considerations of compensation and deterrence."  *Entm't Research Group v. Genesis Creative*

22   *Group*, 122 F.3d 1211, 1229 (9th Cir. 1997) (citing *Fogerty II*)).  To award fees, not all of these

23   factors must be met, and, indeed, "[c]ourts have awarded costs for copyright claims based on a

24   single factor."  *See Robinson v. Lopez*, 69 U.S.P.Q.2d (BNA) 1241 (C.D. Cal. 2003) (*citing*, *inter*

25   *alia*, *Fogerty II*, 94 F.3d at 558).  Ultimately, the district court's decision to grant or deny

26   attorneys' fees is reviewed for an abuse of discretion.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d

27   1102, 1109 (9th Cir. 2007).  That parties' received pro bono representation does not alter their

28   entitlement to fees. *See, e.g.*, *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010); *Righthaven*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *LLC v. DiBiase*, Case No. 2:10-cv-01343-RLH, 2011 WL 5101938 (D. Nev. Oct. 26, 2011)

2   (Hunt, J.) (granting fees for pro bono work of Electronic Frontier Foundation and the law firm of

3   Wilson Sonsini Goodrich & Rosati).

4   **I.     EACH OF THE NINTH CIRCUIT'S FACTORS SUPPORTS AN AWARD OF ATTORNEYS' FEES.**

5       **A.     Democratic Underground and David Allen Are Prevailing Parties and Their**

6       **Success in this Action Was Total.**

7           With respect to the degree of Democratic Underground's success, there can be no dispute

8   that it was total.  As to Righthaven, Democratic Underground and Mr. Allen secured a dismissal

9   of Righthaven's sole claim against them for copyright infringement "on the merits" and "with

10  prejudice."  Dkt. 176 (Judgment Against Righthaven).  That this dismissal was based on

11  Righthaven's lack of ownership of a valid copyright in the News Article, one of the elements of

12  copyright infringement as well as a requirement for standing, does not change this.  The Ninth

13  Circuit and this Court have repeatedly approved prevailing party's fees in cases where dismissal

14  was based on a lack of subject matter jurisdiction, and where standing issues are intertwined with

15  the merits, including cases dealing with Righthaven's lack of ownership of its asserted copyrights

16  under the SAA and its iterations.  *See Malijack Productions v. GoodTimes Home Video Corp.*, 81

17  F.3d 881, 889 (9th Cir. 1996) (affirming grant of prevailing party's attorneys fees where the

18  plaintiff's claim was dismissed for lack of subject matter jurisdiction because the plaintiff did not

19  own the copyright being asserted); *DiBiase*, 2011 WL 5101938, at *1 ("Mr. DiBiase is a

20  prevailing party based on this Court's June 22, 2011 Order granting his motion to dismiss for lack

21  of subject matter jurisdiction based on Righthaven's lack of ownership of the copyright and

22  consequent lack of standing"); *see also U.S. v. 87 Skyline Terrace*, 26 F.3d 923 (9th Cir. 1994)

23  (overturning denial of prevailing attorneys' fees under Equal Access to Justice Act to party

24  obtaining dismissal for lack of subject matter jurisdiction).

25          Democratic Underground's totality of success on its Counterclaim is equally clear.  It filed

26  a single Counterclaim against Stephens Media for a declaration of non-infringement based on

27  Democratic Underground's hosting of an excerpt of the News Article on its website.  Dkt. 13.

28  After denials that the hosting was a fair use and not a volitional act of infringement in its answer

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   (Dkt. 125 ¶¶ 102-125), on summary judgment Stephens Media did not even contest Democratic

2   Underground's entitlement to judgment in its favor, conceding that it "does not contest the

3   substantive arguments presented by Democratic Underground on the issue of volitional act and

4   fair use as applied to the material facts of this case.  Accordingly, Stephens Media consents to the

5   entry of the Proposed Order submitted by DU as part of its moving papers."  Dkt. 174 (Stephens

6   Media's Limited Response to Motion for Summary Judgment) at 1:6-9.  This Court thereafter

7   granted summary judgment in favor of Democratic Underground holding that the hosting of the

8   excerpt was a protected fair use and that Democratic Underground had committed no volitional

9   act as required for infringement.  Dkt. 179 (Final Declaratory Judgment).

10      Accordingly, the degree of success favors awarding Democratic Underground attorneys'

11  fees.  Indeed, the fact that this victory substantially assisted in disposing of hundreds of other

12  cases brought by Righthaven for Stephens Media's benefit multiplies the success achieved.

### B. Stephens Media's and Righthaven's Pursuit of and Positions in this Lawsuit Were Frivolous and Objectively Unreasonable.

#### 1. Stephens Media's and Righthaven's Assertion that Righthaven Had Standing to Pursue its Claims Was Frivolous and Unreasonable.

16      While an opponent's unreasonableness is by no means required for an award of attorneys'

17  fees, "unreasonable" is an apt description for Righthaven and Stephens Media's litigation of this

18  case and the dragnet of similar hastily filed, meritless lawsuits in this district.  *Fogerty I*, 510 U.S.

19  at 532 n.18.  There was never any doubt under established law that Righthaven did not have

20  standing to pursue the claims it asserted at Stephens Media's behest.  That is why Righthaven and

21  Stephens Media worked so hard to hide the terms of the SAA from public view.  *Silvers*

22  unambiguously provides that assignment of a bare right to sue, as here, without any supporting

23  exclusive rights of copyright, is insufficient to confer standing upon a copyright plaintiff.  *Silvers*

24  *v. Sony Pictures Entertainment, Inc.*, 402 F.3d at 884.  Righthaven and Stephens Media failed to

25  disclose their true relationship to the Court.  They pushed the theory that only Righthaven had

26  ownership of the copyright for months, forcing Democratic Underground to respond to serial

27  briefs and amendments, restatements, and clarifications of Righthaven and Stephens Media's

28

1  SAA, and then to motions to reconsider and intervene.  All these efforts sought to create the

2  illusion of a valid ownership interest in the copyright by Righthaven, while still retaining that

3  actual ownership and control in Stephens Media.  In total, Democratic Underground had to

4  respond to 17 separate papers filed by Righthaven and Stephens Media all asserting Righthaven's

5  standing on the basis of three separate versions of the parties' SAA.[5]

6       None of this was supported by any reasonable legal or factual basis.  It was, as this Court

7  concluded, part of a "concerted effort to hide Stephens Media's role in this litigation" carried out

8  in "bad faith" which resulted in nothing but "wasted judicial resources, and needlessly increased

9  [] costs of litigation."  Dkt. 138 (Minutes of Proceedings on Order to Show Cause).  Ultimately, at

10  the conclusion of this copious briefing, the Court concluded that Righthaven did not have

11  standing to pursue this case , recognizing that Righthaven and Stephens Media's arguments and

12  constructions in support of Righthaven's standing were "flagrantly false—to the point that the

13  claim is disingenuous, if not outright deceitful."  *Democratic Underground*, 791 F. Supp. 2d at

14  973.[6]

15       Righthaven and Stephens Media's arguments were made all the more audacious by the

16  fact that Righthaven has admitted to having been aware of *Silvers* at the time the SAA was

17  drafted.  *See* Dkt. 78 (Righthaven's Motion for Reconsideration of Motion for Leave to File

18  Supplemental Memorandum) at 6 (claiming that the SAA was drafted to "account[] for *Silvers*

19  and any other relevant legal authorities").  Despite this knowledge, Stephens Media's General

20  Counsel, Mark Hinueber, signed a declaration admitting that the reason Stephens Media did not

21  

22  _____

[5] *See* Dkts. 1, 36, 38, 39, 56, 57, 58, 78, 80, 99, 100, 120, 126, 134, 136, 150, 151, and related
documents.

23  [6] This Court further rejected Righthaven and Stephens Media's "Clarification and Amendment"
of the SAA, recognizing that jurisdiction is determined at the time of the filing of the complaint

24  and cannot be changed *nunc pro tunc*. *Democratic Underground*, 791 F. Supp. 2d at 975.
Moreover, the Court recognized that even were such an alteration of the jurisdictional facts

25  possible, the amendment made to the SAA was likely not sufficient. *Id.* at n.1 ("the Court
expresses doubt that these seemingly cosmetic adjustments change the nature and practical effect

26  of the SAA").  Other courts in this district that subsequently ruled on the "Clarification and
Amendment" held it insufficient to create standing. *Righthaven, LLC v. Hoehn*, 792 F. Supp. 2d

27  1138, 1147 (D. Nev. 2011) (holding that May 9, 2011 "Clarification" of SAA provides
Righthaven only "illusory" rights and "does not provide Righthaven with any exclusive rights

28  necessary to bring suit").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

assign the copyright at issue here outright was because Stephens Media wanted to retain control

over its use. *See* Dkt. 101, Declaration of Mark Hinueber, ¶ 9 (discussing the parties' intent in

agreeing to the SAA and stating that "it was Righthaven's and Stephen's Media's [sic] intent in

this regard to acknowledge Stephens Media's ability to continue to use the assigned content as

licensee in the same general manner it had done prior to entering in the SAA. . . .").  In essence,

Righthaven and Stephens Media knowingly entered into a scheme, in contravention of *Silvers* and

the law of this Circuit, to attempt to divorce the rights to use and to sue over a copyright.

*Democratic Underground*, 791 F. Supp. 2d at 973-74 (discussing Righthaven's and Stephens

Media's intent, concluding "Righthaven and Stephens Media went to great lengths in the SAA to

be sure that Righthaven did not obtain any rights other than the bare right to sue" and that "the

plain language of the SAA conveys the intent to deprive Righthaven of any right, save for the

right to sue alleged infringers and profit from such lawsuits").

Nonetheless, from the very beginning of this lawsuit, Righthaven unreasonably and in bad

faith claimed that it was the owner of the copyright in the News Article and possessed *all of the*

*exclusive rights* under Section 106 of the Copyright Act for that work.  Dkt. 1 ("Complaint")

¶¶ 28, 35-38.  When confronted with arguments by Democratic Underground that Righthaven did

not have standing, both Righthaven and Stephens Media disingenuously pointed to the one page

Copyright Assignment from Stephens Media to Righthaven, failing to mention that no legally

significant rights were actually transferred by that document due to the operation of the SAA

behind the scenes.

Stephens Media, in particular falsely asserted that it had assigned the "totality of the

rights" in the works to Righthaven, and that Righthaven was the true owner of the works, pointing

to the Copyright Assignment between the two while neglecting to disclose the existence of the

SAA.  *See, e.g.*, Dkt. 38 (Stephens Media's Motion to Dismiss or Strike) at 4 ("Upon entering

into the Righthaven Assignment on or about July 19, 2010, Stephens Media did not own the

copyright, or any of its divisible rights, in and to the Work.  As of the date of this filing,

Righthaven remains the sole copyright owner of the Work"); Dkt. 56 (Reply on Motion to

Dismiss or Strike) at 2, 4 ("Stephens Media assigned Righthaven ***the totality of the rights in and***

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*to the literary works that is the subject of the Complaint*") (emphasis added); Dkt. 125 (Answer to Counterclaim) ¶¶ 4-5.[7]  Righthaven made similar misrepresentations, pointing to previous court decisions finding Righthaven had standing based on the Copyright Assignments, but again not disclosing the existence of the SAA that vitiated these assignments.   Dkt. 36 (Motion for Voluntary Dismissal) at 20-22.

Perhaps the most flagrant example of the attempted cover up is the systematic failure to disclose Stephens Media as an interested party—in this case or any of its other lawsuits in this district—despite the fact that Stephens Media retained a 50% monetary interest in any settlement or award to Righthaven.  Dkt. 5 (Certificate of Interested Parties).  Indeed, Stephens Media went so far as to rely on Righthaven's false Certificate of Interested Parties itself as a purported basis for dismissal. Dkt. 56 at 10:20-22 ("Stephens Media has never been identified or disclosed as a party who has a direct pecuniary interest in the outcome of any Righthaven case. And for good reason . . .").  For this willful concealment of Stephens Media's true relationship with Righthaven, this Court sanctioned Righthaven $5,000, and ordered the transcript of its hearing to be filed in every other Court in which similar litigation was proceeding, specifically noting that actions were demonstrative of "bad faith" and "needlessly increased the costs of ligation[.]"  Dkt. 138 ("The Court finds there is a significant amount of evidence that Righthaven made intentional misrepresentations to the Court and also engaged in a concerted effort to hide Stephens Media's role in this litigation.  This conduct demonstrated Righthaven's bad faith, wasted judicial resources, and needlessly increased the costs of litigation.")

Given these facts, there could scarcely be any clearer case that Stephen Media's and Righthaven's claims of Righthaven's ownership were frivolous, in bad faith, and at least objectively unreasonable, both legally and factually.  *See Fogerty I*, 510 U.S. at 534 n.19; *Perfect 10*, 488 F.3d at 1120.  Indeed, this Court has already concluded as much, finding their arguments to the contrary "disingenuous, if not outright deceitful."  *Democratic Underground*, 791 F. Supp. 2d at 973.

---

[7] Stephens Media has made numerous misstatements of fact to the Court.  For a more extensive list, *see* Democratic Underground's Reply to Stephens Media's Response to the Supplemental Memorandum (Dkt. 108) at 2-3.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**2.      Righthaven and Stephens Media Were Unreasonable in Denying that Democratic Underground Made a Fair Use of the News Article.**

It was likewise frivolous and unreasonable for Righthaven and Stephens Media to maintain that Democratic Underground's passive hosting of a short excerpt of less than 10% of the News Article for the purpose of allowing commentary and criticism about political issues was infringing.  Throughout this lawsuit both Stephens Media and Righthaven denied fair use.  *See, e.g.*, Dkt. 58 at 12-19 (Righthaven's Opposition to Motion for Summary Judgment); Dkt. 125 ¶¶ 102-125 (Stephens Media's Answer to Democratic Underground's Counterclaim).  Before this suit was filed, Righthaven had an obligation to investigate and make a determination of whether the post was a fair use. Fed. R. Civ. P. 11.  Obviously, this did not happen here. Neither Righthaven nor Stephens Media presented any evidence to this court supporting any application of the fair use factors in their favor.  *See* Dkts. 58 (Righthaven summary judgment opposition); 174 (Stephens Media limited response to summary judgment).

That these denials were unreasonable is supported by more than just this Court's order finding that the use at issue was fair.  Dkt. 179.  Righthaven's and Stephens Media's own concessions make the point.  Righthaven acknowledged in another case in this district that an even larger excerpt from a news article would have been a fair use.[8]  Righthaven also moved to voluntarily dismiss its claims in November, 2010, after Democratic Underground obtained experienced, competent counsel to defend it.  Dkt. 36.  The problem—of Righthaven's and Stephens Media's own making—was that they refused to simply dismiss, walk away, and let the attorneys' fees fall where they might at that early point.  Instead, they conditioned dismissal on the unreasonable proposition that, after filing a baseless claim against Defendants plainly protected by fair use, they should be immunized from the fees they inflicted.

Even more stark, when Stephens Media was actually confronted with a motion for

---

[8] In opposition to the motion to dismiss in *Realty One*, Righthaven asserted that had the copying been limited to the first two paragraphs of the article it would likely have constituted a fair use. *See Righthaven LLC v. Realty One Group, Inc.*, Case No. 2:109-cv-0136-LRH-PAL, Dkt. 12 at 10-11.  In that case, the first two paragraphs contained three sentences of the twenty eight sentence article, more than the 10% that was copied here. *See id.* Dkt. 1, Exs. 2-3.

1    summary judgment, it expressly contradicted its previous denials and affirmed that there was no

2    genuine dispute that the use at issue here was a protected fair use and included no volitional act.

3    Dkt. 174 (Stephens Media's Limited Response to Summary Judgment). No facts changed

4    between Stephens Media's denial of fair use and its concession in November of 2011. All that

5    changed was that a year of Democratic Underground's litigation resources had been consumed.

6         The initiation of this lawsuit by Righthaven in furtherance of profits for Stephens Media,

7    as well as Stephens Media's decision to not stop this lawsuit (as was its right), were done without

8    any reasonable basis to believe that Democratic Underground or Mr. Allen were infringing any

9    copyright of Righthaven. As such, this factor strongly favors an award of attorneys' fees to

10   Democratic Underground.

11   **C.    Righthaven and Stephens Media Pursued this Lawsuit and Their Litigation
             Campaign for Improper Motives.**

12

13        Righthaven and Stephens Media had an improper motivation in the pursuit of this lawsuit

14   and their litigation campaign more generally. They sought to shakedown websites operators and

15   bloggers for nuisance-value settlements with threats of seizure of their domain name and huge

16   statutory damage awards—not to mention the cost of defending in this remote forum—regardless

17   of whether those defendants' uses of the works at issue were actually infringing. As this Court

18   explained, "Righthaven and Stephens Media have attempted to create a cottage industry of filing

19   copyright claims, making large claims for damages and then settling claims for pennies on the

20   dollar." Dkt. 94 at 2 (Order on Motion for Reconsideration); *see also Righthaven, LLC v. Hill*,

21   Case No. 1:11-cv-00211-JLK (Dkt. 16) at 2 (D. Colo. April 7, 2011) ("Plaintiff's wishes to the

22   contrary, the courts are not merely tools for encouraging and exacting settlements from

23   Defendants cowed by the potential costs of litigation and liability."). In this action, as in their

24   other actions, suit was filed without any prior notice or request to takedown the purported

25   infringement. Allen Decl. ¶¶ 1-2. The strategy was not to curtail infringement, but to spring a

26   "gotcha"—and then lever the cost and threat of litigation. *See* Complaint, Dkt. 1 (asking for a

27   finding of "willful infringement" and turnover of domain name, based on the posting of only 10%

28

Fenwick & West LLP
Attorneys at Law
San Francisco

1   of an article, which was removed immediately upon receipt of notice of the claim).[9]

2        While Righthaven may have been the named Plaintiff in this lawsuit, Stephens Media

3   nevertheless "approved or consented" to the suit against Democratic Underground and had the

4   power to stop it anytime it wanted.  *See Democratic Underground*, 791 F. Supp. 2d at 978

5   ("Contrary to its assertions in its moving papers, Stephens Media has threatened Democratic

6   Underground with litigation because, according to the SAA, Stephens Media approved or

7   consented to suit against Democratic Underground"); Dkt. 79-1, Ex. A (SAA) § 3.3 (discussing

8   Stephens Media's ability to disapprove any proposed litigation by Righthaven on a Stephens

9   Media copyright); Pulgram Decl. Ex. H (letter from Righthaven to Stephens Media requesting

10  that Stephens Media advise Righthaven "within five business days, in accordance with Section

11  3.3" should Stephens "wish for Righthaven to refrain from pursuing infringement actions").

12  Stephens Media's then current CEO, Sherman Frederick, pithily summed up his company's

13  motives to intimidate, stating: "don't steal our content.  Or, I promise you, you will meet my little

14  friend called Righthaven."  Dkt. 47 Ex. C.

15       Courts have repeatedly rejected these types of litigation programs as illegitimate and

16  supportive of an award of fees. *See, e.g., Video-Cinema Films, Inc. v. CNN, Inc.*, 2003 U.S. Dist.

17  LEXIS 4887, at *15-16 (S.D.N.Y. Mar. 31, 2003); *Bridgeport Music, Inc. v. Diamond Time, Ltd*.,

18  371 F.3d 883, 894 (6th Cir. 2004) (attorneys' fees were appropriate where plaintiff's "choice to

19  sue hundreds of defendants all at the same time, regardless of the strength of the individual

20  claims" resulted in their "dragnet inevitably [sweeping] up parties against whom they had little or

21  no chance of succeeding").

22       In *Video-Cinema*, much as here, the plaintiff had brought a series of copyright

23  infringement lawsuits against news organizations for having used excerpts of the movie *G.I. Joe*

24  in television obituaries for the actor Robert Mitchum.  *Id.* at *13-14.  Much as with Righthaven

25  and Stephens Media, it was only after these excerpts were used that the plaintiff acquired the

26

27  _____
    [9] As this Court found, Righthaven's demand for turnover of a domain name had no basis in law.
28  *DiBiase*, 2011 WL 1458778, at *2.  Its inclusion was solely for the *in terrorem* effect, to push for
    settlements.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

rights to the copyright in "an elaborate scheme to place himself in a position to sue" and then to demand quick settlements—though in *Video-Cinema*, as opposed to here, actual rights were transferred. *Id*. Also, much as in the present case, the court there concluded that airing the excerpts was a protected fair use. *Id*. Addressing motivation, the *Video-Cinema* court concluded that "Plaintiff's conduct was nothing more than an obvious effort to use the Copyright Act to secure payment from Defendants for their fair use," a motivation the court unequivocally termed "improper." *Id*. at 15.

This lawsuit was no different. Righthaven, with Stephens Media's approval and consent, initiated this case against Democratic Underground with the hopes of securing a swift settlement, to be shared with Stephens Media, regardless of the fact that the use at issue here was non-infringing. For good measure, it brought in Mr. Allen as an individual—without a shred of evidence to support any claim against him personally. Allen Decl. ¶¶ 1-2 (Mr. Allen did not even know of the alleged use until informed of this action by a competitor of the *LVRJ*). Righthaven and Stephens Media's ill motives to this end support an award of full attorneys' fees.

### D.     An Award of Fees to Democratic Underground Is Supported by the Interests of Compensation and Deterrence.

Considerations of compensation and deterrence strongly support an award of attorneys' fees in this case as well. As to deterrence, an award of fees is necessary to dissuade these parties and others from any similar scheme of shakedown lawsuits threatening staggering statutory damage awards and seizure of websites. Righthaven and Stephens Media pursued these claims such that numerous instances of legitimate fair use, like that here, would necessarily be dragged into their litigation machine. *See, e.g.*, *Hoehn*, 792 F. Supp. 2d at 1150 (granting summary judgment for fair use against Righthaven); *Righthaven, LLC v. Jama*, 2011 WL 1541613, at *2 (D. Nev. Apr. 22, 2011) (same); *Righthaven, LLC v. Realty One Group, Inc.,* 2010 WL 4115413, at *3 (D. Nev. Oct. 19, 2010) (granting motion to dismiss against Righthaven on fair use grounds). This approach to copyright litigation has a serious potential, and likely the specific aim, to chill legitimate speech in the form of fair uses of copyrighted works, and courts have recognized that it should be deterred for precisely this reason. *See Video-Cinema*, 2003 U.S. Dist.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

LEXIS 4887, at *15-16 ("fees are appropriate . . . to deter future copyright owners from using the threat of litigation to chill other fair uses."); *see also Mattel, Inc. v. Walking Mountain Productions*, 2004 U.S. Dist. LEXIS 12469, at *7 (C.D. Cal. June 24, 2004) (Plaintiff "brought objectively unreasonable copyright claims against an individual artist. This is just the sort of situation in which this Court should award attorneys fees to deter this type of litigation which contravenes the intent of the Copyright Act").   Speech was chilled in this very case, as Democratic Underground took down the excerpt immediately upon receiving notice, rather than face even a small risk of the disabling remedies being threatened.  Dkt. 48 (Declaration of David Allen in Support of Defendants' Consolidated Brief in Opposition to Righthaven's Motion for Voluntary Dismissal and Defendants' Motion for Summary Judgment) ¶ 24.

As to compensation, Democratic Underground and its pro bono attorneys should be made whole for the significant time and effort they were forced to incur in protecting and ultimately vindicating important rights, both for Democratic Underground and the public.  Righthaven and Stephens Media took an absolutist and extreme position.  They first conditioned a proposed dismissal on not a cent being awarded for their opponent's costs. They then proceeded to litigate meritless and disingenuous claims in a manner that prolonged and extended the litigation. Democratic Underground no doubt could have capitulated for a small fraction of the amount that was required to overcome the resistance of Righthaven and Stephens Media.  But had it done so, it would have paid an unjust toll.  Unless counsel can obtain compensation for a defense such as this, there will be no counterbalance to stop such an illegitimate scheme.

**E.**     **An Award of Democratic Underground's Attorneys' Fees Would Support the Purposes of the Copyright Act.**

An award of fees here will unquestionably further the purposes of the Copyright Act. First, in securing and gaining public disclosure of the SAA and proving that Righthaven did not have standing to pursue this or any of its lawsuits, Democratic Underground and Mr. Allen played a significant role in clearing out the over 200 lawsuits that Righthaven had filed in this district. Because Righthaven's "litigation strategy  . . . does nothing to advance the Copyright Act's purpose of promoting artistic creation," helping to put a stop to it certainly promotes the purposes

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of the Copyright Act.  *Jama*, 2011 WL 1541613, at *5.

Democratic Underground's successful pursuit of its fair use theory against Stephens Media also well served the purposes of the Copyright Act.  It helped to demarcate the boundaries of copyright law and the permissible use of excerpts of news articles on the Internet.  *Fogerty I*, 510 U.S. at 527 ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible.").  Courts routinely award attorneys' fees under Section 505 to parties successful on fair use grounds, as "[t]o hold otherwise would diminish any incentive for defendants to incur the often hefty costs of litigation to defend the fair use doctrine." *See Video-Cinema,* 2003 U.S. Dist. LEXIS 4887, at *15-16; *see also Mattel Inc. v. Walking Mtn. Productions,* 353 F.3d 792, 816 (9th Cir. 2003) (successful fair use defense can further purposes of copyright act, reversing denial of fees and remanding*); Tavory v. NTP, Inc.*, 297 Fed. Appx. 986, 991 (Fed. Cir. 2008) (awarding fees to a prevailing defendant on a fair use defense); *Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403, 411 (5th Cir. 2004) (same); *Bond v. Blum*, 317 F.3d 385, 398 (4th Cir. 2003) (same); *Mattel, Inc.*, 2004 U.S. Dist. LEXIS 12469, at *4-5 (same). Courts recognize the importance of "encouraging the creators of works of commentary and criticism to litigate the fair use defense . . . by compensating them for their legal expenses [as this] will enrich the public by increasing the supply and improving the content of commentary and criticism." *Hofheinz v. AMC Prods., Inc.*, 2003 U.S. Dist. LEXIS 16940, at *20-21 (S.D.N.Y. Sep. 3, 2003).

The public significance of the result in this action has been widely recognized.  A "Google" search will reveal that this litigation received close attention from numerous media. This includes being recently named as the "Copyright Case of the Year" by *Managing Intellectual Property* magazine. http://www.managingip.com/Article/3004046/Quinn-Emanuel-cleans-up-with-awards-for-smartphone-work.html.

As each of the factors considered by the Ninth Circuit in determining whether to award prevailing party fees strongly supports an award in this case, Democratic Underground and Mr. Allen should be awarded their full reasonable attorneys' fees.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  DEMOCRATIC UNDERGROUND'S ATTORNEYS' FEES ARE REASONABLE AND AT LEAST THE LODESTAR SHOULD BE AWARDED.

In determining an appropriate award of prevailing party attorneys' fees, courts employ the lodestar method.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Id.*  After determining the presumptive lodestar fee, the court may adjust the award either upward or downward based on factors that are not subsumed in the determination of the lodestar itself including (i) time limitations imposed by the client or other circumstances, (ii) the amount involved and the results obtained, (iii) the experience, reputation, and ability of the attorneys, (iv) the desirability of the case, (v) the nature and length of the professional relationship with the client, and (vi) awards in similar cases.  *Van Asdale v. International Game Tech.*, Case No. 3:04-cv-00703-RAM, 2011 WL 2118637, at *2 (D. Nev. May 24, 2011) (citing factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) and explaining that other factors cited by *Kerr* have since been subsumed into the lodestar analysis or otherwise disapproved by the Ninth Circuit).  Under this lodestar formula, Democratic Underground and Mr. Allen seek $774,683.25 in attorneys' fees.[10]

### A.  Democratic Underground Attorneys' Worked a Reasonable Number of Hours.

Democratic Underground and Mr. Allen were represented in this case by attorneys from the EFF and Fenwick & West, both in San Francisco, California.[11]  To determine the reasonable hours worked in winning this case, attorneys from EFF and Fenwick started by considering the

---

[10] These figures only take into account work performed by Defendants' attorneys up until March 31, 2012.  Because work on this motion remains ongoing, Defendants' will update this figure to take further account of the fees incurred in this motion in its reply submission to the Court.

[11] Democratic Underground and Mr. Allen were initially represented by attorneys, including Andrew Bridges, from Winston & Strawn, LLP.  After an issue of a potential conflict of interest was raised, counsel from Winston & Strawn was substituted out for counsel from Fenwick.  Defendants seek no fees for the tens of thousands of dollars in work incurred by counsel from Winston & Strawn in initially defending this action and bringing Democratic Underground's counterclaim against Righthaven and Stephens Media.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   total hours worked by their respective teams, and from these total hours, took a conservative

2   approach, striking or reducing time entries where the work could be viewed as duplicative or

3   where the work took longer than might have reasonably been expected. *See* Declaration of Kurt

4   Opsahl ("Opsahl Decl.") ¶¶ 12, 13, 30; Pulgram Decl. ¶¶ 12-14. For instance, in total, Fenwick

5   has reduced its hours by approximately 25% of those recorded to ensure limitation of its request

6   to a reasonable figure. *Id.* ¶ 14.

7       As evidenced by the Declaration of Kurt Opsahl, attorneys from EFF are requesting 486

8   hours in this case, following the reductions discussed above. Opsahl Decl. Ex. A. The principal

9   attorneys for whom fees are sought include Kurt Opsahl and Corynne McSherry, each of whom

10  specializes in this area of practice and has 15 and 10 years experience. Attorneys from Fenwick

11  are requesting a total of 1346.6 hours, again following the reductions discussed above. Pulgram

12  Decl. Ex E. The attorneys for whom fees are sought include Laurence Pulgram, a senior partner

13  and one of the leading copyright litigators in the nation, who has extensive experience in fair use

14  cases in particular. Fees are also sought for associates Jennifer Johnson (over four years

15  experience), Clifford Webb (over three years experience) and David Marty (one-and-a-half years

16  experience), and for James Phan (senior paralegal) and Lisa Magee and Kim Ragab (paralegals).

17  Other attorneys' and staff at both EFF and Fenwick worked on this matter, but Democratic

18  Underground does not seek an award of their fees. Nor does Democratic Underground seek an

19  award of fees incurred by local counsel, Chad Bowers. In addition, prior to finding pro bono

20  counsel at EFF and Fenwick, Mr. Allen was forced to incur and pay $3,375 dollars in legal fees in

21  defending against Righthaven's lawsuit for representation by counsel in Washington D.C. Those

22  fees are requested to be awarded. Allen Decl. ¶ 3 Ex. A.

23      The foregoing numbers fit comfortably within a reasonable range for the number of hours

24  that needed to be worked in a case of this magnitude and complexity. The intransigence of

25  Righthaven and Stephens Media's resistance, perhaps as a result of the significance of the stakes,

26  have substantially increased the scope of work required. There have been nearly two hundred

27  docket entries in this case to date—far more than any other Righthaven-related case. Democratic

28  Underground's attorneys prepared an answer to Righthaven's complaint and drafted a detailed

Counterclaim against Righthaven and Stephens Media.  Dkt. 13.  They were forced to respond to

Righthaven's improper motion for voluntary dismissal (Dkt. 36) and Stephens Media's and

Righthaven' disingenuous motions to dismiss the counterclaim.  Dkt. 39.  They needed to file two

separate motions for summary judgment on the merits, first against Righthaven (mooted on the

merits after briefing on standing issues), and then Stephens Media.  Dkts. 45, 168.  Once the SAA

surfaced, they were then forced to file and respond to serial briefing on the issues of Righthaven's

standing and Stephens's Media's ownership of the copyright at issue, including reviewing and

analyzing three separate iterations of the Righthaven and Stephens Media's SAA, along with

Righthaven's Operating Agreement.  Even following the Court's order finding that Righthaven

had no standing and that Stephens Media was the real party in interest, Democratic

Underground's attorneys then had to respond to motions to intervene and for reconsideration on

these same topics, to which a consolidated response was filed.  Dkts. 120, 126, 134, 136.

Democratic Underground's counsel additionally responded to and appeared in support of

an order to show cause why Righthaven should not be sanctioned for failing to disclose the

existence and nature of its true relationship with Stephens Media in this case.  Dkt. 133.  They

issued substantial discovery to Righthaven and Stephens Media and  had to engage in lengthy

meet and confer efforts when neither provided sufficient responses.  To this end, they were

eventually forced to file a consolidated motion to compel, two separate replies, and attend a

hearing on the motion as to Stephens Media and Righthaven.  Dkts. 95, 112, 114.

None of these were simple or ministerial tasks.  Each required substantial analysis and

investigation of the complex issues presented by Righthaven and Stephens Media's claims and

scheme.  Indeed, as this Court already recognized, it was Righthaven and Stephens Media's

actions in concealing much of this that has multiplied the hours that the Court and Democratic

Underground's attorneys were forced to incur.  Dkt. 138 (Minutes of Proceedings on Order to

Show Cause).  All in all, the number of hours worked by counsel for Democratic Underground

and Mr. Allen are conservatively stated and reasonable.

**B.**     **The Rates Sought Are Reasonable Given the Complex Nature of this Case**.

Likewise, the rates applied by counsel for Democratic Underground and Mr. Allen, as

detailed by the supporting declaration of Kurt Opsahl and Laurence Pulgram, are reasonable.

EFF attorneys for Defendants billed their time in a range from $400 and $600 an hour, in

accordance with EFF's 2010 billing rates (or 2011 billing rates for attorneys hired in 2011).  As

explained by the Declaration of Kurt Opsahl, Mr. Opsahl and co-counsel at EFF have substantial

experience and expertise in litigating complex copyright and intellectual property cases such as

this.  Opsahl Decl. ¶¶ 3, 9, 10, 14, 17, 20, 23.  Further, courts across the country have found these

rates to be reasonable and have awarded EFF fees according to them.  See *Elec. Frontier*

*Foundation v. Office of the Director of National Intelligence*, No. 07-05278 SI, 2008 WL

2331959 (N.D. Cal. June 4, 2008) (Judge Illston found reasonable the 2007 hourly rates of EFF's

attorneys, and awarded a total of $51,540.00 in attorneys' fees at those rates); *Apple v. Does*

(Santa Clara Superior Ct., Case No. 1-04-cv-032178) (EFF was awarded attorneys' fees in

accordance with their lawyers' 2006 and 2007 rates); *In re Sony BMG CD Technologies*

*Litigation* (S.D.N.Y. Case No 1:05-cv-09575-NRB) (EFF attorneys were paid fees at their hourly

rates as part of the settlement of the action in June 2006); *OPG v. Diebold*, 337 F. Supp. 2d 1195

(N.D. Cal. 2004) (EFF attorneys were paid fees after a summary judgment victory at the

organization's 2004 hourly rates).

   Attorneys for Fenwick, as explained in the supporting Declaration of Laurence Pulgram,

are requesting rates in between $270 and $600 an hour in this matter.  Pulgram Decl. ¶¶ 4-7.

These rates are in line with their rates in 2010, and thus significantly beneath their rates in 2011

and 2012, when the bulk of the litigation occurred.  *Id*.  The exception is Mr. Pulgram, for whom

the rate requested in this action ($600) is some 20% less than even his 2010 standard rate.  *Id*. ¶ 4.

The concession to these limited rates, as well as the reduction in hours of some 25%, reflects

Fenwick's interest in obtaining fair compensation, not some windfall, for the times invested.

These rates are entirely reasonable for this case.  Mr. Pulgram has more than twenty five years

experience litigating some of the more complex and cutting edge copyright cases in the country.

*Id*. ¶ 4, Ex. A.  Co-counsel at Fenwick also have substantial experience and expertise in dealing

with complex copyright and intellectual property matters.  *Id*. ¶¶ 5-7.

   Fenwick's market rates are the default for making the lodestar calculation.  *See Moore v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  *Jas H. Matthews & Co.*, 682 F.2d 839, 840 (9th Cir. 1982) ("Unless counsel is working outside

2  his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually

3  counsel's normal billing rate.").  Moreover, these rates are in line with the rates charged by other

4  comparable law firms.  Pulgram Decl. ¶ 9.  Additionally, numerous courts have approved

5  Fenwick's rates—and Mr. Pulgram's team in particular—as reasonable.  *See Yue v. Storage Tech*

6  *Corp.*, 2008 U.S. Dist. LEXIS 68920, at *13-14 (N.D. Cal. Sep. 5, 2008) (report and

7  recommendation in copyright case, approving 2008 rate of $690 for Mr. Pulgram), adopted by

8  2008 U.S. Dist. LEXIS 68801 (N.D. Cal. Sept. 5, 2008); *Netbula v. Chordiant Software, Inc.*,

9  case No. 5:08-cv-00019-JW, Dkt. 594 (N.D. Cal. Dec. 17, 2010) (approving 2008 rate of $690 for

10  Mr. Pulgram); *Jones v. Corbis Corp.*, CV 10-8668-SVW CWX, 2011 WL 4526084 (C.D. Cal.

11  Aug. 24, 2011) (in case involving right of publicity and copyright issues, approving rates

12  specially discounted for that client of $652.50 for Mr. Pulgram).

13      That this case required specialized counsel to address the complex copyright issues

14  presented can be subject to little dispute.  Both Righthaven and Stephens Media, with much

15  fanfare, hired a New York based Kirkland & Ellis copyright litigation partner, Dale Cendali, to

16  represent them in this matter.  Dkt. 119 (Pro Hac Vice application by Dale Cendali to appear on

17  behalf of both Righthaven and Stephens Media); Pulgram Decl. Ex. D.  Ms. Cendali's billing rate

18  in this case has not been publicly disclosed.  That said, colleagues of Ms. Cendali at Kirkland &

19  Ellis have publicly available billing rates for 2011 with an *average* of $817.93 an hour for

20  partners, $527.10 an hour for associates, and $219.55 an hour for paralegals, all well above both

21  EFF's and Fenwick's billing rates in this case.  Pulgram Decl. ¶ 10, Exs. B-C.  Given this and the

22  substantial support for the reasonableness of EFF's and Fenwick's fees in this matter, the rates

23  provided in the supporting declarations of Kurt Opsahl and Laurence Pulgram should be used in

24  calculating the lodestar figure.

25      **C.    This Case Warrants at Least an Award of the Lodestar Amount, If Not a
26  Multiplier.**

27      This case warrants at least an award of the full lodestar figure for Democratic

28  Underground and Mr. Allen.  Defending against Righthaven's claims, prosecuting the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Counterclaim and exposing Stephens Media as the real party in interest were difficult tasks that

2  required significant expertise.  Indeed, Righthaven's previous successes in convincing courts, at

3  the pleading stage, that it had standing to pursue these types of actions demonstrates as much.

4  *See Righthaven, LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJDGWF (D.

5  Nev. Mar. 30, 2011) (Dkt. 28); *Righthaven, LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-

6  00484-GMNLRL, 2010 WL 4386499 (D. Nev. Oct. 28, 2010); *Righthaven, LLC v. Dr. Shezad*

7  *Malik Law Firm P.C.*, Case No. 2:10-cv-00636-RLH-RJJ, 2010 WL 3522372 (D. Nev. Sept. 2,

8  2010).  Moreover, in addition to achieving a total vindication of Democratic Underground's

9  rights, counsel in this case further aided to clear hundreds of Righthaven's illegitimate copyright

10  infringement suits from the this District's dockets.  Counsel did this without any prior

11  relationship to Mr. Allen or his website, and on a pro bono basis, with no assurance of any

12  recovery.  That meant Fenwick had to divert significant attorney resources away from

13  representing paying clients to ensure that Democratic Underground and Mr. Allen received able

14  representation.  Likewise, EFF had to pass up other opportunities to provide legal services in

15  order to take on this case.  Especially given the significant public benefit created by the winning

16  result, the "non-subsumed *Kerr* factors" suggest that an enhancement of the lodestar would be

17  warranted in this case, should the Court choose to do so.  *Van Asdale*, 2011 WL 2118637, at *2.

18  **D.   Democratic Underground's Attorneys' Have Absorbed All Costs in this**
            **Litigation, to be Paid Only from the Fee Award.**

19

20  Under the Copyright Act, as prevailing parties, Democratic Underground and Mr. Allen

21  are entitled to "full costs" in addition to fees.  17 U.S.C. § 505; *Twentieth Century Fox Film*

22  *Corp. v. Entertainment Distribution*, 429 F. 3d 869, 885 (9th Cir. 2005) (Section 505 authorizes

23  an award of non-taxable costs in addition to fees); *see also* Fed. R. Civ. P. 54 (providing for

24  recovery of taxable costs).  Democratic Underground incurred in excess of $30,000 in taxable and

25  non-taxable costs in this action for research fees, travel expenses, delivery costs, copying costs,

26  document preparation, and pro hac vice fees.  *See* Pulgram Decl. ¶ 17; Opsahl Decl. ¶ 29; Allen

27  Decl. ¶ 3; Ex. A.  In addition to otherwise substantially reducing the fees actually incurred in

28  successfully litigation this case, Democratic Underground's attorneys have written off all of these

1   costs.  Pulgram Decl. ¶ 17; Opsahl Decl. ¶ 29.  This further demonstrates the reasonableness of

2   the fees sought by Democratic Underground in successfully litigating this case.

3   **III.    STEPHENS MEDIA AND RIGHTHAVEN SHOULD BE JOINTLY AND
             SEVERALLY LIABLE FOR DEMOCRATIC UNDERGROUND'S ATTORNEYS'**

4   **FEES.**

5          Under both federal and Nevada law, where attorneys' fees are incurred in prosecution or

6   defense of a party's claims against multiple opposing parties, the losing parties are jointly and

7   severally liable for an award of prevailing party's fees incurred where there are common issues

8   between the parties such that the defense or prosecution of claims becomes intertwined.  *See, e.g.,*

9   *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2007) (where same claims were

10  raised by all of the plaintiff, they were all jointly and severally liable for all defendant's fees); *In*

11  *re USA Commercial Mortgage Co.*, 802 F. Supp. 2d 1147, 1180 (D. Nev. 2011) (holding award

12  of attorneys' fees should be borne jointly and severally by all defendants where issues were

13  "inextricably intertwined" and "common to" all defendants); *Mayfield v. Koroghli*, 124 Nev. 343,

14  346 (2008) (where issues litigated by a prevailing party against multiple defendants were

15  sufficiently common to make apportionment impracticable then joint and several liability was

16  appropriate); *see also Turner v. District of Columbia Board of Elections*, 354 F.3d 890, 898 (D.C.

17  Cir. 2006) ("a plaintiff's fully compensatory fee for claims 'centered on a set of common issues'

18  against two or more jointly responsible defendants should be assessed jointly and severally");

19  *Anderson v. Griffin*, 397 F.3d 515, 522-23 (7th Cir. 2005) ("the presumptive rule is joint and

20  several liability unless it is clear that one or more of the losing parties is responsible for a

21  disproportionate share of the costs").  The only context in which responsibilities for fees should

22  be apportioned between the losing parties is where the issues involved and the litigation of those

23  issues are readily distinguishable.  *See Turner*, 354 F.3d at 898 ("if claims are not attributable to

24  all defendants and are not 'centered on a set of common issues,' i.e., claims that are 'truly

25  fractionable,' fees should be apportioned, 'in order to ensure that a defendant is not liable for a

26  fee award greater than the actual fees incurred against that defendant'") (quoting *Jones v. Espy*,

27  10 F.3d 690, 691 (9th Cir. 1993)).

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   The Court may also consider the relative ability or inability of parties to pay in making a

2   determination of whether fees should be joint and several.  *Id.* ("a number of courts have upheld

3   the imposition of joint and several liability for a fee award where there existed a question as to

4   whether the fee would be collectible from one of the defendants") (quoting *Koster v. Perales*, 903

5   F.2d 131, 138 (2d Cir. 1990).

6   This case is a prime example of one where joint and several liability for fees is

7   appropriate.  The primary issues litigated in this case were common to both Stephens Media and

8   Righthaven: whether Righthaven or Stephens Media owned the copyrights at issue in this case;

9   whether the hosting of an excerpt of the News Article on Democratic Underground's website was

10  a fair use; whether posting by the user was fair; whether it constituted a volitional act on the part

11  of the Defendants for the purposes of infringement.  Those issues permeated all motions filed by

12  Righthaven or Stephens Media or Democratic Underground.  And their outcome directly

13  implicated Stephens Media just as much as Righthaven, since their fates on all issues rose and fell

14  together.  Thus, it is no surprise that Ms. Cendali was engaged to represent both Counterclaim

15  Defendants.  Dkt. 119.  Indeed, the lions' share of the work in this case was exposing Righthaven

16  and Stephens Media's illegal scheme—whereby Righthaven would obtain the bare right to sue

17  under a copyright, in violation of *Silvers*, and Stephens Media would retain actual ownership and

18  control—and then defending against efforts to avoid this Court's ruling on that basis.

19  Beyond the commonality of the issue between Righthaven and Stephens Media, the very

20  nature of their scheme counsels for imposition of any fee award against Righthaven and Stephens

21  Media on a joint and several basis.  Righthaven, under the terms of the SAA , operated as the *de*

22  *facto* agent of Stephens Media. *See* n. 1, *supra*.  The suit was brought after Stephens Media

23  approved of the "assignment" of the copyright in issue, with Stephens Media standing to recover

24  50% of the proceeds.  Dkt. 38 Ex. 1; SAA § 5   Stephens Media had the absolute ability to stop

25  Righthaven from pursuing this lawsuit under the SAA, either before or after it was filed.  *See,*

26  *e.g.*, Pulgram Decl. Ex. H  But Stephens Media chose not to do so, even after being itself joined

27  as a Counterclaim Defendant, thereby approving the suit.  *See Democratic Underground*, 791 F.

28  Supp. 2d at 978 ("Contrary to its assertions in its moving papers, Stephens Media has threatened

Fenwick & West LLP
Attorneys at Law
San Francisco

1   Democratic Underground with litigation because, according to the SAA, Stephens Media

2   approved or consented to suit against Democratic Underground"); SAA § 3.3.  Supporting this,

3   Stephens Media's own General Counsel, Mark Hinueber, has made numerous public statements

4   discussing its control over who Righthaven, acknowledging, for instance, that "I can tell

5   Righthaven not to sue somebody."  Dkt. 47 ¶¶ 7, 13-15, Exs. B, H-J.

6        As this Court put it, "the arrangement between Righthaven and Stephens Media is nothing

7   more nor less than a law firm."  Dkt. 137 at 14:18-20.  Had Righthaven and Stephens Media

8   simply entered into an attorney-client relationship openly, instead of creating a complex scheme

9   whereby Stephens Media would appear to assign copyrights to Righthaven but retain a 50%

10  interest in recoveries, there would be no question that Stephens Media would be responsible for

11  Democratic Underground's fees here.[12]  Stephens Media should not be able to exploit the precise

12  scheme this Court held improper in order to avoid part of the fees its scheme imposed.

13       Moreover, Righthaven's likely inability to pay here also favors an award on a joint and

14  several basis.  As this Court is likely aware, Righthaven has defaulted on all orders to pay

15  attorneys' fees in its unsuccessful copyright infringement scheme. Righthaven has never paid the

16  sanctions award in this action.  In *Righthaven v. Hoehn*, Judge Pro recently issued an order

17  transferring all of Righthaven's intellectual property to a receiver for auction in order to cover

18  some of the $34,045.50 attorneys' fee award in that case, which Righthaven refused to post a

19  supersedeas bond to cover.  *Righthaven v. Hoehn,* Case No. 2:11-cv-00050-PMP-RJJ, Dkt. 90.

20  Ms. Cendali, on March 21, 2012, withdrew from her representation.  Righthaven's other attorney,

21  Mr. Mangano, has also stopped appearing in any actions,[13] and Righthaven has defaulted on its

22  appeal. Dkts. 183, 185.  Righthaven's inability to pay is not surprising given that it was

23  ██████████████████████████████████████████████████████████████

24  ███████, and subsequently brought hundreds of copyright infringement lawsuits.  For all these

25  _____
    [12] As part of its attempt to isolate itself from liability, Stephens Media acknowledged that

26  "Stephens Media and Righthaven may be liable for an Infringer's attorneys' fees," but provided
    that Righthaven would indemnify Stephens Media.  SAA § 11.

27  [13] Steven Gibson, CEO or Righthaven, has recently complained to this Court of Mr. Mangano's
    failures to appear before this Court.  *Righthaven, LLC v. DiBiase*, Case No. 2:10-cv-01343-RLH-

28  PAL, Dkt. 110 at 7; Dkt. 111 (Gibson Declaration).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    reasons, the fee award in this action should be awarded jointly and severally against Righthaven

2    and Stephens Media.

3            Nonetheless, in calculating their time in this action attorneys at EFF and Fenwick have

4    also attempted to segregate fees related only to one or the other of the responsible parties, should

5    this Court conclude that anything other than full joint and several liability is appropriate.  Mr.

6    Pulgram and Mr. Opsahl examined the billing records and noted where time was spent jointly

7    against Stephens Media and Righthaven, or where it can be identified as addressing solely matters

8    relating to Righthaven or Stephens Media.  Pulgram Decl. ¶ 15, Ex. E; Opsahl Decl. ¶ 11, 155,

9    18, 21, 24, 28, Ex. A.  To the extent that complete joint and several liability were not approved,

10   then fees addressing joint issues should be award jointly, and fees that address purely individual

11   issues should be awarded severally.  If such segregation were required, counsel for Defendants

12   incurred a total of $549,082.50 in fees against Righthaven and Stephens Media jointly, plus

13   $94,143.25 in fees attributable specifically to Stephens Media, and $131,457.50[14] in fees

14   attributable specifically to Righthaven. *Id.*

15                                    **<u>CONCLUSION</u>**

16           For the foregoing reasons, Defendants Democratic Underground and David Allen request

17   that their Motion for Attorneys' Fees be granted, and that they be awarded fees in an amount not

18   less than $774,683.25[15], not including the fees incurred April 1, 2012 or after, the amount of

19   which Defendants will supplement but also request be included in any final award.

20   Dated:  April 10, 2012                          Respectfully,

21                                                   FENWICK & WEST LLP

22                                                   By:  _____/s/ *Laurence F. Pulgram*_____

23                                                            Laurence F. Pulgram

24                                                   Attorneys for Defendant and Counterclaimant
                                                     DEMOCRATIC UNDERGROUND, LLC, and
25                                                   Defendant DAVID ALLEN

26   [14] The $131,457.50 in fees attributable specifically to Righthaven includes fees from EFF and
     Fenwick & West *and* the $3,375 in legal fees incurred by Mr. Allen prior to his obtaining
27   representation from EFF. *See* Allen Decl. ¶ 3, Ex. A.
     [15] This total figure, $774,683.25, includes the fees from Fenwick & West and EFF *and* the $3,375
28   in fees incurred by Mr. Allen, referenced above in note 14.